Adam M. Starr, CSB #246292
AdamStarr@MarkowitzHerbold.com
Ursula Lalovic, CSB #215551
UrsulaLalovic@MarkowitzHerbold.com
Joseph Levy, CSB #329318
JosephLevy@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR 97201
Telephone: (503) 295-3085
Facsimile: (503) 323-9105
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SPYDER GAMES LLC, a Louisiana limited liability company; and SPEEDY SIMULATOR GAMING, LLC, a Wyoming limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> MEMENTUM LAB, a French company, <br><br> Defendant. | Case No. <br><br> **COMPLAINT FOR DECLARATORY RELIEF** <br><br> **DEMAND FOR JURY TRIAL** |

## SUMMARY OF THE CASE

1. Plaintiffs own the popular video game known as *Steal a Brainrot* (the "Game"). The Game is played on the Roblox platform. Roblox is an online gaming platform that allows users and studios to create, publish, and monetize video games. While the games are free to play, they generate substantial revenue through microtransactions and in-game advertising.

2. Since its release, the Game has become a cultural and commercial phenomenon. In just six months, it has amassed billions of player visits, making it one of the most popular titles in Roblox history. Plaintiffs hold a registered copyright for the Game.

MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, Oregon 97201
Tel (503) 295-3085 • Fax (503) 323-9105

3.     The Game is designed as a treasure hunt set in a world inhabited by characters known as "brainrots." During gameplay, the brainrots proceed in a slow, continuous line along a red carpet that runs through the center of the arena. Players capture brainrots and transport them to their respective bases (small holding areas located at the arena's perimeter), to earn virtual currency.

4.     The brainrots in the Game were created by plaintiffs, but they are inspired by humorous internet meme figures that were created using artificial intelligence programs.

5.     Although AI-generated content is a relatively new phenomenon, courts have found that it is not protectable because the Copyright Act requires all work to be authored by a human. *See, e.g.*, *Thaler v. Perlmutter*, 30 F.4th 1039, 1044 (D.C. Cir. 2025) ("As a matter of statutory law, the Copyright Act requires all work to be authored in the first instance by a human being."); *Naruto v. Slater*, 888 F.3d 418, 426 (9th Cir. 2018) (a monkey, because it was non-human, lacked standing under Copyright Act with respect to photos the monkey took of itself); *Kelley v. Chicago Park Dist.*, 635 F.3d 290, 304 (7th Cir. 2011) ("[A]uthorship is an entirely human endeavor."); *see also* U.S. Copyright Office, *Compendium of U.S. Copyright Office Practices* § 306 (3d ed. 2021) (requiring "human" authorship); 2 William F. Patry, *Patry on Copyright* § 3:19 (March 2025 update) (noting that the Copyright Office has "rightly rejected [an application for work created by an AI system] for lack of human authorship.").

6.     In March 2023, the Copyright Office published guidance concerning works containing AI-generated content:

> If a work's traditional elements of authorship were produced by a machine, the work lacks human authorship and the Office will not register it. For example, when an AI technology receives solely a prompt from a human and produces complex written, visual, or musical works in response, the "traditional elements of authorship" are determined and executed by the technology—not the human user . . . . When an AI technology determines the expressive elements of its output, the generated material is not the product of human authorship. As a result, that material is not protected by copyright[.]

*See Copyright Registration Guidance: Works Containing Material Generated by Artificial Intelligence*, 88 Fed. Reg. 16,190 (Mar. 16, 2023).

1    7.    Defendant Mementum Lab describes itself as "the (Brainrot) Memes Agency." Even though the law provides that AI-generated content isn't protectible by copyright, defendant claims that it owns or controls the copyrights to over a dozen brainrots in the Game that were generated by artificial intelligence tools (and more than 50% of the entire "brainrot universe"). For example, defendant contends that it owns or controls the copyrights to the brainrots known as "Tung Tung Sahor" and "U Din Din Din Din Dun Ma Din Din Din Dun":

| **Tung Tung Sahor** | **U Din Din Din Din Dun Ma Din Din Din Dun** |
|---|---|
|  | |

8.    Defendant has threatened to have the Game removed from Roblox through a Digital Millennium Copyright Act takedown notice unless plaintiffs pay them substantial sums of money.

9.    Accordingly, plaintiffs seek an order that defendant does not have copyright protection over the brainrots.

## PARTIES

10.    Plaintiff Spyder Games LLC is a Louisiana limited liability company.

11.    Plaintiff Speedy Simulator Gaming LLC is a Wyoming limited liability company.

12.    Defendant Mementum Lab is a French company.

# JURISDICTION AND VENUE

13. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Copyright Act, and under 28 U.S.C. § 1338(a), which vests federal courts with exclusive jurisdiction over claims relating to copyrights. Declaratory relief is authorized under 28 U.S.C. §§ 2201-2202.

14. Defendant is a foreign company domiciled in France and is not a resident of the United States. Defendant is not subject to the personal jurisdiction of any state court of general jurisdiction in the United States.

15. This Court has personal jurisdiction over defendant under Federal Rule of Civil Procedure 4(k)(2). Plaintiffs' claims arise under federal law, defendant is not subject to the personal jurisdiction of any state court of general jurisdiction, and exercising jurisdiction is consistent with due process. Defendant purposefully directed its conduct toward the United States as a whole by asserting copyright claims against plaintiffs and by threatening to initiate a takedown under the Digital Millennium Copyright Act to remove plaintiffs' Game from Roblox. Defendant knew that its threats would have their effect in the United States, where plaintiffs operate and exploit the Game, and plaintiffs' claims arise directly out of this U.S.-focused conduct.

16. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this District, including plaintiffs' exploitation of the Game and the harm threatened by defendant's assertion of copyright claims and threatened DMCA takedown. Venue is also proper under § 1391(c)(3) because defendant is not a resident of the United States and may be sued in any judicial district.

# FACTUAL ALLEGATIONS

**I.   *Steal a Brainrot* is one of the most successful games on Roblox.**

17. The Game debuted on Roblox in May 2025 and quickly became a sensation. Within mere months, it attracted billions of visits and cemented its place as one of the platform's most popular games. It currently holds the record for the highest concurrent player count on Roblox.

18. The Game is designed as a treasure hunt set in a world inhabited by distinctive characters known as "brainrots," which are inspired by humorous internet meme figures. During gameplay, the brainrots proceed in a slow, continuous line along a red carpet that runs through the center of the arena. Players capture brainrots and transport them to their respective bases (small holding areas located at the arena's perimeter), to earn virtual currency. Each brainrot has a distinct value determined by its rarity, and players may steal brainrots from other players' bases. The virtual currency accumulated through gameplay can be used to enhance a player's base or to unlock special abilities, such as more effective capturing or improved defenses against theft. The screenshot depicts the arena, showing the red carpet with marching brainrots emerging from a doorway and surrounded by player bases:



19. Plaintiffs hold a U.S. copyright registration for the Game: U.S. Copyright Reg. PA0002544969.

**II.   Defendant claims plaintiffs are infringing its intellectual property rights in AI generated brainrots.**

20. In early 2025, plaintiffs received a cease and desist and demand letter from defendant. Defendant claimed that the TikTok creator known as "Noxa" created the brainrot character "Tung Tung Tung Sahur" ("Tung Tung") and assigned all of his intellectual property rights in Tung Tung to defendant. Defendant claimed that plaintiffs' use of Tung Tung in the Game violated its intellectual property rights, and it threatened to DMCA the Game and sue

plaintiffs for copyright infringement. Below are representative examples of the use of Tung Tung in the Game, and defendant's AI generated brainrot:

| The Game | The AI Brainrot |
|---|---|
|  | |

21. Defendant then contacted plaintiffs again. This time, defendant claimed to also represent a TikTok creator known as "Breno," and that defendant now owns and/or controls the intellectual property rights to over a dozen additional brainrots that are in the Game, as well as over "50% of the brainrot universe."

22. Attached as **Exhibit 1** is a list of brainrots and representative images that defendant claims to own or control, and which defendant alleges are in the Game in violation of its intellectual property rights.

## FIRST CLAIM

**(Declaratory Relief)**

23. Plaintiffs re-allege the foregoing allegations as if set forth in full.

24. An actual, present, and justiciable controversy exists within the meaning of 28 U.S.C. § 2201. Defendant has asserted that it owns copyrights in certain "brainrots" appearing in the Game and have claimed that plaintiffs' use of those brainrots infringes its purported

copyrights. Defendant has further demanded that plaintiffs cease use of the brainrots and pay monetary damages.

25. Plaintiffs deny that defendant possess any valid, enforceable copyrights in the brainrots, including because, on information and belief, the brainrots were generated by artificial intelligence without human authorship, and do not qualify for copyright protection under the Copyright Act.

26. Plaintiffs' continued operation, distribution, and monetization of the Game is impaired by defendant's adverse claims of copyright ownership, threats of enforcement, and demands for payment. Defendant's assertions create a substantial and immediate controversy affecting plaintiffs' legal rights and exposing plaintiffs to the threat of litigation.

27. Plaintiffs have a concrete interest in obtaining a judicial determination of the parties' rights and obligations, and such a determination will resolve the existing controversy and afford relief from the uncertainty created by defendant's claims.

28. Pursuant to 28 U.S.C. § 2201, plaintiffs seek a declaration from this Court that:

   a. The brainrots at issue are not subject to copyright protection because they were generated by artificial intelligence tools and lack the human authorship required under the Copyright Act; and/or they otherwise fail to meet the threshold for copyright protection.

   b. Defendant does not own or control any valid or enforceable copyright rights in the brainrots;

   c. Plaintiffs' use, reproduction, distribution, display, or inclusion of the brainrots does not infringe any copyright rights of defendant; and

   d. Defendant is not entitled to damages, injunctive relief, or any other remedy arising from plaintiffs' use of the brainrots.

## JURY DEMAND

29. Plaintiffs request a jury trial on all issues triable to a jury in this matter.

## PRAYER

WHEREFORE, plaintiffs pray for judgment as follows:

   A. Judgment in favor of plaintiffs and against defendant;

7 — Case No.
COMPLAINT

B. A declaration that: (1) The brainrots at issue are not subject to copyright protection because they were generated by AI and lack the human authorship required under the Copyright Act; and/or they otherwise fail to meet the threshold for copyright protection; (2) defendant does not own any valid or enforceable copyright rights in the brainrots; (3) plaintiffs' use, reproduction, distribution, display, or inclusion of the brainrots does not infringe any copyright rights of defendant; and (4) defendant is not entitled to damages, injunctive relief, or any other remedy arising from plaintiffs' use of the brainrots.

C. Attorney fees and costs.

D. Any further relief in law or equity that plaintiffs are entitled to or which the Court deems appropriate.

DATED: November 26, 2025.    MARKOWITZ HERBOLD PC

*s/Adam M. Starr*
Adam M. Starr, CSB #246292
AdamStarr@MarkowitzHerbold.com
Ursula Lalovic, CSB #215551
UrsulaLalovic@MarkowitzHerbold.com
Joseph Levy, CSB #329318
JosephLevy@MarkowitzHerbold.com
*Attorneys for Plaintiffs*

2381016.2