GREGG A. MARTIN (SBN 135685)
GMartin@ggfirm.com
STEVEN A. STEIN (SBN 287401)
SStein@ggfirm.com
ANDREW P. LUX (SBN 345915)
ALux@ggfirm.com
GREENBERG GLUSKER FIELDS CLAMAN &
MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California  90067
Telephone:     310-553-3610
Facsimile:      310-553-0687

Attorneys for Defendant and Counterclaimant MEMENTUM
LAB SAS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

SPYDER GAMES LLC, a Louisiana limited
liability company; and SPEEDY SIMULATOR
GAMING, LLC, a Wyoming limited liability
company,

        Plaintiffs and Counter-
Defendants,

    v.

MEMENTUM LAB SAS, a French company,

        Defendant and
Counterclaimant.

Case No. 5:25-cv-10248-NW

**DEFENDANT'S ANSWER TO COMPLAINT, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS**

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California  90067

DEFENDANT'S ANSWER, AFFIRMATIVE
DEFENSES AND COUNTERCLAIMS

Defendant and Counterclaimant Mementum Lab SAS ("Defendant") responds to Plaintiffs and Counter-Defendants Spyder Games LLC and Speedy Simulator Gaming, LLC's ("Plaintiffs") Complaint as follows:

## INTRODUCTION

1. The title of the video game at issue—*Steal a Brainrot*—aptly describes Plaintiffs' improper conduct giving rise to this dispute. Plaintiffs used the "brainrot" characters—surrealist, absurd and, in many cases, iconic characters—of two creators without their consent to popularize *Steal a Brainrot* and generate substantial revenue, violating these creators' intellectual property rights and artistic vision. Plaintiffs seem to recognize that they don't have the right to use these characters—they removed the most popular character, Tung Tung Sahur, from their game in response to the creators' cease-and-desist letter and engaged in negotiations with the creators to license these characters—but filed this lawsuit as an apparent leverage play when negotiations hit a stalemate. The creators' preference remains to reach a licensing deal with Plaintiffs, but they're prepared to vindicate their rights in these characters and hold Plaintiffs accountable for their conduct through this lawsuit.

## ANSWER

Defendant answers Plaintiffs' claims as follows:

## SUMMARY OF THE CASE

1. Answering Paragraph 1, Defendant admits the allegations in this paragraph on information and belief.

2. Answering Paragraph 2, Defendant admits the allegations in the first two sentences of this paragraph on information and belief. Defendant lacks sufficient information and belief to admit or deny the allegation in the third sentence of this paragraph and denies this allegation on that basis.

3. Answering Paragraph 3, Defendant admits the allegations in this paragraph on information and belief.

4. Answering Paragraph 4, Defendant denies that Plaintiffs created the brainrot characters in *Steal a Brainrot* (the "Game") identified in Exhibit 1 to the Complaint. Defendant

56669-00002/8021996.6

DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

lacks sufficient information and belief to admit or deny whether Plaintiffs created other brainrot characters in the Game and denies this allegation on that basis. Defendant otherwise denies the allegations in this paragraph on information and belief.

5.    Answering Paragraph 5, Defendant admits that AI-generated content is a relatively new phenomenon. While the remaining allegations in this paragraph call for a legal conclusion, to the extent a response is required, Defendant denies these allegations on information and belief.

6.    Answering Paragraph 6, Defendant admits that the Copyright Office published guidance entitled *Copyright Registration Guidance: Works Containing Material Generated by Artificial Intelligence* in March 2023, and that the guidance includes the language quoted in this paragraph along with the following language: "[A] work containing AI-generated material will also contain sufficient human authorship to support a copyright claim. For example, a human may select or arrange AI-generated material in a sufficiently creative way that 'the resulting work as a whole constitutes an original work of authorship.' Or an artist may modify material originally generated by AI technology to such a degree that the modifications meet the standard for copyright protection."

7.    Answering Paragraph 7, Defendant admits the allegation in the first sentence of this paragraph. While the allegation in the second sentence of this paragraph that the law provides that AI-generated content isn't protectible by copyright calls for a legal conclusion, to the extent a response is required, Defendant denies this allegation on information and belief, admits the allegation in this sentence that it claims it holds copyrights relating to over a dozen brainrot characters in the Game, and otherwise denies the allegations in this sentence. Defendant admits the allegation in the third sentence of this paragraph that it contends it holds the copyrights relating to the referenced brainrot characters.

