AARON J. MOSS (190625)
aaron.moss@msk.com
JOSHUA M. GELLER (295412)
josh.geller@msk.com
ARIANA T. ADDO-YOBO (363119)
ata@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Plaintiffs
SPYDER GAMES LLC and
SPEEDY SIMULATOR GAMING, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SPYDER GAMES LLC, a Louisiana limited liability company; and SPEEDY SIMULATOR GAMING, LLC, a Wyoming limited liability company,<br><br>    Plaintiffs and Counter-Defendants,<br><br>    v.<br><br>MEMENTUM LAB, a French company,<br><br>    Defendant and Counterclaimant. | CASE NO. 5:25-CV-10248-NW<br><br>**PLAINTIFFS AND COUNTER-DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS MEMENTUM LAB'S COUNTERCLAIMS PURSUANT TO FRCP 12(B)(6)**<br><br>Hon. Noël Wise<br><br>Date:         July 8, 2026<br>Time:         9:00 a.m.<br>Courtroom:     3<br><br>[*Filed concurrently with [Proposed] Order*] |

Mitchell
Silberberg &
Knupp LLP

21598820.13

CASE NO. 5:25-CV-10248-NW

**PLAINTIFFS AND COUNTER-DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS MEMENTUM LAB'S COUNTERCLAIMS PURSUANT TO FRCP 12(B)(6)**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on July 8, 2026 at 9:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 3 of the above-entitled Court, located at 280 South First Street, 5th Floor, San Jose, CA 95112, Plaintiffs and Counter-Defendants Spyder Games LLC and Speedy Simulator Gaming, LLC (collectively, "Plaintiffs") will, and hereby do, move to dismiss the Counterclaim filed by Counterclaimant Mementum Lab ("Mementum") for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). In particular, Mementum's claims for trademark infringement fail because: (1) Mementum does not allege that it has a valid trademark, or that consumers would understand the character of Tung Tung Sahur to function as a source identifier; (2) Mementum does not have priority of use of Tung Tung Sahur over Plaintiffs; (3) Mementum's claims are barred by *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), because Mementum is asserting a claim over the origin and authorship of creative content (i.e., the creation of the character Tung Tung Sahur); and (4) Mementum does not plausibly allege that consumers are likely to be confused by Plaintiffs' alleged use of the character.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, any reply papers that may be filed, and on such further oral or documentary evidence as may be presented at or before the hearing on this matter.

DATED: MAY 15, 2026                    MITCHELL SILBERBERG & KNUPP LLP

By: _____
Aaron J. Moss
Joshua M. Geller
Ariana T. Addo-Yobo
Attorneys for Plaintiffs
SPYDER GAMES LLC and
SPEEDY SIMULATOR GAMING, LLC

Mitchell
Silberberg &
Knupp LLP

21598820.13

2                                    CASE NO. 5:25-CV-10248-NW
**PLAINTIFFS AND COUNTER-DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS MEMENTUM LAB'S COUNTERCLAIMS PURSUANT TO FRCP 12(B)(6)**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................................8

II.    FACTUAL BACKGROUND ................................................................................9

       A.     The Brainrot Genre and the Tung Tung Sahur Character......................9

       B.     Plaintiffs Create a Video Game Depicting the Viral Brainrot
              Memes. ................................................................................................10

       C.     Mementum Licenses Tung Tung Sahur from Noxa, and then
              Licenses It to Other Third Parties. .....................................................11

       D.     Mementum's Cease-and-Desist Letter and the Course of This
              Litigation. ...........................................................................................12

III.   ARGUMENT .......................................................................................................12

       A.     Mementum Has Not Plausibly Alleged a Valid, Protectable
              Trademark. ..........................................................................................14

              1.     Tung Tung Sahur is a Fictional Character, Not a Source
                    Identifier...................................................................................14

              2.     Even if Tung Tung Sahur Were a Source Identifier,
                    Mementum Has Not Pleaded Priority over Plaintiffs...............17

       B.     The Counterclaims are Independently Barred by *Dastar*. ..................18

       C.     Mementum Has Not Plausibly Alleged Likelihood of Confusion. ....21

IV.    CONCLUSION ....................................................................................................25

**PLAINTIFFS AND COUNTER-DEFENDANTS' NOTICE OF MOTION AND MOTION
TO DISMISS MEMENTUM LAB'S COUNTERCLAIMS PURSUANT TO FRCP 12(B)(6)**

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*AMF Inc. v. Sleekcraft Boats*,
    599 F.2d 341 (9th Cir. 1979) ............................................................... 23, 24

*Applied Info. Scis. Corp. v. eBay, Inc.*,
    511 F.3d 966 (9th Cir. 2007) ........................................................ 13, 14, 21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................. 22

*Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc.*,
    289 F.3d 589 (9th Cir. 2002) ................................................................ 17

*Bastiat USA, Inc. v. Shein Distrib. Corp.*,
    No. 2:25-CV-05701-ODW, 2026 WL 1146737 (C.D. Cal. Apr. 28, 2026) ...... 21

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................. 22

*Brantley v. Epic Games, Inc.*,
    463 F. Supp. 3d 616 (D. Md. 2020) ....................................................... 21

*Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*,
    174 F.3d 1036 (9th Cir. 1999) .............................................................. 14

*Carter v. Oath Holdings Inc.*,
    No. 17-CV-07086-KAW, 2018 WL 5819458 (N.D. Cal. Nov. 5, 2018),
    *aff'd*, 788 F. App'x 436 (9th Cir. 2019) ................................................. 22

*Century 21 Real Estate Corp. v. Sandlin*,
    846 F.2d 1175 (9th Cir. 1988) .............................................................. 13

*Cleary v. News Corp.*,
    30 F.3d 1255 (9th Cir. 1994) ................................................................ 13

*Coach, Inc. v. Citi Trends, Inc.*,
    No. CV 17-4775 DMG (KSX), 2019 WL 6354367 (C.D. Cal. Oct. 23,
    2019) ................................................................................................... 15

*Comedy III Prods., Inc. v. New Line Cinema*,
    200 F.3d 593 (9th Cir. 2000) ........................................................... 14, 20

CASE NO. 5:25-CV-10248-NW

**PLAINTIFFS AND COUNTER-DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS MEMENTUM LAB'S COUNTERCLAIMS PURSUANT TO FRCP 12(B)(6)**

