AARON J. MOSS (190625)
aaron.moss@msk.com
JOSHUA M. GELLER (295412)
josh.geller@msk.com
ARIANA T. ADDO-YOBO (363119)
ata@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Plaintiffs
SPYDER GAMES LLC and
SPEEDY SIMULATOR GAMING, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SPYDER GAMES LLC, a Louisiana limited liability company; and SPEEDY SIMULATOR GAMING, LLC, a Wyoming limited liability company,<br><br>     Plaintiffs and Counter-Defendants,<br><br>     v.<br><br>MEMENTUM LAB, a French company,<br><br>     Defendant and Counterclaimant. | CASE NO. 5:25-CV-10248-NW<br><br>**PLAINTIFFS AND COUNTER-DEFENDANTS' OPPOSITION TO MEMENTUM'S MOTION TO DISMISS CLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION**<br><br>Hon. Noël Wise<br><br>Date:      September 16, 2026<br>Time:      9:00 a.m.<br>Courtroom:  3 |

Mitchell
Silberberg &
Knupp LLP

CASE NO. 5:25-CV-10248-NW

**PLAINTIFFS AND COUNTER-DEFENDANTS' OPPOSITION TO MEMENTUM'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................5

II. RELEVANT FACTUAL BACKGROUND ........................................................6

  A.  Plaintiffs Release the Game Depicting Mementum's Characters. ...........6

  B.  Plaintiffs Use the Characters Beyond the Game. ....................................7

  C.  Mementum Demands that Plaintiffs Cease Their Use of the Characters. ...............7

  D.  Mementum Acknowledges Plaintiffs' Use of the Characters Beyond the Game During Negotiations. ...............................................................8

  E.  Plaintiffs Commence This Action for Broad Declaratory Relief. ...........8

  F.  Mementum Continues to Enforce Against Plaintiffs' Use of the Characters. ........9

  G.  Mementum Enters Into a Narrow Covenant Not to Sue. .......................10

III. ARGUMENT ...................................................................................................10

  A.  As the Party Seeking to Extinguish Jurisdiction Through a Covenant Not to Sue, Mementum Bears the "Formidable" Burden of Demonstrating Mootness. ...11

  B.  Mementum Has Not and Cannot Meet Its Burden to Show Mootness. ................12

  C.  None of Mementum's Remaining Arguments Undermines the Existence of an Actual Controversy. ...............................................................17

    1.  There Is an Actual Controversy Concerning the Copyrightability of Mementum's Characters. .........................................................17

    2.  The Remaining Controversy Is Not Limited to Rights Preserved Under Foreign Law. .................................................................18

    3.  Plaintiffs Seek to Resolve Adverse Legal Interests, Not Merely Economic Harm. .....................................................................18

    4.  The Court May Consider Evidence Beyond the Complaint. ......................19

IV. CONCLUSION ................................................................................................19

Mitchell
Silberberg &
Knupp LLP

21710761.1

**PLAINTIFFS AND COUNTER-DEFENDANTS' OPPOSITION TO MEMENTUM'S MOTION TO DISMISS**

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ActiveVideo Networks, Inc. v. Trans Video Elecs., Ltd.*,
975 F. Supp. 2d 1083 (N.D. Cal. 2013) ........................................................................ 11, 17

*Already, LLC v. Nike, Inc.*,
568 U.S. 85 (2013) ...........................................................................................*passim*

*ArcelorMittal v. AK Steel Corp.*,
856 F.3d 1365 (Fed. Cir. 2017)...................................................................................... 12

*Arkema Inc. v. Honeywell Int'l, Inc.*,
706 F.3d 1351 (Fed. Cir. 2013)...................................................................................... 17

*BuzzBallz, LLC v. MPL Brands NV, Inc.*,
No. 24-CV-04004-EKL, 2025 WL 2052301 (N.D. Cal. July 22, 2025)................................ 16

*ChromaDex, Inc. v. Elysium Health, Inc.*,
No. SACV1602277CJCDFMX, 2017 WL 7080237 (C.D. Cal. Nov. 28, 2017) .............. 13, 15

*Crossbow Tech., Inc. v. YH Tech.*,
531 F. Supp. 2d 1117 (N.D. Cal. 2007) .................................................................................. 13

*Diamonds.net LLC v. Idex Online, Ltd.*,
590 F. Supp. 2d 593 (S.D.N.Y. 2008) ...................................................................................... 14

*Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*,
No. 13-CV-05038 NC, 2015 WL 7874323 (N.D. Cal. Dec. 3, 2015)..................................... 13

*Expensify, Inc. v. White*,
No. 19-CV-01892-PJH, 2019 WL 5295064 (N.D. Cal. Oct. 18, 2019)................................. 16

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000) .................................................................................................................. 12

*Humu, Inc. v. Hulu, LLC*,
No. 19-CV-00327-HSG, 2019 WL 3220271 (N.D. Cal. July 17, 2019).................... 13, 15, 16

*Intellisoft, Ltd. v. Acer Am. Corp.*,
No. 17-CV-06272-PJH, 2018 WL 2412179 (N.D. Cal. May 29, 2018) .................... 13, 15, 16

*Kindred Studio Illustration & Design, LLC v. Elec. Commc'n Tech., LLC*,
No. CV 18-7661-GW(GJSx), 2018 WL 6985317 (C.D. Cal. Dec. 3, 2018) .......................... 16

*Lauren Moshi, LLC v. Fuentes*,
No. CV 18-6725-DMG, 2019 WL 8690213 (C.D. Cal. June 25, 2019) ............................... 16

Mitchell
Silberberg &
Knupp LLP

**PLAINTIFFS AND COUNTER-DEFENDANTS' OPPOSITION TO MEMENTUM'S
MOTION TO DISMISS**

# TABLE OF AUTHORITIES

**Page(s)**

*McCarthy v. U.S.*,
  850 F.2d 558 (9th Cir. 1988) ................................................................................. 19

