GREGG A. MARTIN (SBN 135685)
GMartin@ggfirm.com
STEVEN A. STEIN (SBN 287401)
SStein@ggfirm.com
ANDREW P. LUX (SBN 345915)
ALux@ggfirm.com
GREENBERG GLUSKER FIELDS CLAMAN &
MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California  90067
Telephone:    310-553-3610
Facsimile:    310-553-0687

Attorneys for Defendant and Counterclaimant
MEMENTUM LAB SAS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SPYDER GAMES LLC, a Louisiana limited liability company; and SPEEDY SIMULATOR GAMING, LLC, a Wyoming limited liability company, | Case No. 5:25-cv-10248-NW |
| Plaintiffs and Counter-Defendants, | **DEFENDANT MEMENTUM LAB SAS' OPPOSITION TO PLAINTIFFS SPYDER GAMES LLC AND SPEEDY SIMULATOR GAMING LLC'S MOTION TO DISMISS DEFENDANT'S FIRST AMENDED COUNTERCLAIMS** |
| v. | |
| MEMENTUM LAB SAS, a French company, | Hon. Noël Wise |
| Defendant and Counterclaimant. | Date:        September 16, 2026 |
| | Time:        9:00 a.m. |
| | Courtroom:  3 |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California  90067

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................... 1

II.   STATEMENT OF FACTS ............................................................................. 2

    A.   Noxa Creates Tung Tung Sahur and Mementum Acquires Exclusive Rights to the Character ................................................................................. 2

    B.   Mementum Builds a Commercial Licensing Program for Tung Tung Sahur ......... 3

    C.   Plaintiffs Launch Steal a Brainrot Without Authorization .................................. 4

    D.   Mementum Asserts Rights in Tung Tung Sahur Under European Law and Plaintiffs' Conduct Reflects its Awareness of Those Rights ................................. 4

III.  LEGAL STANDARD ................................................................................... 4

IV.  ARGUMENT ................................................................................................ 5

    A.   Mementum Has Properly Alleged Trademark Infringement ................................. 5

    B.   Plaintiffs' Arguments that Mementum Has Not Properly Alleged Trademark Infringement are Without Merit ................................................. 7

        1.   Mementum Has Properly Alleged Ownership of a Valid, Protectable Trademark ........................................................................ 7

            a.   Fictional Characters Can and Do Function as Trademarks ............. 7

            b.   Mementum Has Properly Alleged that Tung Tung Sahur Functions as a Source Identifier ................................................. 11

        2.   Dastar Does Not Prohibit Mementum's Claims as to Sponsorship, Affiliation, or Approval ................................................................ 14

        3.   Mementum Has Plausibly Alleged Likelihood of Confusion ................... 18

        4.   Mementum Has Plausibly Alleged Priority of Use ................................. 22

            a.   Mementum Has Alleged Uses in U.S. Commerce Predating Plaintiffs' Launch of the Game ................................................. 22

            b.   Mementum Has Continuously Commercialized the Marks; Plaintiffs' Interrupted Use Cannot Establish Priority ................... 24

        5.   Leave to Amend Should Be Granted if Any Deficiency is Found ........... 25

V.   CONCLUSION ........................................................................................... 25

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

56669-00002/8098554.4

i

**TABLE OF AUTHORITIES**

**Page**

CASES

*Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*,
    944 F.2d 1446 (9th Cir. 1991)................................................................................. 20

*Activision Publishing, Inc. v. Warzone.com, LLC*,
    2024 WL 6467326 (C.D. Cal., Apr. 11, 2024) ....................................................... 12

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*,
    744 F.3d 595 (9th Cir. 2014)................................................................................... 24

*Applied Info. Scis. Corp. v. eBAY, Inc.*,
    511 F.3d 966 (9th Cir. 2007).................................................................................... 5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................. 5

*Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*,
    457 F.3d 1062 (9th Cir. 2006)................................................................................. 11

*Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc.*,
    289 F.3d 589 (9th Cir. 2002)................................................................................... 24

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................................. 5

*Benchmark Capital Holdings Co. v. Benchmark Co., LLC*,
    2012 WL 13041640 (N.D. Cal. Jan. 3, 2012) ................................................... 18, 19

*Bobbleheads.com, LLC v. Wright Brothers, Inc.*,
    259 F. Supp. 3d 1087 (S.D. Cal. 2017) ................................................................... 15

*Brown v. It's Ent., Inc.*,
    34 F. Supp. 2d 854 (E.D.N.Y. 1999) ........................................................................ 8

*Capcom Co. v. MKR Grp.*,
    2008 WL 4661479 (N.D. Cal. Oct. 20, 2008)......................................................... 16

*Casual Corner Assocs., Inc. v. Casual Stores of Nev., Inc.*,
    493 F.2d 709 (9th Cir. 1974).................................................................................... 24

*Celebrity Chefs Tour, LLC v. Macy's, Inc.*,
    16 F. Supp. 3d 1159 (S.D. Cal. 2014)...................................................................... 22

*Chance v. Pac–Tel Teletrac, Inc.*,
    242 F.3d 1151 (9th Cir. 2001).................................................................................. 23

*Conan Props., Inc. v. Conans Pizza, Inc.*,
    752 F.2d 145 (5th Cir. 1985)................................................................................. 9, 12

# TABLE OF AUTHORITIES
(continued)

**Page**

*Craigslist Inc. v. 3Taps Inc.*
   942 F. Supp. 2d 962 (N.D. Cal. 2013) ................................................................ 15

*DC Comics, Inc. v. Filmation Assocs.*,
   486 F. Supp. 1273 (S.D. N.Y. 1980)..................................................................... 9

*Edgar Rice Burroughs, Inc. v. Manns Theatres,*
   195 U.S.P.Q. 159, 1976 WL 20994 (C.D. Cal. Dec. 20, 1976) ............................ 8

*Eminence Capital, LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003)............................................................................ 25

*Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*,
   778 F. 3d 1059 (9th Cir. 2015)............................................................................ 21

*Gensler v. Strabala*,
   764 F.3d 735 (7th Cir. 2014)............................................................................... 15

*Good Meat Project v. GOOD Meat, Inc.*,
   716 F. Supp. 3d 783 (N.D. Cal. 2024) ................................................................ 21

*Hokto Kinoko Co. v. Concord Farms, Inc.*,
   738 F.3d 1085 (9th Cir. 2013)............................................................................. 19

*Impossible Foods Inc. v. Impossible X LLC*,
   2025 WL 3063819 (N.D. Cal., Nov. 3, 2025)...................................................... 24

*In re McDonald's Corp.,*
   229 U.S.P.Q. 555, 1985 WL 72057 (TTAB Nov. 27, 1985) ............................... 10

*In re Scholastic, Inc.,*
   223 U.S.P.Q. 431, 1984 WL 63575 (TTAB Aug. 15, 1984) ............................... 10

*In Re Stallard,*
   2023 WL 5607600 (TTAB Aug., 28 2023)................................................. 9, 10, 11

*Jack Daniel's Props., Inc. v. VIP Prod. LLC*,
   599 U.S. 140 (2023) ........................................................................................... 11

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005)......................................................................... 5, 20

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
   408 F.3d 596 (9th Cir. 2005).......................................................................... 5, 21

*Levi Strauss & Co. v. Blue Bell, Inc.*,
   778 F.2d 1352 (9th Cir. 1985)........................................................................ 5, 19

*Levitt v. Yelp! Inc.*,
   765 F.3d 1123 (9th Cir. 2014)............................................................................. 18

# TABLE OF AUTHORITIES
(continued)

**Page**

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
   519 F.3d 1025 (9th Cir. 2008) ............................................................................. 18

*Mar Vista Ent., LLC v. THQ Nordic AB*,
   2024 WL 3468933 (C.D. Cal., July 8, 2024) ...................................................... 12

*MGA Ent. Inc. v. Harris*,
   2023 WL 8896883 (C.D. Cal. Dec. 8, 2023) ...................................................... 12

*Motul S.A. v. USA Wholesale Lubricant, Inc.*,
   686 F. Supp. 3d 900 (N.D. Cal. 2023) ................................................................ 21

*Nat. Thoughts, Inc. v. Performance Touch, LLC*,
   2018 WL 3618315 (S.D. Cal. July 30, 2018) .................................................... 19

*Nintendo of Am., Inc. v. Storman*,
   2021 WL 4780329 (C.D. Cal. Aug. 5, 2021) ...................................................... 16

*Parts.com, LLC v. Yahoo! Inc.*,
   996 F. Supp. 2d 933 (S.D. Cal. 2013) ................................................................ 22

