GREGG A. MARTIN (SBN 135685)
GMartin@ggfirm.com
STEVEN A. STEIN (SBN 287401)
SStein@ggfirm.com
ANDREW P. LUX (SBN 345915)
ALux@ggfirm.com
GREENBERG GLUSKER FIELDS CLAMAN &
MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067
Telephone:     310-553-3610
Facsimile:     310-553-0687

Attorneys for Defendant and Counterclaimant
MEMENTUM LAB SAS

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SPYDER GAMES LLC, a Louisiana limited liability company; and SPEEDY SIMULATOR GAMING, LLC, a Wyoming limited liability company, <br><br> Plaintiffs and Counter-Defendants, <br><br> v. <br><br> MEMENTUM LAB SAS, a French company, <br><br> Defendant and Counterclaimant. | Case No. 5:25-cv-10248-NW <br><br> **DEFENDANT AND COUNTERCLAIMANT MEMENTUM LAB SAS' OPPOSITION TO PLAINTIFFS AND COUNTER-DEFENDANTS' MOTION TO MODIFY THE SCHEDULE AND FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT** <br><br> Hon. Noël Wise <br><br> Date:       September 16, 2026 <br> Time:       9:00 a.m. <br> Courtroom:  3 |

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................ 6

II.     BACKGROUND .................................................................................................. 7

    A.      Mementum Asserts Rights to Tung Tung Sahur Under European Law ................ 7

    B.      Plaintiffs File this Lawsuit Seeking Declaratory Relief as to Whether They Infringed Mementum's Claimed Copyrights in Tung Tung Sahur and Other Characters by Using Them "in the Game".......... 8

    C.      Mementum Covenants Not to Sue Plaintiffs for their Use of the Characters at Issue in the Game Under the Copyright Act ........................ 8

    D.      Plaintiffs Move for Leave to Allege a Nonexistent Controversy............................ 9

III.    THE COURT SHOULD DENY PLAINTIFFS' MOTION ............................................. 10

    A.      The Leave to Amend Factors Support Denying Plaintiffs' Motion...................... 11

        1.      Plaintiffs' Proposed Amendment is Futile Because There is No Actual Controversy to Resolve ................................ 11

        2.      Plaintiffs Unduly Delayed in Seeking to Assert a New Actual Controversy Based on Factual Allegations that Existed When They Filed This Lawsuit ................................ 18

        3.      Plaintiffs' Motion is Made in Bad Faith ................................ 19

        4.      The Proposed Amendment Would Cause Undue Prejudice to Mementum ................................ 20

    B.      Plaintiffs Have Not Established Good Cause to Modify the Court's Scheduling Order to Permit Them to Amend Their Complaint......................... 21

IV.     CONCLUSION........................................................................................... 22

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Acri v. Int'l Ass'n of Machinists*,
  781 F.2d 1393 (9th Cir. 1986)........................................................................................ 18, 19

*Already, LLC v. Nike, Inc.*,
  568 U.S. 85 (2013) ................................................................................................................ 13

*AmerisourceBergen Corp. v. Dialysist West, Inc.*,
  465 F.3d 946 (9th Cir. 2006) ................................................................................................ 18

*Ascon Props., Inc. v. Mobil Oil Co.*,
  866 F.2d 1149 (9th Cir. 1989) .............................................................................................. 10

*Attia v. Ouraring Inc.*,
  2026 WL 1805156 (N.D. Cal. June 23, 2026) ...................................................................... 22

*Barnes & Noble, Inc. v. LSI Corp.*,
  823 F. Supp. 2d 980 (N.D. Cal. 2011) .................................................................................. 14

*Beco Dairy Automation, Inc. v. Global Tech Sys.*,
  104 F. Supp. 3d 1023 (E.D. Cal. 2015).................................................................................. 16

*C.A.M. v. Saul*,
  2020 WL 2319876 (C.D. Cal. May 11, 2020) ...................................................................... 22

*California v. Texas*,
  593 U.S. 659 (2021) .............................................................................................................. 11

*DNA Genotek Inc. v. Spectrum Solutions L.L.C.*,
  2023 WL 3442085 (S.D. Cal. May 12, 2023)........................................................................ 21

*Dow Jones & Co. v. Ablaise Ltd.*,
  606 F.3d 1338 (Fed. Cir. 2010)............................................................................................. 13

*Eminence Cap., LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003)............................................................................................... 20

*Experexchange, Inc. v. Doculex, Inc.*,
  2009 WL 3837275 (N.D. Cal. Nov. 16, 2009)....................................................................... 19

*First Intercontinental Bank v. AEHCC LLC*,
  2012 WL 12973655 (C.D. Cal. Nov. 27, 2012)..................................................................... 18

*Foman v. Davis*,
  371 U.S. 178 (1962) .............................................................................................................. 11

*Greenley v. Avis Budget Grp., Inc.*,
  2019 WL 4416129 (S.D. Cal. Sept. 16, 2019) ...................................................................... 19

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Howey v. United States*,
481 F.2d 1187 (9th Cir. 1973) ............................................................................. 20

*Impax Lab'ys, Inc. v. Medicis Pharm. Corp.*,
2008 WL 1767044 (N.D. Cal. Apr. 16, 2008) ................................................ 17, 19

*In re Circuit Breaker Lit.*,
175 F.R.D. 547 (C.D. Cal. 1997) ......................................................................... 18

*In re W. States Wholesale Nat. Gas Antitrust Litig.*,
715 F.3d 716 (9th Cir. 2013) ............................................................................... 10

*Indium Corp. of Am. v. Semi-Alloys, Inc.*,
781 F.2d 879 (Fed. Cir. 1985) ............................................................................. 15

*Johnson v. Mammoth Recreations, Inc.*,
975 F.2d 604 (9th Cir. 1992) .......................................................................... 21, 22

*Kustom Signals, Inc. v. Applied Concepts, Inc.*,
1996 WL 568817 (D. Kan. Sept. 16, 1996) ........................................................ 15

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007) ............................................................................................ 16

