AARON J. MOSS (190625)
aaron.moss@msk.com
JOSHUA M. GELLER (295412)
josh.geller@msk.com
ARIANA T. ADDO-YOBO (363119)
ata@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Plaintiffs
SPYDER GAMES LLC and
SPEEDY SIMULATOR GAMING, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| SPYDER GAMES LLC, a Louisiana limited liability company; and SPEEDY SIMULATOR GAMING, LLC, a Wyoming limited liability company,<br><br>　　　　Plaintiffs and Counter-Defendants,<br><br>　　v.<br><br>MEMENTUM LAB, a French company,<br><br>　　　　Defendant and Counterclaimant. | CASE NO. 5:25-CV-10248-NW<br><br>**PLAINTIFFS AND COUNTER-DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS MEMENTUM LAB'S FIRST AMENDED COUNTERCLAIM PURSUANT TO FRCP 12(B)(6)**<br><br>Hon. Noël Wise<br><br>Date:　　　　September 16, 2026<br>Time:　　　　9:00 a.m.<br>Courtroom:　　3<br><br>[*Filed concurrently with Declaration of Joshua Geller; Declaration of Janzen Madsen*] |

Mitchell
Silberberg &
Knupp LLP

**PLAINTIFFS AND COUNTER-DEFENDANTS' REPLY ISO MOTION TO DISMISS MEMENTUM LAB'S COUNTERCLAIM**

21740995.5

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................6

II.     MEMENTUM'S NAKED LICENSING OF TUNG TUNG SAHUR IN *PLANTS VS BRAINROTS* DEFEATS ITS COUNTERCLAIM. ...........................................7

    A.    The Court May Consider the License and this Argument on Reply. ......................7

    B.    Because the PvB License is a "Naked License," Mementum Forfeited Any Trademark Rights. ............................................................................................8

III.    MEMENTUM HAS NOT PLAUSIBLY ALLEGED THAT TUNG TUNG SAHUR FUNCTIONS AS A TRADEMARK. ..................................................10

    A.    That Fictional Characters Can Be Trademarks Does Not Make Tung Tung Sahur One. ......................................................................................................10

    B.    Mementum's Conclusory Allegations of Source Identification Do Not Suffice. ..12

IV.     MEMENTUM CANNOT OVERCOME *DASTAR* ...........................................13

V.      MEMENTUM CANNOT PLAUSIBLY ALLEGE LIKELIHOOD OF CONFUSION. ..17

VI.     MEMENTUM CANNOT PLEAD PRIORITY OF USE. ....................................19

VII.    CONCLUSION ................................................................................................20

CASE NO. 5:25-CV-10248-NW
**PLAINTIFFS AND COUNTER-DEFENDANTS' REPLY ISO MOTION TO DISMISS MEMENTUM LAB'S COUNTERCLAIM**

Mitchell Silberberg & Knupp LLP

21740995.5

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Antidote Int'l Films, Inc. v. Bloomsbury Publ'g, PLC,*
467 F. Supp. 2d 394 (S.D.N.Y. 2006) ................................................................................. 14

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .......................................................................................................... 10

*Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.,*
457 F.3d 1062 (9th Cir. 2006) ........................................................................................... 12

*Banga v. Experian Info. Sols., Inc.,*
2013 WL 5539690 (N.D. Cal. Sept. 30, 2013) .................................................................... 8

*Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc.,*
289 F.3d 589 (9th Cir. 2002) ......................................................................................... 8, 10

*Bobbleheads.com, LLC v. Wright Brothers, Inc.,*
259 F. Supp. 3d 1087 (S.D. Cal. 2017) .............................................................................. 15

*Brantley v. Epic Games, Inc.,*
463 F. Supp. 3d 616 (D. Md. 2020) ................................................................................... 16

*Brown v. It's Ent., Inc.,*
34 F. Supp. 2d 854 (E.D.N.Y. 1999) ................................................................................. 10

*Capcom Co. v. MKR Group, Inc.,*
2008 WL 4661479 (N.D. Cal. Oct. 20, 2008) .................................................................... 16

*Carter v. Helmsley-Spear, Inc.,*
71 F.3d 77 (2d Cir. 1995) ................................................................................................... 9

*Comedy III Prods., Inc. v. New Line Cinema,*
200 F.3d 593 (9th Cir. 2000) ............................................................................................. 17

*Conan Props., Inc. v. Conans Pizza, Inc.,*
752 F.2d 145 (5th Cir. 1985) ............................................................................................. 10

*Craigslist Inc. v. 3Taps Inc.,*
942 F. Supp. 2d 962 (N.D. Cal. 2013) ............................................................................... 15

*Dastar Corp. v. Twentieth Century Fox Film Corp.,*
539 U.S. 23 (2003) ................................................................... 13, 14, 15, 16, 17, 21

*Davis v. Blige,*
505 F.3d 90 (2d Cir. 2007) .................................................................................................. 9

Mitchell
Silberberg &
Knupp LLP

21740995.5

**PLAINTIFFS AND COUNTER-DEFENDANTS' REPLY ISO MOTION TO DISMISS
MEMENTUM LAB'S COUNTERCLAIM**

**TABLE OF AUTHORITIES**
<u>continued</u>

**Page(s)**

*DC Comics v. Towle*,
    802 F.3d 1012 (9th Cir. 2015) ................................................................................. 10, 11

*DC Comics v. Towle*,
    989 F. Supp. 2d 948 (C.D. Cal. 2013) ............................................................................ 11

*Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*,
    448 F.3d 1118 (9th Cir. 2006) ............................................................................... 8, 9, 20

*Electro Source, LLC v. Brandess-Kalt-Aetna Grp., Inc.*,
    458 F.3d 931 (9th Cir. 2006) ......................................................................................... 20

*Gensler v. Strabala*,
    764 F.3d 735 (7th Cir. 2014) ......................................................................................... 15

*Halo Mgmt., LLC v. Interland, Inc.*,
    2004 WL 1781013 (N.D. Cal. Aug. 10, 2004) .................................................................. 9