8.    Answering Paragraph 8, Defendant admits that it sent notice pursuant to Article 16 of the European Union's Digital Services Act requesting removal of the Game but otherwise denies the allegations in this paragraph.

9.    Answering Paragraph 9, Defendant admits that Plaintiffs have filed this lawsuit in which they seek the referenced order.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

## PARTIES

10.     Answering Paragraph 10, Defendant admits this allegation on information and belief.

11.     Answering Paragraph 11, Defendant admits this allegation on information and belief.

12.     Answering Paragraph 12, Defendant admits this allegation.

## JURISDICTION AND VENUE

13.     Answering Paragraph 13, Defendant admits that Plaintiffs have filed an action under the Copyright Act and are seeking declaratory relief. Defendant otherwise lacks sufficient information and belief to admit or deny the allegations in this paragraph and denies them on this basis.

14.     Answering Paragraph 14, Defendant admits the allegations in this paragraph.

15.     Answering Paragraph 15, Defendant lacks sufficient information and belief to admit or deny the allegations in the first and second sentences of this paragraph and denies them on that basis. Defendant admits that it is a French company that sent notice pursuant to Article 16 of the European Union's Digital Services Act requesting removal of the Game but otherwise denies the allegations in the third sentence of this paragraph. Defendant denies the allegations in the fourth sentence of this paragraph.

16.     Answering Paragraph 16, Defendant denies the allegation in the first sentence of this paragraph that it threatened a DMCA takedown and otherwise denies the allegations in this sentence as to Plaintiffs' declaratory relief claim on information and belief. Defendant admits the allegation in the second sentence of this paragraph that it is not a resident of the United States but otherwise denies the allegations in this sentence on information and belief.

## FACTUAL AND ALLEGATIONS

17.     Answering Paragraph 17, Defendant admits the allegations in this paragraph on information and belief.

18.     Answering Paragraph 18, Defendant admits on information and belief the allegation in the first sentence of this paragraph that the Game is designed as a treasure hunt set in

56669-00002/8021996.6

4

DEFENDANT'S ANSWER, AFFIRMATIVE
DEFENSES AND COUNTERCLAIMS

a world inhabited by distinctive characters known as "brainrots," but denies the remaining allegations in this sentence on information and belief. Defendant admits the remaining allegations in the paragraph on information and belief.

19. Answering Paragraph 19, Defendant lacks sufficient information and belief to admit or deny the allegation and denies this allegation on that basis.

20. Answering Paragraph 20, Defendant admits the allegation in the first sentence of this paragraph that it sent a cease-and-desist letter to Plaintiffs on September 3, 2025. Defendant admits the allegation in the second sentence of the paragraph. Defendant admits the allegation in the third sentence of this paragraph that it claimed Plaintiffs' use of Tung Tung Sahur in the Game violated its intellectual property rights but denies the remaining allegations in this sentence. Defendant admits the allegations in the fourth sentence of this paragraph that the first image appears to be one of Tung Tung Sahur being used in the Game, and that the second image appears to be a screenshot from a video depicting Tung Tung Sahur, but otherwise denies the allegations in this sentence.

21. Answering Paragraph 21, Defendant admits that, as part of negotiations between the parties relating to Plaintiffs licensing Defendant's brainrot characters for use in the Game, Defendant wrote to Plaintiffs on November 3, 2025 that it "now also represents Breno, and thus holds rights or representation over more than 50% of the Brainrot universe," but otherwise denies the allegations in this paragraph.

22. Answering Paragraph 22, Defendant admits that it holds the intellectual property rights in the brainrot characters listed in Exhibit 1 to the Complaint, and that Plaintiffs' use of these characters in the Game violates its intellectual property rights.

## FIRST CLAIM

### (Declaratory Relief)

23. Answering Paragraph 23, Defendant incorporates by reference its answers above.

24. Answering Paragraph 24, Defendant denies the allegation in the first sentence of this paragraph. Defendant admits the allegations in the second and third sentences of this paragraph.

25. Answering Paragraph 25, Defendant admits that Plaintiffs are taking this position in this case.

26. Answering Paragraph 26, Defendant lacks sufficient information and belief to admit or deny the allegations in this paragraph and denies them on that basis.