Mitchell
Silberberg &
Knupp LLP

21598820.13

# TABLE OF AUTHORITIES

**Page(s)**

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
  539 U.S. 23 (2003) ..................................................8, 9, 13, 18, 19, 20, 21, 24

*Davis v. Blige*,
  505 F.3d 90 (2d Cir. 2007) ........................................................................17

*Foremost Groups Inc. v. Ayers Bath USA Corp.*,
  No. CV 11-07473 GAF (EX), 2012 WL 13012450 (C.D. Cal. 2012) ..............16

*In re Caserta*,
  46 U.S.P.Q.2d 1088, 1998 WL 148715 (TTAB 1998) ....................................16

*In re Hechinger Inv. Co. of Delaware Inc.*,
  24 U.S.P.Q.2d 1053, 1991 WL 403182 (TTAB 1991) ....................................15

*In re McDonald's Corp.*,
  229 U.S.P.Q. 555, 1985 WL 72057 (TTAB 1985) ...........................................16

*In re Scholastic Inc.*,
  223 U.S.P.Q. 431, 1984 WL 63575 (TTAB 1984) ...........................................16

*In re Stallard*,
  No. 97115036, 2023 WL 5607600 (TTAB Aug. 28, 2023)..............................16

*Infostream Grp. Inc. v. Avid Life Media Inc.*,
  No. CV 12-09315 DDP, 2013 WL 6018030 (C.D. Cal. Nov. 12, 2013) ..........22

*Jack Daniel's Props., Inc. v. VIP Prods. LLC*,
  599 U.S. 140 (2023) ..............................................................................12, 13

*Johnson v. Meta Platforms, Inc.*,
  No. 22-CV-05691-BLF, 2023 WL 5021784 (N.D. Cal. Aug. 4, 2023).............22

*King v. Perry*,
  No. CV 24-2650 PA, 2024 WL 7009936 (C.D. Cal. June 24, 2024), *aff'd*,
  No. 24-4841, 2026 WL 734783 (9th Cir. Mar. 16, 2026).................................21

*Lions Gate Ent. Inc. v. TD Ameritrade Servs. Co.*,
  170 F. Supp. 3d 1249 (C.D. Cal. 2016)...........................................................21

Mitchell
Silberberg &
Knupp LLP

21598820.13

**PLAINTIFFS AND COUNTER-DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS MEMENTUM LAB'S COUNTERCLAIMS PURSUANT TO FRCP 12(B)(6)**

# TABLE OF AUTHORITIES

**Page(s)**

*Motul S.A. v. USA Wholesale Lubricant, Inc.*,
    686 F. Supp. 3d 900 (N.D. Cal. 2023)......................................................................22, 23

*Orgain, Inc. v. N. Innovations Holding Corp.*,
    No. 8:18-CV-01253-JLS-ADS, 2018 WL 7504409 (C.D. Cal. Dec. 6,
    2018) ........................................................................................................................ 16

*Pait Sols. LLC v. Dejant Grp.*,
    No. 2:24-CV-08666-RGK-PVC, 2025 WL 1717990 (C.D. Cal. Apr. 29,
    2025) ........................................................................................................................22

*Pellegrino v. Epic Games, Inc.*,
    451 F. Supp. 3d 373 (E.D. Pa. 2020)........................................................................20, 21

*Performance Designed Prods. LLC v. Plantronics, Inc.*,
    No. 3:19-CV-00536-GPC-LL, 2019 WL 3082160 (S.D. Cal. July 15,
    2019) ........................................................................................................................22, 23

*Person's Co. v. Christman*,
    900 F.2d 1565 (Fed. Cir. 1990) ................................................................................14

*Rearden LLC v. Rearden Com., Inc.*,
    683 F.3d 1190 (9th Cir. 2012)..............................................................................14, 22, 24

*Rogozinski v. Reddit, Inc.*,
    No. 24-735, 2025 WL 1650019 (9th Cir. June 11, 2025) (unpublished),
    *cert. denied*, 146 S. Ct. 892 (2025) ......................................................................18

*Sengoku Works Ltd. v. RMC Int'l, Ltd.*,
    96 F.3d 1217 (9th Cir.), *as modified*, 97 F.3d 1460 (9th Cir. 1996)..................17

*Slep-Tone Entertainment Corp. v. Wired for Sound Karaoke & DJ Services,
    LLC*,
    845 F.3d 1246 (9th Cir. 2017)..................................................................................19, 20

*Theta Chi Fraternity, Inc. v. Leland Stanford Junior Univ.*,
    212 F. Supp. 3d 816 (N.D. Cal. 2016)......................................................................22

*Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*,
    419 F.3d 925 (9th Cir. 2005)....................................................................................14

Mitchell
Silberberg &
Knupp LLP

21598820.13

**PLAINTIFFS AND COUNTER-DEFENDANTS' NOTICE OF MOTION AND MOTION TO
DISMISS MEMENTUM LAB'S COUNTERCLAIMS PURSUANT TO FRCP 12(B)(6)**

# TABLE OF AUTHORITIES

**Page(s)**

### STATUTES

15 U.S.C.
§ 1125(a).............................................................................................................. 12, 13, 19
§ 1126(i)) ....................................................................................................................... 12
§ 1126(h)....................................................................................................................... 12
§ 1141h(a)(1) ................................................................................................................. 14

Mitchell Silberberg & Knupp LLP

21598820.13

**PLAINTIFFS AND COUNTER-DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS MEMENTUM LAB'S COUNTERCLAIMS PURSUANT TO FRCP 12(B)(6)**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Tung Tung Sahur is a fictional "brainrot" character posted online by an Indonesian content creator known as "Noxa." Brainrots are a genre of absurd, surrealist characters that went viral in early 2025. Mementum Lab ("Mementum")—a French startup that describes itself as "a talent agency for the creators of brainrot characters"—alleges that it is Noxa's exclusive representative and licensee. It now licenses Tung Tung Sahur's name and likeness for inclusion inside third-party video games.

Mementum's Counterclaim alleges that Plaintiffs depicted Tung Tung Sahur in their Roblox video game *Steal a Brainrot* without authorization. That is a dispute over who controls the right to reproduce and distribute a piece of creative content (the character of Tung Tung Sahur) and is the province of copyright law. However, Mementum has chosen not to assert a copyright claim, likely because the character was created with AI tools without sufficient human authorship and therefore does not qualify for copyright protection. It has instead recast the same theory as trademark infringement. But trademark law serves a different purpose than copyright: it protects consumers from confusion about the source of a particular good or service. Mementum does not allege that any consumer believes *Steal a Brainrot* is produced by Mementum. Rather, Mementum alleges that consumers might be confused about who originated the character of Tung Tung Sahur depicted within the Game. That is not a trademark claim.