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007) ............................................................................................. 11

*Meta Platforms, Inc. v. Bright Data Ltd.*,
  No. 23-CV-00077-EMC, 2024 WL 251406 (N.D. Cal. Jan. 23, 2024) ................................. 14

*Nike, Inc. v. Already, LLC*,
  663 F.3d 89 (2d Cir. 2011) ..................................................................................... 13

*Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*,
  556 F.3d 1294 (Fed. Cir. 2009) ......................................................................... 15, 17

*Rhoades v. Avon Prod., Inc.*,
  504 F.3d 1151 (9th Cir. 2007) ................................................................................. 11

*Spicy Beer Mix, Inc. v. New Castle Beverage*,
  No. CV 14-00720 SJO, 2014 WL 7672167 (C.D. Cal. Aug. 1, 2014) ................................. 6, 19

*Velvet Underground v. Andy Warhol Found. for the Visual Arts, Inc.*,
  890 F. Supp. 2d 398 (S.D.N.Y. 2012) ................................................................. 15, 18, 19

**RULES**

Fed. R. Civ. P. 12(b)(1) ...................................................................................... 6

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 9

Mitchell
Silberberg &
Knupp LLP

CASE NO. 5:25-CV-10248-NW

**PLAINTIFFS AND COUNTER-DEFENDANTS' OPPOSITION TO MEMENTUM'S MOTION TO DISMISS**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Plaintiffs and Counter-Defendants Spyder Games LLC and Speedy Simulator Gaming, LLC (together, "Plaintiffs") did not file this declaratory judgment action for "tactical reasons" or to obtain "leverage," as Defendant and Counterclaimant Mementum Lab SAS ("Mementum") suggests in its Motion to Dismiss (Dkt. No. 27).  Plaintiffs filed this action to resolve a substantial and ongoing dispute concerning Mementum's asserted copyright ownership of certain "brainrot" characters (the "Characters," as defined *infra*) and Plaintiffs' right to use them.  At the time the Complaint was filed, that dispute was undeniable: Mementum had asserted copyright ownership of the Characters, threatened Plaintiffs with copyright infringement claims and takedown notices, and maintained that Plaintiffs needed a license from Mementum to use the Characters.  This dispute remains live today.

Mementum's Motion rests on the premise that its recently issued Covenant Not to Sue (the "Covenant," as defined *infra*) extinguishes the controversy underlying Plaintiffs' Complaint.  It does not.  The Complaint seeks a declaration concerning Plaintiffs' "use" of the Characters in broad, unqualified terms.  Such "use" is not limited to a single game, product, or platform; it includes Plaintiffs' video game *Steal a Brainrot* (the "Game," as defined *infra*), whether on Roblox or other platforms, and also includes Plaintiffs' other current and imminently planned uses of the Characters, including in merchandise.[1]  Yet Mementum's Covenant is narrow.  It applies only to Plaintiffs' use of the Characters "***in the Game as identified in the Complaint***," and only with respect to a ***subset of the Characters*** that Mementum claim Plaintiffs have used without their permission.

The distinction is critical.  While attempting to moot Plaintiffs' declaratory judgment claim, Mementum simultaneously preserved rights to sue Plaintiffs for uses outside the Covenant's scope.  Indeed, Mementum remains free to pursue copyright claims in the United States based on Plaintiffs' use of the Characters beyond the Game.  It likewise remains free to challenge Plaintiffs' use of the twenty-two additional Characters that Mementum recently identified in its Amended Counterclaims.

---

[1] Plaintiffs maintain that scope of the "use" alleged in the Complaint is broad.  However, to resolve any potential ambiguity, Plaintiffs are concurrently seeking leave to amend their Complaint to make explicit that Plaintiffs' use of the Characters extends beyond the Game and includes the twenty-two additional Characters that Mementum recently identified in its Amended Counterclaims.

**PLAINTIFFS AND COUNTER-DEFENDANTS' OPPOSITION TO MEMENTUM'S MOTION TO DISMISS**

Mitchell
Silberberg &
Knupp LLP

Mementum has declined to broaden the Covenant. Thus, even if the Covenant eliminates some portion of the parties' dispute, it plainly does not eliminate all of it.

Because the Covenant leaves substantial aspects of the parties' dispute unresolved and preserves the possibility of future enforcement based on Plaintiffs' use of the Characters, Mementum cannot meet its "formidable burden" to establish that the Covenant moots the parties' dispute. Mementum's Motion therefore should be denied.

## II.   RELEVANT FACTUAL BACKGROUND

### A.   Plaintiffs Release the Game Depicting Mementum's Characters.

On or around May 16, 2025, Plaintiffs released a video game titled *Steal a Brainrot* (the "Game") on the Roblox platform. *See* Amend Countercl. (Dkt. No. 25) ¶ 6. The Game currently is available on other platforms, including the Epic Games platform, and Plaintiffs have entered into additional licensing agreements for releases of the Game on other platforms. *See* Declaration of Justin Peress ("Peress Decl.") ¶¶ 2.[2]

The Game depicts numerous viral "brainrot" characters, including a brainrot character known as "Tung Tung Sahur" and dozens of other brainrot characters that Mementum recognizes have "become part of the fabric of online culture" (Mot. at 7:8-9) but which it claims to own or control (collectively, the "Characters"). *See* Peress Decl. ¶ 3. As used herein, the term "Characters" refers to the seventeen brainrot characters identified in Exhibit A to the Complaint (Dkt. No. 1), together with the twenty-two additional brainrot characters identified in Mementum's Amended Counterclaims (Amend. Countercl. ¶ 5, n.1)), which Mementum claims Plaintiffs have used "in the Game without their permission" (*id.*).[3]

---

[2] As discussed *infra*, the Court's consideration of this Fed. R. Civ. P. 12(b)(1) Motion to Dismiss is "not restricted to the face of the pleadings." *Spicy Beer Mix, Inc. v. New Castle Beverage*, No. CV 14-00720 SJO (JEMx), 2014 WL 7672167, at *3 (C.D. Cal. Aug. 1, 2014). Accordingly, the facts set forth herein are not limited to the allegations in Plaintiffs' Complaint.