*Performance Designed Prods. LLC v. Plantronics, Inc.*,
   2019 WL 3082160 (S.D. Cal. July 15, 2019) .................................................... 21

*Punchbowl, Inc. v. AJ Press, LLC*,
   90 F.4th 1022 (9th Cir. 2024) ............................................................................... 5

*Rogozinski v. Reddit, Inc.*,
   2025 WL 1650019 (9th Cir. June 11, 2025) ...................................................... 25

*S. Cal. Darts Ass'n v. Zaffina*,
   762 F.3d 921 (9th Cir. 2014) ................................................................................. 5

*Soc. Techs. LLC v. Apple Inc.*,
   4 F.4th 811 (9th Cir. 2021) ........................................................................... 22, 23

*Soo Park v. Thompson*,
   851 F.3d 910 (9th Cir. 2017) ............................................................................... 20

*Thoip v. Walt Disney Co.*,
   736 F. Supp. 2d 689 (S.D.N.Y. 2010) .................................................................. 9

*Trans Union LLC v. Credit Rsch., Inc.*,
   142 F. Supp. 2d 1029 (N.D. Ill. 2001) ............................................................... 20

*Universal City Studios, Inc. v. J.A.R. Sales, Inc.*,
   216 U.S.P.Q. 679, 1982 WL 1279 (C.D. Cal. Oct. 20, 1982) .............................. 8

*Vericool World, LLC v. Igloo Prods. Corp.*,
   175 F.4th 1045 (9th Cir. 2026) ........................................................................... 17

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Walt Disney Co. v. Powell*,
  698 F. Supp. 10 (D.D.C. 1988) ..................................................................... 9, 12

*Warner Bros. Entm't, Inc. v. X One X Prods.*,
  840 F.3d 971 (8th Cir. 2016)...................................................................... 15, 18

**STATUTES**

15 U.S.C. § 1051 ......................................................................................... 5

15 U.S.C. § 1125 ............................................................................... 14, 15, 17

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6)................................................................................ 4, 23

Fed. R. Civ. P. 15(a)(2) ................................................................................ 25

## I.    **INTRODUCTION**

James Bond. Mickey and Minnie Mouse. E.T. Tarzan. Conan the Barbarian. Arthur the Aardvark. These are characters that courts have found are protected by trademark. These characters started as creative works—a cartoon, a film, a comic book—before becoming commercial powerhouses whose names and images each identified a single source of authorized goods and services. For Gen Z and Gen Alpha, Tung Tung Sahur is no different.

Born from Indonesian content creator Noxa's artistic vision, Tung Tung Sahur exploded into cultural ubiquity in a matter of months, achieving a level of consumer recognition that most characters never attain after years of sustained marketing. Tung Tung Sahur quickly became the subject of a thriving commercial licensing program, with sophisticated companies paying substantial fees for the right to use the character's name and image. Defendant and Counterclaimant Mementum Lab SAS ("Mementum"), a French company that holds the rights to Tung Tung Sahur, obtained registered trademarks in the character's name and image in France and with the World Intellectual Property Organization ("WIPO"), and enforced those rights, obtaining the removal of Tung Tung Sahur from Plaintiffs and Counter-Defendants Spyder Games LLC and Speedy Simulator Gaming LLC's ("Plaintiffs") video game based on its trademark in the character under Europe's equivalent of the DMCA.

Before filing this lawsuit, Plaintiffs negotiated with Mementum to license Tung Tung Sahur for use in their game. Now, Plaintiffs are asking the Court both to upend a long line of cases holding that characters can serve as valid trademarks and resolve myriad factual issues to determine on a motion to dismiss that there is no possibility that an online character iconic with Gen Alpha that Mementum has extensively commercialized could be protected by trademark.

Trademark disputes are "intensely factual," and the Ninth Circuit disfavors resolving them on summary judgment, much less on a motion to dismiss. Plaintiffs have not come close to establishing that the Court should take this leap. Longstanding case law supports that characters like Tung Tung Sahur can and do serve as trademarks. Mementum has properly alleged that Tung Tung Sahur is a source identifier and Plaintiffs' arguments to the contrary implicate issues of fact that cannot be resolved at this stage. *Dastar* does not bar Mementum's claims because

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

Mementum is not asserting rights in expressive content but instead is claiming that Plaintiffs' use of Tung Tung Sahur in the game creates a likelihood of consumer confusion as to whether Mementum and/or Noxa is affiliated with or authorized the game. Mementum has more than met the low standard for alleging likelihood of confusion. And Mementum has priority of use over Tung Tung Sahur's name and image, both because Mementum started using Tung Tung Sahur in commerce before Plaintiffs released their game and because Plaintiffs have discontinued their use of Tung Tung Sahur in their game.

For these and other reasons, the Court should deny Plaintiffs' motion.

## II. STATEMENT OF FACTS

### A. Noxa Creates Tung Tung Sahur and Mementum Acquires Exclusive Rights to the Character

"Brainrot" characters are a genre of absurd, surrealist characters born from content creators that became wildly popular with Gen Alpha starting in early 2025. ECF No. 25, ¶ 1. Drawing on inspiration from memes, politics and culture, individual content creators invented a universe of such characters, typically by combining objects, animals and human features. *Id*. Many of the characters have extensive backstories and interact with other brainrot characters. *Id*.

Tung Tung Sahur is an iconic brainrot character created by Indonesian content creator Noxa. *Id.*, ¶ 2. Noxa created the character drawing on his personal experience and culture—nightwatchmen patrolling neighborhoods and banging kentongans (slit drums) that make a "tung tung" sound during Ramadan to wake people up for the pre-fast Sahur meal. *Id*. Noxa chose the onomatopoeic name Tung Tung Sahur to evoke the "tung tung" sound and created a visual depiction of the character (a humanoid kentongan carrying a wooden bat) that evoked its backstory. *Id*. He then used editing software to change and finetune the character's image and to add a synchronized voiceover and music evoking the "tung tung tung" beat. *Id*. Noxa posted his video depicting Tung Tung Sahur on February 28, 2025. *Id.*, ¶ 4. The video went viral, generating tens of millions of views, millions of likes, and widespread media coverage within months. *Id*. By May 2025, Tung Tung Sahur had become a famous, iconic character in the United States. *Id*.

Mementum is a French startup that functions as a talent agency for the creators of brainrot

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

characters. *Id.*, ¶ 9. Mementum acquired from Noxa exclusive worldwide rights to Tung Tung Sahur, including the right to license and enforce intellectual property rights in the character. *Id*. Mementum obtained a registered trademark in France (Registration No. FR5157809) and an international registration with WIPO (Registration No. 1913096) in classifications encompassing video games for Tung Tung Sahur's name and image. *Id*.

**B.      Mementum Builds a Commercial Licensing Program for Tung Tung Sahur**

Before Plaintiffs launched their *Steal a Brainrot* video game, Noxa and Mementum initiated commercial activity involving Tung Tung Sahur. On or around April 22, 2025, Noxa and Mementum's founder launched a "hackathon" on the dev.fun platform in which developers built games centered around Tung Tung Sahur, with cash prizes awarded. *Id.*, ¶ 16(a). The winning game, *Whack-a-Tung*, was released on or around that date, and depicted the name and image of Tung Tung Sahur with Noxa's consent. *Id*. On May 5, 2025, a developer asked for and received Noxa's authorization to release the mobile game *Tung Tung Tung Sahur* depicting Tung Tung Sahur's name and likeness via the Apple App Store and Google Play Store. *Id.*, ¶ 16(b). Mementum and the developer entered a formal worldwide license retroactive May 1, 2025 memorializing that the developer could use Tung Tung Sahur's name and image in the game in exchange for royalty payments to Mementum. *Id.*, ¶ 16(b).

Over the next few months, Mementum's licensing program expanded substantially. On October 11, 2025, Mementum licensed Tung Tung Sahur for use in the Roblox game *Plants Vs Brainrots*. *Id.*, ¶ 16(c). On December 8, 2025, Mementum licensed Tung Tung Sahur for use in the mobile game *Pudgy Party*. *Id.*, ¶ 16(d). On January 14, 2026, Mementum entered a worldwide licensing agreement with Epic Games to use Tung Tung Sahur in *Fortnite*—one of the most popular video games in the world—with the character skin becoming one of the most popular in *Fortnite*, selling millions of units. *Id.*, ¶ 16(e). On April 15, 2026, Mementum entered a worldwide licensing agreement authorizing the use of Tung Tung Sahur in the video game *Brainrot Fight*. *Id.*, ¶ 16(f). Mementum exercises quality control over each licensee's use of Tung Tung Sahur's name and image, ensuring the character maintains its distinct visual identity and consistent commercial presentation. *Id.*, ¶ 28. Mementum has entered other licensing deals for

Tung Tung Sahur, including for toys, books, and consumer products. *Id.*, ¶ 17.