*Morongo Band of Mission Indians v. Rose*,
893 F.2d 1074 (9th Cir. 1990) ............................................................................. 21

*Olfati v. City of Sacramento*,
2023 WL 7004807 (E.D. Cal. Oct. 24, 2023) ..................................................... 21

*Outdoor Sys. v. City of Mesa*,
997 F.2d 604 (9th Cir. 1993) ............................................................................... 12

*Parrino v. FHP, Inc.*,
146 F.3d 699 (9th Cir. 1998) .......................................................................... 13, 15

*Prasco, LLC v. Medicis Pharm. Corp.*,
537 F.3d 1329 (Fed. Cir. 2008) ........................................................................... 12

*Rosholm v. Byb Brands, Inc.*,
2016 WL 1445592 (C.D. Cal. Feb. 22, 2016) ..................................................... 19

*Saes Getteres S.P.A. v. Aeronex, Inc.*,
219 F. Supp. 2d 1081 (S.D. Cal. 2002) ............................................................... 20

*Samsung Elecs. Corp., Ltd. v. Oura Health Oy*,
2025 WL 929410 (N.D. Cal. Mar. 27, 2025) ...................................................... 17

*Schwerdt v. Int'l Fid. Ins. Co.*,
28 F. App'x 715 (9th Cir. 2002) .......................................................................... 19

DEFENDANT'S ANSWER TO COMPLAINT
AND COUNTER CLAIM  5:25-CV-10248-
NW

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Serpa v. SBC Telecommunications, Inc.*,
    318 F. Supp. 2d 865 (N.D. Cal. 2004) ............................................................... 12

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ............................................................................................ 11

*Stonebrae, L.P. v. Toll Bros., Inc.*,
    2010 WL 114010 (N.D. Cal. Jan. 7, 2010) ....................................................... 11

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) .......................................................................................... 11

*Trans Video Elecs., Ltd. v. Sony Elecs., Inc.*,
    278 F.R.D. 505 (N.D. Cal. 2011) ...................................................................... 20

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ....................................................................... 14, 15

*Vanguard Rsch., Inc. v. PEAT, Inc.*,
    304 F.3d 1249 (Fed. Cir. 2002) ......................................................................... 16

*Velvet Underground v. Andy Warhol Found. for the Visual Arts, Inc.*,
    890 F. Supp. 2d 398 (S.D.N.Y. 2012) ............................................................... 13

*Warren v. Fox Fam. Worldwide, Inc.*,
    171 F. Supp. 2d 1057 (C.D. Cal. 2001), *aff'd*, 328 F.3d 1136 (9th Cir. 2003) ....................... 13

*Williams v. Euromarket Designs, Inc.*,
    2025 WL 4666394 (C.D. Cal. Nov. 10, 2025) ................................................... 22

*Zivkovic v. S. California Edison Co.*,
    302 F.3d 1080 (9th Cir. 2002) ........................................................................... 22

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 11

Fed. R. Civ. P. 15(a) .............................................................................. 10, 16, 20, 21

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

56669-00002/8110915.5

5

DEFENDANT'S ANSWER TO COMPLAINT AND COUNTER CLAIM 5:25-CV-10248-NW

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California  90067

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

This is not your ordinary motion for leave to amend a complaint. Plaintiffs took a molehill (a single letter from a French startup's French counsel asserting rights under French and international law relating to the use of a single character in a video game) and made it into a mountain (a lawsuit seeking declaratory relief under U.S. law as to whether Plaintiffs infringed copyrights in 17 of Mementum's characters by using them without permission in their game). Mementum mooted that controversy by covenanting not to engage in the conduct that Plaintiffs alleged was the actual controversy for the Court to resolve, forfeiting rights that went far beyond the ones its letter had conceivably put at issue to avoid the burden, expense and risk of litigating Plaintiffs' complaint. In response, Plaintiffs now seek—outside the court-ordered deadline—to concoct a new claim and expand the rights at issue even though there is no actual controversy concerning those rights to resolve.

Plaintiffs' motion fails because it is futile—Plaintiffs cannot allege an actual controversy as to the rights they are trying to put at issue. Mementum has not asserted a copyright infringement claim, applied for a U.S. copyright registration in any of its characters or threatened copyright litigation in the U.S. Even Plaintiffs' proposed amended complaint acknowledges that "Mementum did not attempt to defend its asserted copyrights." ECF No. 34-2, ¶ 3. Yet rather than dismiss their Complaint in response to Mementum's covenant, Plaintiffs are attempting to contrive a controversy based on claimed conduct that largely predates their filing of this lawsuit. No such controversy exists. Mementum's September 2025 cease-and-desist letter (which predates Plaintiffs filing this lawsuit) asserted rights in the Tung Tung Sahur character under French and international law, and Mementum already has covenanted away its U.S. rights potentially implicated by this letter. The parties' ensuing licensing negotiations (which also predate Plaintiffs filing this lawsuit) did not by their nature create an actual controversy, and even if they could, Mementum did not make any statements that did so. And the only alleged conduct postdating Plaintiffs' filing of this lawsuit—Mementum's reservation of rights in a filing—does not create a risk of actual or imminent harm sufficient to create declaratory judgment jurisdiction. Plaintiffs'

new allegations will not survive a motion to dismiss for lack of subject matter jurisdiction, and Plaintiffs should not be granted leave to add allegations that are doomed to fail.

Plaintiffs' motion fails for other reasons. Plaintiffs unduly delayed in filing this motion because their "new" actual controversy theory and supporting factual allegations existed when they filed suit. Plaintiffs filed this motion in bad faith because, as its timing and substance reflects, they are seeking to expand the rights at issue in response to Mementum's covenant, and not for any legitimate purpose. Granting leave to amend would unduly prejudice Mementum because it entered the covenant in reliance on the allegations Plaintiffs had made and should not be forced either to defend against broader allegations that could have been made when Plaintiffs filed suit or covenant away more rights. And Plaintiffs' motion is untimely, and Plaintiffs cannot show the good cause necessary to warrant modifying the Court's scheduling order.