*Hana Fin., Inc. v. Hana Bank*,
    735 F.3d 1158 (9th Cir. 2013) ....................................................................................... 20

*In re GO & Assocs., LLC*,
    90 F.4th 1354 (Fed. Cir. 2024) ...................................................................................... 12

*In re Stallard*,
    2023 WL 5607600 (T.T.A.B. Aug. 28, 2023) ................................................................. 11

*Jack Daniel's Props., Inc. v. VIP Prods. LLC*,
    599 U.S. 140 (2023) ....................................................................................................... 12

*Lehrman v. Lovo, Inc.*,
    790 F. Supp. 3d 348 (S.D.N.Y. 2025) ............................................................................ 15

*McKenzie v. Artists Rights Society, Inc.*,
    757 F. Supp. 3d 427 (S.D.N.Y. 2024) ....................................................................... 14, 15

*Motul S.A. v. USA Wholesale Lubricant, Inc.*,
    686 F. Supp. 3d 900 (N.D. Cal. 2023) ........................................................................... 19

*Murray v. Cable Nat. Broad. Co.*,
    86 F.3d 858 (9th Cir. 1996) ........................................................................................... 17

*Nintendo of America, Inc. v. Storman*,
    2021 WL 4780329 (C.D. Cal. Aug. 5, 2021) .................................................................. 15

Mitchell
Silberberg &
Knupp LLP

21740995.5

**PLAINTIFFS AND COUNTER-DEFENDANTS' REPLY ISO MOTION TO DISMISS
MEMENTUM LAB'S FIRST AMENDED COUNTERCLAIM**

**TABLE OF AUTHORITIES**
<u>continued</u>

**Page(s)**

*Park v. Skidmore, Owings & Merrill LLP*,
  2019 WL 9228987 (S.D.N.Y. Sept. 30, 2019) ........................................................................ 15

*Parrino v. FHP, Inc.*,
  146 F.3d 699 (9th Cir. 1998) ...................................................................................................... 7

*Pellegrino v. Epic Games, Inc.*,
  451 F. Supp. 3d 373 (E.D. Pa. 2020) ...................................................................................... 16

*Provenz v. Miller*,
  102 F.3d 1478 (9th Cir. 1996) ..................................................................................................... 8

*Soo Park v. Thompson*,
  851 F.3d 910 (9th Cir. 2017) .................................................................................................... 18

*Sybersound Recs., Inc. v. UAV Corp.*,
  517 F.3d 1137 (9th Cir. 2008) .................................................................................. 13, 14, 16, 17

*To-Ricos, Ltd. v. Productos Avícolas del Sur, Inc.*,
  118 F.4th 1 (1st Cir. 2024) ........................................................................................................ 20

*Toho Co. v. William Morrow & Co.*,
  33 F. Supp. 2d 1206 (C.D. Cal. 1998) ................................................................................ 10, 11

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) ...................................................................................................... 7

*Vericool World, LLC v. Igloo Prods. Corp.*,
  175 F.4th 1045 (9th Cir. 2026) ................................................................................................. 17

*Walt Disney Co. v. Powell*,
  897 F.2d 565 (D.C. Cir. 1990) .................................................................................................. 11

*Warren v. Fox Fam. Worldwide, Inc.*,
  171 F. Supp. 2d 1057 (C.D. Cal. 2001), aff'd, 328 F.3d 1136 (9th Cir. 2003) ......................... 7

**STATUTES**

15 U.S.C. § 1055 ............................................................................................................................ 8

**OTHER AUTHORITIES**

Rule 12(b)(6) ................................................................................................................................ 17

Mitchell
Silberberg &
Knupp LLP

21740995.5

**PLAINTIFFS AND COUNTER-DEFENDANTS' REPLY ISO MOTION TO DISMISS
MEMENTUM LAB'S FIRST AMENDED COUNTERCLAIM**

## I.    <u>INTRODUCTION</u>

This motion is not about whether characters can *ever* serve as trademarks—they can. Rather, it is about whether *this* character, a viral meme circulated by millions of people around the world before Mementum ever attempted to commercialize it, can plausibly function as a trademark in the minds of consumers, and whether Plaintiffs' depiction of the character in their own video game infringes Mementum's purported rights. Plaintiffs brought their motion to dismiss Mementum's First Amended Counterclaim (the "Counterclaim") because Mementum's allegations failed to state claims for trademark infringement. Since filing that motion, Plaintiffs have discovered a second defect in certain of Mementum's key factual allegations: they are contradicted by the very license on which Mementum relies.

Mementum points to its "thriving commercial licensing program" as proof that Tung Tung Sahur is a trademark. One of the licenses it cites is for the Roblox game *Plants Vs Brainrots*, which it claims is a trademark license by which Mementum receives "royalty payments" (Dkt. No. 25, ¶ 16(c)) and through which it "exercises quality control over [the] licensee's use" (*id.* ¶ 28). On July 7, 2026, Plaintiffs obtained a copy of that license from the game's developer. Declaration of Joshua Geller, ¶¶ 2–3; Declaration of Janzen Madsen, ¶¶ 1–3. It bears no resemblance to the license Mementum pled. The agreement is a royalty-free settlement of an allegedly infringing use of a "fictional character," with no quality-control provisions, that gives the developer the right to "edit/modify the Character." *Id.*, Ex. A. To the extent it concerns trademarks at all, it is a naked license, which under controlling Ninth Circuit law effects an abandonment of any trademark rights and precludes any infringement claims. This agreement defeats Mementum's Counterclaim on its own.

This new evidence is not required for the Court to dismiss Mementum's claims, however. Mementum's repeated refrain in its Opposition that trademark disputes are often fact intensive does not immunize the Counterclaim from dismissal where its own allegations defeat it as a matter of law. Because Mementum cannot overcome any of the legal defects identified in the Motion to Dismiss, Plaintiffs respectfully request that the Counterclaim be dismissed with prejudice.