27. Answering Paragraph 27, Defendant denies this allegation on information and belief.

28. Answering Paragraph 28, Defendant admits that Plaintiffs are seeking a declaration from the Court of the items alleged in this paragraph.

### JURY DEMAND

29. Answering Paragraph 29, Defendant admits that Plaintiffs are requesting a jury trial on all issues triable to a jury in this matter.

### RESPONSE TO PRAYER

Defendant denies that Plaintiffs are entitled to any of the relief requested in the section of the Complaint titled "Prayer," or to any relief in any form from either the Court or from Defendant. Defendant respectfully requests that the Court enter judgment in its favor and against Plaintiffs on all of Plaintiffs' claims, deny each of Plaintiffs' prayers for relief, and award Defendant its costs, attorneys' fees, and any other further relief deemed appropriate by the Court.

### AFFIRMATIVE DEFENSES

Defendant alleges the following affirmative defenses:

### FIRST AFFIRMATIVE DEFENSE

### (Plaintiffs' Declaratory Relief Claim is Not Ripe)

30. Defendant incorporates by reference the allegations in its response to Plaintiffs' Complaint, including the allegations in its Introduction, Answer, Affirmative Defenses and Counterclaims.

31. Defendant is a French-based startup primarily represented by French counsel. As to intellectual property enforcement, Defendant has focused to date on enforcing its rights in the European Union as to the brainrot characters for which it is the exclusive representative and licensee. For example, Defendant's French counsel sent Plaintiffs a cease-and-desist letter on

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

September 3, 2025 in which Defendant requested the removal of the Tung Tung Sahur character from the Game. In the letter, Defendant's French counsel focused on Defendant's intellectual property rights under French law and wrote that Tung Tung Sahur is "a protected intellectual property asset, combining copyright, trademark, and unfair competition protections under French and international law." Defendant's French counsel also submitted in December 2025 and April 2026 notices to Roblox pursuant to Article 16 of the European Union's Digital Services Act in which Defendant advised that there was content in the Game that infringes its intellectual property rights in certain brainrot characters and requested that the Game be removed or disabled. Plaintiffs' declaratory relief claim attempts to concoct the existence of an actual controversy by taking certain statements in Defendant's correspondence out of context. Plaintiffs' declaratory relief claim is not ripe and there is no actual controversy for the Court to resolve.

## SECOND AFFIRMATIVE DEFENSE

### (Unclean Hands)

32.     Defendant incorporates by reference the allegations in its response to Plaintiffs' Complaint, including the allegations in its Introduction, Answer, Affirmative Defenses and Counterclaims.

33.     Defendant alleges that, by virtue of Plaintiffs' own careless, negligent and other wrongful conduct, Plaintiffs should be barred from recovering against Defendant by the equitable doctrine of unclean hands. For example, Plaintiffs engaged in a deliberate and willful pattern of misconduct related to the subject matter of this litigation, including by: (a) using in the Game Tung Tung Sahur and at least 16 other brainrot characters that Noxa and Breno created without the consent of these creators; (b) removing Tung Tung Sahur from the Game for many months following Defendant's September 3, 2025 cease-and-desist letter, thereby implicitly acknowledging that Plaintiffs did not have the right to use Tung Tung Sahur in the Game without Defendant's permission; (c) entering into substantive licensing negotiations with Defendant and then, when those negotiations stalled, filing this lawsuit as an apparent pressure tactic; (d) introducing a secret "Coffin Tung Tung Tung Sahur" character to the Game on or around November 29, 2025 without Defendant's consent; and (e) officially reintroducing Tung Tung

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

Sahur to the Game on or around January 13, 2026 without Defendant's consent.

## THIRD AFFIRMATIVE DEFENSE

### (Estoppel)

34.     Defendant incorporates by reference the allegations in its response to Plaintiffs' Complaint, including the allegations in its Introduction, Answer, Affirmative Defenses and Counterclaims.

35.     Plaintiffs' claim is barred by the doctrine of equitable estoppel due to Plaintiffs' conduct. For example, by removing Tung Tung Sahur from the Game and engaging in substantive licensing negotiations with Defendant, Plaintiffs induced Defendant to reasonably believe that the parties would resolve this dispute through a licensing arrangement. Plaintiffs then abandoned those negotiations and filed this lawsuit. Plaintiffs should not be permitted to take a position inconsistent with their prior conduct to the detriment of Defendant.