The Supreme Court drew this line in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), holding that trademark law protects against confusion over the producer of tangible goods, not confusion over the author of creative content embodied in those goods. The Ninth Circuit has enforced that boundary repeatedly. Mementum's counterclaims fall squarely on the wrong side of it.

Mementum's counterclaims fail for three independent reasons, each of which is sufficient to require dismissal. First, Mementum has not plausibly alleged ownership of a valid trademark. The Counterclaim does not plead facts plausibly showing that Tung Tung Sahur functions as a source identifier, and even if it did, Mementum cannot establish priority of use over Plaintiffs.

**PLAINTIFFS AND COUNTER-DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS MEMENTUM LAB'S COUNTERCLAIMS PURSUANT TO FRCP 12(B)(6)**

Mementum's earliest licensed U.S. use of Tung Tung Sahur postdates Plaintiffs' depiction of the character in *Steal a Brainrot*. Second, Mementum's claims are barred by *Dastar* because they seek to extend trademark protection to the depiction of expressive content within a creative work. Third, Mementum's allegations of consumer confusion are entirely conclusory—a single sentence asserting that confusion is "likely" because the parties "operate in the same market," with no supporting facts. These allegations fall far short of stating a trademark claim.

## II.    FACTUAL BACKGROUND

### A.    The Brainrot Genre and the Tung Tung Sahur Character

"Brainrot" characters are "a genre of absurd, surrealist characters born from content creators that became wildly popular with Gen Z starting in early 2025." Countercl. ¶ 1 (Dkt. No. 18). Individual creators "invented a universe of such characters, typically by combining objects, animals and human features." *Id.*

The character at the center of this dispute, Tung Tung Sahur, was created by an Indonesian content creator known as "Noxa." *Id.* ¶ 3. The Counterclaim describes the character's genesis in detail. Noxa "sought to create a character that captured the Indonesian tradition and collective memory of being woken up for Sahur," a pre-fast meal during Ramadan. *Id.* He chose the name "Tung Tung Sahur" to evoke the sound that kentongans (slit drums) make when struck during the nighttime call to Sahur. *Id.* He then "created the backstory for Tung Tung Sahur—a supernatural guardian resembling a kentongan who is friendly but strange, funny yet disturbing, and firm about Sahur, carrying a wooden bat to wake people for the pre-fast meal." *Id.* Noxa subsequently created the character's visual depiction—"a humanoid kentongan carrying a wooden bat"—and "used editing software to make further changes, including to carefully synchronize the character with the voiceover … and music." *Id.*

Noxa posted his video depicting Tung Tung Sahur on TikTok on February 28, 2025. *Id.* ¶ 4. The character "went viral, with the video generating hundreds of millions of views." *Id.*

Mitchell
Silberberg &
Knupp LLP

21598820.13

**PLAINTIFFS AND COUNTER-DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS MEMENTUM LAB'S COUNTERCLAIMS PURSUANT TO FRCP 12(B)(6)**

### B.    Plaintiffs Create a Video Game Depicting the Viral Brainrot Memes.

On or around May 16, 2025, Plaintiffs released *Steal a Brainrot*, a video game on the Roblox platform through which users "steal" brainrot characters as they traverse the Game. Countercl. ¶ 6. Tung Tung Sahur was one of many brainrot characters depicted in the Game. *Id.* ¶ 7. He appears in the game with the name Tung Tung Tung Sahur and is depicted as a blocky, rectangular, low-resolution figure with a generic smiling face. *Id.* The Game "quickly became one of the most popular video games in the world, surpassing 20 million peak concurrent users in late 2025, garnering over 56 billion visits by early 2026, and generating tens of millions of dollars in revenue." *Id.* ¶ 8.





Mitchell
Silberberg &
Knupp LLP

21598820.13

**PLAINTIFFS AND COUNTER-DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS MEMENTUM LAB'S COUNTERCLAIMS PURSUANT TO FRCP 12(B)(6)**

**C.    Mementum Licenses Tung Tung Sahur from Noxa, and then Licenses It to Other Third Parties.**

Mementum is a French startup that describes itself as "a talent agency for the creators of brainrot characters." Countercl. ¶ 9. Mementum did not create Tung Tung Sahur. Rather, it alleges that it holds rights to Tung Tung Sahur "by virtue of acquiring such exclusive, worldwide rights through a licensing agreement it entered into with Noxa," and that it is Noxa's "exclusive representative and licensee." *Id.* ¶ 23; Answer ¶ 31.

After licensing Tung Tung Sahur from its creator, Mementum obtained a registered trademark in France (INPI Registration No. FR5157809) and an international registration with WIPO (Registration No. 1913096) for the name and image of Tung Tung Sahur. Countercl. ¶ 9. Mementum does not allege that it holds any U.S. trademark registration. "Shortly before" filing its counterclaim in April 2026 in this action, Mementum allegedly learned that WIPO had registered its "request for an extension of its French trademark to other territories, including the United States." *Id.* ¶ 9 n.2.



Mementum alleges that it has "been commercializing its brainrot characters" by "entering into worldwide licensing deals whereby these characters are used in commerce, including in video games." Countercl. ¶ 13. The Counterclaim identifies five such licenses for Tung Tung Sahur:

- *First*, a "worldwide license *retroactive* to May 1, 2025" authorizing use of Tung Tung Sahur in the video game *Tung Tung Tung Sahur*, released on May 3, 2025. Countercl. ¶ 13(a) (emphasis added).

**PLAINTIFFS AND COUNTER-DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS MEMENTUM LAB'S COUNTERCLAIMS PURSUANT TO FRCP 12(B)(6)**

- *Second*, a worldwide license entered "[o]n or around October 11, 2025" for the Roblox game *Plants Vs Brainrots*. *Id.* ¶ 13(b).
- *Third*, a license entered "[o]n or around December 8, 2025" for the mobile game *Pudgy Party* "in the United States and other approved territories." *Id.* ¶ 13(c).
- *Fourth*, a worldwide license entered "[o]n or around January 14, 2026" with Epic Games for the use of Tung Tung Sahur in *Fortnite*, with skins launching on or around April 4, 2026. *Id.* ¶ 13(d).
- *Fifth*, a worldwide license entered "[o]n or around April 16, 2026" for the video game *Brainrot Fight*. *Id.* ¶ 13(e).