[3] The term "Characters" as used in in this Opposition is broader than the defined term "Characters" in Mementum's Covenant Not to Sue, which, as discussed below, encompasses **only** those brainrot characters identified in Attachment A to the Covenant, and **not** to all of the brainrot characters Mementum alleges that Plaintiffs use in the Game without permission.

Mitchell
Silberberg &
Knupp LLP

6    CASE NO. 5:25-CV-10248-NW

**PLAINTIFFS AND COUNTER-DEFENDANTS' OPPOSITION TO MEMENTUM'S MOTION TO DISMISS**

### B.    Plaintiffs Use the Characters Beyond the Game.

Plaintiffs' current use of the Characters goes beyond the Game.  *See* Peress Decl. ¶¶ 4-9. Plaintiffs operate an active licensed-merchandise program under the *Steal a Brainrot* brand, selling collectible minifigures, graphic t-shirts, and sticker sets depicting the Characters through major retailers.  *Id*. ¶¶ 4-7.  Those products depict Characters that Mementum has expressly claimed to own in this action—including, on the sticker sets, "Tung Tung Sahur," the very character Mementum's cease-and-desist demand identified.  *Id*. ¶¶ 4-7.  Plaintiffs also have taken concrete steps toward additional licensed product lines—including apparel, accessories, stationery, and trading cards—entering into binding merchandising license agreements and approving product designs, artwork, packaging, and prototypes with their licensees.  *Id.* ¶ 8.  And Plaintiffs have entered into a development arrangement for a feature film based on the Game and its characters, publicly announced in January 2026.  *Id*. ¶ 9.

### C.    Mementum Demands that Plaintiffs Cease Their Use of the Characters.

On September 3, 2025, Mementum sent Plaintiffs a cease-and-desist demand asserting "intellectual property rights" in the character Tung Tung Sahur.  *See* Peress Decl. ¶ 10; Declaration of Matthieu Quiniou (Dkt. No. 29) ("Quiniou Decl.") ¶ 6, Ex. 1 (Dkt. No. 29-1).  The letter stated that Mementum is "the exclusive rights holder … of the intellectual property associated with the character Tung Tung Sahur," including in the character's "voice" and "all associated graphic and narrative elements," and attached what is described as a "***non-exhaustive*** list of [Plaintiffs'] ***unauthorized uses***."  *Id.*, Ex. 1 at p. 2.[4]  The demand letter asserted that Tung Tung Sahur is subject to "***copyright***, trademark, and unfair competition protections," and threatened to enforce its rights against Plaintiffs' "***unauthorized exploitation***" by, among other things, pursuing "all civil and criminal remedies," initiating "judicial actions," and submitting takedown notices pursuant to the Digital Millenium Copyright Act ("DMCA").  *Id.*, Ex. 1 at pp. 2, 4.  Beyond the Game, the demand letter threatened to seize "infringing ***goods***" (*id.*, Ex. 1 at p. 2) and to continuously monitor "***e-***

---

[4] For ease of reference, citations to exhibits previously filed on the docket use page numbers assigned by the Court's CM/ECF system, rather than any page numbers appearing on the underlying documents.  In addition, all emphases in quotations throughout this brief have been added.

**PLAINTIFFS AND COUNTER-DEFENDANTS' OPPOSITION TO MEMENTUM'S MOTION TO DISMISS**

Mitchell
Silberberg &
Knupp LLP

*commerce* marketplaces and NFT platforms" for "unauthorized exploitations" such as "***toys***" (*id.*, Ex. 1 at pp. 4, 7).  The demand letter identified Mementum's "[p]riority sectors" for licensing and enforcement as "video games, ***toys/merchandising***, cultural/food collaborations, and publishing/audiovisual production."  *Id.*, Ex. 1 at p. 4.

**D.     Mementum Acknowledges Plaintiffs' Use of the Characters Beyond the Game During Negotiations.**

Between September and November 2025, the parties engaged in negotiations for a business solution that would resolve Mementum's claims and define Plaintiffs' right to use the Characters. *See* Peress Decl. ¶ 11.  Throughout those negotiations, Plaintiffs made clear that they use and intended to use the Characters Mementum claims to own outside the Game, including in derivative works, in versions of the Game on other platforms, and in merchandise and related products.  *Id.* For example, Plaintiffs' initial written proposal sent to Mementum in October 2025 sought the right to use, display, and distribute those Characters within the Game, in derivative games, and in related products.  *Id.*

Mementum's own November 2025 term sheet addressed uses extending well beyond the Game.  *Id.* ¶ 12.  It proposed terms covering not only in-Game use of Characters but also their exploitation in additional categories, including merchandise, audiovisual works (including films and animated shorts), and other products, as well as licenses to Plaintiffs' third-party partners.  *Id.* During these negotiations, Mementum also warned of potential legal action against Plaintiffs' partners who had been licensed to use the *Steal a Brainrot* property, which includes the Characters. *Id.*

**E.     Plaintiffs Commence This Action for Broad Declaratory Relief.**

On November 26, 2025, Plaintiffs commenced this action against Mementum for declaratory relief.  Specifically, in their Complaint, Plaintiffs seek a judicial declaration that: (1) "[t]he brainrots at issue are not subject to copyright protection"; (2) "[Mementum] does not own any valid or enforceable copyright rights in the brainrots"; (3) "[Plaintiffs'] use, reproduction, distribution, display, or inclusion of the brainrots does not infringe any copyright rights of [Mementum]"; and (4) "[Mementum] is not entitled to damages, injunctive relief, or any other remedy arising from

**PLAINTIFFS AND COUNTER-DEFENDANTS' OPPOSITION TO MEMENTUM'S MOTION TO DISMISS**

[Plaintiffs'] use of the brainrots." Compl. ¶ 28. The Complaint seeks a declaration as to Plaintiffs' "use" of the Characters in unqualified terms, not limited to any particular game, product, or platform. *See* Compl. ¶ 28(c) (seeking a declaration that "Plaintiffs' use, reproduction, distribution, display or inclusion of the brainrots … does not infringe any copyright rights of defendant."); *see also id.* ¶ 24.