### C.   Plaintiffs Launch *Steal a Brainrot* Without Authorization

On or around May 16, 2025, Plaintiffs launched on the Roblox platform *Steal a Brainrot* (the "Game"), a video game in which users "steal" brainrot characters and can spend in-game currency to purchase them. *Id.*, ¶¶ 5, 7. Plaintiffs used Tung Tung Sahur's name and image without Noxa's or Mementum's permission, prominently featuring Tung Tung Sahur as a "rare" character that could be purchased for in-game currency equivalent to thousands of dollars. *Id.*, ¶ 7. Plaintiffs also used at least 16 other brainrot characters that Noxa and another Mementum brainrot creator, Breno, created without their consent. *Id. Steal a Brainrot* quickly became one of the most popular video games in the world, surpassing 20 million peak concurrent users in late 2025 and generating tens of millions of dollars in revenue. *Id.*, ¶ 8.

### D.   Mementum Asserts Rights in Tung Tung Sahur Under European Law and Plaintiffs' Conduct Reflects its Awareness of Those Rights

On September 3, 2025, Mementum sent Plaintiffs a cease-and-desist letter asserting that their use of Tung Tung Sahur in the Game violated Mementum's intellectual property rights under French and international law. *Id.*, ¶ 10. In response, Plaintiffs removed Tung Tung Sahur from the Game on or around September 13, 2025, and entered into negotiations with Mementum to license Tung Tung Sahur and other brainrot characters, exchanging deal terms. *Id.*, ¶¶ 11, 12.

When negotiations stalled, Plaintiffs filed this lawsuit and then—three days later—reintroduced a "Coffin Tung Tung Tung Sahur" character to the Game without Mementum's consent followed by the official reintroduction of Tung Tung Sahur on or around January 13, 2026. *Id.*, ¶¶ 13, 14. In April 2026, Mementum submitted a trademark takedown request under the European Union's Digital Services Act to Roblox in Europe, asserting that Plaintiffs were infringing its French trademark in the name and image of Tung Tung Sahur. *Id.*, ¶ 15. On May 1, 2026, Roblox confirmed to Mementum that the Tung Tung Sahur name and image had been removed from the Game as a result of its trademark infringement takedown request. *Id*.

## III.   LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. To

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

survive dismissal, a pleading must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

Because of the "intensely factual nature of trademark disputes," granting summary judgment on trademark validity and infringement claims—much less a motion to dismiss—is "generally disfavored in the trademark arena." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir. 2005) (quoting *Entrepreneur Media, Inc. v. Smith,* 279 F.3d 1135, 1140 (9th Cir. 2002)); *see Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1356 n.5 (9th Cir. 1985) ("trial courts disfavor deciding trademark cases in summary judgments because the ultimate issue is so inherently factual").

## IV.    ARGUMENT

The Lanham Act, 15 U.S.C. § 1051, *et seq.*, "creates a comprehensive framework for regulating the use of trademarks and protecting them against infringement, dilution, and unfair competition." *Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th 1022, 1027 (9th Cir. 2024). To state a trademark infringement claim, a party need only plead facts plausibly establishing (1) that it owns a valid, protectable trademark, and (2) that the defendant's use of the mark is likely to cause consumer confusion. *See Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007). For an action based on an unregistered mark, the plaintiff must be the first to use the mark in commerce, and such use must be lawful. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 926, 930-32 (9th Cir. 2014).

### A.    Memphis Has Properly Alleged Trademark Infringement

Mementum has properly alleged each of the elements of trademark infringement. Mementum has alleged that it: (i) owns a valid, protectable trademark in the character Tung Tung Sahur, including in the character's name and image (ECF No. 25, ¶¶ 9, 25, 27); (ii) Plaintiffs' use

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

of the character Tung Tung Sahur, including its name and image, was likely to cause consumer confusion (*id*., ¶¶ 26, 28, 29); and (iii) it has priority of use of Tung Tung Sahur's name and image, both because it used Tung Tung Sahur's name and image in commerce before Plaintiffs did, and because Plaintiffs discontinued their use of Tung Tung Sahur in the Game while Mementum continuously used Tung Tung Sahur in commerce (*id*., ¶¶ 15, 16 28).

Mementum has not just made conclusory allegations of these elements but instead has alleged specific facts supporting them. For example, Mementum has alleged:

- Tung Tung Sahur's name is a conceptually strong mark because it "did not exist until Noxa invented it" and was "inspired by the sound that a kentongan drum makes ('Tung Tung') when it wakes up people for their pre-Ramadan meal ('Sahur'),'" "evok[ing] a sound and cultural ritual that is part of the fabric of Indonesian culture." *Id*., ¶ 26(a)(i).

- Tung Tung Sahur's image is a conceptually strong mark because it "did not exist until Noxa invented it," was "inspired by the nightwatchmen who patrol the area where Noxa lives at night, the shape of a kentongan drum and a bat used to beat the drum to wake people up for Sahur," and the "design of the character—an anthropomorphic kentongan drum with wooden bat—evokes the character's meaning and inspiration." *Id*., ¶ 26(a)(ii).

- Tung Tung Sahur's name and image are commercially strong marks, including because they identify a character that is one of the most popular online, has been featured in games and videos with millions of views, has a character skin that was purchased millions of times on *Fortnite*, and has been widely covered in the media (with publications noting Tung Tung Sahur's association with Noxa and/or Mementum). *Id*., ¶ 26(b).

- Mementum has used Tung Tung Sahur's name and image in interstate commerce, including through its worldwide licensing of the character's name and image for use in many video games. *Id*., ¶ 28; *see id*., ¶¶ 15-16.

- Mementum exercises quality control over each licensee's use of the Tung Tung Sahur name and image, including to ensure that the character maintains its unique combination of distinct visual elements, creating a consistent and recognizable commercial identity that consumers associate with a single source. *Id*., ¶ 28.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

- Plaintiffs used Tung Tung Sahur's name and image in the Game in a way that was likely to cause confusion among ordinary consumers as to whether the Game itself was sponsored by, affiliated with, or approved by Noxa and/or Mementum, including because (i) Mementum and many of its licensees and Plaintiffs operate in the same market (the video game space); (ii) Plaintiffs' prominent use of the name and image of Tung Tung Sahur in the Game led consumers to believe that both the Game and Tung Tung Sahur's use in the Game was authorized or endorsed by Noxa and/or Mementum; (iii) the licensed use of the name and image of Tung Tung Sahur in many popular games that many consumers of the Game also likely play, including *Plants Vs Brainrots*, *Pudgy Party* and *Fortnite*, created confusion among those consumers as to the same; (iv) Tung Tung Sahur's well-known association with Noxa and/or Mementum created confusion as to the same; and (v) consumers did not just play the Game but had the ability to "purchase" Tung Tung Sahur, and Mementum is informed and believes that many consumers were confused about whether they were purchasing a character that Noxa and/or Mementum had authorized Plaintiffs to sell (similar to the skins in *Fortnite*). *Id.*, ¶ 29.

Mementum also asserts claims for unfair competition under the Lanham Act and common law based on this conduct. *Id.*, ¶¶ 33-44.

**B.    Plaintiffs' Arguments that Mementum Has Not Properly Alleged Trademark Infringement are Without Merit**

**1.    Mementum Has Properly Alleged Ownership of a Valid, Protectable Trademark**

Plaintiffs advance two arguments why Mementum has not properly alleged that it owns a valid, protectable mark, each of which fails.

a.    Fictional Characters Can and Do Function as Trademarks

Plaintiffs' threshold argument is that Tung Tung Sahur is a "fictional character—not a brand" because the Tung Tung Sahur marks merely identify a character in a creative work and are not a source identifier. ECF No. 32, 15:5-16:21. Plaintiffs ask this Court to ignore settled precedent holding that fictional characters can and do function as trademarks. This premise

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

underlying Plaintiffs' motion—that Tung Tung Sahur cannot function as a trademark—is wrong.