For these and other reasons, the Court should deny Plaintiffs' motion.

## II.      BACKGROUND

### A.      Mementum Asserts Rights to Tung Tung Sahur Under European Law

"Brainrot" characters are a genre of absurd, surrealist characters born from content creators that became wildly popular with Gen Alpha starting in early 2025. ECF No. 25 (First Amended Counterclaims), ¶ 1.

Mementum is a French startup that is the exclusive representative of creators of many popular brainrot characters, including the creator of Tung Tung Sahur. *Id*., ¶ 9. As a startup with limited resources, Mementum has focused to date on enforcing its rights in its characters in Europe. *Id.*; *see* ECF No. 34-2 (Proposed First Amended Complaint ("FAC")) ¶ 29.

Plaintiffs own one of the most popular video games in the world, *Steal a Brainrot* (the "Game"), which is hosted on the platform Roblox. ECF No. 1 (Compl.), ¶¶ 1, 2, 17. Plaintiffs used Tung Tung Sahur in their Game without Mementum's consent, generating substantial revenue through in-game advertising and the sale of the character. *Id*., ¶¶ 1, 18.

On September 3, 2025, Mementum's French counsel sent Plaintiffs a cease-and-desist letter requesting that they remove Tung Tung Sahur from their Game, writing that "*Tung Tung Sahur* is a protected intellectual property asset, combining copyright, trademark, and unfair

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

competition protections under French and international law." ECF No. 25, ¶ 10; *see* ECF No. 34-2 ¶ 19; ECF No. 29-1.

Plaintiffs removed Tung Tung Sahur from the Game and entered negotiations to license Tung Tung Sahur and other brainrot characters from Mementum. ECF No. 25, ¶ 11. The parties were unable to reach an agreement as to the scope of the license. *Id.*, ¶ 12.

**B.     Plaintiffs File this Lawsuit Seeking Declaratory Relief as to Whether They Infringed Mementum's Claimed Copyrights in Tung Tung Sahur and Other Characters by Using Them "in the Game"**

When the parties' licensing negotiations hit a stalemate, Plaintiffs filed this lawsuit in November 2025, asserting a single claim for declaratory relief under the Copyright Act. ECF No. 1, ¶¶ 23-28. Plaintiffs alleged that there was an actual controversy as to whether their use of Tung Tung Sahur and 16 other specifically identified brainrot characters "in the Game"—defined to mean "the video game known as Steal a Brainrot . . . played on the Roblox platform" (ECF No. 1, ¶ 1)—infringed Mementum's claimed copyright in these characters under the Copyright Act. *Id.*, ¶¶ 20, 22, 24. Plaintiffs did not make any allegations about the parties' licensing negotiations or uses of the characters outside the Game, including in connection with merchandise, other platforms, film, or any other product or medium. *Id.*, ¶¶ 17-22.

On February 13, 2026, the Court entered its Initial Case Management Order, ordering that the deadline for "amendment to the pleadings, without requesting leave of the Court, is 60 days after entry of this order or 60 days after service has been completed, which is later." ECF No. 15. Mementum was served on or around February 24, 2026, and filed its Counterclaims on April 24, 2026. ECF No. 18. In the parties' May 6, 2026 Joint Case Management Statement, Plaintiffs did not indicate they were planning to amend their Complaint to expand the alleged actual controversy because of anything Mementum alleged in its Counterclaims or otherwise. *See* ECF No. 21, 4:12-17. Plaintiffs filed this motion on June 24, 2026. ECF No. 34.

**C.     Mementum Covenants Not to Sue Plaintiffs for their Use of the Characters at Issue in the Game Under the Copyright Act**

On May 21, 2026, Mementum executed and sent Plaintiffs a Covenant Not to Sue

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

effective that date. *See* ECF No. 34-5. Under the covenant, Mementum agreed to:

> [R]efrain from making any claim(s) or demand(s), or from commencing, causing, or permitting to be prosecuted any action in law or equity (collectively, 'Claim'), against [the Spyder Parties and a similarly extensive list of related persons and entities] (collectively, 'Covered Parties') for infringement of any statutory or common law copyright in the brainrot characters identified in Attachment A to this Covenant (the 'Characters') under the copyright law of the United States, regardless of whether said Claim for copyright infringement accrues before, on, or after the Effective Date and regardless of whether said Claim arises from the Spyder Parties' or any other Covered Party's past, current, or substantially similar future use of the Characters in the Game as identified in the Complaint.

*Id*. Mementum further covenanted "to refrain from making any claim(s) or demand(s), or from submitting, causing to be submitted, or permitting to be submitted any takedown notice under the Digital Millennium Copyright Act or any other law of the United States based on copyright infringement of the Characters under United States law." *Id*.

On that same day, Mementum requested that Plaintiffs dismiss their Complaint for lack of subject matter jurisdiction, explaining that there was no longer an actual controversy for this Court to resolve. ECF Nos. 28-1, 34-6. Plaintiffs refused to do so because Plaintiffs' "prayer for relief seeks a declaration that Mementum has no enforceable copyright in the Characters and that Plaintiffs' use of the Characters does not infringe." ECF No. 34-7. Purportedly "to remove any ambiguity," Plaintiffs also sought leave to amend, requesting on May 30 that Mementum stipulate to an amendment that (i) "makes explicit Plaintiffs' actual use of the Characters across other games, derivative works, marketing materials, and merchandise, and the controversy over those uses," and (ii) "seeks declaratory relief under French copyright law, given that Mementum's September 3 demand expressly invoked French law and Mementum has preserved foreign-law copyright claims in the Covenant." *Id*. As Mementum noted at the time, it was not "aware of any uses of these characters by Plaintiffs outside of the Game." ECF No. 34-6.