**PLAINTIFFS AND COUNTER-DEFENDANTS' REPLY ISO MOTION TO DISMISS MEMENTUM LAB'S COUNTERCLAIM**

## II. MEMENTUM'S NAKED LICENSING OF TUNG TUNG SAHUR IN *PLANTS VS BRAINROTS* DEFEATS ITS COUNTERCLAIM.

### A. The Court May Consider the License and this Argument on Reply.

As Mementum acknowledges in its Opposition to Plaintiffs' Motion for Leave to Amend its Complaint (Dkt. No. 38, at n.1), a "district court ruling on a motion to dismiss may consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [] pleading." *Parrino v. FHP, Inc.*, 146 F.3d 699, 705 (9th Cir. 1998) (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)). Under the incorporation-by-reference doctrine, courts can consider documents "crucial to the [] claims, but not explicitly incorporated in [the pleading]" to effectuate the "policy concern" of preventing the pleading party from "deliberately omitting references to documents upon which their claims are based." *Id.* at 706; *see also Warren v. Fox Fam. Worldwide, Inc.*, 171 F. Supp. 2d 1057, 1064 (C.D. Cal. 2001) (considering documents referenced in a complaint on a Rule 12 motion), aff'd, 328 F.3d 1136 (9th Cir. 2003).

The *Plants Vs Brainrots* license (the "PvB License") forms an integral part of Mementum's Counterclaim. Mementum identifies it as an "October 11, 2025 . . . worldwide license authorizing the use of Tung Tung Sahur." Dkt. No. 25, ¶ 16(c). Mementum repeatedly cites the PvB License as one of only five licenses forming the basis for its claims, claiming that the use by its "licensees of the Tung Tung Sahur mark in commerce in the United States inures to [Mementum's] benefit pursuant to the related company doctrine" and entitles Mementum to bring its trademark claims. *Id.*, ¶ 28; *see also* ¶¶ 29, 37; *see United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (a document the plaintiff refers to extensively or that forms the basis of the claim may be treated as part of the complaint, its content assumed true). The PvB License is authenticated by the concurrently filed declaration of Janzen Madsen, the principal of the developer of *Plants Vs Brainrots*, and on its face is the same October 11, 2025 license described in paragraph 16 of the Counterclaim.

Plaintiffs obtained the license only after filing their motion to dismiss, from Mr. Madsen's

Mitchell
Silberberg &
Knupp LLP

21740995.5

counsel on July 7, 2026. Geller Decl., ¶ 2. The Court may consider this after-acquired evidence if Mementum is given an opportunity to reply. *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996); *Banga v. Experian Info. Sols., Inc.*, 2013 WL 5539690, at *3 (N.D. Cal. Sept. 30, 2013) ("If a party raises a new argument or presents new evidence in a reply brief, a court may consider these matters only if the adverse party is given an opportunity to respond."). Plaintiffs respectfully request that the Court afford Mementum that opportunity, provided the sur-reply is limited to addressing this new issue.

### B. Because the PvB License is a "Naked License," Mementum Forfeited Any Trademark Rights.

Mementum's theory of a valid trademark rests on the related-company doctrine, under which a licensee's use inures to the licensor only if the licensor controls the quality of the goods and services sold under the mark. 15 U.S.C. § 1055; *Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc.*, 289 F.3d 589, 595–96 (9th Cir. 2002). Control is required because a mark assures the public that goods sold under it are "consistent and predictable" in quality; a trademark owner who licenses its mark without controlling quality engages in "naked licensing" and "forfeit[s] its rights in the mark." *Id.* at 596, 598. Even a single "naked license" is enough to effectuate a forfeiture, because such licensing is "inherently deceptive." *Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1131 (9th Cir. 2006) (quoting *Barcamerica*, 289 F.3d at 598). To rely on the PvB License, then, Mementum must plausibly allege that it controlled the quality of the licensee's use. The license forecloses that claim.

On its face, the agreement is a one-year, royalty-free license granted in exchange for nothing but a single lump-sum payment of €25,000, in full and final settlement of "any and all prior . . . use" of a "fictional character" the licensee's game was *already* exploiting. Madsen Decl., Ex. A §§ 2.1, 2.3, 3.1. The agreement never uses the word "trademark" at all, but simply includes a depiction of the Tung Tung Sahur image that Mementum claims as its trademark. It recites that Mementum holds "the proprietary rights over an original fictional character" and licenses the right to "use, reproduce, represent, adapt, and integrate" that character into a single video game—the

**PLAINTIFFS AND COUNTER-DEFENDANTS' REPLY ISO MOTION TO DISMISS MEMENTUM LAB'S FIRST AMENDED COUNTERCLAIM**

21740995.5

vocabulary of copyright. *Id.*, Recitals & § 2.1; *see infra*, Part IV. Its royalty-free structure leaves Mementum no continuing economic stake in the licensee's goods, a strong indicator that an arrangement is not a controlled trademark license. *Bazaar Del Mundo*, 448 F.3d at 1130 (finding a naked license where "[n]one of the terms typical of a trademark licensing agreement, such as payment of royalties, are present").

The license does not reserve Mementum any right to control the quality of the licensee's game or its depiction of the character. It provides for no inspection, no approval, no quality specifications, and specifically states that the licensee "shall be permitted to edit/modify the Character to the extent necessary to integrate in the Game in a manner stylistically consistent with the Game." Ex. A, § 2.1. The one provision addressed to the manner of the licensee's use is a moral-rights clause: the licensee must use the character "in a manner consistent with the moral rights of the original author" and may not "distort or misrepresent the Character" without Mementum's consent. Ex. A § 4.2. Moral rights are personal to the author (here, the content creator Noxa); they do not belong to Mementum. *See Carter v. Helmsley-Spear, Inc.*, 71 F.3d 77, 81 (2d Cir. 1995) (moral rights are "of a spiritual, non-economic and personal nature" and protect the "artist's personality" embodied in the work). Regardless, the license places no "distinct or cognizable restriction on the quality of goods." *Halo Mgmt., LLC v. Interland, Inc.*, 2004 WL 1781013, at *4 (N.D. Cal. Aug. 10, 2004) (holding a license "naked" "[b]y its own terms" despite the licensee's obligation to use "reasonable commercial efforts to maintain the positive business value" of the mark).