## FOURTH AFFIRMATIVE DEFENSE

### (Waiver)

36.     Defendant incorporates by reference the allegations in its response to Plaintiffs' Complaint, including the allegations in its Introduction, Answer, Affirmative Defenses and Counterclaims.

37.     Plaintiffs have waived any right to obtain the relief on their purported claim. For example, by removing Tung Tung Sahur from the Game and engaging in substantive licensing negotiations with Defendant, Plaintiffs demonstrated a clear intent to recognize and respect Defendant's intellectual property rights. Plaintiffs cannot now seek a declaration that those same rights do not exist.

## RESERVATION OF ADDITIONAL DEFENSES

38.     Defendant reserves the right to assert additional defenses in the event further factual development indicates that they are proper.

8

DEFENDANT'S ANSWER, AFFIRMATIVE
DEFENSES AND COUNTERCLAIMS

**COUNTERCLAIMS**

Defendant alleges the following as counterclaims against Plaintiffs:

**SUMMARY OF FACTS RELEVANT TO COUNTERCLAIMS**

**A.    Defendant's Creators Use an Involved, Artistic Process to Create Some of the Most Iconic Brainrot Characters, including Tung Tung Sahur**

1.    "Brainrot" characters are a genre of absurd, surrealist characters born from content creators that became wildly popular with Gen Z starting in early 2025. Drawing on inspiration from memes, politics and culture, individual content creators invented a universe of such characters, typically by combining objects, animals and human features. Many of the characters have extensive backstories and interact with other brainrot characters.

2.    Two creators who go by the aliases "Noxa" and "Breno" have created some of the most iconic brainrot characters. They each use an involved, artistic process to create the names of these characters, the characters themselves, their backstory, the voices and music associated with them, and the videos depicting them. They also use many of these characters to comment on society, politics and culture.

3.    For example, Noxa created the most popular character in the brainrot universe, Tungtungtungsahur (better known as Tung Tung Sahur), drawing on inspiration from his life and culture. Noxa lives in Indonesia, and men who patrol the neighborhood at night strike kentongans (slit drums) to signal that the night watch is active, making a simple and iconic "tung tung" noise. During Ramadan, the kentongans are also used to wake up people for Sahur, a pre-fast meal. Noxa sought to create a character that captured the Indonesian tradition and collective memory of being woken up for Sahur. He first chose the onomatopoeic name Tung Tung Sahur to evoke the "tung tung" sound that the kentongans make during Ramadan to wake people up for Sahur—it was critical for Noxa to come up with a name that carried the full narrative (sound, timing and cultural context) he was trying to evoke. Noxa then created the backstory for Tung Tung Sahur—a supernatural guardian resembling a kentongan who is friendly but strange, funny yet disturbing, and firm about Sahur, carrying a wooden bat to wake people for the pre-fast meal by beating "tung tung tung." As Noxa created Tung Tung Sahur's backstory, he focused on the

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

9

DEFENDANT'S ANSWER, AFFIRMATIVE
DEFENSES AND COUNTERCLAIMS

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

voiceover that would be associated with the video depicting the character—he wanted a simple, almost hypnotic narration that emphasized the "tung tung tung" beat. Noxa then created a visual depiction of Tung Tung Sahur—a humanoid kentongan carrying a wooden bat—and used editing software to make further changes, including to carefully synchronize the character with the voiceover (which repeatedly stated "tung tung" and told the essence of the character's story) and music (a track Noxa had popularized that evoked fright). In the background of the video, Noxa depicted a nightwatchman post along with a sign stating "Pos Ronda," the neighborhood security posts at which kentongans are commonly found. An image from the video depicting Tung Tung Sahur is below:



4.      Noxa posted his video depicting Tung Tung Sahur on February 28, 2025, and the character went viral, with the video generating hundreds of millions of views, comments, bookmarks and likes. Tung Tung Sahur has become the most recognizable brainrot character.