Each of these games depicts Tung Tung Sahur's "name and likeness" within the game, each in a different visual style and different appearance details. *Id.* ¶¶ 13(a)–(e).

### D. Mementum's Cease-and-Desist Letter and the Course of This Litigation.

On September 3, 2025, Mementum sent Plaintiffs a cease-and-desist letter asserting "intellectual property rights in Tung Tung Sahur." Countercl. ¶ 10. After receiving the letter, Plaintiffs initially removed Tung Tung Sahur from the Game. When the parties were unable to reach a negotiated resolution, Plaintiffs put Tung Tung Sahur back in the Game. *Id.* ¶ 11.

On November 26, 2025, Plaintiffs commenced this action, seeking a declaration that Mementum does not own any valid or enforceable copyright rights in Tung Tung Sahur or the other brainrot characters it has licensed, including because these characters were generated by artificial intelligence without sufficient human authorship. On April 24, 2026, Mementum filed its Counterclaims, declining to assert a claim for copyright infringement and instead asserting claims for trademark infringement under the Lanham Act (15 U.S.C. § 1125(a)), unfair competition under the Lanham Act (15 U.S.C. § 1126(h) and (i)), and common law unfair competition under California law.

### III. ARGUMENT

Trademark law exists to protect consumers from confusion about the source of goods and services. *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 147 (2023) ("Confusion as to source is the bête noire of trademark law."). The "primary" function of a trademark is to "tell[]"

Mitchell
Silberberg &
Knupp LLP

21598820.13

**PLAINTIFFS AND COUNTER-DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS MEMENTUM LAB'S COUNTERCLAIMS PURSUANT TO FRCP 12(B)(6)**

the public who is responsible for a product" or service. *Id.* at 146. But Mementum's counterclaims have nothing to do with consumer confusion about the source of goods or services. No party to this dispute is using Tung Tung Sahur to identify the source of goods and services to consumers. Tung Tung Sahur is a fictional character created by a content creator who licensed rights to Mementum, which has in turn licensed those rights to other companies. The character is not a brand name, a logo, or any other type of source identifier. *See Jack Daniel's*, 599 U.S. at 146 ("a trademark is not a trademark unless it identifies a *product's* source [] and distinguishes that source from others"). This is a dispute about allegedly unauthorized use of creative content—a copyright concern—repackaged in trademark language. *See Dastar*, 539 U.S. at 34 (the Lanham Act cannot be used to create "a species of mutant copyright law").

To state a trademark infringement claim—whether brought under Section 43(a) of the Lanham Act, Section 44, or California common law—Mementum must plead facts plausibly establishing (1) ownership of a valid, protectable trademark, and (2) that Plaintiffs' use of the mark is likely to cause consumer confusion. *Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007) (citing *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1053 (9th Cir. 1999)).

Mementum's three counterclaims rise or fall together. "The 'ultimate test' for unfair competition is exactly the same as for trademark infringement: 'whether the public is likely to be deceived or confused by the similarity of the marks.'" *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988) (citing *New West Corp. v. NYM Co. of California, Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1979)); *see Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994) (state common law unfair competition claims are "substantially congruent" to Lanham Act claims).

The Counterclaim fails for three independent reasons, any one of which requires dismissal. First, Mementum has not plausibly alleged that it owns a valid, protectable trademark; it does not use Tung Tung Sahur as a source identifier, and it has not pleaded priority of use over Plaintiffs. Second, the counterclaims are independently barred by *Dastar*: even assuming a valid mark, the

**PLAINTIFFS AND COUNTER-DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS MEMENTUM LAB'S COUNTERCLAIMS PURSUANT TO FRCP 12(B)(6)**

Lanham Act does not reach claims grounded in the unauthorized depiction of creative content within an expressive work. Third, Mementum has not plausibly alleged likelihood of confusion.

### A. Mementum Has Not Plausibly Alleged a Valid, Protectable Trademark.

A threshold element of any Lanham Act trademark claim is ownership of a valid, protectable mark. *Applied Info. Scis.*, 511 F.3d at 969–70. Where, as here, the claimant holds no U.S. registration, it bears the full burden of pleading and proving validity. *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 928 (9th Cir. 2005). Mementum has not done so for two independent reasons: Tung Tung Sahur does not function as a source identifier, and Mementum cannot establish priority over Plaintiffs.

### 1. Tung Tung Sahur is a Fictional Character, Not a Source Identifier.

The Lanham Act "grants trademark protection only to marks that are used to identify and to distinguish goods or services in commerce—which typically occurs when a mark is used in conjunction with the actual sale of goods or services." *Brookfield Commc'ns*, 174 F.3d at 1051. A designation that has not been used "in public in a manner that creates an association among consumers between the mark and the mark's owner" does not qualify. *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1204 (9th Cir. 2012). For an unregistered mark, the question is whether "the public recognizes [the claimant's] symbol as identifying [its] goods or services and distinguishing them from those of others."[1] *Comedy III Prods., Inc. v. New Line Cinema*, 200 F.3d 593, 594–95 (9th Cir. 2000). Mementum must therefore allege sufficient facts to state a plausible claim that Tung Tung Sahur operates as a symbol distinguishing Mementum's goods or services from those of others. *Yellow Cab*, 419 F.3d at 927.

---

[1] Mementum's foreign trademark registrations do not diminish that burden. Trademark law is territorial and "foreign use has no effect on U.S. commerce" and "trademark rights exist in each country solely according to that country's statutory scheme." *Person's Co. v. Christman*, 900 F.2d 1565, 1568–69 (Fed. Cir. 1990). Mementum's WIPO extension request is "a request for extension of protection" and is treated "as an application for registration," subject to the same procedures (including any opposition procedures) that a regular U.S. application would undergo before issuance of a registration. 15 U.S.C. § 1141h(a)(1). Unless and until the mark is registered on the Principal Register, Mementum receives no presumption of validity, no presumption of ownership, and no presumption of an exclusive right to use the mark. *Yellow Cab*, 419 F.3d at 928.