**F.    Mementum Continues to Enforce Against Plaintiffs' Use of the Characters.**

On April 8, 2026, Mementum submitted a takedown request under the European Union's Digital Services Act ("DSA") to Roblox in Europe, asserting that Plaintiffs' Game infringed Mementum's registered trademark in the name and image of the character Tung Tung Sahur. *See* Quiniou Decl. ¶ 8, Ex. 2 (Dkt. No. 29-2). In response, Tung Tung Sahur was removed from the Roblox Game. *Id.* ¶ 9, Ex. 3 (Dkt. No. 29-3).

On April 24, 2026, Mementum filed an Answer and Counterclaims (Dkt. No. 18), which it amended on June 5, 2026 (Dkt. No. 25) in response to Plaintiffs' Motion to Dismiss (Dkt. No. 22).[5] In both iterations of its pleadings, Mementum asserted Counterclaims for trademark infringement and unfair competition, but not for copyright infringement. *See* Dkt. Nos. 18, 22. Mementum's Counterclaims arise from the same core facts as Plaintiffs' declaratory relief claim—namely, Plaintiffs' use of the Characters. *See* Amend. Countercl. ¶ 1 (alleging "Plaintiffs used the 'brainrot' characters … without [the creators' consent], violating these creators' intellectual property rights and artistic vision"); *id.*, Prayer for Relief ¶ 7 (requesting that "the Court determine that Plaintiffs were unjustly enriched at [Mementum's] expense through their unauthorized use of [Mementum's] brainrot characters"); *id.*, Prayer for Relief ¶ 8 (seeking a "disgorgement of all profits and benefits unjustly obtained by Plaintiffs through their unauthorized use of [Mementum's] brainrot characters"). In its Amended Counterclaims, Mementum identified twenty-two additional Characters, alleging that it "recently became the exclusive worldwide licensee and representative" of such Characters and that Plaintiffs "have used [them] in the Game without their permission." *Id.* ¶ 5, n.1.

---

[5] Plaintiffs have filed a Motion to Dismiss Mementum's First Amended Counterclaims pursuant to Fed. R. Civ. P. 12(b)(6). This Motion is pending. *See* Dkt. No. 32.

**PLAINTIFFS AND COUNTER-DEFENDANTS' OPPOSITION TO MEMENTUM'S MOTION TO DISMISS**

### G.    Mementum Enters Into a Narrow Covenant Not to Sue.

On May 21, 2026, Mementum delivered to Plaintiffs a "Covenant Not to Sue" (the "Covenant"). *See* Declaration of Aaron J. Moss ("Moss Decl.") ¶ 2; Declaration of Steven Stein (Dkt. No. 28) ("Stein Decl."), Ex. 1 (Dkt. No. 28-1) at pp. 18-22. By its terms, the Covenant releases only copyright claims arising from Plaintiffs' use of the *seventeen* "*brainrot characters identified in Attachment A* to [the] Covenant … *in the Game as identified in the Complaint*." *Id.*, Ex. 1 at pp. 20-21. Specifically, Mementum agreed not to sue Plaintiffs "for infringement of any statutory or common law copyright in the *[seventeen] brainrot characters identified in Attachment A* to this Covenant (the 'Characters') under the copyright law of the United States, regardless of whether said Claim for copyright infringement accrues before, on, or after the Effective Date and regardless of whether said Claim arises from the [Plaintiffs'] or any other Covered Party's past, current, or substantially similar future use of the Characters *in the Game as identified in the Complaint*." *Id.*, Ex. 1 at pp. 20-21; *id.*, Ex. 1 at p. 10 (confirming the Covenant only covers Plaintiffs' use of the Characters "in the Game"). Accordingly, by its terms, the Covenant does not release Plaintiffs' use of the Characters beyond the Game, including in Plaintiffs' merchandise, nor does it release Plaintiffs' in-Game use of the twenty-two additional Characters identified in Mementum's Amended Counterclaims.

Plaintiffs have advised Mementum that the Covenant does not cover the full scope of Plaintiffs' current and imminently planned uses of the Characters. *See* Moss Decl. ¶ 5; Stein Decl., Ex. 4 (Dkt. No. 28-4). However, Mementum has declined to broaden the Covenant. *See* Moss Decl. ¶ 6.[6]

## III.    ARGUMENT

Mementum does not seek dismissal on the ground that the Court lacked subject matter jurisdiction over the case when Plaintiffs' Complaint was filed.[7] Nor could it. Rather, Mementum argues in its Motion to Dismiss that its recently issued Covenant divested the Court of jurisdiction

---

[6] Mementum also declined Plaintiffs' request for a stipulation of Plaintiffs' Complaint clarifying the scope of Plaintiffs' use. *Id.* ¶ 6, Ex. A.

[7] Mementum states in passing that it "does not believe there ever was an actual controversy for this Court to resolve" (Mot. at 17-18), but offers no argument or explanation for its contention.

CASE NO. 5:25-CV-10248-NW

**PLAINTIFFS AND COUNTER-DEFENDANTS' OPPOSITION TO MEMENTUM'S MOTION TO DISMISS**

Mitchell Silberberg & Knupp LLP

over Plaintiffs' declaratory judgment claim. Mementum has not and cannot meet its "formidable burden" to establish that Covenant moots Plaintiffs' Complaint. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).