"For over a century, trademark and unfair competition law has protected the names and appearance of characters." *See* 4 McCarthy on Trademarks and Unfair Competition § 10:42 (5th ed.) ("Names and distinguishing features of characters can be protected under trademark law."). "The owner of rights in a distinctive characterization (whether delineated in words or pictures) has the right to have the character exclusively identified with the author or owner." *Id.*

Ninth Circuit courts repeatedly have recognized character-based trademarks. For example, in *DC Comics v. Towle*, the court affirmed summary judgment of both copyright and trademark infringement by a defendant who manufactured and advertised replica automobiles as "Batmobiles," recognizing the Batmobile as a protectable character under both copyright and trademark law. 802 F.3d 1012, 1019-23, 1026-27 (9th Cir. 2015). In *Danjaq LLC v. Sony Corp.*, the court found that plaintiff's James Bond service mark was "a valid, legally protectable mark" because it served to "identify a single source of origin." 1998 WL 957053, at *4 (C.D. Cal. July 29, 1998) (internal quotations marks omitted), *aff'd*, 165 F.3d 915 (9th Cir. 1998). In *Toho Co. v. William Morrow & Co.*, the court granted a preliminary injunction under both copyright and trademark law for the owner of the Godzilla character, enjoining the publication of a Godzilla compendium book and noting that the "product" was the Godzilla character. 33 F. Supp. 2d 1206, 1209, 1211, 1213-15 (C.D. Cal. 1998). In *Universal City Studios, Inc. v. J.A.R. Sales, Inc.,* the court held that a trademark consisting of the physical appearance of the movie character E.T. was "protectible subject matter" under the Lanham Act and a "strong mark" because of E.T.'s "notoriety and highly original appearance." 216 U.S.P.Q. 679, 1982 WL 1279, at *4 (C.D. Cal. Oct. 20, 1982). And in *Edgar Rice Burroughs, Inc. v. Manns Theatres*, the court recognized that the trademark in the character TARZAN "is a strong mark which is entitled to protection against the creation of a likelihood of confusion as to the source of origin of goods and/or services or dilution of its value," the use of the mark and character TARZ in an adult film infringed plaintiff's copyright and trademark in TARZAN, and granted a preliminary injunction on this basis. 195 U.S.P.Q. 159, 1976 WL 20994, at *3-4 (C.D. Cal. Dec. 20, 1976).

Courts in other jurisdictions also repeatedly have recognized character-based trademarks.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

*See, e.g., Brown v. It's Ent., Inc.*, 34 F. Supp. 2d 854, 859 (E.D.N.Y. 1999) ("Like Batman, Arthur [the Aardvark] appears to be a whimsical and arbitrary creature: a stylized aardvark dressed like a schoolboy. As such he is entitled to protection under the Lanham Act."); *Thoip v. Walt Disney Co.*, 736 F. Supp. 2d 689, 694, 707-08 (S.D.N.Y. 2010) (finding that the "Little Miss" and "Mr. Men" cartoon characters are "fanciful and, as such, are inherently distinctive and, consequently, entitled to trademark protection without a showing of 'acquired meaning'"), *subsequent decision* 788 F. Supp. 2d 168, 184 (S.D.N.Y. 2011); *DC Comics, Inc. v. Filmation Assocs.*, 486 F. Supp. 1273, 1275-77 (S.D. N.Y. 1980) (noting that "[p]rotectable 'ingredients'" for trademark "include the names and nicknames of entertainment characters, as well as their physical appearances," and rejecting argument that character Plastic Man is not entitled to such protection); *Walt Disney Co. v. Powell*, 698 F. Supp. 10, 11-13 (D.D.C. 1988) (issuing injunction stopping the sale of merchandise depicting Mickey Mouse and Minnie Mouse for trade dress violations and finding that "Mickey and Minnie have acquired not only a secondary meaning, but a meaning of great value, favorable in all respects, and well-entrenched worldwide"), *aff'd in part, vacated in part on other grounds*, 897 F.2d 565 (D.C. Cir. 1990); *Conan Props., Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 150-55 (5th Cir. 1985) (holding that plaintiff has protectable trademark rights in CONAN THE BARBARIAN name and character).

Even assuming that Plaintiffs' assertion that Tung Tung Sahur "is the product" is correct, that is not a bar to protectability. *See, e.g., Toho Co.*, 33 F. Supp. 2d at 1211 (noting that the "product" was the "Godzilla character").

Likely because there is limited support for their position that a character like Tung Tung Sahur cannot be subject to trademark protection, Plaintiffs rely on Trademark Trial and Appeal Board ("TTAB") decisions that almost no courts have cited to make this argument. If anything, these decisions support Mementum's position. For example, in *In re Stallard*, the applicant sought to register a mark "consist[ing] of a woman video game character named Maria, with a tilted head, dark messy hair, dark eyes, thin rimmed glasses and a large toothy smile, with her eyes looking to the side and strands of her hair in front of her eyes." 2023 WL 5607600, at *1 (Aug. 28, 2023) (internal quotation marks omitted). The TTAB ultimately affirmed denial of

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

registration "not because there is a strict or bright-line rule against registration of characters" but because the "proposed character mark, as used on the specimen of record, identifies only a particular character in a creative work," noting that other specimen types might be acceptable. *Id.* at *5-6 (emphasis omitted) (internal quotation marks omitted). Unlike the video game character in *In re Stallard*, who was only used in a single game, Mementum has licensed Tung Tung Sahur across many unrelated games and for other uses, underscoring that Tung Tung Sahur serves the "dual purpose" that *In re Stallard* recognized can render a character trademarkable. *Id*. at *2 ("[M]arks can serve the dual purpose of identifying source and serving as an integral and necessary component of the goods or services to which applied.") (alteration in original) (internal quotation marks omitted). In *In re Scholastic, Inc.*, the TTAB affirmed the denial of a registration for the term THE LITTLES for a series of books because the term "merely name[d]" the main characters of each book and therefore "identifie[d] in whole or in part the reading material found between the covers of the book." 223 U.S.P.Q. 431, 1984 WL 63575, at *1 (TTAB Aug. 15, 1984). *In re Scholastic* had nothing to do with whether a character is independently protectable but instead determined that "the title of a single literary work cannot be registered as a trademark" because "the title of a book is, of necessity, descriptive of the work of the author." *Id*. at *2. And in *In re McDonald's Corp.*, the TTAB affirmed a refusal for the mark APPLE PIE TREE on the grounds that the APPLE PIE TREE character "blend[ed] so well with other matter on the specimens" that it was "difficult or impossible to discern which element [was] supposed to be the service mark." 229 U.S.P.Q. 555, 1985 WL 72057, at *2 (TTAB Nov. 27, 1985).

None of those TTAB decisions purports to limit the well-established principle that a character commercialized across products and platforms can achieve trademark protection. To the contrary, as one of these decisions recognized, that the character *is* the product is not a bar to trademark protection. *See, e.g., In Re Stallard*, 2023 WL 5607600, at *2 ("there is no prohibition against registration of fictitious or fanciful 'character' marks that serve a dual purpose, i.e., serve both as a character in the goods or services and as a trademark or service mark").

These authorities support what Mementum alleges—that the Tung Tung Sahur character's name and image can be protected as trademarks.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS 5:25-CV-10248-NW

b. Memementum Has Properly Alleged that Tung Tung Sahur Functions as a Source Identifier

Plaintiffs' next argument— that the Tung Tung Sahur name and image marks are not source identifying because they do not identify "any particular company's goods or services" (ECF No. 32, 16:25-27)—also fails.

A trademark "tells the public who is responsible for a product." *Jack Daniel's Props., Inc. v. VIP Prod. LLC*, 599 U.S. 140, 146, 156-57 (2023) ("From its definition of trademark onward, the Lanham Act views marks as source identifiers—as things that function to indicate the source of goods, and so to distinguish them from ones manufactured or sold by others.") (internal quotations omitted). "Source identifier" means that the mark "assures a potential customer that *this* item . . . is made by the same producer as other similarly marked products." *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1067 (9th Cir. 2006) (emphasis in original).

To start, as noted above, character marks can be source identifiers for the character itself. *See, e.g., Toho Co.*, 33 F. Supp. 2d at 1211 (noting that the "product" was the "Godzilla character"); *In Re Stallard*, 2023 WL 5607600, at *2 ("there is no prohibition against registration of fictitious or fanciful 'character' marks that serve a dual purpose, i.e., serve both as a character in the goods or services and as a trademark or service mark"). Thus, that Tung Tung Sahur's name and image are themselves source identifiers for Tung Tung Sahur is sufficient to support Mementum's trademark infringement claim.