### D.    Plaintiffs Move for Leave to Allege a Nonexistent Controversy

On June 18, Plaintiffs sent Mementum their proposed FAC and asked Mementum to stipulate to leave to amend. ECF No. 34-8. When Mementum did not do so, Plaintiffs filed this motion. ECF No. 34. Plaintiffs' proposed FAC is a page-one rewrite of their complaint (ECF No. 34-3), adding allegations that Plaintiffs use Mementum's characters outside the Game and that

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

there is an actual controversy as to those uses.

As to the uses outside the Game, Plaintiffs allege that they have a licensed-merchandise program under the "*Steal a Brainrot*" brand, and that certain of Mementum's brainrots are depicted on this merchandise (a minifigure of La Vacca Saturno Saturnita; stickers depicting Tung Tung Sahur, Brr Brr Patapim, Boneca Ambalabu, Cappuccino Assassino, Chimpanzini Bananini, Il Cacto Hipopotamo, Frigo Camelo and Cavallo Virtuoso; a t-shirt depicting Chimpanzini Bananini). ECF No. 34, ¶¶ 24-25. It appears from Plaintiffs' allegations that this activity began in or around May 2025, contemporaneous with Mementum entering the covenant. *See id*. Plaintiffs allege that they have "taken concrete steps" toward additional licensed product lines, entering into binding merchandise license agreements and approving other activity with their licensees, apparently involving the depiction of unspecified characters. *Id*., ¶ 26. Plaintiffs allege that they have entered into a development arrangement for a feature film "based on the Game and its characters," which was publicly announced in January 2026, and anticipate further agreements relating to films or other audiovisual works "derived from the Game and its characters." *Id*., ¶ 26.

As to the purported actual controversy relating to these uses, Plaintiffs claim that Mementum has put these uses at issue because of (i) its September 2025 cease-and-desist letter, (ii) the parties' licensing negotiations predating Plaintiffs' filing this lawsuit, and (iii) its allegation in its Counterclaims reserving rights as to 22 characters not identified in Plaintiffs' Complaint. *Id*., ¶¶ 18-22, 33, 34.

## III.    THE COURT SHOULD DENY PLAINTIFFS' MOTION

Although Federal Rule of Civil Procedure 15(a) provides that the Court "should freely give leave when justice so requires," leave "is not to be granted automatically." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013) (quoting *Jackson v. Bank of Haw*., 902 F.2d 1385, 1387 (9th Cir. 1990)). Courts consider the following five factors to assess whether to grant leave to amend: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d at 738 (quoting *Allen v.*

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

*City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990)); *see Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("liberality in granting leave to amend is subject to several limitations" and "[l]eave need not be granted where the amendment of the complaint would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay"). The "grant or denial of an opportunity to amend is within the discretion of the District Court." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### A.    The Leave to Amend Factors Support Denying Plaintiffs' Motion

#### 1.    Plaintiffs' Proposed Amendment is Futile Because There is No Actual Controversy to Resolve

Plaintiffs' proposed amendment is futile because it does not and cannot cure the absence of subject matter jurisdiction.

"In assessing the futility of an amendment, a court typically applies the same standard of legal sufficiency as applies under Federal Rule of Civil Procedure 12(b)(6)." *Stonebrae, L.P. v. Toll Bros., Inc.*, 2010 WL 114010, at *1 (N.D. Cal. Jan. 7, 2010) (recognizing that, in "the aftermath of *Twombly* and *Iqbal,* several courts have noted that the futility test can no longer be framed using the 'no set of facts' language" but instead it "might more appropriately be said that an amendment is futile when the proposed amended complaint fails to allege enough facts to state a claim to relief that is plausible on its face") (internal quotation marks omitted).

A declaratory judgment action—"just like suits for every other type of remedy"—must satisfy Article III's case-or-controversy requirement. *California v. Texas*, 593 U.S. 659, 672 (2021). Plaintiffs must show "(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014) (internal quotation marks omitted). For a court to have jurisdiction, such an injury must be "concrete and particularized" and "actual or imminent," not "conjectural" or "hypothetical." *Id.* at 158 (internal quotation marks omitted); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998). "Hypothetical jurisdiction produces nothing more than a hypothetical judgment—which comes to the same thing as an advisory opinion, disapproved by this Court from the beginning." *Steel Co.*,

523 U.S. at 101. "Much more than legal niceties are at stake here. The statutory and (especially) constitutional elements of jurisdiction are an essential ingredient of separation and equilibration of powers, restraining the courts from acting at certain times, and even restraining them from acting permanently regarding certain subjects." *Id.*; *see, e.g., Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1335-41 (Fed. Cir. 2008) (where plaintiff had "suffered no actual present injury traceable to the defendants," and defendants had not "taken any affirmative actions," holding that defendants' failure to sign a covenant not to sue is "simply not sufficient to establish that [plaintiff] is at risk of imminent harm from the defendants and that there is an actual controversy between the parties of sufficient immediacy and reality to warrant declaratory judgment jurisdiction," and recognizing that, "[a]lthough we understand [plaintiff's] desire to have a definitive answer on whether its products infringe defendants' patents, were the district court to reach the merits of this case, it would merely be providing an advisory opinion," and this "is impermissible under Article III").

"Of all of the four factors, '[f]utility of amendment can, by itself, justify the denial of a motion for leave to amend.'" *Serpa v. SBC Telecommunications, Inc.*, 318 F. Supp. 2d 865, 872 (N.D. Cal. 2004) (alteration in original) (quoting *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)); *see, e.g., Outdoor Sys. v. City of Mesa*, 997 F.2d 604, 614 (9th Cir. 1993) (affirming the district court's denial of a motion for leave to amend because the proffered amendments would be nothing more than an exercise in futility).