Nor can Mementum argue that it exercises any control over the exploitation in practice. On its face, the license states that it settles "any and all ***prior*** … use" of the character, which the licensee's game was already exploiting. Ex. A §§ 2.1, 3.1. A licensor that settles a use after the fact did not control the quality of that use as it was made. The settlement is therefore evidence that no contemporaneous control existed. *See Davis v. Blige*, 505 F.3d 90, 103 (2d Cir. 2007) ("A retroactive license or assignment purports to authorize a past use that was originally unauthorized."); Mot., Dkt. No. 32, at § III.D (same point as to the retroactively licensed *Tung*

CASE NO. 5:25-CV-10248-NW

**PLAINTIFFS AND COUNTER-DEFENDANTS' REPLY ISO MOTION TO DISMISS MEMENTUM LAB'S FIRST AMENDED COUNTERCLAIM**

Mitchell
Silberberg &
Knupp LLP

21740995.5

*Tung Tung Sahur* game). Measured against the license it describes, Mementum's allegation that it "exercises quality control over each licensee's use" is a legal conclusion the license refutes. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

Because the PvB License is quintessentially a "naked license"—a retroactive settlement allowing royalty-free exploitation with no quality control—Mementum has abandoned any claim to trademark rights, and its claims fail as a matter of law. *Barcamerica*, 289 F.3d at 596, 598.

## III.    MEMENTUM HAS NOT PLAUSIBLY ALLEGED THAT TUNG TUNG SAHUR FUNCTIONS AS A TRADEMARK.

### A.    That Fictional Characters Can Be Trademarks Does Not Make Tung Tung Sahur One.

In response to Plaintiffs' argument that Tung Tung Sahur is not a valid trademark, Mementum chiefly attacks a strawman—arguing that characters *can* serve as trademarks, which Plaintiffs do not dispute. But that does not mean that *this* fictional character has been commercially exploited in a manner sufficient to create such rights. Mementum cites a string of authorities dealing with fictional characters that have become trademarks, but in each of those cases, the character was affixed to or used to sell *other* goods and services: replica automobiles advertised and sold as "Batmobiles" (*DC Comics v. Towle*, 802 F.3d 1012, 1018 (9th Cir. 2015)); the registered GODZILLA word mark printed on the cover of a competing book (*Toho Co. v. William Morrow & Co.*, 33 F. Supp. 2d 1206, 1209 (C.D. Cal. 1998)); a restaurant branded and operated as "Conans Pizza" (*Conan Props., Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 147 (5th Cir. 1985)); an unlicensed Arthur costume rented for a store promotion (*Brown v. It's Ent., Inc.*, 34 F. Supp. 2d 854, 859 (E.D.N.Y. 1999)). The Counterclaim, by contrast, alleges that Tung Tung Sahur appears within video games as a character players encounter, and that Mementum licenses the character "for use in video games." Dkt. No. 25, ¶¶ 16(a)–(f), 28. Those allegations describe a character used as *expressive content*, not a designation identifying the source of anyone's goods.

What's more, Mementum mischaracterizes several of the cited cases. It cites a district court decision purportedly finding that t-shirts bearing images of Mickey and Minnie Mouse

Mitchell Silberberg & Knupp LLP

21740995.5

**PLAINTIFFS AND COUNTER-DEFENDANTS' REPLY ISO MOTION TO DISMISS MEMENTUM LAB'S FIRST AMENDED COUNTERCLAIM**

constituted trade dress infringement. But the Court of Appeals *vacated* the judgment in part, limiting the infringement finding to only two copyrights that had been directly infringed, and said nothing whatsoever about a trade dress violation. *Walt Disney Co. v. Powell*, 897 F.2d 565, 570 (D.C. Cir. 1990) ("[W]e find that Powell's mouse-face shirts infringed only two of Disney's works."). Similarly, Mementum suggests that in *Towle*, the Ninth Circuit "recogniz[ed] the Batmobile as a protectable character under both copyright and trademark law." Dkt. No. 37, at 14:7–11. It did not. The Ninth Circuit declined to reach the merits of the trademark infringement claim at all, except to affirm the district court's ruling that laches did not bar the claim. 802 F.3d at 1026–27. The district court, in turn, found that the plaintiff "ha[d] valid trademark rights" because it held federal registrations for the Bat Emblem and the BATMAN and BATMOBILE word marks, "registration of a trademark creates a rebuttable presumption that the mark is valid," and the defendant "put[] forth no evidence or argument to demonstrate that these marks are invalid." 989 F. Supp. 2d 948, 956 (C.D. Cal. 2013). The infringement at issue was the defendant's use of the Bat Emblem and BATMOBILE word mark placed on automobile parts and accessories. *Id.* at 957–59. The court never suggested that the Batmobile *as a character* constituted a trademark.

Finally, Mementum cites two cases for the proposition that a character mark "can be source identifiers for the character itself." Dkt. No. 37, at 17:13–19. That is not what those cases hold, either. In *Toho*, the reference to "the product (the Godzilla character)" appears in the context of nominative fair use, where the validity of Toho's mark was conceded and the sole question was whether a book about Godzilla could identify its subject without using the name. *Toho*, 33 F. Supp. 2d at 1211. The parties never disputed the mark's validity, a trademark built over decades of licensing and merchandising across numerous classes of goods and services. The district court did not discuss the idea, much less hold, that a fictional character could be a source identifier for itself. And *In re Stallard* recognized only that a character can serve a dual function—source identifier and creative character—not that a character is a source identifier for itself. 2023 WL 5607600, at *2 (T.T.A.B. Aug. 28, 2023).