5.      Noxa and Breno have created other popular brainrot characters, including Tob Tobi Tob, Brr Es Teh Patipum, Pakrahmatmamat, La Esok Sekolah, U Din Din Din Din Dun Ma Din Din Din Dun and Garamararambraraman dan Madudungdung tak tuntung Perkuntung (Noxa characters), and Boneca Ambalabu, Il Cacto Hipopotamo, Brr Brr Patapim, Malamé Amaralé, Frigo Camelo, Ecco Cavallo Virtuoso, Tre Tigri Triste, Giraffa Celeste, Trenostruzzo Turbo 3000 and La Vacca Saturno Saturnita (Breno characters). They have taken a similarly involved and artistic process in creating many of these characters.[1]

---

[1] Defendant recently became the exclusive worldwide licensee and representative of two other creators, "Alexey Pigeon" and "Choppow," who have created many characters that Plaintiffs have used in the Game without their permission, including Cappuccino Assassino, Avocadini Guffo,

**B.      Plaintiffs Use Tung Tung Sahur and Other of Defendant's Brainrot Characters Without Permission to Popularize Their Video Game and Generate Revenue**

6.      On or around May 16, 2025, Plaintiffs released *Steal a Brainrot*, a video game on the Roblox platform through which users "steal" brainrot characters as they traverse the Game. Users can make in-game purchase, including to buy brainrot characters (with each character's price depending on its rarity), upgrades for their "base" of characters, and special abilities for their characters.

7.      Without obtaining Noxa's permission, Plaintiffs used Tung Tung Sahur as one of the brainrot characters in the game, depicting both Tung Tung Sahur's name and likeness:





Tung Tung Sahur is "rare" in the Game, and users can spend in-game currency equivalent to thousands of dollars to buy the character. Plaintiffs have used many characters confusingly

---

Perochello Lemonchello, Mangolini Parrocini, Penguino Cocosino, Bananitta Dolfinitta devenu Bananita Dolphinita, Burbaloni Lulliloli devenu Burbaloni Loliloli, Chimpanzini Bananini, Blueberrinni Octopussini devenu Blueberrinni Octopusini, Quivioli Ameleonni, Strawberrelli Flamingelli, Cocosini Mama, Ganganzelli Trulala, Zibra Zubra Zibralini, Orangutini Ananasini devenu Orangutini Ananassini, Rhino Toasterino, Cocofanto Elefanto, Tukanno Bananno, Tigrulli Grapefrutunni devenu Tigroligre Frutonni, Spaghetti Tualetti, Graipussi Medussi devenu Graipuss Medussi and Tim Cheese. Defendant reserves all related rights.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California  90067

similar to and/or derivative of Tung Tung Sahur in the Game, including, Te Te Te Sahur, Ti Ti Ti Sahur, Ta Ta Ta Sahur, Job Job Job Sahur, Los Tungtungtungcitos, La Sahur Combinasion and the Los Bros. Plaintiffs also have used in the Game at least 16 other brainrot characters that Noxa and Breno created without obtaining their consent.

8.     *Steal a Brainrot* quickly became one of the most popular video games in the world, surpassing 20 million peak concurrent users in late 2025, garnering over 56 billion visits by early 2026, and generating tens of millions of dollars in revenue. Defendant is informed and believes, and based thereon alleges, that much of the Game's popularity and revenue are attributable to Plaintiffs' unsanctioned use of Noxa and Breno's brainrot characters, in particular Tung Tung Sahur.

**C.     Plaintiffs Remove Tung Tung Sahur from the Game in Response to Defendant's Cease-and-Desist Letter, Engage in Negotiations to License the Character, and then File This Lawsuit When Negotiations Hit a Stalemate**

9.     Defendant is a French startup that is effectively a talent agency for the creators of brainrot characters. Defendant acquired from Noxa and Breno the exclusive worldwide rights to many of their brainrot characters and is also their exclusive representative as these characters. Defendant works closely with Noxa and Breno to commercialize these characters while also protecting these creators' vision and their intellectual property rights. Defendant has a registered trademark in France (Registration No. 5157809) and internationally with WIPO (Registration No. 1913096) in Classifications 9, 16, 25, 28, 35, 41 and 42 (which encompass video games) for the name and image of Tung Tung Sahur[2]:



---

[2] Shortly before filing this response to Plaintiffs' Complaint, the WIPO informed Defendant that its request for an extension of its French trademark to other territories, including the United States, had been registered. Defendant reserves all related rights.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

10. On September 3, 2025, Defendant sent a cease-and-desist letter to Plaintiffs advising them that Defendant holds the intellectual property rights in Tung Tung Sahur under French and international law, Plaintiffs were violating these rights by using Tung Tung Sahur in the Game, and Plaintiffs needed to remove the character from the Game. Defendant wrote that it was open to licensing the character to Plaintiffs for use in the Game.