CASE NO. 5:25-CV-10248-NW

Mitchell
Silberberg &
Knupp LLP

21598820.13

**PLAINTIFFS AND COUNTER-DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS MEMENTUM LAB'S COUNTERCLAIMS PURSUANT TO FRCP 12(B)(6)**

Mementum's own allegations foreclose that theory. The Counterclaims describe Tung Tung Sahur as a fictional character—not a brand. According to Mementum, the character originated when "Noxa sought to create a character that captured the Indonesian tradition and collective memory of being woken up for Sahur." Countercl. ¶ 3. The Counterclaim describes the character's "backstory," his personality ("friendly but strange, funny yet disturbing, and firm about Sahur"), and the "involved, artistic process" through which Noxa developed his name, appearance, and voice. *Id.* ¶¶ 2–5. *Nowhere does Mementum allege that the character is associated with a particular brand or that it signifies the source of any goods or services to consumers.*

Indeed, the sole commercial use of Tung Tung Sahur that Mementum alleges is that Mementum has entered into "worldwide licensing deals whereby these characters are used in commerce, including in video games." Countercl. ¶ 13. The images depicting those uses show Tung Tung Sahur appearing *within* various video games—rendered in different visual styles by different developers—as a character that players encounter during gameplay. *Id.* ¶¶ 13(a)–(e); *see id.* ¶ 13(a) ("Play as Tung Tung Tung Sahur in an epic prison break story"); ¶ 13(c) ("Tung Tung Sahur is back in Pudgy Party as a special collection . . . Three exclusive costumes."). This is not a situation where a brand logo or mascot is *also* licensed for use in content separate and apart from its brand-identifying function. Here, there are no allegations that consumers ever encounter Tung Tung Sahur in any context other than as a fictional character.

The distinction between a character appearing within a creative work and a mark identifying the source of that work is well established. The Trademark Trial and Appeal Board has consistently held that designations identifying a character in a creative work do not function as trademarks, and its analysis is persuasive here. *See Coach, Inc. v. Citi Trends, Inc.*, No. CV 17-4775 DMG (KSX), 2019 WL 6354367, at *10 (C.D. Cal. Oct. 23, 2019) (citing "TTAB's registration analysis" as "persuasive" authority). A character's use "must be perceived by the purchasing public not just as a character but also as a mark which identifies and distinguishes the source of the goods or services." *In re Hechinger Inv. Co. of Delaware Inc.*, 24 U.S.P.Q.2d 1053, 1991 WL 403182, at *3 (TTAB 1991). "[D]esignations that merely identify a character in a

**PLAINTIFFS AND COUNTER-DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS MEMENTUM LAB'S COUNTERCLAIMS PURSUANT TO FRCP 12(B)(6)**

Mitchell
Silberberg &
Knupp LLP

21598820.13

creative work are not registrable, whether the character appears in a series or in a single work." *In re Stallard*, No. 97115036, 2023 WL 5607600, at *2 (TTAB Aug. 28, 2023). The TTAB has applied this principle to refuse registration where a character name appeared on the cover and every page of a children's book, *In re Caserta*, 46 U.S.P.Q.2d 1088, 1998 WL 148715, at *2–3 (TTAB 1998); where it identified main characters in a book series, *In re Scholastic Inc.*, 223 U.S.P.Q. 431, 1984 WL 63575, at *1–2 (TTAB 1984); and where a character name identified one character in a procession of characters, *In re McDonald's Corp.*, 229 U.S.P.Q. 555, 1985 WL 72057, at *1–2 (TTAB 1985). The principle applies with particular force in the video game context: in *Stallard*, the TTAB affirmed the refusal to register a video game character as a trademark, holding that "[v]ideo game characters are not per se registrable without a showing that they function as marks" and that the character at issue was "merely associated with one character in the game, and it is not used in a way to identify and distinguish the source of the game itself." 2023 WL 5607600, at *5–6.

Mementum's claim that the "Tung Tung Sahur marks are distinctive in the minds of ordinary consumers" (Countercl. ¶ 22) is a legal conclusion, not a factual allegation. The Counterclaim does not allege a single fact suggesting that any consumer associates Tung Tung Sahur with Mementum as a commercial source—and could not plausibly do so, given that the Counterclaim itself confirms the character is in-game content licensed across multiple unrelated developers. Tung Tung Sahur may have viral notoriety, but fame as a *character* is not the same as recognition as an identifier of the *source* of goods or services. Without factual allegations of that kind of consumer association, Mementum cannot satisfy the first element of its trademark infringement claims. *See Foremost Groups Inc. v. Ayers Bath USA Corp.*, No. CV 11-07473 GAF (EX), 2012 WL 13012450, at *9 (C.D. Cal. 2012) (granting motion to dismiss where there were "no facts alleged . . . to suggest that actual consumers associate the label . . . with [Plaintiff] or with any single source"); *Orgain, Inc. v. N. Innovations Holding Corp.*, No. 8:18-CV-01253-JLS-ADS, 2018 WL 7504409, at *4–5 (C.D. Cal. Dec. 6, 2018) (granting motion to dismiss for failure to "plausibly alleg[e] distinctiveness").

**PLAINTIFFS AND COUNTER-DEFENDANTS' NOTICE OF MOTION AND MOTION TO
DISMISS MEMENTUM LAB'S COUNTERCLAIMS PURSUANT TO FRCP 12(B)(6)**

2.    Even if Tung Tung Sahur Were a Source Identifier, Mementum Has Not Pleaded Priority over Plaintiffs.

Establishing ownership of a valid, protectable mark also requires pleading "priority of use"—i.e., that the claimant was actually using the mark in commerce prior to the allegedly infringing use. *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir.), *as modified*, 97 F.3d 1460 (9th Cir. 1996). Mementum's own chronology forecloses priority on the face of the Counterclaim.

Mementum, a French company, has not used Tung Tung Sahur for its own goods and services in the United States. Its sole theory of U.S. priority is that licensee uses inure to its benefit under the "related companies" doctrine. Countercl. ¶ 24 (citing 15 U.S.C. § 1055). To invoke that doctrine, Mementum must have exercised sufficient "quality control of the goods and services sold under the trademark by the licensee." *Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc.*, 289 F.3d 589, 595–96 (9th Cir. 2002). That is because, in order for a trademark to function as a symbol of source, customers must be able "to assume that the nature and quality of goods and services sold under the mark at all licensed outlets will be consistent and predictable." *Id.* at 598. So the operative question, then, is whether Mementum licensed Tung Tung Sahur to a U.S. licensee and exercised quality control over that licensee prior to Plaintiffs' use of Tung Tung Sahur in *Steal a Brainrot*.