### A.    As the Party Seeking to Extinguish Jurisdiction Through a Covenant Not to Sue, Mementum Bears the "Formidable" Burden of Demonstrating Mootness.

"When presented with a claim for a declaratory judgment," the court must "ensure the presence of an actual case or controversy" within the meaning of Article III of the Constitution. *Rhoades v. Avon Prod., Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007) (citation omitted). An actual "case" or "controversy" exists, and the court has subject matter jurisdiction, when "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). "A case becomes moot— and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already*, 568 U.S. at 91 (citation and internal quotation marks omitted).

At the time Plaintiffs filed their Complaint, this was precisely the type of case in which subject matter jurisdiction exists because Mementum undisputedly sent Plaintiffs a cease-and-desist demand threatening to sue for infringement based on Plaintiffs' "unauthorized exploitations" of the characters Tung Tung Sahur, including in the Game, and maintained that Plaintiffs needed a license for any future exploitation. Quiniou Decl., Ex. 1; *see also* Quiniou Decl. ¶¶ 6-7; Answer ¶ 20 (admitting Mementum "sent a cease-and-desist letter to Plaintiffs" and "claimed Plaintiffs' use of Tung Tung Sahur in the Game violated its intellectual property rights"); Compl. ¶ 24 (alleging Mementum "has asserted that it owns copyrights in certain 'brainrots' appearing in the Game," "claimed that [P]laintiffs' use of those brainrots infringes its purported copyrights," and "further demanded that [P]laintiffs cease use of the brainrots and pay monetary damages"); Answer ¶ 24 (admitting the foregoing allegations). This is enough to give rise to jurisdiction. *See, e.g.*, *ActiveVideo Networks, Inc. v. Trans Video Elecs., Ltd.*, 975 F. Supp. 2d 1083, 1091 (N.D. Cal. 2013) (demand letter that "effectively charged [plaintiff] with infringement" and stated plaintiff's "products require a license" "is enough to give rise to a case or controversy, particularly where a

Mitchell
Silberberg &
Knupp LLP

11                                    CASE NO. 5:25-CV-10248-NW

**PLAINTIFFS AND COUNTER-DEFENDANTS' OPPOSITION TO MEMENTUM'S MOTION TO DISMISS**

specific infringing product is identified") (citation and emphasis omitted).  In its Motion, Mementum offers no argument that this Court lacked jurisdiction when the Complaint was filed.[8]  Instead, Mementum's argument for dismissal is based entirely on the effect of its later-granted Covenant.

Mementum argues that Plaintiffs "bear[] the burden of establishing the existence of an actual case or controversy." Mot. at 12 (citation omitted).  This is the wrong standard.  Because Mementum "invoked [a] covenant not to sue to show the case is moot, [Mementum has] the burden to establish that proposition," and that burden is "formidable."  *Already*, 568 U.S. at 102 (Kennedy, J., concurring) (citation omitted); *accord id.* at 91 ("a defendant claiming that its voluntary compliance moots a case bears the ***formidable burden*** of showing that it is ***absolutely clear*** the allegedly wrongful behavior could not reasonably be expected to recur") (internal quotation marks and citation omitted); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (the "'***heavy burden*** of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness") (citation omitted); *ArcelorMittal v. AK Steel Corp.*, 856 F.3d 1365, 1370 (Fed. Cir. 2017) (party invoking a covenant not to sue "bears the formidable burden of showing … that the covenant enforceably extinguished any real controversy between the parties related to the infringement of the [] patent [at issue]" and therefore the party "could not reasonably be expected to resume its enforcement efforts against the covenanted, accused infringer") (citations and internal quotation marks omitted).

Accordingly, to prevail on its Motion to Dismiss, Mementum bears the "formidable burden" of showing that it is "absolutely clear" that the Covenant extinguished any real controversy between the parties related to Plaintiffs' use of the Characters and therefore Mementum could not reasonably be expected to resume its enforcement efforts against Plaintiffs.

**B.      Mementum Has Not and Cannot Meet Its Burden to Show Mootness.**

Mementum has not and cannot meet its burden to show that the Covenant moots the controversy underlying Plaintiffs' Complaint.  A covenant not to sue does not automatically moot a

---

[8] Mementum mentions in a footnote that its cease-and-desist demand merely "assert[ed] rights under French and international law" (Mot. at 15, n. 5), but "international law" in this context includes the United States and the demand specifically referenced the DMCA.  *See* Quiniou Decl., Ex. 1 at p. 4.

**PLAINTIFFS AND COUNTER-DEFENDANTS' OPPOSITION TO MEMENTUM'S MOTION TO DISMISS**

Mitchell
Silberberg &
Knupp LLP

declaratory judgment claim. Instead, "[w]hether a covenant not to sue will divest the trial court of jurisdiction *depends on what is covered by the covenant*." *Intellisoft, Ltd. v. Acer Am. Corp.*, No. 17-CV-06272-PJH, 2018 WL 2412179, at *5 (N.D. Cal. May 29, 2018) (citations omitted); *see also Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*, No. 13-CV-05038 NC, 2015 WL 7874323, at *4 (N.D. Cal. Dec. 3, 2015) ("The law is not … that a covenant not to sue automatically moots a plaintiff's claims. Instead, a factual inquiry is required … in evaluating whether a controversy remains."). A covenant that "is exhaustive of all potentially infringing products that [the declaratory judgment defendant] may sue for" moots a case. *Crossbow Tech., Inc. v. YH Tech.*, 531 F. Supp. 2d 1117, 1122 (N.D. Cal. 2007). On the other hand, a covenant that carves out a portion of the parties' dispute and leaves open the possibility of future litigation is insufficient. *See, e.g., Humu, Inc. v. Hulu, LLC*, No. 19-CV-00327-HSG, 2019 WL 3220271, at *2 (N.D. Cal. July 17, 2019) (declining to dismiss declaratory judgment claim notwithstanding a covenant not to sue, where it was not "absolutely clear" that the covenant eliminated all potential infringement disputes related to the plaintiff's "actual and imminently planned uses" of the defendant's mark). In determining whether a covenant moots a case, courts consider "the totality of the circumstances," including factors such as "(1) the language of the covenant, (2) whether the covenant covers future, as well as past, activity and products, and (3) evidence of intention or lack of intention, on the part of the party asserting jurisdiction, to engage in new activity or to develop new potentially infringing products that arguably are not covered by the covenant." *ChromaDex, Inc. v. Elysium Health, Inc.*, No. SACV1602277CJCDFMX, 2017 WL 7080237, at *3 (C.D. Cal. Nov. 28, 2017) (quoting *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 96 (2d Cir. 2011), *aff'd* 568 U.S. 85 (2013)).