Even if this were not sufficient, Mementum also has alleged specific facts establishing that Tung Tung Sahur's name and image are "exclusively identified" with Noxa and/or his representative Mementum. For example, Mementum alleges that it operates an active commercial licensing program for the use of Tung Tung Sahur in video games—including *Plants Vs Brainrots*, *Pudgy Party*, *Fortnite*, and *Brainrot Fight*—with each licensee compensating Mementum for the right to use Tung Tung Sahur's name and image. ECF No. 25, ¶¶ 3, 16(c)-(f), 26(b). That sophisticated companies like Epic Games pay Mementum to use Tung Tung Sahur's name and image underscores that Tung Tung Sahur is a source identifier for Noxa and/or Mementum. Mementum also alleges that media coverage of Tung Tung Sahur notes the

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

character's association with Noxa and/or Defendant. *Id.*, ¶ 26(b). These factual allegations plausibly establish Tung Tung Sahur's name and image as source identifying. *See, e.g., Mar Vista Ent., LLC v. THQ Nordic AB*, 2024 WL 3468933, at *3 (C.D. Cal., July 8, 2024) ("the Court must take all well-pleaded allegations as true—including [defendant's] allegation that [plaintiff] is using 'Alone in the Dark' as a source identifier"); *Activision Publishing, Inc. v. Warzone.com, LLC*, 2024 WL 6467326, at *3 (C.D. Cal., Apr. 11, 2024) ("The foregoing allegations, taken as true, and the judicially noticed facts, allege plausibly that Plaintiff is using 'WARZONE' to designate itself as the source of the game 'Call of Duty: Warzone.'"). At the pleading stage, nothing more is required. *See MGA Ent. Inc. v. Harris*, 2023 WL 8896883, at *4 (C.D. Cal. Dec. 8, 2023) (explaining the "analysis of source identification" is "fact-specific").

Mementum's allegations track the same merchandising-licensor model that courts repeatedly have found sufficient to support trademark protection in a character's name and image, independent of the character's popularity as entertainment. Just as the Godzilla, Conan the Barbarian, and Mickey and Minnie Mouse marks functioned as source identifiers because a single licensor authorized and controlled their appearance across a range of otherwise unrelated third-party products (*Toho Co.*, 33 F. Supp. 2d at 1211; *Conan Props.*, 752 F.2d at 150-55; *Walt Disney Co.*, 698 F. Supp. at 11-13), Mementum alleges that it (and not any individual game developer) is the common thread connecting Tung Tung Sahur's appearances in at least four different video games and other uses, with Mementum negotiating a license, receiving compensation and exercising quality control over each use. ECF No. 25, ¶¶ 16(c)-(f), 28. A consumer encountering Tung Tung Sahur across these different uses is in the same position as a consumer who encountered Minnie Mouse or James Bond across, for example, a film franchise, a book series and merchandise. Whatever the context in which these characters appear, the relevant public associates them with a single commercial gatekeeper, as opposed to the company licensing its use. Whether this licensing pattern in fact suffices to establish Tung Tung Sahur as a source identifier in the minds of ordinary consumers is precisely the kind of fact-intensive question that Ninth Circuit law reserves for summary judgment or trial. *See, supra*, Section III.

Plaintiffs' argument that Mementum cannot hold a trademark in Tung Tung Sahur

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

because the character became "famous" before Mementum "commercially exploited" the Tung Tung Sahur marks (ECF No. 32, 16:24-18:17) is a red herring.

First, Plaintiffs incorrectly claim that Mementum did not allege that "consumers actually associate Tung Tung Sahur with a single source of goods and services." ECF No. 32, 18:9-11. Mementum has alleged that consumers associate Tung Tung Sahur with Noxa and/or his representative Mementum. Mementum alleges, for example, that (1) Tung Tung Sahur "achieved a level of consumer recognition that most characters do not achieve with years of sustained marketing," (2) media coverage widely detailed Noxa's creation of the character and its association with him, (3) Noxa and Mementum's founder launched the April 2025 hackathon at which developers built games using the Tung Tung Sahur name and image, publicly cementing Noxa's role as the character's commercial sponsor, and (4) sophisticated licensees, including Epic Games, paid substantial fees understanding that the character's commercial use requires Noxa's and Mementum's authorization. ECF No. 25, ¶¶ 3, 16(a), 26(b).

Second, Plaintiffs' argument that Tung Tung Sahur cannot be a source identifier because he became famous before being used commercially misconstrues Mementum's allegations, the applicable case law and, at best, implicates factual issues that cannot be resolved at this stage.

Mementum does not allege that Tung Tung Sahur became famous before it started to use the character in commerce. Rather, Mementum alleges that it started using Tung Tung Sahur in commerce through the April 22, 2025 hackathon and the May 5, 2025 authorization of the character's name and image for use in the *Tung Tung Tung Sahur* video game (ECF No. 25, ¶¶ 16(a), (b)), and alleges that "[b]y May 2025"—that is, by the *end* of May 2025—"Tung Tung Sahur had become a famous, iconic character, including in the United States." *Id.*, ¶ 4. In other words, Mementum alleges that Tung Tung Sahur became famous contemporaneous with Mementum using the character in commerce.

Even if Tung Tung Sahur had become famous before Mementum started using the character in commerce, Plaintiffs do not identify any case law supporting that this precludes Tung Tung Sahur from being a source identifier, and the cases on which they rely (ECF No. 32, 17:12-24) are inapposite. In *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*,

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

the court determined based on evidence defendant had submitted, including expert testimony that plaintiff had not used the term at issue with any of the traditional trademark indicia, to find that plaintiff did not use the term in a service mark manner. 59 F.3d 902, 907 (9th Cir. 1995). In *United States v. Able Time, Inc.*, in a government initiated proceeding under the Tariff Act, the court rejected defendant's argument that it should interpret the Tariff Act to include an identity of goods or services requirement from the Lanham Act, and otherwise made comments about rights in gross inapplicable here. 545 F.3d 824, 831, 835 (9th Cir. 2008). And in *Electro Source, LLC v. Brandess-Kalt-Aetna Grp.*, the court determined that a failing but ongoing business does not necessarily abandon its mark, which is not at issue here. 458 F.3d 931, 939 (9th Cir. 2006).

Even if Plaintiffs had identified supporting case law, Plaintiffs' argument implicates factual issues, such as when Tung Tung Sahur became famous in relation to Mementum using the marks in commerce, that cannot be resolved at this stage.

### 2. *Dastar* Does Not Prohibit Mementum's Claims as to Sponsorship, Affiliation, or Approval

Plaintiffs' argument that Mementum's claims are "independently barred by *Dastar*" (ECF No. 32, 18:19-21) misconstrues and misapplies this decision. In *Dastar Corp. v. Twentieth Century Fox Film Corp.*, the Supreme Court held that "origin of goods" under Lanham Act Section 43(a)(1)(A) "refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." 539 U.S. 23, 37 (2003). Plaintiffs contend that *Dastar* bars Mementum's claims because, according to Plaintiffs, Mementum is improperly "seek[ing] to exercise rights in expressive content." ECF No. 32, 18:21-24. But *Dastar* was a misattribution-of-authorship case "concerned with a claim that defendant edited and modified plaintiff's TV series and then falsely claimed to be the producer of the content," depriving the plaintiff of attribution as the creator of the work. 4 McCarthy on Trademarks and Unfair Competition § 27:78 (disagreeing that *Dastar* creates a "sweeping and far-reaching rule" that "no trademark infringement claim can be based on confusion of source or sponsorship caused by defendant's use in an expressive medium of elements that imitate creative features of plaintiff's work"). *Dastar*'s core holding is that Lanham Act § 43(a)(1)(A)'s

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

prohibition on false claims of origin cannot be extended to allegedly false claims of authorship or invention. 539 U.S. at 34. That holding is inapplicable here.

Mementum does not claim that Plaintiffs are falsely asserting themselves to be the creators of Tung Tung Sahur. Rather, Mementum claims that Plaintiffs' use of Tung Tung Sahur in their Game creates a likelihood of consumer confusion as to sponsorship, affiliation, or approval—whether the Game is authorized or endorsed by Noxa and/or Mementum. ECF No. 25, ¶ 29. This is a traditional trademark infringement claim. Plaintiffs used marks that were so similar to Mementum's that they were likely to confuse consumers into wrongly believing that the Game is sponsored by, affiliated with or approved by Mementum and/or Noxa. Plaintiffs' reliance on *Dastar* to try to squash such a claim is misplaced. *See, e.g., Bobbleheads.com, LLC v. Wright Brothers, Inc.*, 259 F. Supp. 3d 1087, 1098 (S.D. Cal. 2017) (finding defendants' reliance on *Dastar* misplaced where plaintiff alleged that the defendants "misrepresented that their goods were somehow endorsed by the Trump organization as an 'official' product of the campaign"); *Warner Bros. Entm't, Inc. v. X One X Prods.*, 840 F.3d 971, 975, 979 (8th Cir. 2016) (holding that plaintiff's "asserted trademarks in the characters from the films and cartoons do not run afoul of *Dastar*" because "[p]roducts marketed under [defendant's] licenses employ iconic film characters' pictures to associate the products with [plaintiff's] films, not to copy the film itself"); *Gensler v. Strabala*, 764 F.3d 735, 737 (7th Cir. 2014) (holding that *Dastar* does not preclude a claim concerning a "false or misleading representation of fact" as to plaintiff's role in designing several buildings that is "likely to deceive as to the connection or association" of the defendant with the plaintiff) (cleaned up); *Craigslist Inc. v. 3Taps Inc.* 942 F. Supp. 2d 962, 978 (N.D. Cal. 2013) (holding that defendants' use of a mark to falsely pass off their product as being provided or endorsed by the plaintiff did not "raise the 'perpetual patent and copyright' concerns that the Supreme Court identified in *Dastar*").