Mementum's covenant mooted the only actual controversy Plaintiffs alleged—the use of the characters at issue in the Game. *Compare* ECF No. 1 (Compl.), ¶¶ 20, 22, 24 *with* ECF No. 34-5 (Covenant). As alleged, the purported actual controversy is whether Plaintiffs' use "in the Game"—defined to mean "the video game known as Steal a Brainrot . . . played on the Roblox platform" (ECF No. 1, ¶ 1)—of the characters identified in Exhibit 1 to their Complaint infringed Mementum's claimed copyright in these characters under the Copyright Act. Mementum "unconditionally and irrevocably" covenanted not to engage in this conduct—to not sue Plaintiffs or any party in privity with them in the U.S. for Plaintiffs' "past, current, or substantially similar future" use of these characters "in the Game," make any claim or demand based on such conduct,

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

or send a DMCA takedown notice based on such conduct. ECF No. 34-5. Where a declaratory relief defendant covenants not to sue for infringement of the asserted right, the covenant "extinguishe[s] any current or future case or controversy between the parties, and divest[s] the district court of subject matter jurisdiction." *Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338, 1348 (Fed. Cir. 2010); *see Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013); *Velvet Underground v. Andy Warhol Found. for the Visual Arts, Inc.*, 890 F. Supp. 2d 398, 404 (S.D.N.Y. 2012). Mementum's covenant, which tracks the covenants that mooted the disputes in *Already* and *Velvet Underground* and goes beyond the controversy Plaintiffs alleged, forecloses any suit or claim based on Plaintiffs' past, current, or substantially similar future use of the characters at issue in the Game.

Mementum's covenant should have ended Plaintiffs' lawsuit. But in a last-ditch attempt to keep their claim alive, Plaintiffs cherry pick from correspondence predating their filing of this lawsuit to try to allege the existence of a new actual controversy. As this correspondence reflects, no such controversy exists.

Plaintiffs allege that Mementum's September 3, 2025 cease-and-desist correspondence shows that "Mementum's assertion of rights has never been confined to the Game." ECF No. 34-2, ¶ 19; *see* ECF 34, 16:22-23. The correspondence itself shows otherwise. Mementum's French counsel wrote in his cover email attaching the letter that he understood he was emailing counsel for the "operator of the game *Steal a Brainrot*" and that he was attaching a cease-and-desist letter "concerning the unauthorized use of the character *Tung Tung Sahur* **in the game *Steal a Brainrot*.**" Ex. 1 (emphasis added).[1] Appendix 3 to the letter, titled "Documentation of

---

[1] Mementum requests that the Court incorporate by reference Mementum's September 3, 2025 cease-and-desist correspondence (attached as Exhibit 1) as if fully set forth in Plaintiffs' FAC.

A district court "may consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Parrino v. FHP, Inc.*, 146 F.3d 699, 705 (9th Cir. 1998) (alteration in original) (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)). Under the incorporation-by-reference doctrine, courts can consider documents "crucial to the plaintiff's claims, but not explicitly incorporated in [plaintiff's] complaint" to effectuate the "policy concern" of preventing plaintiffs from "deliberately omitting references to documents upon which their claims are based." *Parrino*, 146 F.3d at 705 ("We therefore hold that a district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

13

OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND
5:25-CV-10248-NW

Unauthorized Use," links to the Game and includes images depicting Tung Tung Sahur being used in the Game. *Id.*, p. 10. The only references to merchandising are generic and included in an Executive Summary attached to the letter that includes a preface specifying that Mementum is asserting rights in Tung Tung Sahur "under French and international law." *Id.*, pp. 3-6. This is likely why, when Plaintiffs filed this lawsuit, they only alleged that this letter created an actual controversy as to the use of Tung Tung Sahur and other characters "in the Game." ECF No. 1, ¶¶ 20, 22, 24.

Plaintiffs also allege that Mementum "threatened legal action" as to "Plaintiffs' use of the brainrots on other platforms and in merchandise" during the parties' ensuing licensing negotiations. ECF No. 34-2, ¶ 22. Plaintiffs specifically allege that Mementum (i) "took the position in writing that it had agreed only to 'regularize' past use of its materials 'within the scope of the Game 'Steal a Brainrot,'' 'not to issue a blanket waiver or release of all potential claims,' and that Plaintiffs could use the characters 'solely within the scope of the agreed Game project, without any broader exploitation rights" and (ii) "further warned of 'potential legal action against [Plaintiffs'] partners' who had been licensed to use the *Steal a Brainrot* property, which includes the characters Mementum claims to own." *Id.* (alteration in original).

By their nature, the parties' licensing negotiations should not establish an actual controversy. *See, e.g., Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 991 (N.D. Cal. 2011) (finding that there was no reasonable threat of suit where "the parties had been engaged in

_____

plaintiff's complaint necessarily relies."); *see, e.g., Warren v. Fox Fam. Worldwide, Inc.*, 171 F. Supp. 2d 1057, 1064 (C.D. Cal. 2001) (considering documents referenced in a complaint on a Rule 12 motion), *aff'd*, 328 F.3d 1136 (9th Cir. 2003).

Plaintiffs refer extensively to the September 2025 letter in their proposed FAC, which forms in part the basis for Plaintiffs' claim that there is an actual controversy for the Court to resolve. *See* ECF No. 34-2, ¶¶ 4, 19, 20, 26, 31, 33-35. Mementum should be permitted to attach this correspondence to its opposition, and for it be incorporated by reference into Plaintiffs' proposed FAC for the purpose of this motion. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim. The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true[.]") (internal citations omitted). The letter already is part of the record, having been attached to a declaration supporting Mementum's motion to dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction. *See* ECF No. 29-1.

56669-00002/8110915.5

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

good faith negotiations" but "rather than attend their next-scheduled meeting," plaintiff filed suit); *Indium Corp. of Am. v. Semi-Alloys, Inc.*, 781 F.2d 879, 883 (Fed. Cir. 1985) (the "mere offer of a license" is not a "sufficient basis for declaratory jurisdiction"); *Kustom Signals, Inc. v. Applied Concepts, Inc.*, 1996 WL 568817, at *5 (D. Kan. Sept. 16, 1996) (noting that "where all that is present is negotiation unaccompanied by threats of legal action, the setting is not sufficiently adverse to create a justiciable controversy," and finding that correspondence inviting licensing negotiations and not containing an express charge of infringement was insufficient to constitute an "explicit threat" giving rise to an actual controversy) (quoting *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 812 (Fed. Cir. 1996)). To find otherwise would create a chilling effect over the negotiation of intellectual property licenses—parties would hesitate to engage in such discussions because doing so would create an inherent risk of being subject to a declaratory relief claim based on routine negotiations.