//

Mitchell
Silberberg &
Knupp LLP

21740995.5

CASE NO. 5:25-CV-10248-NW
**PLAINTIFFS AND COUNTER-DEFENDANTS' REPLY ISO MOTION TO DISMISS MEMENTUM LAB'S FIRST AMENDED COUNTERCLAIM**

**B.    Mementum's Conclusory Allegations of Source Identification Do Not Suffice.**

Other than incorrectly asserting that Tung Tung Sahur can serve as a source identifier of itself, Mementum chiefly argues that its commercial licensing of Tung Tung Sahur, by itself, establishes that the character is a trademark. Dkt. No. 37, at 17–18 (that "sophisticated companies like Epic Games" pay for the character "underscores" that it is a source identifier). That inference incorrectly substitutes the licensor's own conduct for the consumer perception actually required to create trademark rights. On Mementum's logic, every commercially licensed character would become a trademark automatically upon licensing, without regard to whether any consumer understands the character to identify a source.

A trademark "tells the public who is responsible for a product." *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 146 (2023). It "assures a potential customer that this item . . . is made by the same producer as other similarly marked products." *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1067 (9th Cir. 2006); *see In re GO & Assocs., LLC*, 90 F.4th 1354, 1356 (Fed. Cir. 2024) ("[W]hether a proposed mark is a source identifier . . . [depends] on . . . how it is perceived by consumers."). Nothing Mementum pleads is consumer-facing. Paragraphs 16(c)–(f) and 28 of the Counterclaim describe license negotiations, compensation, and quality control—Mementum's side of its own contracts. A consumer playing Fortnite perceives none of it. The Counterclaim contains no allegation that anything a consumer actually encounters—whether in the games or in advertising for them—presents Tung Tung Sahur as authorized or sponsored, connects one appearance to another, or gives a consumer reason to believe a single entity stands behind these uses.

In each case Mementum cites in which a character also served as a trademark, the character reached consumers as consistent branding long before the accused use. Mementum states the operative premise itself: for such characters, "the relevant public associates them with a single commercial gatekeeper." Dkt. No. 37, at 18:23–24. The Counterclaim contains no such allegation for Tung Tung Sahur, and no facts from which it could be inferred. Its own chronology runs the other way: Tung Tung Sahur went viral as freely circulating content after Noxa posted the

Mitchell
Silberberg &
Knupp LLP

21740995.5

12                    CASE NO. 5:25-CV-10248-NW

**PLAINTIFFS AND COUNTER-DEFENDANTS' REPLY ISO MOTION TO DISMISS MEMENTUM LAB'S FIRST AMENDED COUNTERCLAIM**

February 28, 2025 video and was "a famous, iconic character, including in the United States" by May 2025. Dkt. No. 25, ¶ 4. Apart from a one-day hackathon (*id.* ¶ 16(a)), the first "authorized" exploitation pleaded is a bare consent Noxa gave on May 5, 2025 for a single mobile game. *Id.* ¶ 16(b). Plaintiffs released their Game, with its depiction of Tung Tung Sahur, on May 16, 2025. *Id.* ¶ 6. The Counterclaim alleges no further licensed use by Mementum until October 2025; Fortnite followed in 2026. *Id.* ¶¶ 16(c)–(f). This sequence of events leads to only one possible inference: Tung Tung Sahur became known to consumers as a viral meme character, owned by no one in particular, long before any one source attempted to "commercial[ly] gatekeep" its exploitation.

Other than this timeline, the Counterclaim's only public-facing allegations concern *authorship*, not commercial exploitation: media coverage that "widely detailed Noxa's creation of the character and its association with him" (Dkt. No. 37, at 19:8–9; Dkt. No. 25, ¶ 26(b)), and an April 2025 hackathon associating the character with its creator (Dkt. No. 25, ¶ 16(a)). Public knowledge of who created a character is recognition of authorship, and trademark claims built on confusion as to authorship are foreclosed by *Dastar*. *See infra*, Part IV. The Counterclaim pleads a famous character, public knowledge of the character's creator, and a post-hoc licensing program arising months after Plaintiffs' use of the character in their Game; none of that plausibly alleges that Tung Tung Sahur identifies a single source of goods.

## IV.    MEMENTUM CANNOT OVERCOME *DASTAR*.

*Dastar* forecloses trademark claims premised on confusion as to the origin of creative content. *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003). And the Ninth Circuit confirmed that this reasoning applies to claims premised on confusion as to the *licensing status* of creative content. *Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008). In other words, a trademark claim premised on consumer confusion about whether creative content has been properly licensed is not actionable.

In the face of this dispositive authority, Mementum's Opposition recasts the Counterclaim as alleging confusion "as to sponsorship, affiliation, or approval—whether the Game is authorized or endorsed by Noxa and/or Mementum." Dkt. No. 37, at 21:4–6. But the only confusion that the

Mitchell
Silberberg &
Knupp LLP

21740995.5

13    CASE NO. 5:25-CV-10248-NW

**PLAINTIFFS AND COUNTER-DEFENDANTS' REPLY ISO MOTION TO DISMISS MEMENTUM LAB'S FIRST AMENDED COUNTERCLAIM**

Counterclaim ever alleges is a consumer's belief about **permission to use Tung Tung Sahur**. Consumers allegedly believed that "Tung Tung Sahur's use in the Game was authorized or endorsed by Noxa and/or Defendant"; that "the Game itself was associated with and/or authorized or supported by Noxa and/or Defendant"; and that, "as with" the games Mementum had licensed, "the use of the name and image of Tung Tung Sahur in the Game was authorized." Dkt. No. 25, ¶ 29. And in each instance, the act said to have caused that belief is "Plaintiffs' prominent use of the name and image of Tung Tung Sahur in their Game"; the paragraph identifies no statement, label, or advertisement concerning Noxa or Mementum. *Id.* Confusion about whether the use of content was "authorized" or "licensed" is confusion about the licensing status of content, whatever label the Opposition attaches to it.