11. Significantly—and underscoring Plaintiffs' apparent understanding that they did not have the right to use Tung Tung Sahur in the Game without Defendant's permission—Plaintiffs removed Tung Tung Sahur from the Game on or around September 13, 2025,[3] and entered into negotiations to license Tung Tung Sahur for use in the Game, with the parties exchanging draft deal terms. As part of these discussions, Defendant informed Plaintiffs that it had also become the exclusive rightsholder for additional brainrot characters that Noxa and Breno had created and that Plaintiffs had used without their permission, and that Plaintiffs would either need to stop using these characters or license them from Defendant.

12. Ultimately, the parties' negotiations reached a stalemate, and Plaintiffs resorted to pressure tactics and self-help. Plaintiffs filed this lawsuit seeking a declaration that Defendant does not have a copyright in the characters at issue in the United States even though Defendant—a French company represented by French legal counsel—had not raised the prospect of pursuing a copyright infringement claim against Plaintiffs in the United States. Three days later, on or around November 29, 2025, Plaintiffs introduced a secret "Coffin Tung Tung Tung Sahur" character to the Game without Defendant's consent. Then, on or around January 13, 2026, Plaintiffs' officially reintroduced Tung Tung Sahur to the Game without Defendant's consent.

**D.    Defendant Enters into Worldwide Licensing Deals Whereby its Characters are Used in Video Games Starting Before *Steal a Brainrot* is Released**

13. Separate and apart from its licensing negotiations with Plaintiffs, Defendant has been commercializing its brainrot characters since before *Steal a Brainrot* was released, entering into worldwide licensing deals whereby these characters are used in commerce, including in

---

[3] Underscoring the importance of Tung Tung Sahur to the Game, there was widespread public outcry about Tung Tung Sahur being removed from the Game.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

video games. For example:

a.      Defendant entered into a worldwide license retroactive to May 1, 2025 authorizing the use of Tung Tung Sahur in the video game *Tung Tung Tung Sahur*, which was released on May 3, 2025. The game depicted Tung Tung Sahur's name and likeness on that date, before *Steal a Brianrot* was released:




b.      On or around October 11, 2025, Defendant entered into a worldwide license authorizing the use of Tung Tung Sahur in the Roblox game *Plants Vs Brainrots*, with the game depicting Tung Tung Sahur's name and likeness:




56669-00002/8021996.6

14

DEFENDANT'S ANSWER, AFFIRMATIVE
DEFENSES AND COUNTERCLAIMS

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

c.      On or around December 8, 2025, Defendant entered into a license authorizing the use of Tung Tung Sahur in the mobile game *Pudgy Party* in the United States and other approved territories, with the game depicting Tung Tung Sahur's name and likeness:

 

d.      On or around January 14, 2026, Defendant entered into a worldwide licensing agreement with Epic (one of the biggest video companies in the world) to use Tung Tung Sahur in Fortnite (one of the most popular video games in the world), with skins of the Tung Tung Sahur character having launched on or around April 4, 2026:



e.      On or around April 16, 2026, Defendant entered into a worldwide license authorizing the use of Tung Tung Sahur in the video game *Brainrot Fight*, which will depict Tung Tung Sahur's name and likeness:



f.      Defendant has entered into many other licensing deals for Tung Tung Sahur and other of its brainrot characters, including for toys in arcade games, books and e-books, and consumer products (including robot and plush toys). As with the above-alleged video game licenses, many of these licenses are worldwide in scope and have involved the continuous use of Defendant's characters in commerce.

## JURISDICTION AND VENUE

14.     The Court has jurisdiction over Defendant's counterclaims under 15 U.S.C. § 1121, *et seq.*

15.     There is complete diversity of citizenship between the parties.

16.     Venue is appropriate in this district as to Defendant's counterclaims pursuant to 28 U.S.C. § 1391.

## PARTIES

17.     Counterclaimant is a French company devoted to the authenticity and artistic vision of the creators that it represents.

18.     Defendant is informed and believes, and based thereon alleges, that Counter-Defendant Spyder Games LLC is a Louisiana LLC, and an owner of the Game.