Mementum alleges that Plaintiffs began depicting Tung Tung Sahur in *Steal a Brainrot* on May 16, 2025. Countercl. ¶ 6. All of Mementum's alleged licenses postdate May 16 except one: "a worldwide license *retroactive* to May 1, 2025 authorizing the use of Tung Tung Sahur in the video game *Tung Tung Tung Sahur*, which was released on May 3, 2025." *Id.* ¶ 13(a) (emphasis added). Mementum's entire claim, therefore, hinges on whether this "retroactive" license can confer priority. It cannot.

"A retroactive license or assignment purports to authorize a past use that was originally unauthorized." *Davis v. Blige*, 505 F.3d 90, 103 (2d Cir. 2007). It is impossible for Mementum to have exercised sufficient "quality control" over an *unauthorized* use of Tung Tung Sahur. While the retroactive license may have later *blessed* the earlier use of Tung Tung Sahur, that is not the

Mitchell Silberberg & Knupp LLP

21598820.13

CASE NO. 5:25-CV-10248-NW

**PLAINTIFFS AND COUNTER-DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS MEMENTUM LAB'S COUNTERCLAIMS PURSUANT TO FRCP 12(B)(6)**

same as exercising quality control over its use at the time that use occurred. Because Mementum did not exercise control over the exploitation of Tung Tung Sahur in the *Tung Tung Tung Sahur* video game in early May 2025, Mementum cannot rely on it to establish a use in commerce under the related company doctrine. And without that use, Mementum's earliest purported use of Tung Tung Sahur with a U.S. licensee was its October 11, 2025 license for the Roblox game *Plants Vs Brainrots*, five months after the Plaintiffs had already been using the Tung Tung Sahur name and character in their own Roblox game, *Steal a Brainrot*. Mementum therefore cannot establish priority vis-à-vis Plaintiffs, and its trademark infringement claims fail as a matter of law.

The Ninth Circuit's recent unpublished decision in *Rogozinski v. Reddit, Inc.* is instructive. There, the court affirmed dismissal of trademark claims over the name "WallStreetBets," holding that even a party who created and popularized a designation within someone else's product cannot claim trademark ownership when a third party is the one actually providing the goods or services. No. 24-735, 2025 WL 1650019, at *1 (9th Cir. June 11, 2025) (unpublished), *cert. denied*, 146 S. Ct. 892 (2025). The court emphasized that "[t]o acquire ownership of a trademark[,] it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Id.* (quoting *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1163 (9th Cir. 2013)). Even though Rogozinski played a "prominent role" in building the WallStreetBets community, the Ninth Circuit held he had not stated a valid ownership claim because it was Reddit—the platform provider—that "created and provided the services" to consumers. *Id.* Mementum's posture is analogous: it is a content licensor whose role is to supply a popular character for inclusion in third-party video games. That is not "use in the sale of goods or services" sufficient to establish priority trademark rights. *See id.*

**B.    The Counterclaims are Independently Barred by *Dastar*.**

Even if Mementum could allege that it has a valid trademark in Tung Tung Sahur, its trademark claims would be independently barred by *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003). *Dastar* polices the boundary between trademark and copyright law. When a claimant seeks to exercise rights in expressive content (as Mementum is doing with the

**PLAINTIFFS AND COUNTER-DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS MEMENTUM LAB'S COUNTERCLAIMS PURSUANT TO FRCP 12(B)(6)**

character of Tung Tung Sahur as depicted in a video game), those claims sound exclusively in copyright, not trademark. Mementum has made a strategic decision not to pursue copyright claims in this action. But it cannot use trademark law as an end-run around any perceived defects in those copyright claims when this dispute fundamentally involves the alleged copying of expressive content.

In *Dastar*, Twentieth Century Fox brought a Lanham Act claim alleging that Dastar copied and repackaged a television series for which Fox held distribution rights, marketing the result as Dastar's own product. 539 U.S. at 25–27, 31. Fox claimed that this was actionable infringement as a "false designation of origin" under § 43(a) of the Lanham Act. *Id.* at 31 (citing 15 U.S.C. § 1125(a)(1)(A)).

The Supreme Court rejected the theory, holding that "origin of goods" under the Lanham Act "refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Id.* at 37. The contrary reading, the Court explained, "would be akin to finding that § 43(a) created a species of perpetual patent and copyright, which Congress may not do." *Id.* (citing *Eldred v. Ashcroft*, 537 U.S. 186, 208 (2003)). *Dastar* therefore draws a bright line between trademark claims alleging confusion as to "the producer of the tangible product sold in the marketplace," and claims alleging confusion as to who "originated the ideas or communications that 'goods' embody or contain." *Id.* at 31–32.

The Ninth Circuit applied that distinction directly in *Slep-Tone Entertainment Corp. v. Wired for Sound Karaoke & DJ Services, LLC*, 845 F.3d 1246 (9th Cir. 2017). Slep-Tone, a karaoke track producer, sued a karaoke operator for trademark infringement under the Lanham Act, alleging the operator copied Slep-Tone's trademarks while displaying unauthorized copies of Slep-Tone's karaoke tracks. The Ninth Circuit affirmed dismissal, holding that the claim was really about unauthorized copying of content—the karaoke tracks—and not consumer confusion over the origin of the goods and services themselves (i.e., the Defendant's karaoke machine). The Ninth Circuit held that "the 'good' whose 'origin' is material for purposes of a trademark infringement claim is the 'tangible product sold in the marketplace' rather than the creative content of that product." *Id.* at 1250 (citation omitted). And the court foreclosed any argument that

Mitchell Silberberg & Knupp LLP

21598820.13

19    CASE NO. 5:25-CV-10248-NW

**PLAINTIFFS AND COUNTER-DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS MEMENTUM LAB'S COUNTERCLAIMS PURSUANT TO FRCP 12(B)(6)**

the doctrine depends on the label affixed to the claim: "[w]hether we call the violation infringement, unfair competition or false designation of origin, the test is identical . . . ." *Id.* at 1249.

The Ninth Circuit reached the same result in *Comedy III Productions, Inc. v. New Line Cinema*, 200 F.3d 593 (9th Cir. 2000). There, the plaintiff sued a film studio under the Lanham Act for using a clip from a public domain Three Stooges film without authorization. The plaintiff conceded it had no copyright claim but argued that the clip contained protectable trademarks—the Stooges' "name, voices, images, and act." *Id.* at 595. The Ninth Circuit affirmed dismissal, holding that "the Lanham Act cannot be used to circumvent copyright law" and refusing to "entertain this expedition of trademark protection squarely into the dominion of copyright law." *Id.* at 595–96.