Here, the totality of the circumstances shows that there remains a substantial controversy for the Court to exercise jurisdiction over Plaintiffs' declaratory judgment claim. First, as discussed *supra*, the language of Mementum's Covenant is narrow. By its terms, the Covenant releases only copyright claims arising from Plaintiffs' use of the *seventeen* "*brainrot characters identified in Attachment A* to [the] Covenant … *in the Game as identified in the Complaint*." Stein Decl., Ex.

**PLAINTIFFS AND COUNTER-DEFENDANTS' OPPOSITION TO MEMENTUM'S MOTION TO DISMISS**

1 at pp. 20-21.[9] It does not foreclose Mementum from asserting copyright claims based on Plaintiffs' current use of the *additional twenty-two Characters* that Mementum recently identified. *See* Amend. Countercl. ¶ 5, n.1. Nor does it foreclose claims based on Plaintiffs' current use of the Characters *outside the Game*, including in merchandise. *See* Peress Decl. ¶¶ 4-7. Moreover, Plaintiffs have taken significant, concrete steps to expand their use of the Characters to include additional merchandise depicting the Characters, which likewise falls outside the scope of the Covenant and therefore remains in dispute. *See id.* ¶¶ 8, 11; *see, e.g., Diamonds.net LLC v. Idex Online, Ltd.*, 590 F. Supp. 2d 593, 600 (S.D.N.Y. 2008) (declining to dismiss declaratory judgment claim for lack of subject matter jurisdiction notwithstanding a covenant not to sue, where plaintiff showed that it had "already taken meaningful preparatory steps toward an infringing activity by planning to make a new product that may later be said to infringe").

The Covenant does not make anything "absolutely clear," as the voluntary-cessation standard requires. *Already*, 568 U.S. at 91. By its terms, the Covenant releases only Plaintiffs' "past, current, or substantially similar future use of the Characters in the Game as identified in the Complaint" (Stein Decl., Ex. 1 at p. 21)—language that, read naturally, reaches Plaintiffs' use within the Game and not beyond it. When Plaintiffs sought clarification, however, Mementum took the position that the release also extends to "future or modified versions of the Game," including "on other platforms." Moss Decl. ¶¶ 3-4; Stein Decl., Ex. 3 (Dkt. No. 28-3). That gap—between what the Covenant says and the broader reach Mementum now ascribes to it—is precisely the ambiguity that forecloses a finding of certainty. Mementum cannot establish that Plaintiffs' conduct cannot reasonably be expected to recur when the scope of what it has released remains contestable on its face. In all events, neither Plaintiffs' merchandise, nor their use of the additional brainrot characters Mementum first claimed in its Amended Counterclaims, falls within the Covenant under either reading, and the controversy over those uses therefore remains live.

---

[9] Any ambiguities in the Covenant must be construed against Mementum. *See Meta Platforms, Inc. v. Bright Data Ltd.*, No. 23-CV-00077-EMC, 2024 WL 251406, at *11 (N.D. Cal. Jan. 23, 2024) ("courts resolve ambiguities in contract language against the drafter") (citations omitted).

Mitchell Silberberg & Knupp LLP

14                                    CASE NO. 5:25-CV-10248-NW

**PLAINTIFFS AND COUNTER-DEFENDANTS' OPPOSITION TO MEMENTUM'S MOTION TO DISMISS**

Mementum admitted in its Motion that it "has **preserved the ability to enforce**" its "intellectual property rights in [the Characters] (including trademarks and copyrights)" "other than as prescribed in the Covenant." Mot. at 16. Because the Covenant does not make "absolutely clear" that the Covenant "eliminate[s] all potential infringement disputes related to [Plaintiffs'] actual and imminently planned uses of the [disputed material]," *Humu*, 2019 WL 3220271, at *2, Mementum cannot meet its burden to show mootness and its Motion to Dismiss should be denied. *See, e.g.*, *id.* at *2 (declining to dismiss declaratory judgment claim for lack of subject matter jurisdiction notwithstanding a covenant not to sue, where the covenant did "not encompass all of [plaintiff's] existing or imminently planned activities" and did "not cover general marketing activities, in which [plaintiff] has engaged and intends to continue to engage"); *Intellisoft*, 2018 WL 2412179, at *5 (same, where "the covenants [did] not contain any exceptions or caveats, but … [were] too narrow to extinguish any current or future case or controversy between the parties, and divest the court of subject matter jurisdiction") (cleaned up); *ChromaDex*, 2017 WL 7080237, at *3 (same, where "[t]he totality of [the] circumstances, including the narrow language of [defendant's] covenant, indicate[d] that an actual controversy between the parties remain[ed]"); *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1296 (Fed. Cir. 2009) (same, where the covenant did not "protect [plaintiff] from suit should [plaintiff] embark on future marketing of its [current] products").