Post-*Dastar* decisions confirm that sponsorship confusion claims remain actionable. *See, e.g., Craigslist Inc.*, 942 F. Supp. 2d at 980 (rejecting defendant's argument that *Dastar* barred plaintiff's claim for "use of the 'craigslist' *mark*" because defendant's use "confused customers about Craigslist's relationship to Defendants and their products") (emphasis in original); *Capcom*

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

*Co. v. MKR Grp.,* 2008 WL 4661479, at \*12 (N.D. Cal. Oct. 20, 2008) (holding that defendant's Lanham Act counterclaim was "explicitly grounded in [plaintiff's] exploitation of those components of the film which are source identifying"); *Nintendo of Am., Inc. v. Storman*, 2021 WL 4780329, at \*6 (C.D. Cal. Aug. 5, 2021) (finding a "cognizable trademark claim based on Defendant's use of Nintendo's trademarks on Defendant's website to promote the sale of the pirated games and to encourage visitors to download or play unauthorized copies of [Nintendo's] copyrighted works") (internal quotation marks omitted). Even in *Pellegrino v. Epic Games, Inc.*, a case on which Plaintiffs rely (ECF No. 32, 20:7-10), the district court denied dismissal of a false endorsement claim against Epic Games, holding that allegations relating to "Epic's use of [plaintiff's] likeness and trademark to create the impression that [plaintiff] endorses Fortnite" did "not relate to the alleged confusion over the origin of the" creative content at issue, and that these "allegations do not depend on the authorship or origin of the [creative content] and instead, assert a distinct claim for false endorsement." 451 F. Supp. 3d 373, 386 n.5 (E.D. Pa. 2020).

None of the cases on which Plaintiffs rely to argue that *Dastar* bars Mementum's claim (ECF No. 32, 19:13-20:6, 21:11-22:5) supports dismissal.

In *Comedy III Prods., Inc. v. New Line Cinema*, a 30-second clip from a public-domain Three Stooges film appeared on a television set in the background of a feature movie. 200 F.3d 593, 594 (9th Cir. 2000). The court held that the use of the "Three Stooges' name, voices, images, and act" did not satisfy the "threshold assertion" that plaintiff possessed a valid trademark, noting that the plaintiff improperly conflated "the clip … itself [as] a collection of trademarks." *Id*. at 595-96. Mementum's claim is fundamentally different—it alleges that Plaintiffs misappropriated Mementum's valid character and name marks.

*Slep-Tone Ent. Corp. v. Wired for Sound Karaoke & DJ Services* involved an operator who played allegedly pirated karaoke tracks bearing the plaintiff's trademark. 845 F.3d 1246, 1250 (9th Cir. 2017). The court held that because "[c]onsumers never see the digital files and Defendants neither sell them nor make representations about their source," there was no confusion about the source of any tangible goods. *Id*. By contrast, Plaintiffs were prominently featuring Tung Tung Sahur's name and image in their Game and selling the character to

consumers, creating the kind of sponsorship confusion that the Lanham Act is meant to prevent.

*Sybersound Records, Inc. v. UAV Corp.* is another karaoke case in which the parties were competitors that produced and sold karaoke records that were then resold. 517 F.3d 1137 (9th Cir. 2008). In *Sybersound*, plaintiff, a non-exclusive licensee of several karaoke songs that defendants also used on their records, alleged defendants misrepresented their copyright licensing status to purchasers, and asserted claims for copyright and trademark infringement on this basis. 517 F.3d at 1140-41. The court determined that plaintiff lacked statutory standing to sue for copyright infringement as a nonexclusive copyright licensee but was using Section 43(a) as a vehicle to litigate whether its competitors had obtained the same copyright licenses that it had, and that "to prevail on either the infringement claim or the claim based on misrepresentations of whether infringement occurred, [the plaintiff] would have to prove that copyright infringement occurred." *Id.* at 1144, 1151. By contrast, Mementum does not have to establish that copyright infringement occurred to show that Plaintiffs' unauthorized use of Tung Tung Sahur's name and image was likely to cause consumers to believe that the Game was authorized, affiliated with or sponsored by Mementum and/or Noxa.

In *Vericool World, LLC v. Igloo Prods. Corp.*, 175 F.4th 1045, 1050 (9th Cir. 2026), the court determined on summary judgment that defendant's claim that it was first to market with a biodegradable cooler was not actionable under the Lanham Act because plaintiff's claims concerned the origin of an idea embodied in its coolers rather than the characteristics of the product itself. This claim is very different than Mementum's claim that consumers believed through Plaintiffs' use of Tung Tung Sahur in their Game that Noxa and/or Mementum were affiliated with or authorized the Game (ECF No. 25, ¶ 29)—the sponsorship and affiliation confusion that trademark law exists to prevent.[1]

Plaintiffs also fault Mementum for making "a strategic decision not to pursue copyright

---

[1] Plaintiffs argue that Mementum's allegation that there was a public outcry when Tung Tung Sahur was removed from the Game reflects that consumers were not confused about who produced the Game. ECF No. 32, p. 21 n.3. But the more natural inference, which the Court must draw in Mementum's favor, is that there was an outcry because the public believed Noxa or Mementum was affiliated with or authorized the Game, and that a license was required because consumers associate Tung Tung Sahur with a single gatekeeper that authorizes the character's use in commerce. This allegation supports that Tung Tung Sahur serves a source-identifying function.

OPPOSITION TO MOTION TO DISMISS
FIRST AMENDED COUNTERCLAIMS
5:25-CV-10248-NW

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

claims in this action," claiming Mementum did so to make "an end-run around any perceived defects in" those claims. ECF No. 32, 18:24-27. Plaintiffs' speculation about Mementum's litigation strategy is irrelevant. There are many reasons why a party—particularly a French startup that has focused on enforcing its rights under European law (ECF No. 25, ¶ 31) and is facing a much deeper-pocketed adversary—might not pursue such claims. Mementum's reasons for doing so have no bearing on the Court's *Dastar* analysis. What does is the above-referenced case law supporting that a character can be protected from infringement under both copyright and trademark law. *See, e.g., Warner Bros. Ent.*, 840 F.3d at 982 ("Copyright law and trademark law are distinct from each other, as [defendant] admits in its *Dastar* argument. As a result, an action that does not infringe a copyright may still infringe a trademark.").

### 3.    Mementum Has Plausibly Alleged Likelihood of Confusion

Plaintiffs next argue that "Mementum has not plausibly alleged that Plaintiffs' use of the mark is likely to cause consumer confusion" because "Mementum has pleaded nothing more than conclusions" and "Plaintiffs' accurate depiction of a character … does not give rise to actionable source confusion." ECF No. 32, 22:16-23:2. Mementum's allegations more than satisfy the pleading standard for likelihood of confusion.

The standard to properly allege likelihood of confusion is low—Mementum need only allege facts that "suggest that the claim has at least a plausible chance of success." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014); *see Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party"). Given the "intensely factual nature of trademark disputes," the "[a]nalysis of the *Sleekcraft* factors most typically occurs in the context of a summary judgment motion, or at trial." *Benchmark Capital Holdings Co. v. Benchmark Co., LLC*, 2012 WL 13041640, at *4 (N.D. Cal. Jan. 3, 2012) (internal quotation marks omitted) (defendant "faces a significant challenge to show that the non-existence of such a likelihood [of confusion] can be determined as a matter of law at the pleading stage"). "[T]he question of likelihood of confusion is routinely submitted for jury determination as a question of fact." *Levi Strauss & Co.*, 778 F.2d at 1356 n.5; *see Nat. Thoughts, Inc. v.*

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

*Performance Touch, LLC*, 2018 WL 3618315, at *4 (S.D. Cal. July 30, 2018) ("The likelihood of confusion element is generally a question of fact that is not appropriate for determination on a motion to dismiss.").