Even if the parties' licensing negotiations could create an actual controversy, Mementum's French counsel did not make any statements in connection with those negotiations that did so. The sole reference to Mementum raising the prospect of asserting "potential legal action" in Plaintiffs' proposed amended complaint (ECF No. 34-2, ¶ 22) is taken grossly out of context. The full sentence reads: "[Plaintiffs'] message suggests that licenses may have been granted to third parties including Brainrot characters. This point needs to be clarified, at least to avoid potential legal action against your partners." Ex. 2.[2] Mementum did not threaten legal action; it asked for clarification to avoid accidentally bringing a legal action against Plaintiffs' partners. Reading the exchange in context underscores that Mementum did not threaten litigation during the parties' licensing negotiations. This is likely why, when Plaintiffs filed this lawsuit, they did not include any allegations concerning the parties' licensing negotiations, much less that these negotiations created an actual controversy for the Court to resolve. This omission is particularly glaring given that the same attorney who led these negotiations for Plaintiffs was lead

---

[2] Mementum also requests that the Court incorporate by reference the parties' email exchange at issue (attached as Exhibit 2) as if fully set forth in Plaintiffs' proposed FAC since this document is referenced in Plaintiffs' proposed FAC (ECF No. 34-2, ¶ 22), and forms in part the basis for Plaintiffs' claim that there is an actual controversy for the Court to resolve. *See Ritchie*, 342 F.3d at 907; *Parrino*, 146 F.3d at 705; *Warren*, 171 F. Supp. 2d at 1064.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

56669-00002/8110915.5

15

OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND
5:25-CV-10248-NW

counsel for Plaintiffs when they filed this lawsuit. *Compare* Ex. 2 *with* ECF No. 1.

Courts look at "all the circumstances" to assess whether there is an actual controversy, and the passage of time is an important circumstance here supporting that there is not a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotation marks omitted). Even if Plaintiffs at one point had a reasonable apprehension of being sued by Mementum in the U.S. for copyright infringement as to the characters at issue, they could not objectively have such an apprehension now. *See Beco Dairy Automation, Inc. v. Global Tech Sys.*, 104 F. Supp. 3d 1023, 1040 (E.D. Cal. 2015) (granting motion to dismiss where the complaint gave "no basis for believing" that Plaintiffs had a "reasonable apprehension" that they will be subject to "ongoing threats of infringement suits"); *Vanguard Rsch., Inc. v. PEAT, Inc.*, 304 F.3d 1249, 1254 (Fed. Cir. 2002) ("The reasonableness of a party's apprehension is judged using an objective standard."); *Indium Corp. of Am. v. Semi–Alloys, Inc.,* 781 F.2d 879, 883 (Fed. Cir. 1985) ("A purely subjective apprehension of an infringement suit is insufficient to satisfy the actual controversy requirement."). When Mementum filed its counterclaims, it asserted only a trademark infringement counterclaim under the Lanham Act and unfair competition counterclaims under the Lanham Act and California common law—not a copyright infringement counterclaim. ECF No. 18. When Mementum amended its counterclaims, it also did not assert a copyright infringement counterclaim (ECF No. 25), and the time for asserting such a claim without leave from the Court has passed. *See* Fed. R. Civ. P. 15(a). Plaintiffs do not allege that Mementum has applied for a U.S. copyright registration in any of its characters, which is a predicate to filing a copyright infringement claim (it has not). Nor do Plaintiffs point to any statements that Mementum has made after the parties' licensing negotiations (other than the reservation of rights language addressed below) constituting a threat to assert such a claim (there are none). Under these circumstances, Plaintiffs cannot have an objectively reasonable apprehension of being sued by Mementum for copyright infringement in the U.S., which underscores that there is no actual controversy for this Court to resolve. *See MedImmune*, 549 U.S. at 127.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

Finally, Plaintiffs point to one statement postdating the filing of this lawsuit that they claim gives rise to an actual controversy—the footnote Mementum included in its counterclaims stating that it "recently became the exclusive worldwide licensee and representative of two other creators," these creators "have created many characters that Plaintiffs have used in the Game without their permission," and Mementum "reserves all related rights." ECF No. 18, p. 10 n.1 (emphasis added); ECF No. 25, p. 11 n.1. Plaintiffs do not identify any case law supporting that such a reservation of rights can create an actual controversy for the Court to resolve. It does not.

For there to be an actual controversy, some "affirmative act must be 'directed specifically at the party seeking declaratory judgment.'" *Samsung Elecs. Corp., Ltd. v. Oura Health Oy*, 2025 WL 929410, at *3 (N.D. Cal. Mar. 27, 2025) (quoting *Proofpoint, Inc. v. InNova Pat. Licensing, LLC*, 2011 WL 4915847, at *3 (N.D. Cal. Oct. 17, 2011)). For example, in *Oura Health Oy*, the declaratory relief plaintiff claimed that there was an actual controversy because defendant made public statements to the effect that it would "closely monitor [plaintiff's product's] development for any potential intellectual property violations"—*e.g.*, "We'll see whether or not [plaintiff's product] infringes on [defendant's technology]. And frankly, we'll take the action that's appropriate."; Defendant "will take action to defend our intellectual property." 2025 WL 929410, at *2-5. The court granted defendant's motion to dismiss for lack of subject matter jurisdiction, finding that none of the statements "explicitly threatened suit" and "[w]ithout more, these statements are insufficient to establish an affirmative act." *Id.* at *5; *see Impax Lab'ys, Inc. v. Medicis Pharm. Corp.*, 2008 WL 1767044, at *1-4 (N.D. Cal. Apr. 16, 2008) (finding that statements by declaratory relief defendant's CEO that defendant would be "very vigorous" in enforcing its intellectual property, had hired law firms that were "vicious" in their enforcement practices, "want[ed] to send a very strong message," and intended to enforce "with the ultimate vigor" failed to establish an actual controversy, and granting motion to dismiss for lack of subject matter jurisdiction). Nor does Mementum's reference to Plaintiffs using these characters without permission, without more, transform its reservation of rights into an affirmative act that can give rise to an actual controversy. *See, e.g., Oura Health Oy,* 2025 WL 929410, at *2-5; *see Impax Lab'ys, Inc.*, 2008 WL 1767044, at *1-4. As this case law reflects, Mementum's reservation of

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

rights does not come close to establishing an actual controversy for this Court to resolve.