These allegations are even *weaker* than those foreclosed by *Sybersound*—in that case, defendants had affirmatively represented to customers that their karaoke records were properly licensed, and the Ninth Circuit held that even those affirmative "misrepresentations about copyright licensing status" could not support a Lanham Act claim. 517 F.3d at 1140–41, 1144. Mementum alleges no misrepresentation at all. Its theory is that consumers saw the character in the Game and inferred on their own that the use must have been licensed. If an affirmative misrepresentation that content is licensed cannot support a Lanham Act claim, a consumer's unprompted inference to the same effect cannot support one either.

Courts have consistently rejected the relabeling Mementum attempts. A claim that a defendant falsely represented an "affiliation" with the author of a creative work is barred for the same reason a false authorship claim is barred, because "the holding of *Dastar* would be meaningless if a false authorship claim could be recast in this manner." *Antidote Int'l Films, Inc. v. Bloomsbury Publ'g, PLC*, 467 F. Supp. 2d 394, 399 (S.D.N.Y. 2006). In *McKenzie v. Artists Rights Society, Inc.*, 757 F. Supp. 3d 427 (S.D.N.Y. 2024), the court dismissed with prejudice a claim "for false representation of 'affiliation' between the author and a distributor of communicative products," including claims pursued through "a false assertion of license." *Id.* at 436. And in *Lehrman v. Lovo, Inc.*, 790 F. Supp. 3d 348 (S.D.N.Y. 2025), voice-over actors

**PLAINTIFFS AND COUNTER-DEFENDANTS' REPLY ISO MOTION TO DISMISS MEMENTUM LAB'S FIRST AMENDED COUNTERCLAIM**

Mitchell
Silberberg &
Knupp LLP

21740995.5

alleged that AI-generated copies of their voices confused consumers about affiliation and licensing; the court dismissed the Lanham Act claims: "misrepresentations about licensing are not actionable under the Lanham Act." *Id.* at 371, 373 n.15 (citing *Sybersound*, 517 F.3d at 1144).

Mementum's Opposition counters that false sponsorship and endorsement confusion remain actionable after *Dastar*. That is true, but such claims require some misrepresentation *beyond* mere unlicensed use of content, such as an affirmative statement of sponsorship. *E.g.*, *Bobbleheads.com, LLC v. Wright Brothers, Inc.*, 259 F. Supp. 3d 1087, 1098 (S.D. Cal. 2017) (defendants "misrepresented that their goods were somehow endorsed by the Trump organization as an 'official' product of the campaign"—a representation the court held "unrelated to the authorship or origin"); *Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962, 978 (N.D. Cal. 2013) (finding that a defendant's use of the "craigslist" mark to pass off defendant's product as being endorsed by Craigslist was actionable, while a claim that defendant was "presenting Craigslist's content as [its] own" would not be).

The Counterclaim alleges nothing of the kind; its allegation is solely that consumers who saw the character in the Game inferred that the use was licensed. By contrast, the claim in *Gensler v. Strabala*, 764 F.3d 735 (7th Cir. 2014) survived *Dastar* only because "the defendant explicitly represented that he had designed the buildings in issue." *See Park v. Skidmore, Owings & Merrill LLP*, 2019 WL 9228987, at *10 (S.D.N.Y. Sept. 30, 2019) (distinguishing *Gensler*). *Nintendo of America, Inc. v. Storman* drew the same line: the trademark claim proceeded as to Nintendo's marks used "on Defendant's website to promote the sale of the 'pirated games,'" while the claim based on the display of those marks "when copies of Nintendo's video games are played" was "more accurately conceived of as attacking unauthorized copying" and failed under *Dastar* and *Slep-Tone*. 2021 WL 4780329, at *6 (C.D. Cal. Aug. 5, 2021). The Counterclaim's confusion theory rests entirely on the character's appearance in the Game; a false sponsorship or affiliation claim requires more. *See also Capcom Co. v. MKR Group, Inc.*, 2008 WL 4661479, at *12 (N.D. Cal. Oct. 20, 2008) (finding that the claimant had pled "source identifying elements," including the use of the author's name, a similar title, and similar packaging and design, beyond mere

**PLAINTIFFS AND COUNTER-DEFENDANTS' REPLY ISO MOTION TO DISMISS MEMENTUM LAB'S FIRST AMENDED COUNTERCLAIM**

Mitchell
Silberberg &
Knupp LLP

21740995.5

copying of content, but still finding no confusion as a matter of law).

The false-endorsement decisions follow the same pattern, each requiring the added element of a claim of misappropriation of the author's name and likeness. *E.g.*, *Pellegrino v. Epic Games, Inc.*, 451 F. Supp. 3d 373, 385–87 (E.D. Pa. 2020) (dismissing claim based on use of creative content, but allowing claim to survive as to use of the musician's likeness); *cf. Brantley v. Epic Games, Inc.*, 463 F. Supp. 3d 616, 631 (D. Md. 2020) (dismissing false endorsement claim where allegation of misappropriation of plaintiffs' likeness was conclusory and "would lead to the type of conflict between the Lanham Act and the copyright law that the Supreme Court sought to avoid in *Dastar*."). Here, there was no misappropriation of the author's (i.e., Noxa's) name and likeness. Only the fictional character Tung Tung Sahur appears in the Game.

The Opposition's efforts to distinguish binding Ninth Circuit authority all fail. It attempts to distinguish *Slep-Tone* on the ground that the karaoke patrons there never saw the defendant's digital files, whereas Plaintiffs "prominently featur[ed]" Tung Tung Sahur in the Game and sold the character to consumers. Dkt. No. 37, at 22–23. But neither allegation describes anything other than exploiting the content itself. The character is displayed within the Game as part of playing it, and what a consumer "purchase[s]"[1] is the in-game character. Dkt. No. 25, ¶¶ 6, 29. *Pellegrino* dismissed the false designation claim on materially identical facts: the dance move there was "the creative idea underlying Epic's tangible good, the [] emote [for sale in the game]." 451 F. Supp. 3d at 385.