19.     Defendant is informed and believes, and based thereon alleges, that Counter-Defendant Speedy Simulator Gaming LLC is a Wyoming LLC, and an owner of the Game.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

56669-00002/8021996.6

DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

**FIRST COUNTERCLAIM**

**(Trademark Infringement Under the Lanham Act - 15 U.S.C. § 1125(a))**

20.    Defendant incorporates the foregoing allegations as if set forth fully herein.

21.    Defendant has a valid, protectible trademark in Tung Tung Sahur, including in the character's name and image.

22.    The Tung Tung Sahur marks are distinctive in the minds of ordinary consumers as such marks are famous and have an extremely high degree of recognition among consumers.

23.    Defendant owns the rights to Tung Tung Sahur, including as to Tung Tung Sahur's name and image, as a trademark by virtue of acquiring such exclusive, worldwide rights through a licensing agreement it entered into with Noxa, including the right to pursue claims based on any infringement of intellectual property rights relating to Tung Tung Sahur, and by virtue of its licensees' use of Tung Tung Sahur's name and image in commerce.

24.    Defendant has used Tung Tung Sahur's name and image in interstate commerce, including through its worldwide licensing of Tung Tung Sahur's name and image for use in video games, and has priority of use. The use by Defendant's licensees of the Tung Tung Sahur mark in commerce in the United States inures to Defendant's benefit pursuant to the related company doctrine, 15 U.S.C. § 1055. Defendant exercises quality control over each licensee's use of the Tung Tung Sahur name and image. Each licensee's use in United States commerce inures to Defendant's benefit for purposes of establishing priority and protectability of the mark.

25.    Plaintiffs have used and continue to use Tung Tung Sahur's name and image without Defendant's permission in connection with the Game in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the character, including because many of Defendant's licensees and Plaintiffs operate in the same market (i.e., the video game space).

26.    As a direct and proximate result of Plaintiffs' wrongful conduct, Defendant has been damaged and is entitled to recover Plaintiffs' wrongfully obtained profits and three times Defendant's actual damages under 15 U.S.C. § 1117(a).

27.    Defendant is informed and believes, and based thereon alleges, that Plaintiffs

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

engaged in the foregoing conduct knowingly, willfully and oppressively, intending to appropriate Defendant's intellectual property to the detriment of Defendant and to the confusion of the public, including because Plaintiffs removed Tung Tung Sahur from the Game after Defendant sent a cease-and-desist letter, engaged in negotiations to license from Defendant the Tung Tung Sahur character for use in the Game, and then added the Tung Tung Sahur character back to the Game without Defendant's consent when the parties' negotiations hit a stalemate. This constitutes an exceptional case within the meaning of 15 U.S.C. § 1117, for which Defendant is entitled to its attorneys' fees.

28.     Plaintiffs' trademark infringement has caused and will cause irreparable harm to Defendant that cannot be fully compensated by money. Defendant has no adequate remedy at law. Therefore, in addition to monetary damages, Defendant is entitled to preliminary and permanent injunctive relief preventing Plaintiffs from continuing to use Defendant's trademarks in Tung Tung Sahur or any confusingly similar variations thereof on or in connection with any products, goods or services, or the advertising of any products, goods or services.

## SECOND COUNTERCLAIM

### (Unfair Competition Under the Lanham Act - 15 U.S.C. § 1126(h) and (i))

29.     Defendant incorporates the foregoing allegations as if set forth fully herein.

30.     Section 44(h) of the Lanham Act, codified at 15 U.S.C. § 1126(h), provides that nationals of countries party to any convention or treaty to which the United States is a party, and which affords similar privileges to nationals of the United States, "shall be entitled to effective protection against unfair competition, and the remedies provided in this chapter for infringement of marks shall be available so far as they may be appropriate in repressing acts of unfair competition."

31.     Section 44(i) of the Lanham Act, codified at 15 U.S.C. § 1126(i), further provides that citizens or nationals of such countries "shall be entitled to benefits and rights under this chapter to the extent necessary to give effect to any provision of such convention, treaty, or proclamation."

32.     France is a signatory to the Paris Convention. The United States is likewise a

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

signatory. Pursuant to 15 U.S.C. § 1126(b), Defendant, as a French national holding a trademark duly registered in France, is entitled to the benefits of 15 U.S.C. § 1126(h) and (i) to the same extent as a United States national.