The "tangible product sold in the marketplace" here is *Steal a Brainrot*—a Roblox game developed and offered by Plaintiffs. Countercl. ¶¶ 6, 8. Mementum does not allege that consumers are confused about who produces *Steal a Brainrot*.[2] Instead, Mementum explicitly alleges confusion "as to the source, sponsorship, affiliation, or approval **of the character**." Countercl. ¶ 25 (emphasis added); *see also id.* ¶ 33 (same). This is the precise theory barred by *Dastar*, *Slep*-Tone, and *Comedy III*. Mementum is alleging confusion about who originated, and who licenses, the depicted character within the Game. That is "confusion over the source of *content*" and is therefore a copyright grievance, not a trademark claim. *Slep-Tone*, 845 F.3d at 1249.

District courts apply these principles routinely, including in cases involving video games. In *Pellegrino v. Epic Games, Inc.*, 451 F. Supp. 3d 373 (E.D. Pa. 2020), a musician sued Epic for incorporating his signature dance move into the video game *Fortnite* as a purchasable "emote," alleging (among other things) false designation of origin under the Lanham Act. The court applied *Dastar* and dismissed the claim, holding that the dance move was "the creative idea underlying Epic's tangible good, the [] emote [for sale in the game]," and that any confusion concerned "who

---

[2] Indeed, Mementum notes in a footnote that there was "widespread public outcry" when Tung Tung Sahur was removed from the Game as a result of Mementum's cease-and-desist letter— underscoring the fact that the public understands that *Steal a Brainrot* is not produced by the company that claims to hold the rights to Tung Tung Sahur. *See* Countercl. ¶ 11 n.3.

Mitchell
Silberberg &
Knupp LLP

21598820.13

**PLAINTIFFS AND COUNTER-DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS MEMENTUM LAB'S COUNTERCLAIMS PURSUANT TO FRCP 12(B)(6)**

originated the Signature Move embodied in the [] emote"—precisely the type of origin-of-content claim *Dastar* forecloses. *Id.* at 385; *see also Brantley v. Epic Games, Inc.*, 463 F. Supp. 3d 616, 628–29 (D. Md. 2020) (dismissing Lanham Act claims where plaintiffs alleged Epic Games copied their dance into a Fortnite video game emote, holding that the allegations "pertain to copying ideas or concepts" governed by copyright); *Lions Gate Ent. Inc. v. TD Ameritrade Servs. Co.*, 170 F. Supp. 3d 1249, 1266–68 (C.D. Cal. 2016) (dismissing trademark claims where bank used the line "Nobody puts Baby in a corner" and other elements from *Dirty Dancing* in advertisements, holding that the allegedly appropriated content fell within the domain of copyright); *Bastiat USA, Inc. v. Shein Distrib. Corp.*, No. 2:25-CV-05701-ODW, 2026 WL 1146737, at *3–4 (C.D. Cal. Apr. 28, 2026) (dismissing trademark claims where defendant copied photographs containing the plaintiff's trademark because the gravamen of the claims was "unauthorized copying and use of creative works"); *King v. Perry*, No. CV 24-2650 PA, 2024 WL 7009936, at *6 (C.D. Cal. June 24, 2024), *aff'd*, No. 24-4841, 2026 WL 734783 (9th Cir. Mar. 16, 2026) (dismissing trademark claims where gravamen of the claims fell "within the scope of the Copyright Act").

Stripped of its trademark labels, the Counterclaim alleges that Plaintiffs placed a fictional character's "name and likeness" inside their video game without permission (Countercl. ¶ 7) and thereby "appropriate[d] Defendant's intellectual property" (*id.* ¶ 27). The Counterclaim describes, in detail, the "involved, artistic process" through which Tung Tung Sahur was created, including the creative origin of its name, backstory, voice, visual design, and accompanying music. *Id.* ¶¶ 2–5. This is the language of authorship and creative content, which is the domain of copyright, not trademark. The Lanham Act provides no remedy.

**C.    <u>Mementum Has Not Plausibly Alleged Likelihood of Confusion.</u>**

Mementum's Counterclaims fail for the independent reason that Mementum has not plausibly alleged that Plaintiffs' use of the mark is likely to cause consumer confusion—the second required element of a trademark infringement claim. *Applied Info. Scis.*, 511 F.3d at 969. The likelihood of confusion inquiry asks "whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin or source of the goods or services bearing one

Mitchell
Silberberg &
Knupp LLP

21598820.13

**PLAINTIFFS AND COUNTER-DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS MEMENTUM LAB'S COUNTERCLAIMS PURSUANT TO FRCP 12(B)(6)**

of the marks." *Rearden*, 683 F.3d at 1209. To survive a motion to dismiss, a claimant must plead factual allegations sufficient to make that confusion plausible—bare legal conclusions will not do. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Courts may determine likelihood of confusion as a matter of law on either a motion to dismiss or summary judgment." *Infostream Grp. Inc. v. Avid Life Media Inc.*, No. CV 12-09315 DDP (AJWx), 2013 WL 6018030, at *3 (C.D. Cal. Nov. 12, 2013) (citing *Murray v. Cable Nat'l Broad. Co.*, 86 F.3d 858, 860–61 (9th Cir. 1996)). Mementum has pleaded nothing more than conclusions, and its allegations independently fail because, as a matter of law, Plaintiffs' accurate depiction of a character within their Game does not give rise to actionable source confusion.

Courts in this Circuit routinely dismiss trademark claims on a motion to dismiss where the claimant's allegations of likelihood of confusion are conclusory. *See, e.g.*, *Motul S.A. v. USA Wholesale Lubricant, Inc.*, 686 F. Supp. 3d 900, 915 (N.D. Cal. 2023) (granting motion to dismiss for failure to plausibly allege likelihood of confusion even though "Motul's mark and Defendants' alleged use of the mark are identical in sight, sound, and meaning" and "it is undisputed that the parties use the 'MOTUL' mark in connection with the same services"); *Carter v. Oath Holdings Inc.*, No. 17-CV-07086-KAW, 2018 WL 5819458, at *5 (N.D. Cal. Nov. 5, 2018) (granting motion to dismiss where plaintiff offered "only conclusory statements that the counterfeit marks 'deceive and mislead consumers' and 'create likelihood of confusion among consumers'"), *aff'd*, 788 F. App'x 436 (9th Cir. 2019); *Theta Chi Fraternity, Inc. v. Leland Stanford Junior Univ.*, 212 F. Supp. 3d 816, 824–25 (N.D. Cal. 2016) (granting motion to dismiss where plaintiff failed to allege "any facts demonstrating that any member of the public" had been confused); *Johnson v. Meta Platforms, Inc.*, No. 22-CV-05691-BLF, 2023 WL 5021784, at *6 (N.D. Cal. Aug. 4, 2023) (granting motion to dismiss where plaintiff did "not allege facts supporting her conclusory allegation that Instagram users are confused by the third party marks"); *Pait Sols. LLC v. Dejant Grp.*, No. 2:24-CV-08666-RGK-PVC, 2025 WL 1717990, at *3 (C.D. Cal. Apr. 29, 2025) (granting motion to dismiss where plaintiff failed to "plead facts to plausibly demonstrate that Defendants' advertisement confused or deceived consumers about the origin or source" of the product); *Performance Designed Prods. LLC v. Plantronics, Inc.*, No. 3:19-CV-00536-GPC-LL,