Mementum argues that its Covenant is materially indistinguishable from the covenants that decidedly mooted the disputes in *Velvet Underground* and *Already*. It is not. Although Mementum's Covenant may repeat certain language in the covenants at issue in *Velvet Underground* and *Already*, the resemblance is only superficial. The covenants in *Already*, *Velvet Underground*, and the other cases cited in Mementum's Motion eliminated the parties' entire dispute and covered, at a minimum, **all of the plaintiffs' current or previous uses**. *See Velvet Underground v. Andy Warhol Found. for the Visual Arts, Inc.*, 890 F. Supp. 2d 398, 404-05 (S.D.N.Y. 2012) (covenant covered "any claim(s)" "relating to [defendant's] copyrights in the Banana Design," thereby "eliminat[ing] the prospect that the [defendant] will assert any copyright it may have against [plaintiff] or its licensees"); *Already*, 568 U.S. at 93-94 (covenant covered "any of [plaintiff's]

**PLAINTIFFS AND COUNTER-DEFENDANTS' OPPOSITION TO MEMENTUM'S MOTION TO DISMISS**

current and/or previous [ ] designs" and "any colorable imitations," such that "it [was] hard to imagine a scenario that would potentially infringe [defendant's mark] and yet not fall under the [c]ovenant"); *BuzzBallz, LLC v. MPL Brands NV, Inc.*, No. 24-CV-04004-EKL, 2025 WL 2052301, at *3 (N.D. Cal. July 22, 2025) (covenant was "remarkably broad" and covered "any" of plaintiff's "'past, present, or future products'—not just products that are similar to the ones [plaintiff] currently sells"); *Expensify, Inc. v. White*, No. 19-CV-01892-PJH, 2019 WL 5295064, at *5 (N.D. Cal. Oct. 18, 2019) (covenant covered plaintiff's "past, present, or future websites and mobile applications"); *Lauren Moshi, LLC v. Fuentes*, No. CV 18-6725-DMG (JPRx), 2019 WL 8690213, at *3 (C.D. Cal. June 25, 2019) (covenant "covered more than [plaintiff's] 'current or previous designs'"); *Kindred Studio Illustration & Design, LLC v. Elec. Commc'n Tech., LLC*, No. CV 18-7661-GW(GJSx), 2018 WL 6985317, at *5 (C.D. Cal. Dec. 3, 2018) (covenant used "broad, unequivocal, and absolutely clear language" and covered "any claims … relating in any way to any claims of patent infringement of [the identified] patents"). Mementum's Covenant, by contrast, only covers Plaintiffs' use of the **seventeen "brainrot characters identified in Attachment A to [the] Covenant … in the Game as identified in the Complaint"** and leaves the remainder of the parties' dispute intact. *See Humu*, 2019 WL 3220271, at *2 (rejecting defendant's contention that "its proffered covenant 'mirror[ed] the covenant that the Supreme Court held mooted the *Nike* case,'" because the defendant's "covenant contain[ed] a critical proviso" limiting the covenant to "Humu Services marketed directly to the Humu Customers").

Mementum cites no precedent holding that a covenant that leaves room for future litigation can moot a case. To the contrary, such a covenant fails to meet Mementum's burden of establishing that it is "absolutely clear" that Mementum's conduct giving rise to this action cannot recur. The fact that Mementum declined to broaden the Covenant to include Plaintiffs' use of the Characters beyond the Game (Moss Decl. ¶ 6), filed Counterclaims arising from Plaintiffs' use of the Characters (*see, e.g.*, Amend. Countercl. ¶ 1), and recently identified twenty-two additional Characters (*id.* ¶ 5, n.1) confirms that parties' dispute remains live and will carry into the future notwithstanding Mementum's Covenant. *See, e.g.*, *Intellisoft*, 2018 WL 2412179, at *6 (noting defendant's filing of a trade secret litigation is relevant in determining whether a justiciable controversy exists over

**PLAINTIFFS AND COUNTER-DEFENDANTS' OPPOSITION TO MEMENTUM'S MOTION TO DISMISS**

plaintiff's declaratory judgment claims concerning related patents). *Arkema Inc. v. Honeywell Int'l, Inc.*, 706 F.3d 1351, 1358 (Fed. Cir. 2013) (defendant "declined to grant [plaintiff] a covenant not to sue on the [relevant] patents, which further suggests that there is an active and substantial controversy between the parties regarding their legal rights with respect to those patents").

**C.      None of Mementum's Remaining Arguments Undermines the Existence of an Actual Controversy.**

Mementum's remaining arguments likewise fail to undermine the existence of an actual controversy. *See* Mot. at 16-17.

**1.      There Is an Actual Controversy Concerning the Copyrightability of Mementum's Characters.**

Contrary to Mementum's assertion, Plaintiffs do not contend that an actual controversy concerning the copyrightability of Mementum's Characters exists merely because Mementum claims to "hold [copyright] rights" in those Characters and "preserved [some] ability to enforce" them. *Cf.* Mot. at 16. Indeed, Mementum has done more than that. Mementum admitted in its Answer that it "has asserted" its alleged copyright rights directly against Plaintiffs (Compl. ¶ 24; Answer ¶ 24), "demanded" that Plaintiffs cease their allegedly infringing activities (*id.*), and "sent a cease-and-desist letter to Plaintiffs" threatening copyright litigation and to submit DMCA takedowns based on Plaintiffs' use of the Characters (*id.* ¶ 20), and it also filed Counterclaims against Plaintiffs that similarly arise from Plaintiffs' use of the Characters (Amend. Countercl. ¶ 1). This is sufficient to create an actual controversy concerning the copyrightability of Mementum's Characters. *See, e.g.*, *ActiveVideo*, 975 F. Supp. 2d at 1091 (N.D. Cal. 2013) (finding "actual controversy" sufficient to allow plaintiff to pursue declaratory judgment claims for non-infringement and invalidity, where defendant sent a demand letter that "effectively charged [plaintiff] with infringement" and stated plaintiff's "products require a license") (citation and emphasis omitted); *Revolution*, 556 F.3d at 1300 (same, where covenant did not "repudiate suit for future infringement").