Plaintiffs seek to turn this pleading standard on its head by asking the Court to weigh the *Sleekcraft* factors at the pleading stage—to resolve fact-intensive trademark questions without a developed evidentiary record. Courts have consistently rejected such requests. *See, e.g.,* *Benchmark Cap. Holdings Co.*, 2012 WL 13041640, at *4 (recognizing that even after *Twombly* and *Iqbal*, defendant "faces a significant challenge to show that the non-existence of such a likelihood [of confusion] can be determined as a matter of law at the pleading stage," and even though it "very well may be that the facts alleged do not strongly show that *all* of the *Sleekcraft* factors weigh in favor" of plaintiff, plaintiff's mark is "undoubtedly weak" and a trier of fact "may ultimately conclude there is no likelihood of confusion, the complaint "pleads facts sufficient to make out a plausible claim of a likelihood of confusion") (emphasis in original); *Nat. Thoughts, Inc.*, 2018 WL 3618315, at *4 ("On a complete factual record a trier of fact may ultimately conclude there is no likelihood of confusion, or perhaps such a determination could be made based on undisputed facts at the summary judgment stage. But at present, the Complaint pleads facts sufficient to make out a plausible claim of a likelihood of confusion.").

Mementum alleges facts bearing on many *Sleekcraft* factors that support a plausible inference of confusion:

**Strength of the Mark**. Mementum has alleged facts supporting that its marks in the name and image of Tung Tung Sahur are strong. Mementum has alleged that Tung Tung Sahur is "one of the most popular" characters online, has been featured in games and videos with hundreds of millions of views, was purchased millions of times as a skin on *Fortnite*, and has been widely covered in major media publications. ECF No. 25, ¶ 26(b). Mementum also has alleged that the name and image of "Tung Tung Sahur" did not exist in any form until Noxa created each of them (*id.*, ¶ 26(a)), which supports that they are inherently distinctive, fanciful and entitled to the strongest possible protection. *See, e.g., Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1096 (9th Cir. 2013) ("The marks here, which consist of a stylized depiction of a fictitious word

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

and cartoon-character mushrooms, are unique, fanciful, and likely to be associated with [plaintiff] by U.S. consumers.").[2] This factor strongly favors Mementum.

**Relatedness of the Goods**. Mementum licenses Tung Tung Sahur for use in video games, including Roblox games (*Plants Vs Brainrots*); Plaintiffs operate a Roblox game. ECF No. 25, ¶¶ 16(c), 29. The parties compete in the identical market. This factor strongly favors Mementum.

**Similarity of the Marks**. Plaintiffs concede that they use Tung Tung Sahur's name and image in the Game. ECF No. 32, 23:1-2 ("Plaintiffs' accurate depiction of a character within their Game . . . "); ECF No. 25, ¶¶ 3, 7 (images depicting Tung Tung Sahur in the Game). Identity of marks is the strongest possible showing of similarity. This factor strongly favors Mementum.

**Marketing Channels**. Both parties have commercial involvement in games distributed through the Roblox platform. ECF No. 25, ¶¶ 6, 16(c). This factor strongly favors Mementum.

**Evidence of Actual Confusion**. Mementum alleges that "a substantial number of consumers who encountered the name and image of Tung Tung Sahur in the Game believed that Plaintiffs' use . . . was authorized, sponsored or licensed by Noxa and/or Defendant." ECF No. 25, ¶ 29. This allegation is entitled to the presumption of truth at this stage. *See Knievel*, 393 F.3d at 1072. That the allegation is pled on information and belief does not diminish its weight. The plausibility standard "does not prevent a plaintiff from pleading facts alleged upon information and belief" where the underlying facts—what individual Roblox users believed when they encountered Tung Tung Sahur in the Game—are within the possession of Plaintiffs and Roblox, not Mementum. *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (internal quotation marks omitted). At a minimum, this is a factor that should be developed through discovery, and its absence is not dispositive. *See, e.g., Trans Union LLC v. Credit Rsch., Inc.*, 142 F. Supp. 2d 1029, 1043 (N.D. Ill. 2001) ("at this stage of the litigation the lack of any such evidence" of actual confusion "is neither surprising nor fatal"); *Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1456 (9th Cir. 1991) ("in this circuit, actual

---

[2] Plaintiffs' attempt to distinguish between the Tung Tung Sahur marks "*as a source identifier*" versus "simply its popularity as a meme character" (ECF No. 32, 25:14-20 (emphasis in original)) is irrelevant to assessing the marks' strength. Plaintiffs cite no case law as to why the "popularity" of a "meme character" does not *strengthen* a consumer's association between the Tung Tung Sahur marks and Mementum. At best, this is a factual issue that cannot be resolved at this stage.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

confusion is not necessary to a finding of likelihood of confusion under the Lanham Act").

These allegations are more than sufficient to survive a motion to dismiss. Mementum has identified specific factual indicia supporting a plausible inference of confusion, including overlapping markets, identical marks, the existence of Mementum's licensing program, and consumer expectations shaped by that program. ECF No. 25, ¶¶ 26(b), 29. This is all that *Twombly* and *Iqbal* require at the pleading stage.

Plaintiffs cite a handful of outlier cases in which courts dismissed trademark claims for offering "bare legal conclusions" or "conclusory statements." ECF No. 32, 22:16-23:23, 25:21-26:2. These cases are distinguishable. For example, *Motul S.A. v. USA Wholesale Lubricant, Inc.*, 686 F. Supp. 3d 900, 914-15 (N.D. Cal. 2023) and *Performance Designed Prods. LLC v. Plantronics, Inc.*, 2019 WL 3082160, at \*5 (S.D. Cal. July 15, 2019), stand only for the proposition that a plaintiff cannot survive a motion to dismiss by reciting the legal standard for confusion in place of facts. Both decisions dismissed trademark claims because the plaintiffs offered nothing beyond the bare recitation that confusion was "likely," without alleging any supporting fact tying that conclusion to the marks, the markets, or the manner of use at issue. As set forth above, Mementum has done the opposite, alleging facts supporting confusion was likely.

Plaintiffs also cite the concurrence in *Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F. 3d 1059 (9th Cir. 2015) (ECF No. 32, 24:15-19), a case decided on summary judgment with a fully developed record, in support of their argument. The quote from the concurrence that Plaintiffs cite—that "a consumer's 'common lay legal opinion' that a rights holder 'must have' authorized a use 'does nothing to suggest that the use … runs afoul of the purpose of the Lanham Act' absent evidence" of consumer confusion (ECF No. 32, 24:15-19) (quoting *Fifty-Six Hope Road Music*, 778 F. 3d at 1069, 1084-85)—was made in connection with an analysis of plaintiffs' 500-plus consumer survey.  Plaintiffs' citation to this concurrence only reinforces that it is "disfavored" to resolve trademark cases on the pleadings. *KP Permanent Make-Up, Inc.*, 408 F.3d at 602; *see, e.g., Good Meat Project v. GOOD Meat, Inc.*, 716 F. Supp. 3d 783, 808 (N.D. Cal. 2024) (denying motion to dismiss where plaintiff alleged that "defendants have used [plaintiff's] 'confusingly similar mark' to advertise and promote [its] cultivated meat products, and that this

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

has caused, and will likely continue to cause, consumer confusion"); *Celebrity Chefs Tour, LLC v. Macy's, Inc.*, 16 F. Supp. 3d 1159, 1166-67 (S.D. Cal. 2014) (denying motion to dismiss where the plaintiffs alleged that the defendants used "the mark in commerce, in connection with the distribution[ ] and/or advertising of a television show," and "attempted to deceive the public and public television stations into believing that" the mark "belongs to them") (alteration in original) (internal quotation marks omitted); *Parts.com, LLC v. Yahoo! Inc.*, 996 F. Supp. 2d 933, 937 (S.D. Cal. 2013) (denying motion to dismiss where exhibit to the complaint contained "two or three links" that "redirect[ed] to other pages of Yahoo results" displaying the claimed mark).

### 4.    Mementum Has Plausibly Alleged Priority of Use

a.    Mementum Has Alleged Uses in U.S. Commerce Predating Plaintiffs' Launch of the Game

Plaintiffs argue that "Mementum's claim would independently fail for lack of priority" because, according to Plaintiffs, Mementum fails to allege "sufficient 'quality control of the goods and services sold under the trademark by the licensee.'" ECF No. 32, 26:5-21 (citing *Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc.*, 289 F.3d 589, 595-96 (9th Cir. 2002)).