This Court does not have subject matter jurisdiction over Plaintiffs' complaint because of Mementum's covenant, and Plaintiffs' proposed amended allegations do not cure this defect. Because Plaintiffs' amended allegations are futile, the Court should deny Plaintiffs' motion.

**2.      Plaintiffs Unduly Delayed in Seeking to Assert a New Actual Controversy Based on Factual Allegations that Existed When They Filed This Lawsuit**

In evaluating the undue delay factor, courts analyze "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) (quoting *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990)). "[L]ate amendments to assert new theories are not reviewed favorably when the facts and the theories have been known to the party seeking amendment since the inception of the cause of action." *Acri v. Int'l Ass'n of Machinists*, 781 F.2d 1393, 1398 (9th Cir. 1986); *see First Intercontinental Bank v. AEHCC LLC*, 2012 WL 12973655, at *2 (C.D. Cal. Nov. 27, 2012) (defendant's undue delay weighed against granting her motion for leave where "she knew the facts or theories giving rise to [the] amendments at the time she filed her Original Answer, which in this case she did"). "[D]elay in *combination* with other factors is sufficient reason for denial." *In re Circuit Breaker Lit.*, 175 F.R.D. 547, 550 (C.D. Cal. 1997) (emphasis in original).

Two of the three bases for Plaintiffs alleging in their proposed amended complaint the existence of an actual controversy—the September 2025 cease-and-desist letter and the parties' licensing negotiations—occurred before Plaintiffs filed this lawsuit in November 2025. Plaintiffs could have alleged that the September 2025 letter gave rise to an actual controversy as to uses generally, as opposed to uses "in the Game," and could have alleged that the licensing negotiations gave rise to an actual controversy. Plaintiffs did neither. Rather, as Plaintiffs concede (ECF No. 34, 12:10-12), the prompt for them seeking to amend their Complaint to try to expand the alleged actual controversy based on alleged conduct predating this lawsuit was Mementum's covenant. Plaintiffs waited seven months to seek to add allegations to their Complaint that they

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California  90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

could have included at the outset. Under the circumstances, Plaintiffs unduly delayed.[3]

Plaintiffs argue that "there has been no undue delay on [their] part" because "[t]his case still is in its early stages." ECF No. 34, 13:12-18. But the relevant inquiry is whether Plaintiffs knew about these facts when they filed their lawsuit, not the stage of this proceeding. *See Acri,* 781 F.2d at 1398; *AEHCC LLC,* 2012 WL 12973655, at *2.

Plaintiffs might argue that they have alleged new conduct that *they* purport to have engaged in since filing this lawsuit—that they have published licensed versions of the Game on other platforms, including Epic Games, entered merchandising license agreements to sell *Steal a Brainrot*-branded products, and entered a film development arrangement that was announced in January 2026. ECF No. 34-2, ¶¶ 23-27. But as set forth above, the relevant inquiry for evaluating the futility of a proposed amended declaratory relief claim is whether there are new facts that show the existence of an actual controversy. *See, supra,* Section III.A.1. Plaintiffs have alleged no new facts showing that Mementum has engaged in affirmative acts creating an actual controversy as to the new alleged conduct in which Plaintiffs purport to have engaged. *See Oura Health Oy,* 2025 WL 929410, at *2-5; *Impax Lab'ys, Inc.,* 2008 WL 1767044, at *1-4.

Plaintiffs' undue delay weighs against granting leave to amend. *See, e.g., Experexchange, Inc. v. Doculex, Inc.,* 2009 WL 3837275, at *17, *29 (N.D. Cal. Nov. 16, 2009) (denying motion for leave to amend where the moving party waited two months after discovering the facts underlying the proposed amendment); *Schwerdt v. Int'l Fid. Ins. Co.,* 28 F. App'x 715, 719-20 (9th Cir. 2002) (affirming denial of leave to amend based on delay of one-to-three months).

### 3. Plaintiffs' Motion is Made in Bad Faith

"Courts can deny leave to amend when leave is sought in bad faith." *Rosholm v. Byb Brands, Inc.,* 2016 WL 1445592, at *6 (C.D. Cal. Feb. 22, 2016). "The Ninth Circuit has previously found that bad faith exists where the moving party intends to harass the non-moving party or otherwise disrupt litigation." *Greenley v. Avis Budget Grp.,* 2019 WL 4416129, at *2 (S.D. Cal. Sept. 16, 2019) (citing *Leon v. IDX Sys. Corp.,* 464 F.3d 951, 961 (9th Cir. 2006)). It's

---

[3] The third basis for Plaintiffs alleging the existence of an actual controversy is Mementum's reservation of rights. This is the only alleged conduct by Mementum postdating Plaintiffs' filing of this lawsuit, and does not create an actual controversy. *See, supra,* Section III.A.1.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

not hard to surmise what is driving this motion. Plaintiffs obtained a covenant as to the claimed rights giving rise to the actual controversy in their Complaint, acknowledge in their proposed amended complaint that "Mementum did not attempt to defend its asserted copyrights" (ECF No. 34-2, ¶ 3), yet are relying on specious allegations to try to keep their lawsuit alive, which would have the effect of forcing a less-resourced adversary to incur more fees and potentially forfeit more rights. The timing and substance of Plaintiffs' motion—waiting until after Mementum entered its covenant to raise the prospect of amending and then seeking to do so based on facts predating this lawsuit—confirms this purpose. Plaintiffs' bad-faith conduct weighs against granting leave to amend. *See, e.g., Trans Video Elecs., Ltd. v. Sony Elecs., Inc.*, 278 F.R.D. 505, 510 (N.D. Cal. 2011) (denying plaintiff's motion for leave where the proposed amendment was "last-ditch attempt to avoid the case being dismissed in its entirety").