The Opposition tries to distinguish *Sybersound* by misreading it—Mementum quotes a passage from the portion of the opinion explaining why various state law claims would have been preempted by the Copyright Act because the plaintiff "would have to prove that copyright infringement occurred." Dkt. No. 37, at 23 (quoting 517 F.3d at 1151). That statement had nothing to do with the trademark infringement claims, which were dismissed under *Dastar*, not preemption grounds. And the Opposition handwaves away *Vericool World, LLC v. Igloo Prods. Corp.*, 175 F.4th 1045, 1050 (9th Cir. 2026) because there the alleged confusion did not pertain to "the

---

[1] Plaintiffs deny this allegation, but must accept it as true for purposes of this Motion.

**PLAINTIFFS AND COUNTER-DEFENDANTS' REPLY ISO MOTION TO DISMISS MEMENTUM LAB'S FIRST AMENDED COUNTERCLAIM**

Mitchell Silberberg & Knupp LLP

21740995.5

characteristics of the product itself." Dkt. No. 37, at 23. But that is the case here too—the licensing status of content is not a "characteristic[] of the good itself." *Sybersound*, 517 F.3d at 1144. Finally, Mementum argues that *Comedy III* is inapplicable because there, the plaintiff did not have a valid trademark (Dkt. No. 37, at 22). That assumes the very question this motion presents. *Comedy III* rejected the plaintiff's attempt to treat the elements of a creative clip—the Stooges' "name, voices, images, and act"—as "a collection of trademarks," and held that "the Lanham Act cannot be used to circumvent copyright law." *Comedy III Prods., Inc. v. New Line Cinema*, 200 F.3d 593, 595 (9th Cir. 2000).

The only confusion the Counterclaim pleads is a belief that the use of the character was authorized. Because that belief is not actionable under the Lanham Act, Mementum's claims fail.

## V.    <u>MEMENTUM CANNOT PLAUSIBLY ALLEGE LIKELIHOOD OF CONFUSION.</u>

Mementum's Counterclaim also fails for the independent reason that Mementum has not plausibly alleged that Plaintiffs' depiction of Tung Tung Sahur is likely to cause consumer confusion. Mementum devotes much of this section to an argument Plaintiffs never made. Plaintiffs do not ask the Court to weigh the *Sleekcraft* factors or to resolve any factual dispute. The motion asks whether the confusion the Counterclaim pleads is of a kind the Lanham Act makes actionable, and whether, once its legal conclusions are set aside, the remaining allegations make confusion plausible. Both questions are properly resolved on a motion under Rule 12(b)(6). *Murray v. Cable Nat. Broad. Co.*, 86 F.3d 858, 861 (9th Cir. 1996) (affirming dismissal for failure to state a claim based on a finding of "no likelihood of consumer confusion as a matter of law").

First, the confusion the Counterclaim pleads is about authorization or permission and is not actionable under *Dastar*. *See supra*, Part IV. Second, the factor-by-factor analysis Mementum presents does not expand the bare-bones factual allegations, because each factor cites back to the same two contentions: Tung Tung Sahur is well known, and Tung Tung Sahur appears in video games. No pleaded fact alleges that consumers would be confused by seeing a well-known character appear in different video games. Indeed, the Counterclaim's own timeline forecloses any inference of confusion.

Mitchell
Silberberg &
Knupp LLP

21740995.5

17    CASE NO. 5:25-CV-10248-NW

**PLAINTIFFS AND COUNTER-DEFENDANTS' REPLY ISO MOTION TO DISMISS MEMENTUM LAB'S FIRST AMENDED COUNTERCLAIM**

The Counterclaim alleges that confusion was likely based on the use of Tung Tung Sahur in the Game dating back to May 16, 2025. Dkt. No. 25, ¶¶ 6, 29. The mechanism it supplies is that consumers knew Tung Tung Sahur from "many popular games that many consumers of the Game also likely play, including *Plants Vs Brainrots*, *Pudgy Party* and *Fortnite*," and assumed that, "as with those games," the character's use in the Game was authorized. *Id.* ¶ 29. But none of those other licensed uses existed until *months* after the Game began depicting Tung Tung Sahur. *Plants Vs Brainrots* was licensed on October 11, 2025; *Pudgy Party* on December 8, 2025; *Fortnite* on January 14, 2026, with the Tung Tung Sahur skins launching on April 4, 2026. *Id.* ¶¶ 16(c)–(e). The experience Paragraph 29 describes was impossible for anyone playing the Game in 2025, because the licensed games from which consumers supposedly drew their assumption of authorization did not yet exist. Mementum makes a similarly impossible allegation when it claims that consumers would be confused when purchasing Tung Tung Sahur in the Game, thinking it was "similar to the skins in Fortnite"—merchandise that launched eleven months after the Game began depicting Tung Tung Sahur. *Id.* ¶ 29. Consumer perception could not have been "shaped by [a licensing] program" that did not yet exist. *See* Dkt. No. 37, at 27:2–5.

What remains is Paragraph 29's final sentence: on information and belief, "a substantial number of consumers who encountered the name and image of Tung Tung Sahur in the Game believed that Plaintiffs' use . . . was authorized, sponsored or licensed by Noxa and/or Defendant." That is a conclusion about the mental states of unnamed consumers with no factual underpinning. Mementum blames this allegation's lack of substance on its own lack of access to information. Dkt. No. 37, at 26. But that excuse applies when "facts are peculiarly within the possession and control of the defendant." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017). Here, it is implausible to suggest that consumer sentiments—most likely to be expressed in public fora and social media posts—would be inaccessible to Mementum, particularly given the sheer volume of online engagement that the Brainrots engender. Dkt. No. 25, ¶ 26(b) (describing the original Tung Tung Sahur video as having 134 million views). This is the identical fact pattern addressed in *Motul S.A. v. USA Wholesale Lubricant, Inc.*, 686 F. Supp. 3d 900 (N.D. Cal. 2023), where a

**PLAINTIFFS AND COUNTER-DEFENDANTS' REPLY ISO MOTION TO DISMISS MEMENTUM LAB'S FIRST AMENDED COUNTERCLAIM**

formulaic recitation of confusion doomed a trademark infringement claim at the pleading stage even where the marks were "identical in sight, sound, and meaning." *Id.* at 914–15.