33. Plaintiffs have used and continue to use Tung Tung Sahur's name and image without Defendant's permission in connection with the Game in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the character, including because many of Defendant's licensees and Plaintiffs operate in the same market (i.e., the video game space). Such conduct constitutes acts of unfair competition within the meaning of 15 U.S.C. § 1126(h) in that it (a) misappropriates and trades upon the goodwill and reputation of Defendant and Tung Tung Sahur's name and image and (b) is likely to cause confusion, mistake, or deception among consumers as to the origin, affiliation, or sponsorship of the Game.

34. As a direct and proximate result of Plaintiffs' wrongful conduct, Defendant has been damaged and is entitled to recover Plaintiffs' wrongfully obtained profits and three times Defendant's actual damages under 15 U.S.C. § 1117(a).

35. Defendant is informed and believes, and based thereon alleges, that Plaintiffs engaged in the foregoing conduct knowingly, willfully and oppressively, intending to appropriate Defendant's intellectual property to the detriment of Defendant and to the confusion of the public, including because Plaintiffs removed Tung Tung Sahur from the Game after Defendant sent a cease-and-desist letter, engaged in negotiations to license from Defendant the Tung Tung Sahur character for use in the Game, and then added the Tung Tung Sahur character back to the Game without Defendant's consent when the parties' negotiations hit a stalemate. This constitutes an exceptional case within the meaning of 15 U.S.C. § 1117, for which Defendant is entitled to its attorneys' fees.

36. Plaintiffs' trademark infringement has caused and will cause irreparable harm to Defendant that cannot be fully compensated by money. Defendant has no adequate remedy at law. Therefore, in addition to monetary damages, Defendant is entitled to preliminary and permanent injunctive relief preventing Plaintiffs from continuing to use Defendant's trademarks

in Tung Tung Sahur or any confusingly similar variations thereof on or in connection with any products, goods or services, or the advertising of any products, goods or services.

## THIRD COUNTERCLAIM

### (Common Law Unfair Competition)

37.    Defendant incorporates the foregoing allegations as if set forth fully herein.

38.    By their above-alleged conduct, Plaintiffs have violated and infringed Defendant's common law rights in the trademarks at issue and have otherwise competed unfairly with Defendant in violation of the common law of the state of California.

39.    As a direct and proximate result of Plaintiffs' conduct, Defendant has suffered and is entitled to monetary damages in an amount to be proven at trial.

40.    Plaintiffs' unlawful conduct has caused and will cause irreparable harm to Defendant that cannot be fully compensated by money. Defendant has no adequate remedy at law. Therefore, in addition to monetary relief, Defendant is entitled to preliminary and permanent injunctive relief enjoining Plaintiffs from engaging in further acts of unfair competition.

## PRAYER FOR RELIEF

WHEREFORE, Defendant prays for judgment against Plaintiffs as follows:

1.    That the Court dismiss Plaintiffs' claim with prejudice;

2.    That the Court determine that Plaintiffs violated Defendant's trademarks;

3.    For preliminary and/or permanent injunctive relief precluding Plaintiffs from using Defendant's trademarks;

4.    That the Court determine that Plaintiffs engaged in unfair competition;

5.    For preliminary and/or permanent injunctive relief precluding Plaintiffs from competing unfairly with Defendant;

6.    For an award of damages, including exemplary or punitive damages, in an amount according to proof at trial;

7.    That the Court determine that Plaintiffs were unjustly enriched at Defendant's expense through their unauthorized use of Defendant's brainrot characters;

8.    For disgorgement of all profits and benefits unjustly obtained by Plaintiffs through

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

their unauthorized use of Defendant's brainrot characters, including without limitation Tung Tung Sahur, in an amount to be proven at trial;

9.    For Defendant's attorneys' fees according to proof; and

10.    For such other relief as the Court shall deem just and proper.

**DEMAND FOR JURY TRIAL**

Defendant hereby demands a jury trial on all issues triable to a jury in this matter.

DATED:  April 24, 2026

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP

By: _____
STEVEN A. STEIN (SBN 287401)
Attorneys for Defendant and
Counterclaimant MEMENTUM LAB SAS

56669-00002/8021996.6

21

DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067