Mitchell
Silberberg &
Knupp LLP

21598820.13

**PLAINTIFFS AND COUNTER-DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS MEMENTUM LAB'S COUNTERCLAIMS PURSUANT TO FRCP 12(B)(6)**

2019 WL 3082160, at *5 (S.D. Cal. July 15, 2019) (dismissing where plaintiff "provided insufficient facts to plausibly state an allegation that the public is likely to be confused").

Mementum's entire allegation of likelihood of confusion can be found in the following sentence:

> Plaintiffs have used and continue to use Tung Tung Sahur's name and image without Defendant's permission in connection with the Game in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the character, including because many of Defendant's licensees and Plaintiffs operate in the same market (i.e., the video game space).

Countercl. ¶ 25; *see also id.* ¶ 33 (repeating the same language verbatim). The Counterclaim does not identify any instances of actual confusion; it does not allege any misdirected customer inquiry, nor even any social media posts or any other factual indicator that any consumer believed *Steal a Brainrot* was produced by, affiliated with, or endorsed by Mementum or its licensees. It alleges nothing about the strength of the purported Tung Tung Sahur mark as a source identifier, the degree of care exercised by consumers of Roblox games, the marketing channels through which the parties reach consumers, or any other factual matter bearing on the *Sleekcraft* analysis. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979). The sum total of Mementum's allegations is that (1) Plaintiffs are using Tung Tung Sahur, and (2) both Plaintiffs and many of Mementum's licensees operate in the video game space.

Courts have dismissed trademark claims on allegations considerably stronger than these. In *Motul*, the court granted a motion to dismiss even though the marks were "identical in sight, sound, and meaning" and the parties sold the same product (motor oil) through the same distribution channels—because the plaintiff still failed to plead sufficient facts making confusion plausible. 686 F. Supp. 3d at 914–15. In *Performance Designed Products*, the court dismissed trademark claims where the plaintiff simply alleged that the marks were similar and operated in the same industry, holding that such assertions "amount to nothing more than legal conclusions." 2019 WL 3082160, at *5. In each of these cases, mere allegations of mark similarity and overlapping goods or services were insufficient as a matter of law to state a claim for trademark infringement.

Mitchell Silberberg & Knupp LLP

21598820.13

23    CASE NO. 5:25-CV-10248-NW
**PLAINTIFFS AND COUNTER-DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS MEMENTUM LAB'S COUNTERCLAIMS PURSUANT TO FRCP 12(B)(6)**

In fact, Mementum's allegations are *weaker* than the claims dismissed in each of those cases. Mementum does not even allege that it sells goods or services to consumers under the Tung Tung Sahur name—it licenses the character to third parties who incorporate it into their own games. The Counterclaim therefore does not allege, and cannot allege, that consumers encounter a Mementum-branded product and a Plaintiffs-branded product and are confused about the source or affiliation between them. There is no competing product, no overlapping branding, and no factual basis from which to infer that a consumer playing *Steal a Brainrot* would believe the Game is produced by, sponsored by, or affiliated with Mementum. The allegation that the parties "operate in the same market" (Countercl. ¶ 25) is a label, not an alleged fact (what market?), and is in any event contradicted by Mementum's own pleading. Mementum is a French talent agency for content creators (Countercl. ¶ 9); Plaintiffs are video game developers (Countercl. ¶ 6). The fact that Mementum licenses content for video games and that Plaintiffs develop and distribute video games does not establish that consumers are likely to confuse the source of the parties' respective goods.

Notably, the sole alleged confusion is over "the source, sponsorship, affiliation, or approval *of the character*." Countercl. ¶ 25 (emphasis added). As discussed in Section III.B, *supra*, this is confusion about the origin of *content*, not about the origin of the *goods or services* sold to consumers—a distinction that is fatal under *Dastar*. But it is independently fatal to the confusion analysis as well. The *Sleekcraft* factors assess whether consumers are confused about who produces or sponsors the *goods* at issue (i.e., the video game itself). *See Rearden*, 683 F.3d at 1209 (the inquiry concerns confusion "as to the origin or source of the goods or services"). Mementum does not allege that anyone is confused about who makes *Steal a Brainrot*. It alleges confusion about who controls the *character*. That is a content-ownership dispute, not a trademark-confusion claim.

Mementum's grievance is fundamentally an issue of copying—that Plaintiffs have taken the Tung Tung Sahur character and put him in the Game without a license. *See* Countercl. ¶ 25. But unauthorized copying in the absence of source confusion is not a trademark claim. If Mementum believes it has the legal right to prevent others from copying Tung Tung Sahur, it can

Mitchell
Silberberg &
Knupp LLP

21598820.13

24                                    CASE NO. 5:25-CV-10248-NW

attempt to bring a copyright claim. But accurately depicting the name and likeness of the viral meme character does not mislead consumers, and Mementum has alleged no facts suggesting it does.

## IV.    **CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully request that the Court dismiss Mementum's Counterclaims with prejudice.

DATED: MAY 15, 2026                    MITCHELL SILBERBERG & KNUPP LLP

By:    _____
Aaron J. Moss
Joshua M. Geller
Ariana T. Addo-Yobo
Attorneys for Plaintiffs
SPYDER GAMES LLC and
SPEEDY SIMULATOR GAMING, LLC

Mitchell
Silberberg &
Knupp LLP

21598820.13

25                    CASE NO. 5:25-CV-10248-NW

**PLAINTIFFS AND COUNTER-DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS MEMENTUM LAB'S COUNTERCLAIMS PURSUANT TO FRCP 12(B)(6)**