As discussed *supra*, the Covenant does not eliminate the prospect that Mementum will continue to take action to enforce its alleged rights against Plaintiffs. Accordingly, unlike the

Mitchell Silberberg & Knupp LLP

17      CASE NO. 5:25-CV-10248-NW

**PLAINTIFFS AND COUNTER-DEFENDANTS' OPPOSITION TO MEMENTUM'S MOTION TO DISMISS**

circumstances presented in the one case cited by Mementum, there is a real and substantial prospect that Mementum's alleged copyright rights will impact Plaintiffs' legal interests. *See* Mot. at 16 (citing *Velvet Underground*, 890 F. Supp. 2d at 405-07 (finding no "real and substantial prospect that [defendant's] alleged copyright will impact [plaintiff's] legal interests," because, unlike here, defendant's covenant "vitiated any coercive force that [defendant's] alleged copyright might have had against [plaintiff]" and foreclosed defendant from taking any action that "would endanger the enjoyment of what [plaintiff] claimed to be its rights") (cleaned up and citations omitted)).

### 2. The Remaining Controversy Is Not Limited to Rights Preserved Under Foreign Law.

Mementum argues that its potential foreign infringement claims, standing alone, do not create an actual controversy. *See* Mot. at 16. Regardless of its merit (which Plaintiffs do not concede), this principle has no application here. Plaintiffs' position is not that the Covenant preserved only foreign-law claims; it is that the Covenant also leaves Mementum free to pursue claims against Plaintiffs in the United States, including under United States copyright law, concerning Plaintiffs' use of the Characters. Thus, even setting aside Mementum's foreign law claims, the Covenant fails to extinguish the parties' ongoing dispute.

### 3. Plaintiffs Seek to Resolve Adverse Legal Interests, Not Merely Economic Harm.

Plaintiffs do not claim mere "commercial" or "economic" harm. *Cf.* Mot. at 17. Rather, Plaintiffs seek a declaratory judgment to resolve the remaining substantial controversy concerning the parties' adverse legal interests—specifically, Mementum's asserted copyright ownership of the Characters and Plaintiffs' right to use them. Any economic harm is a byproduct of that legal dispute, not the basis for jurisdiction. Because the Covenant did not eliminate Mementum's potential copyright claims against Plaintiffs, there remains an actual legal dispute for the Court to decide. The cases that Mementum cites are distinguishable on this basis. *See* Mot. at 17 (citing *Velvet Underground*, 890 F. Supp. 2d at 410 (finding no "actual legal dispute," where defendant "broadly covenanted not to sue" leaving no "'underlying cause of action' sounding in copyright for [plaintiff] to 'head off'"); *Already*, 568 U.S. at 102 (affirming finding of no "adverse legal interests," where

**PLAINTIFFS AND COUNTER-DEFENDANTS' OPPOSITION TO MEMENTUM'S MOTION TO DISMISS**

"[t]he breadth of the [c]ovenant render[ed] the threat of litigation remote or nonexistent") (citation omitted)).

4. The Court May Consider Evidence Beyond the Complaint.

Mementum's final argument is that it is "improper" for Plaintiffs to "go beyond the allegations in their Complaint to claim that there is an actual controversy." Mot. at 17. As an initial matter, the existence of an actual controversy is clear on the face of the Complaint, which—unlike the Covenant—addresses Plaintiffs' "use" of the Characters in broad, unqualified terms. *See* Compl. ¶¶ 24, 28 (c). And to resolve any potential ambiguity, Plaintiffs are concurrently seeking leave to amend their Complaint to clarify the scope of Plaintiffs' use of the Characters, and make explicit that such use includes merchandise and the twenty-two additional Characters that Mementum claimed to own in its Amended Counterclaims. *See* Moss Decl. ¶¶ 5-6.

Regardless, where, as here, a defendant challenges subject matter jurisdiction based on a covenant not to sue, "the district court is ***not*** restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. U.S.*, 850 F.2d 558, 560 (9th Cir. 1988); *see also, e.g.*, *Spicy Beer Mix*, 2014 WL 7672167, at *3 ("Defendants' jurisdictional attack is factual because Defendants challenge Plaintiffs' assertion of jurisdiction by relying on a Covenant Not to Sue sent to Plaintiffs, which is not mentioned in the FAC…. Thus, for purposes of this Motion to Dismiss, the Court considers evidence beyond the FAC."). Mementum again relies on *Velvet Underground*, but that case merely observes that the existence of an actual controversy "must be evaluated on a claim-by-claim basis" (Mot. at 17 (quoting *Velvet Underground*, 890 F. Supp. 2d at 408))—a proposition that Plaintiffs do not dispute and that has no bearing on the scope of materials the Court may consider in resolving Mementum's factual jurisdictional attack to Plaintiffs' single-count Complaint.

**IV.    CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully request that the Court deny Mementum's Motion to Dismiss. Alternatively, to the extent the Court concludes that the current Complaint does not encompass the full scope of the parties' dispute, Plaintiffs respectfully request that any dismissal be without prejudice and that Plaintiffs be granted leave to amend their Complaint

to make explicit that Plaintiffs' use of the Characters extends beyond the Game and includes the twenty-two additional Characters identified in Mementum's Amended Counterclaims.

DATED: JUNE 24, 2026                MITCHELL SILBERBERG & KNUPP LLP

By: _____
    Aaron J. Moss
    Joshua M. Geller
    Ariana T. Addo-Yobo
    Attorneys for Plaintiffs
    SPYDER GAMES LLC and
    SPEEDY SIMULATOR GAMING, LLC

Mitchell
Silberberg &
Knupp LLP

**PLAINTIFFS AND COUNTER-DEFENDANTS' OPPOSITION TO MEMENTUM'S MOTION TO DISMISS**