Plaintiffs again try to turn the pleading standard on its head. Mementum alleges two commercial uses of the Tung Tung Sahur marks that predate Plaintiffs' launch of the Game. First, on or around April 22, 2025, Noxa and Mementum's founder launched a "hackathon" on the dev.fun platform in which developers built games featuring Tung Tung Sahur, with developers receiving cash prizes, and the winning game being released on or around that date. ECF No. 25, ¶ 16(a). Second, on or about May 5, 2025, a developer released the mobile game *Tung Tung Tung Sahur* with Noxa's consent, and with Mementum receiving royalties for this use. *Id.*, ¶ 16(b).

Plaintiffs attempt to minimize the hackathon by mischaracterizing it as a "token use"—a use made merely to reserve a right in the mark. ECF No. 32, 27:1-4 (quoting *Soc. Techs. LLC v. Apple Inc.*, 4 F.4th 811, 821 (9th Cir. 2021)). But in *Soc. Techs.,* the "evidence unequivocally show[ed] that [plaintiff] had no bona fide use of the [mark] in commerce, and that it rushed to release its [application] solely to reserve its rights in the [mark] and form the basis of a lawsuit against [defendant]." 4 F.4th at 820. There is no such evidence here at the pleading stage.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

Regardless, the hackathon satisfied the two elements for use in ecommerce—"(1) an element of actual use, and (2) an element of display." *Chance v. Pac–Tel Teletrac, Inc.*, 242 F.3d 1151, 1159 (9th Cir. 2001). The hackathon was a publicly accessible, commercially structured event. It was hosted on the dev.fun platform, open to any developer, awarded real cash prizes, and produced publicly released games (including *Whack-a-Tung*) that U.S.-based players could access and play. ECF No. 25, ¶ 16(a). The dev.fun platform operates globally, including in the United States. Plaintiffs' claim that the hackathon failed to reach U.S. consumers is a factual assertion that cannot be credited on a Rule 12(b)(6) motion, where all inferences run in Mementum's favor. Nothing in Mementum's allegations suggests the hackathon was merely a strategic trademark reservation strategy. Plaintiffs' reliance on *Soc. Techs.* is misplaced, as in that case, the applicant had only internal, non-public beta testing that never reached actual consumers. 4 F.4th at 821. By contrast, the hackathon produced publicly available games played by real users—the opposite of non-public internal testing.

Even if the hackathon does not qualify as a use in commerce predating the launch of the Game, the use of Tung Tung Sahur in the *Tung Tung Tung Sahur* game does. Mementum has alleged that it authorized this use on May 5, 2025 (11 days before the Game launched), that Mementum received compensation for this use, and that Mementum and the developer of the game entered a formal licensing agreement with a worldwide license retroactive to May 1, 2025. ECF No. 25, ¶¶ 6, 16(b). Plaintiffs claim that because the license was retroactive, Mementum cannot claim priority. ECF No. 32, 27:1-5. But the case it cites for that point, *Davis v. Blige*, states: "A retroactive license or assignment purports to authorize a past use that was **originally unauthorized**." 505 F.3d 90, 103 (2d Cir. 2007) (emphasis added). This case supports Mementum's position as Mementum has alleged that the use was *authorized* on May 5, 2025.[3]

---

[3] Plaintiffs try to make an issue about the fact that Mementum alleges that the *Tung Tung Tung Sahur* video game was released on or around May 5, 2025 (the date Noxa authorized the video game) and originally alleged that the video game was released on May 3, 2025 (two days before Noxa authorized the video game). ECF No. 32, 27 n.4. Mementum updated these allegations to clarify that the developer of the game requested in writing and obtained from Noxa on May 5 authorization to release the game. ECF No. 25, ¶ 16(b). In any event, this claimed discrepancy does not matter—Mementum has alleged that Noxa authorized the use of Tung Tung Sahur in this game before Plaintiffs released their Game.

For the same reason, Plaintiffs' argument that "[i]t is impossible for Mementum to have exercised sufficient 'quality control' over a use it had not yet authorized" (ECF No. 32, 28:5-6) fails. Mementum has alleged that it ensures each licensee's depiction of Tung Tung Sahur "maintains its distinct visual identity and consistent commercial presentation" (ECF No. 25, ¶ 28), the hallmarks of substantive quality control that distinguish a controlled license from the naked license found inadequate in the *Barcamerica* decision on which Plaintiffs rely (ECF No. 32, 26:11-27:23). *Barcamerica* involved a licensor that had not communicated with its licensee for at least the last three years of the license agreement and had no written quality standards whatsoever. 289 F.3d at 596-97. Mementum's active, multi-platform licensing program is different. But whether the specific controls Mementum imposed satisfy *Barcamerica*'s standard is a fact-intensive inquiry that cannot be resolved on a motion to dismiss—the Court must accept Mementum's allegations concerning quality control as true for the purpose of this motion.

b.   Mementum Has Continuously Commercialized the Marks; Plaintiffs' Interrupted Use Cannot Establish Priority

To establish priority of use of a mark, the claimant must show not only that it used the mark before the mark was registered, but that such use was continuous. *See Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 599 (9th Cir. 2014) ("the owner must establish not only that he or she used the mark before the mark was registered, but also that such use has continued to the present") (internal quotation marks omitted); *Impossible Foods Inc. v. Impossible X LLC*, 2025 WL 3063819, at *19 (N.D. Cal., Nov. 3, 2025) ("It is not at all clear that [defendant] has demonstrated continuous use in commerce[.] While [defendant] cites sales revenue from third-party affiliates, it has not shown that any of those offerings bear [the market at issue.]"); *Casual Corner Assocs., Inc. v. Casual Stores of Nev., Inc.*, 493 F.2d 709, 712 (9th Cir. 1974) ("To be a continuing use, the use must be maintained without interruption.").

Even setting aside Mementum's commercial uses predating the launch of the Game, Mementum's unbroken commercialization of the Tung Tung Sahur marks independently defeats Plaintiffs' priority claim. Since at least early May 2025, Mementum has continuously licensed the marks—including for use in the games *Plants Vs Brainrots*, *Pudgy Party*, *Fortnite*, and *Brainrot*

*Fight*—collecting royalties and enforcing quality standards throughout. ECF No. 25, ¶¶ 16(c)-16(g), 20. Plaintiffs, by contrast, have never maintained continuous use—they removed Tung Tung Sahur from their Game for four months when Mementum sent its cease-and-desist letter and the parties negotiated a licensing agreement, and then Tung Tung Sahur has been removed from the Game since at least May 1, 2026 because of Mementum's trademark takedown notice under European law to Roblox. *Id.*, ¶¶ 11-15. Plaintiffs' use has thus been interrupted at least twice—and remains interrupted today—while Mementum has continuously commercialized the marks. *Id.,* ¶ 20. Plaintiffs cannot establish continuous use of Tung Tung Sahur in their Game, defeating their priority of use argument even if Mementum was not the first to use Tung Tung Sahur in commerce. The case Plaintiffs rely on to argue otherwise, *Rogozinski v. Reddit, Inc.*, 2025 WL 1650019, at *1 (9th Cir. June 11, 2025), is distinguishable for many reasons, including because the plaintiff in that case did "not allege that he had previously used [mark] in commerce prior to its use," and by plaintiff's "own allegations, it was [the online group] that created and provided the services that enabled [the group's] many users to contribute to the discussion" on the subreddit. Mementum instead has alleged that it was the first to use the Tung Tung Sahur marks and that it commercialized these marks by licensing their uses.[4]

### 5.    Leave to Amend Should Be Granted if Any Deficiency is Found

If the Court grants Plaintiffs' motion, Mementum requests that it do so with leave to amend so Mementum can address any deficiencies. Fed. R. Civ. P. 15(a)(2) ("[t]he court should freely give leave when justice so requires"); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (leave should be granted with "extreme liberality") (internal quotation marks omitted).

## V.    CONCLUSION

For the foregoing reasons, Mementum requests that the Court deny Plaintiffs' motion to dismiss in its entirety, or alternatively, provide Mementum with leave to amend.

---

[4] For the same reasons, the Court should deny Plaintiffs' motion as to Mementum's unfair competition claims.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

56669-00002/8098554.4

OPPOSITION TO MOTION TO DISMISS
FIRST AMENDED COUNTERCLAIMS
5:25-CV-10248-NW

DATED:  July 6, 2026

GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP


By: _____
STEVEN A. STEIN (SBN 287401)
Attorneys for Defendant and
Counterclaimant MEMENTUM LAB
SAS

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California  90067