**4.      The Proposed Amendment Would Cause Undue Prejudice to Mementum**

Prejudice is a "touchstone" inquiry under Rule 15(a). *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). "Undue prejudice means substantial prejudice or substantial negative effect[.]" *Saes Getteres S.P.A. v. Aeronex, Inc.*, 219 F. Supp. 2d 1081, 1086 (S.D. Cal. 2002) (internal quotation marks omitted). Courts may deny leave when "undue prejudice to the opposing party will result." *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973) (internal quotations omitted).

The proposed amendment would cause undue prejudice to Mementum. Mementum executed an unconditional and irrevocable covenant giving up in perpetuity U.S. copyright claims in 17 characters *vis à vis* Plaintiffs and their contracting parties in reliance on the alleged actual controversy in Plaintiffs' Complaint. ECF No. 34-5. As the covenant reflects, Mementum did so to avoid the burden, expense and risk of litigating Plaintiffs' claim. *See id.*, Recital J. Permitting Plaintiffs to move forward with their proposed amended complaint would put Mementum back at square one—it would either need to spend substantial fees fighting Plaintiffs' claim or covenant away U.S. copyright claims *vis à vis* Plaintiffs and their contracting parties as to all potential uses of 39 characters when there is no actual controversy concerning those uses.

To try to minimize the prejudice that its proposed amended complaint would cause

Mementum, Plaintiffs argue that "the nature of this litigation—including the parties, the claim, and the relief requested—remains essentially the same under the proposed First Amended Complaint." ECF No. 34, 16:17-19. Not so. As it stands, there is no copyright dispute in this case given Mementum's covenant mooting Plaintiffs' Complaint. Under Plaintiffs' proposed amended complaint, not only would a copyright dispute be resuscitated but it would be broadened to *all* uses of 39 characters, as opposed to Plaintiffs' use "in the Game" of 17 characters.

Had Mementum known Plaintiffs were going to seek declaratory relief as to 39 characters across all potential uses before it entered the covenant, it might not have done so. Plaintiffs' bait-and-switch tactics are by their nature unfair and unduly prejudicial—the type of prejudice that Rule 15(a) guards against. *See, e.g.*, *DNA Genotek Inc. v. Spectrum Solutions L.L.C.*, 2023 WL 3442085, at *9 (S.D. Cal. May 12, 2023) ("In sum, the Court denies [counterclaimant's] motion for leave to amend on the additional grounds of undue delay coupled with prejudice."); *Olfati v. City of Sacramento*, 2023 WL 7004807, at *3 (E.D. Cal. Oct. 24, 2023) (finding undue prejudice where proposed amendment would "forc[e] defendants to reconstruct their defense strategy"); *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (affirming the denial of leave to amend where the new claims would have "greatly altered the nature of the litigation"). This factor weighs against granting Plaintiffs' motion.[4]

### B.    Plaintiffs Have Not Established Good Cause to Modify the Court's Scheduling Order to Permit Them to Amend Their Complaint

Plaintiffs concede that they did not timely amend their complaint. ECF No. 34, 11:24-26. Under the Court's Case Management Order, their deadline to do so without leave to amend passed two months before they filed this motion. ECF No. 15. Plaintiffs must demonstrate "good cause" to modify the Court's scheduling order. Fed. R. Civ. P. 16(b)(4). They have not done so.

The good cause standard "primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "Although the existence or degree of prejudice to the party opposing the modification might

---

[4] The fifth leave to amend factor, "whether plaintiff has previously amended his complaint," is the only factor that favors Plaintiffs.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *Id.* "If that party was not diligent, the inquiry should end." *Id.*; *see Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) ("If the party seeking the modification was not diligent, the inquiry should end and the motion to modify should not be granted.") (internal quotation marks omitted).

By Plaintiffs' telling, they acted diligently by preparing their proposed amended complaint within one month of Mementum entering its May 21, 2026 covenant. ECF No. 34, 12:10-22. This ignores that the factual allegations Plaintiffs are seeking to add to their complaint to create an actual controversy existed well before Mementum entered its covenant. *See, supra,* Section III.A.2. Plaintiffs sat on their "new" allegations for over seven months before asking this Court for a redo. This evidences a lack of diligence that is the product of Plaintiffs' own inaction. *See Williams v. Euromarket Designs, Inc.,* 2025 WL 4666394, at *2 (C.D. Cal. Nov. 10, 2025) ("Such inaction is an indication that Plaintiff was not diligent."); *C.A.M. v. Saul*, 2020 WL 2319876, at *3 (C.D. Cal. May 11, 2020) ("Plaintiff's inaction . . . indicates that Plaintiff does not intend to litigate this action diligently."). Plaintiffs are "represented by sophisticated counsel who easily could have—and should have—taken any number of steps to diligently" allege facts within their knowledge in November 2025 or, at a minimum, prior to the deadline to amend without requesting leave of court. *Attia v. Ouraring Inc.*, 2026 WL 1805156, at *2 (N.D. Cal. June 23, 2026). Because Plaintiffs did not diligently bring the claims that they now seek to pursue, Plaintiffs cannot establish good cause to modify the scheduling order, and the Court should deny Plaintiffs' request. *See Zivkovic*, 302 F.3d at 1087; *Mammoth Recreations*, 975 F.2d at 609.

**IV.    CONCLUSION**

For the reasons set forth above, the Court should deny Plaintiffs' motion to modify the scheduling order and for leave to file their proposed First Amended Complaint.

DATED:  July 8, 2026

GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP

By: _____

STEVEN A. STEIN (SBN 287401)
Attorneys for Defendant and
Counterclaimant MEMENTUM LAB
SAS

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California  90067

56669-00002/8110915.5

23