## VI.    MEMENTUM CANNOT PLEAD PRIORITY OF USE.

Even if Tung Tung Sahur could function as a trademark, Mementum's Counterclaim would fail independently for lack of priority. Only two alleged uses predate May 16, 2025, the date Plaintiffs released *Steal a Brainrot*. Dkt. No. 25, ¶¶ 6, 16(a)–(b). The first is the April 22, 2025 "hackathon." As alleged, the event was a one-day contest allowing members of the public to create a video game featuring Tung Tung Sahur; the contest received 26 submissions and awarded $2,000 in cash prizes. *Id.* ¶ 16(a). On its face, that is not a use of Tung Tung Sahur in commerce; it is an invitation to allow members of the public to use Tung Tung Sahur for the chance at a modest cash prize. Moreover, there are no allegations in the Counterclaim that this contest even took place in the United States; the Opposition simply asserts, without citation to the Counterclaim, that the platform where the contest occurred "operates globally, including in the United States," and that "U.S.-based players could access and play" the resulting games. Dkt. No. 37, at 29–30.

The second purported use was the *Tung Tung Tung Sahur* mobile game. Here again, Mementum's own allegations and timeline are fatal: an (unaffiliated) developer built the game independently and asked Noxa on May 4, 2025 for consent to release it; Noxa consented on May 5; the game was released "on or around that date"; Mementum "subsequently" sent the developer an authorizing letter; and Mementum and the developer then entered an undated license "retroactive to May 1, 2025." Counterclaim ¶ 16(b). The consent, as described, cannot establish priority because it was not a controlled license. As with the naked license in connection with *Plants Vs Brainrots*, discussed *supra*, Part II, the *Tung Tung Tung Sahur* mobile game was never subject to any quality control by Mementum—it couldn't have been, because it was developed independently and authorized only retroactively. The related-company doctrine on which Mementum relies for priority applies only to use of a mark "by a person 'controlled by the registrant or applicant for registration.'" *Bazaar Del Mundo*, 448 F.3d at 1125, 1128 (citing 15 U.S.C. § 1055); *see also To-Ricos, Ltd. v. Productos Avícolas del Sur, Inc.*, 118 F.4th 1, 19 n.29

**PLAINTIFFS AND COUNTER-DEFENDANTS' REPLY ISO MOTION TO DISMISS MEMENTUM LAB'S FIRST AMENDED COUNTERCLAIM**

Mitchell Silberberg & Knupp LLP

21740995.5

(1st Cir. 2024) ("[N]aked licensing agreements cannot confer priority rights to the licensor."). Because there was no commercial exploitation of Tung Tung Sahur by Mementum or a licensee under its control prior to the release of the Game, Mementum cannot establish priority.

Mementum argues that *Plaintiffs* cannot show continuous use because they temporarily removed the character from the Game after Mementum's cease-and-desist letter, and that its own use during that interregnum lets it seize priority. Dkt. No. 37, at 24–25. First, that argument is misdirected. Plaintiffs assert no trademark rights in Tung Tung Sahur and need none to prevail on this motion. Priority is an element of Mementum's claims, measured against the date the allegedly infringing use began—here, May 16, 2025. Dkt. No. 25, ¶ 6. The continuity cases Mementum cites all concern a party attempting to establish its own trademark rights, and none holds that interruptions in an accused party's use can supply the priority a claimant's case is missing.

Even on its own terms, the theory fails. The Counterclaim alleges that Plaintiffs "discontinued their use for four months, from approximately September 13, 2025 to January 13, 2026," following Mementum's cease-and-desist letter, and again "since at least May 1, 2026," after Mementum sent a takedown notice to Roblox. Dkt. No. 25, ¶ 15; *see id.* ¶ 16(g). Trademark rights are forfeited by nonuse only upon "discontinuance of trademark use" coupled with "intent not to resume such use." *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1167–68 (9th Cir. 2013). Good-faith pauses for "legitimate business reasons"—including pauses pending the resolution of disputes over rights—forfeit nothing. *Electro Source, LLC v. Brandess-Kalt-Aetna Grp., Inc.*, 458 F.3d 931, 938–39 (9th Cir. 2006). The interruptions here were each of Mementum's own making, and it would be a perverse result if temporary compliance with a cease-and-desist letter effectuated a forfeiture of any defense based on lack of priority.

## VII.    CONCLUSION

The defects in Mementum's counterclaims are legal, not a matter of missing facts: no additional pleading can convert a viral meme into a source identifier, cure the *Dastar* bar, or manufacture priority the alleged chronology forecloses. Further amendment would be futile. Plaintiffs respectfully request that the Court dismiss Mementum's Counterclaim with prejudice.

Mitchell
Silberberg &
Knupp LLP

21740995.5

20                    CASE NO. 5:25-CV-10248-NW
**PLAINTIFFS AND COUNTER-DEFENDANTS' REPLY ISO MOTION TO DISMISS MEMENTUM LAB'S FIRST AMENDED COUNTERCLAIM**

DATED: JULY 13, 2026                          MITCHELL SILBERBERG & KNUPP LLP

By: _____
      Aaron J. Moss
      Joshua M. Geller
      Ariana T. Addo-Yobo
      Attorneys for Plaintiffs
      SPYDER GAMES LLC and
      SPEEDY SIMULATOR GAMING, LLC

CASE NO. 5:25-CV-10248-NW

**PLAINTIFFS AND COUNTER-DEFENDANTS' REPLY ISO MOTION TO DISMISS MEMENTUM LAB'S FIRST AMENDED COUNTERCLAIM**

Mitchell
Silberberg &
Knupp LLP

21740995.5