AARON J. MOSS (190625)
aaron.moss@msk.com
JOSHUA M. GELLER (295412)
josh.geller@msk.com
ARIANA T. ADDO-YOBO (363119)
ata@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Plaintiffs
SPYDER GAMES LLC and
SPEEDY SIMULATOR GAMING, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SPYDER GAMES LLC, a Louisiana limited liability company; and SPEEDY SIMULATOR GAMING, LLC, a Wyoming limited liability company, <br><br>       Plaintiffs and Counter-Defendants, <br><br>   v. <br><br> MEMENTUM LAB, a French company, <br><br>       Defendant and Counterclaimant. | CASE NO. 5:25-CV-10248-NW <br><br> **REPLY IN SUPPORT OF PLAINTIFFS AND COUNTER-DEFENDANTS' MOTION TO MODIFY THE SCHEDULE AND FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT** <br><br> Hon. Noël Wise <br><br> Date:         September 16, 2026 <br> Time:        9:00 a.m. <br> Courtroom:  3 |

Mitchell
Silberberg &
Knupp LLP

CASE NO. 5:25-CV-10248-NW

REPLY ISO PLAINTIFFS AND COUNTER-DEFENDANTS' MOTION TO MODIFY THE SCHEDULE AND FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................6

I.    INTRODUCTION.......................................................................................................6

II.   ARGUMENT ..............................................................................................................7

    A.    There Is Good Cause to Modify the Deadline for Amendment to Pleadings..........7

    B.    The Court Should Freely Grant Plaintiffs' Motion to Amend the Complaint. .......8

        1.    Mementum Has Not Met Its Burden to Show Substantial Prejudice...........9

        2.    Mementum Has Not Shown Futility. .........................................................10

            a.    Mementum's Arguments Regarding the Merits of the First Amended Complaint Are Premature. ............................................10

            b.    The First Amended Complaint Alleges an Actual Controversy....11

        3.    Mementum Has Not Shown Undue Delay. .................................................17

        4.    Mementum Has Not Shown Bad Faith. ......................................................18

III.  CONCLUSION ........................................................................................................19

Mitchell
Silberberg &
Knupp LLP

**REPLY ISO PLAINTIFFS AND COUNTER-DEFENDANTS' MOTION TO MODIFY THE SCHEDULE AND FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abrahams v. Hard Drive Prods., Inc.*,
2012 WL 1945493 (N.D. Cal. May 30, 2012) .......................................................................... 16

*Aten Int'l Co. v. Emine Tech. Co.*,
2010 WL 1462110 (C.D. Cal. April 12, 2010) ........................................................................... 9

*Avaya Inc. v. Pearce*,
2021 WL 366916 (N.D. Cal. Feb. 3, 2021) ................................................................................ 9

*Barrios v. City of Los Angeles*,
2025 WL 547127 (C.D. Cal. Jan. 7, 2025) ............................................................................... 18

*Beyond Blond Prods., LLC v. Heldman*,
2021 WL 9315215 (C.D. Cal. Sept. 16, 2021) ............................................................. 14, 15, 16

*Charnis v. Skullcandy, Inc.*,
2019 WL 6329648 (C.D. Cal. July 16, 2019) .......................................................................... 15

*Copasetic Clothing Ltd. v. Roots Canada Corp.*,
2018 WL 4051693 (S.D. Cal. Aug. 24, 2018) .......................................................................... 14

*Dauth v. Convenience Retailers, LLC*,
2013 WL 12440997 (N.D. Cal. July 31, 2013) ........................................................................ 17

*DCD Programs, Ltd. v. Leighton*,
833 F.2d 183 (9th Cir. 1987) ..................................................................................................... 8

*Delphix Corp. v. Embarcadero Techs., Inc.*,
2016 WL 4474631 (N.D. Cal. Aug. 25, 2016) ......................................................................... 16

*Edwards v. Bay Area Rapid Transit*,
2021 WL 1164944 (N.D. Cal. Mar. 26, 2021) ........................................................................... 9

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) .................................................................................................... 8

*Greenley v. Avis Budget Grp., Inc.*,
2019 WL 4416129 (S.D. Cal. Sept. 16, 2019) ........................................................................ 17

*Howey v. United States*,
481 F.2d 1187 (9th Cir. 1973) .................................................................................................. 18

*Hurn v. Ret. Fund Tr. of the Plumbing, Heating, and Piping Indus. of S. Cal.*,
648 F.2d 1252 (9th Cir. 1981) .................................................................................................. 18

**REPLY ISO PLAINTIFFS AND COUNTER-DEFENDANTS' MOTION TO MODIFY THE
SCHEDULE AND FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

Mitchell
Silberberg &
Knupp LLP

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Intellisoft, Ltd. v. Acer Am. Corp.*,
2018 WL 2412179 (N.D. Cal. May 29, 2018) ........................................................ 15

*Keezio Grp., LLC v. Summer Infant (USA), Inc.*,
2022 WL 23049192 (C.D. Cal. Oct. 11, 2022) ...................................................... 12

*Khanna v. Walia*,
2025 WL 2521734, at *4 (N.D. Cal. Sept. 2, 2025)............................................... 17

*Leitner v. Sadhana Temple of N.Y., Inc.*,
2014 WL 12591666 (C.D. Cal. May 8, 2014)........................................................ 10

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007) ......................................................................................... 11, 12

*Melo v. Frida Kahlo Corp.*,
2020 WL 13891187 (N.D. Cal. Oct. 16, 2020)...................................................... 12

*Netbula, LLC v. Distinct Corp.*,
212 F.R.D. 534 (N.D. Cal. 2003) ......................................................................... 11

*Owens v. Kaiser Found. Health Plan, Inc.*,
244 F.3d 708 (9th Cir. 2001).................................................................................. 9

*Reed Elsevier, Inc. v. Muchnick*,
559 U.S. 154 (2010) ............................................................................................. 16

*Rhoades v. Avon Prods., Inc.*,
504 F.3d 1151 (9th Cir. 2007)......................................................................... 12, 13

*Ross v. AT&T Mobility, LLC*,
2020 WL 9848733 (N.D. Cal. Dec. 18, 2020) ........................................................ 7

*San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*,
65 F.4th 1012 (9th Cir. 2023)................................................................... 12, 14, 15

*Serpa v. SBC Telecomms., Inc.*,
318 F. Supp. 2d 865 (N.D. Cal. 2004) .................................................................. 11

*Stephen D. Join Digital, Inc. v. Pivium, Inc.*,
2025 WL 2662861 (N.D. Cal. Sept. 17, 2025)................................................... 9, 11

*Unisone Strategic IP, Inc. v. TraceLink, Inc.*,
2019 WL 4015837 (S.D. Cal. Aug. 26, 2019) ...................................................... 18

Mitchell
Silberberg &
Knupp LLP

21749624.3

4

**REPLY ISO PLAINTIFFS AND COUNTER-DEFENDANTS' MOTION TO MODIFY THE
SCHEDULE AND FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT**

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*United States v. Webb*,
    655 F.2d 977 (9th Cir. 1981)............................................................................ 18

*Wong v. Hard Drive Prods., Inc.*,
    2012 WL 1252710 (N.D. Cal. Apr. 13, 2012) .................................................. 16

**STATUTES**

17 U.S.C.
    § 411(a) ............................................................................................................ 16

Mitchell
Silberberg &
Knupp LLP

21749624.3

5

**REPLY ISO PLAINTIFFS AND COUNTER-DEFENDANTS' MOTION TO MODIFY THE
SCHEDULE AND FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This case arises from Mementum's sustained campaign to claim exclusive rights in the Characters and to control Plaintiffs' use of them, both in and outside of the Game. Before Plaintiffs filed this lawsuit, Mementum sent a cease-and-desist letter asserting "copyright, trademark, and unfair competition rights," announcing an "Enforcement Strategy" of "systematic takedown procedures" under the DMCA and other notice-and-takedown regimes, and identifying "toys/merchandising" and "publishing/audiovisual production" among its priority enforcement sectors. And it described Plaintiffs' documented uses of the Characters in the Game as merely a "non-exhaustive" list of Plaintiffs' unauthorized uses. *See* FAC ¶¶ 19–20.

Plaintiffs spent the next two months negotiating a potential business resolution with Mementum, which made the same expansive demands in those negotiations that it had made in its letter. Mementum took the position that Plaintiffs could use the Characters "solely within the scope of the agreed Game project, without any broader exploitation rights." It refused to provide "a blanket waiver or release of all potential claims," warned of "potential legal action against [Plaintiffs'] partners," and advised that it had consulted U.S. intellectual property counsel who confirmed its reading of the applicable law. *Id*. ¶¶ 21–22; Opp. Ex. 2, at 2-3 (Dkt. No. 38-2). The negotiations failed, and Plaintiffs filed this action to resolve the parties' dispute.

Six months into the case, Mementum presented Plaintiffs with a Covenant Not to Sue covering one piece of that dispute: claims under United States copyright law, for seventeen of the thirty-nine Characters Mementum claims to own, arising from use "in the Game" only. Plaintiffs asked Mementum to broaden the Covenant to match the scope of the parties' actual dispute. Mementum refused. *Id*. ¶¶ 30–31. Mementum now takes the position that it may keep every claim it declined to covenant away—against Plaintiffs' merchandise, their other platform releases, their planned feature film, and every use of the twenty-two additional Characters that Mementum's own Counterclaims accuse Plaintiffs of using "without permission"—yet Plaintiffs may not ask any court to resolve those claims. Opp. at 17.

Mitchell
Silberberg &
Knupp LLP

21749624.3

6

**REPLY ISO PLAINTIFFS AND COUNTER-DEFENDANTS' MOTION TO MODIFY THE SCHEDULE AND FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT**

The Opposition barely engages the Rule 15 factors on which Mementum bears the burden. It identifies no cognizable prejudice and does not dispute that the case is at an early stage, that discovery is ongoing, or that the proposed amendment requires no change to any deadline. The amendment adds no new claim or party. It simply clarifies the scope of the dispute the parties have had from the start. What the Opposition does argue, at length, is that amendment is futile because no actual controversy exists. Accepting that argument would require the Court to make a premature merits determination, which the Court should decline to do at this stage.

But even if the Court reaches the merits, Mementum's futility argument improperly measures each of Mementum's acts in isolation, asking whether any one of them, standing alone, was an explicit threat to sue for copyright infringement in the United States. Instead, the proper test is whether *all the circumstances*, taken together, show a *substantial controversy* between the parties. Mementum's course of conduct, from its demand letter through its refusal to broaden the Covenant, demonstrates that such a controversy exists. So does Mementum's own brief, which argues that amendment would prejudice Mementum by forcing it either to defend U.S. copyright claims as to "all potential uses of 39 characters" or to "covenant away more rights." Opp. at 7, 20. Mementum's insistence on retaining these copyright claims is proof of the ongoing controversy.

## II.    ARGUMENT

### A.    *There Is Good Cause to Modify the Deadline for Amendment to Pleadings.*

Plaintiffs have shown "good cause" to modify the amendment deadline in the Initial Case Management Order. *See* Mot. at 11–12. Plaintiffs had no reason to amend until Mementum delivered its narrow Covenant and took the position that the Covenant mooted a Complaint featuring broad allegations regarding Plaintiffs' "use" of the Characters.[1]  Plaintiffs moved to amend roughly one month later. That is diligence. *See, e.g.*, *Ross v. AT&T Mobility, LLC*, 2020 WL 9848733, at *4 (N.D. Cal. Dec. 18, 2020) (plaintiff's "discovery of new facts after the

---

[1] Plaintiffs maintain that the Complaint alleges a broad scope of "use" and therefore is not mooted by Mementum's narrow Covenant. Plaintiffs seek to amend merely to remove any potential ambiguity, by making explicit that such "use" extends beyond the Game and includes the twenty-two additional Characters Mementum recently identified. *See* Pls.' Opp. to Mot. to Dismiss (Dkt. No. 33) at 5, n.1.

Mitchell
Silberberg &
Knupp LLP

21749624.3

7

deadline to amend pleadings had passed, and his diligent filing of his motion to amend thereafter, supports granting him leave to amend").

The Opposition does not undermine this conclusion. Mementum does not dispute that it first delivered the Covenant to Plaintiffs after the amendment deadline, or that Plaintiffs moved within about a month. *See* Opp. at 8–9. It instead argues that the "factual allegations Plaintiffs are seeking to add to their [C]omplaint … existed well before Mementum entered its [C]ovenant." *Id.* at 22. But the development that made amendment necessary was not any new fact about Plaintiffs' conduct; it was the Covenant itself, and Mementum's position that the Covenant mooted the Complaint. *See* Section II.B.3, *infra*. Mementum's argument also ignores the twenty-two additional Characters, in which Mementum first claimed rights in its Counterclaims. Those Counterclaims were brought the very day the amendment deadline expired, and after this lawsuit was filed. *See* Countercl. (Dkt. No. 18) ¶ 5, n.1; Amend. Countercl. (Dkt. No. 25) ¶ 5, n.1; Opp. at 19, n.3.

This case is readily distinguishable from those Mementum cites, all of which involved prolonged, unexplained inaction. *See* Opp. at 21–22 (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (no good cause where the plaintiff waited six to seven months and "[f]ail[ed] to heed clear and repeated signals that not all the necessary parties had been named"); *Attia v. Ouraring Inc.*, 2026 WL 1805156, at *1–2 (N.D. Cal. June 23, 2026) (same, where movant "careless[ly]" "watched the [summary judgment] deadline pass" and "wait[ed] nearly seven weeks" to seek modification) (citation omitted)). Here, Plaintiffs moved quickly to amend their pleading as soon as the need for amendment became apparent.

**B.     *The Court Should Freely Grant Plaintiffs' Motion to Amend the Complaint.***

Mementum has failed to meet its burden of showing why leave to amend should be denied. "Absent prejudice, or a strong showing of any of the remaining … factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (emphasis in original). "The party opposing amendment bears the burden of showing prejudice." *DCD Programs, Ltd. v. Leighton*, 833 F.2d

**REPLY ISO PLAINTIFFS AND COUNTER-DEFENDANTS' MOTION TO MODIFY THE SCHEDULE AND FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT**

183, 187 (9th Cir. 1987). Mementum concedes that one factor—the absence of prior amendments—favors Plaintiffs. Opp. at 21, n.4. As discussed below, the remaining factors do too.

### 1.    *Mementum Has Not Met Its Burden to Show Substantial Prejudice.*

Mementum concedes that prejudice is the "touchstone" inquiry under Rule 15(a) and that any prejudice must be "substantial." Opp. at 20. It has shown neither. As Plaintiffs' motion explained, the proposed amendment requires no additional discovery, disrupts no case deadlines, and comes at an early stage. Fact discovery remains open for another nine months and trial is more than a year away. *See* Mot. at 16–17. Mementum does not dispute any of these facts, which courts consistently find negate a claim of undue prejudice. *See, e.g.*, *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (rejecting claimed prejudice where proposed amendment "required no additional discovery" and "caused no delay in the proceedings"); *Edwards v. Bay Area Rapid Transit*, 2021 WL 1164944, at *1 (N.D. Cal. Mar. 26, 2021) (same, where "case [was] in its early stages and fact discovery" had not closed).

What Mementum instead offers is the "burden, expense[,] and risk of litigating Plaintiffs' claim." Opp. at 20–21. But that is the burden of "defending a lawsuit," which does not "rise to the level of prejudice required to prohibit [Plaintiffs] from amending their complaint." *Aten Int'l Co. v. Emine Tech. Co.*, 2010 WL 1462110, at *4 (C.D. Cal. April 12, 2010); *see also Avaya Inc. v. Pearce*, 2021 WL 366916, at *2 (N.D. Cal. Feb. 3, 2021) (rejecting prejudice based on "greater costs in defending against [amended complaint]"); *Stephen D. Join Digital, Inc. v. Pivium, Inc.*, 2025 WL 2662861, at *1 (N.D. Cal. Sept. 17, 2025) (rejecting claimed prejudice based on "expansion of a case due to the addition of new causes of action" and "time and resources" spent "moving to dismiss the claim"). And Mementum offers ***no evidence*** of prejudice at all. "[B]ald assertions of prejudice cannot overcome the strong policy reflected in Rule 15(a) 'to facilitate a proper disposition on the merits.'" *Avaya*, 2021 WL 366916, at *2 (citation omitted).

Mementum further argues prejudice because it entered the Covenant "in reliance on" the Complaint's allegations and "might not have done so" had it known Plaintiffs would seek relief as to all uses of thirty-nine Characters. Opp. at 20–21. But Plaintiffs neither requested nor bargained for the Covenant. It was Mementum's own unilateral litigation tactic—drafted by Mementum, on

**REPLY ISO PLAINTIFFS AND COUNTER-DEFENDANTS' MOTION TO MODIFY THE SCHEDULE AND FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT**

terms Mementum alone selected, and delivered with a demand that Plaintiffs dismiss their Complaint. *See* FAC ¶ 30; Moss Decl. ¶¶ 5–7, Exs. C–E. A party that deploys a covenant as a litigation tactic cannot claim unfair surprise when its opponent responds by clarifying the scope of the claim the covenant failed to reach. Mementum's authorities are not to the contrary. Two found *no* undue prejudice, and the rest involved amendments sought after discovery closed or years into the litigation, such that the undue delay had become itself prejudicial. *See* Opp. at 20–21 (citing *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973) (no undue prejudice); *Saes Getters, S.p.A. v. Aeronex, Inc.*, 219 F. Supp. 2d 1081, 1094 (S.D. Cal. 2002) (no undue prejudice); *DNA Genotek Inc. v. Spectrum Sols. L.L.C.*, 2023 WL 3442085, at *9 (S.D. Cal. May 12, 2023) (amendment sought months after fact discovery closed); *Olfati v. City of Sacramento*, 2023 WL 7004807, at *3 (E.D. Cal. Oct. 24, 2023) (amendment sought at an "advanced stage of the litigation"); *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (amendment sought "nearly two years after [] filing")).

Mementum contends that Plaintiffs' amendment forces it to either "fight[] Plaintiffs' claim or covenant away U.S. copyright claims *vis à vis* Plaintiffs and their contracting parties as to all potential uses of 39 characters when there is no actual controversy concerning those uses." Opp. at 20. That argument is self-defeating. If there were no actual controversy as to those claims, then covenanting them away would be trivial, not prejudicial. Being forced to answer in court for claims Mementum has in fact threatened is not prejudice.

### 2.    *Mementum Has Not Shown Futility.*

Mementum devotes the bulk of its Opposition to arguing that the proposed amendment is futile for lack of an actual controversy. *See* Opp. at 11–18. Mementum's argument fails procedurally and substantively.

#### a.    Mementum's Arguments Regarding the Merits of the First Amended Complaint Are Premature.

Mementum argues that the amendment is "futile" because "there is no actual controversy to resolve." *Id.* at 11 (capitalization omitted). That argument is premature. *See Leitner v. Sadhana Temple of N.Y., Inc.*, 2014 WL 12591666, at *7 (C.D. Cal. May 8, 2014) (collecting cases

**REPLY ISO PLAINTIFFS AND COUNTER-DEFENDANTS' MOTION TO MODIFY THE SCHEDULE AND FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT**

equating merits arguments on a motion for leave with a "premature motion to dismiss"). "Ordinarily, courts will defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed," and this Court should do so here. *Netbula, LLC v. Distinct Corp.*, 212 F.R.D. 534, 539 (N.D. Cal. 2003); *accord Stephen D. Join Digital*, 2025 WL 2662861, at *2 ("Courts rarely deny leave to amend based on futility and instead generally defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed.") (internal quotation omitted).

Futility justifies denial only in the rare case where the amendment is "lacking in legal foundation" or a deficiency is plainly incurable. *Serpa v. SBC Telecomms., Inc.*, 318 F. Supp. 2d 865, 872 (N.D. Cal. 2004); *see* Opp. at 12 (citing *Bonin v. Calderon*, 59 F.3d 815, 846 (9th Cir. 1995) (amendments were "futile" because they were "either duplicative of existing claims or patently frivolous, or both"); *Outdoor Sys., Inc. v. City of Mesa*, 997 F.2d 604, 614 (9th Cir. 1993) (same, because the court already had rejected the same legal theory on the merits)). This is not such a case. Rather than identify any facial legal defect in the proposed amendment, Mementum asks the Court to resolve disputed questions about the meaning of the parties' pre-suit correspondence, including two documents it asks the Court to incorporate by reference and read its way. *See* Opp. at 13–15 & nn. 1–2.  That is the work of a motion to dismiss, not a basis to deny leave. *See, e.g.*, *Stephen D. Join Digital*, 2025 WL 2662861, at *2 ("Since '[t]he merits or facts of a controversy are not properly decided in a motion for leave to amend and should instead be attacked by a motion to dismiss for failure to state a claim or for summary judgment,' the Court will not deny leave to amend here on futility grounds.") (citation omitted).

The Court does not need to go any further to grant leave. But Mementum's arguments also fail on their own terms.

           b.      <u>The First Amended Complaint Alleges an Actual Controversy.</u>

Mementum's futility argument rests on the wrong legal standard. It nominally cites *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), which defines the relevant question as "whether the facts alleged, under all the circumstances, show that there is a substantial

Mitchell
Silberberg &
Knupp LLP

21749624.3

**REPLY ISO PLAINTIFFS AND COUNTER-DEFENDANTS' MOTION TO MODIFY THE SCHEDULE AND FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT**

controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 127. But from there Mementum repeatedly cites *pre-MedImmune* decisions applying the "reasonable apprehension of [suit]" test that *MedImmune* rejected. *See* Opp. at 16 (describing Plaintiffs' "reasonable apprehension of being sued").

Under controlling law, the operative inquiry runs from the declaratory plaintiff's vantage point. It is "oriented to the reasonable perceptions of the plaintiff," and what the plaintiff must reasonably apprehend is liability, not necessarily an imminent lawsuit. *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union* ("*SDCCU*"), 65 F.4th 1012, 1027 (9th Cir. 2023); *accord Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007). No explicit threat of suit is required. A rights holder can create a controversy merely by pressing positions and demands that compel the plaintiff to "chill" conduct it is entitled to pursue. *SDCCU*, 65 F.4th at 1024. Examined collectively, as *MedImmune* requires, Mementum's own acts establish a controversy that is both real and immediate.

That controversy began with the September 3, 2025 cease-and-desist letter. The letter asserted "copyright, trademark, and unfair competition rights" in Tung Tung Sahur, reserved "all civil and criminal remedies," including injunctive relief, damages, and seizure of infringing goods, and announced an "Enforcement Strategy" of "systematic takedown procedures" under the DMCA and other notice-and-takedown regimes, judicial actions "in France, the EU, and abroad," and "continuous monitoring of e-commerce marketplaces." FAC ¶¶ 19–20. It named "toys/merchandising" and "publishing/audiovisual production" as priority enforcement sectors and described Plaintiffs' in-Game uses as a mere "non-exhaustive" list of unauthorized uses. *Id.*

The DMCA is a United States copyright statute. A threatened program of systematic DMCA takedowns—reaching the e-commerce platforms where Plaintiffs' licensed merchandise sells today—is a threat to enforce U.S. copyrights against Plaintiffs' commerce. *See Melo v. Frida Kahlo Corp.*, 2020 WL 13891187, at *2 (N.D. Cal. Oct. 16, 2020) (controversy existed where, absent a covenant, nothing prevented the rights holder "from returning to issuing takedowns for the same art or for other artwork"); *Keezio Grp., LLC v. Summer Infant (USA), Inc.*, 2022 WL

**REPLY ISO PLAINTIFFS AND COUNTER-DEFENDANTS' MOTION TO MODIFY THE SCHEDULE AND FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT**

23049192, at *7 (C.D. Cal. Oct. 11, 2022) (a single Amazon takedown, plus a refusal to retract it, sustained jurisdiction). Mementum answers that its letter concerned only French and international law and only the Game. Opp. at 13–14. The letter's own words say otherwise—"non-exhaustive" uses, a DMCA program, merchandising as a priority sector, and the threat of "seizure of infringing goods"— a remedy that presupposes physical merchandise, not a digital game played on Roblox.[2] Opp. Ex. 1; *see* FAC ¶¶ 19–20. At a minimum, they support the allegation that Mementum's assertion of rights was never confined to the Game. FAC ¶ 19. Which reading ultimately prevails is an interpretive dispute; for purposes of this Motion, Plaintiffs' allegations control.

The controversy continued through the parties' licensing negotiations, which were conducted in the shadow of the demand letter. Mementum repeatedly insisted that, even with a license, Plaintiffs could use the Characters "solely within the scope of the agreed Game project, without any broader exploitation rights." Mementum would give no "blanket waiver or release of all potential claims." It advised Plaintiffs that it had "consulted with [its] US intellectual property colleagues, who confirm[ed its] interpretation of the applicable law." Opp., Ex. 2 at 2-3 (Dkt. No. 38-2). And it warned of "potential legal action against [Plaintiffs'] partners"—the licensees authorized to exploit the property. FAC ¶¶ 21–22. Those statements evidence the existence of a dispute as to those broader exploitation rights, and over the application of U.S. law to them. Made in the midst of negotiations conducted against the backdrop of Mementum's enforcement demand, they would reasonably be understood as a threat that Mementum was prepared to press its claims against Plaintiffs under United States law—not merely French law. *See Rhoades*, 504 F.3d at 1161 (settlement discussions admissible as evidence of substantial controversy). Mementum's own authority agrees. *See* Opp. at 15 (citing *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 812 (Fed. Cir. 1996) (controversy where licensing negotiations occurred in the context of "explicit references to the prospect of initiating legal action")).

---

[2] Mementum's attempt to minimize the statements in the "Executive Summary" as "generic" (Opp. at 14) is unpersuasive. The Executive Summary was attached to and transmitted to Plaintiffs as part of the same cease-and-desist letter.

Mitchell Silberberg & Knupp LLP

21749624.3

13

**REPLY ISO PLAINTIFFS AND COUNTER-DEFENDANTS' MOTION TO MODIFY THE SCHEDULE AND FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT**

Mementum disingenuously recasts its warning about Plaintiffs' partners as a mere courtesy—a request for "clarification" to avoid "accidentally" suing them. Opp. at 15. To the extent there is any ambiguity, it is *Plaintiffs'* reasonable interpretation of that threat that is relevant, not Mementum's intent. *SDCCU*, 65 F.4th at 1027. Moreover, the fact Mementum raised the partners at all confirms it understood non-Game use to be a live subject of the parties' dispute—and one that was never resolved. A defendant's benign characterization of its own words is, in any event, precisely what the reasonable-perception standard sets aside. *Copasetic Clothing Ltd. v. Roots Canada Corp.*, 2018 WL 4051693, at *5–6 (S.D. Cal. Aug. 24, 2018) ("[T]he Court is not so much concerned with Roots's characterization of what it intended vis-à-vis its notices of opposition . . . as it is with the reasonable perception by Copasetic of the implication of Roots's oppositions . . . .").

Mementum continued to expand the scope of the controversy even after Plaintiffs commenced this action. In both its Counterclaims and its Amended Counterclaims, Mementum alleges that it "recently became the exclusive worldwide licensee and representative" of two additional creators, that those creators "created" twenty-two additional Characters, and that Plaintiffs "have used" those characters "without permission"; the prayer seeks relief for Plaintiffs' "unauthorized use of [Mementum's] brainrot characters, including ***without limitation*** Tung Tung Sahur." Amend. Countercl. (Dkt. No. 25) ¶ 5, n.1; *id.* at 11; *id.*, Prayer ¶¶ 7–8 (emphasis added). Mementum labels this a mere "reservation of rights." Opp. at 17. But accusations of unauthorized use advanced in a litigation filing demonstrate a live controversy, even if those accusations do not (yet) come with a standalone cause of action. *See Beyond Blond Prods., LLC v. Heldman*, 2021 WL 9315215, at *5 (C.D. Cal. Sept. 16, 2021) (relying on the defendants' statement "in their own filings" that they had "substantial evidence that plaintiff has directly copied multiple copyrighted works"). Mementum's cases are inapposite: each involved generalized statements aimed at no one in particular. *See* Opp. at 17 (citing *Samsung Elecs. Corp. v. Oura Health Oy*, 2025 WL 929410, at *3–5 (N.D. Cal. Mar. 27, 2025) (statements not "directed specifically at" the plaintiff); *Impax Labs., Inc. v. Medicis Pharm. Corp.*, 2008 WL 1767044, at *3 (N.D. Cal. Apr. 16, 2008) ("public

REPLY ISO PLAINTIFFS AND COUNTER-DEFENDANTS' MOTION TO MODIFY THE
SCHEDULE AND FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT

Mitchell
Silberberg &
Knupp LLP

21749624.3

statements regarding enforcement"); *Proofpoint, Inc. v. InNova Pat. Licensing, LLC*, 2011 WL 4915847, at *3 (N.D. Cal. Oct. 17, 2011) (no pre-suit contact at all)).

After filing its Counterclaims alleging unauthorized use of the expanded universe of brainrot characters, Mementum tactically issued the Covenant—the narrow scope of which proves the existence of a live controversy. Whether a covenant not to sue divests a court of jurisdiction "depends on what is covered by the covenant." *Intellisoft, Ltd. v. Acer Am. Corp.*, 2018 WL 2412179, at *5 (N.D. Cal. May 29, 2018) (quoting *Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338, 1347 (Fed. Cir. 2010)). Mementum drafted its Covenant very precisely: U.S. copyright claims only, seventeen of thirty-nine Characters only, use "in the Game as identified in the Complaint" only.[3] FAC ¶ 30. What a covenant is written to exclude, it leaves alive. *See Intellisoft*, 2018 WL 2412179, at *6 (covenants "designed to moot" one claim did not extinguish the dispute the covenanting party kept pressing); *Charnis v. Skullcandy, Inc.*, 2019 WL 6329648, at *4 (C.D. Cal. July 16, 2019) (jurisdiction survived as to every product category the rights holder still contested, and ended only where it stated on the record that it "has not and will not object"). Immediately after receiving the Covenant, Plaintiffs explained to Mementum that the Covenant did not cover the full scope of Plaintiffs' current and imminently planned use of the Characters— something of which Plaintiffs were already well aware. But Mementum refused to expand the Covenant, retaining the right to sue Plaintiffs at any time for any exploitation of the brainrot Characters in Plaintiffs' merchandise, platform releases, film development, or any use of the twenty-two additional Characters (even when used in the Game itself).

Mementum's refusal to broaden the Covenant is the final proof positive of an ongoing, unresolved dispute. The Ninth Circuit sustained declaratory jurisdiction in *San Diego County Credit Union* on exactly this ground: the rights holder "fail[ed] to provide a binding promise that it would not sue for infringement" and "affirmatively refused [the] stipulation" that the plaintiff was not infringing. *SDCCU*, 65 F.4th at 1030. As the district court explained in *Beyond Blond*: a

---

[3] Whether Plaintiffs' original Complaint has been mooted by the Covenant is the subject of Mementum's pending Motion to Dismiss, which Plaintiffs have separately opposed. *See* Dkt. No. 33.

**REPLY ISO PLAINTIFFS AND COUNTER-DEFENDANTS' MOTION TO MODIFY THE SCHEDULE AND FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT**

refusal to covenant "demonstrates there is still a controversy between the parties, as there should be no reason Defendants would not sign a covenant not to sue if they in fact have no intention of suing." 2021 WL 9315215, at *5.

Mementum's only explanation was that it was "not aware of any uses of these characters by Plaintiffs outside of the Game." Opp. at 9. That is hard to credit from the author of a letter naming "toys/merchandising" as an enforcement priority and promising "[c]ontinuous monitoring of e-commerce marketplaces"—and Plaintiffs allege that their licensed merchandise depicting the Characters was being sold through major national retailers, including Amazon, Target, Walmart, and Hot Topic. FAC ¶¶ 24–25. Regardless, Mementum's unwritten assurance counts for nothing: "even where a party has stated that it has no plans to sue for infringement, if its course of conduct demonstrates a preparedness and willingness to enforce its rights otherwise, a case or controversy exists." *Wong v. Hard Drive Prods., Inc.*, 2012 WL 1252710, at *3 (N.D. Cal. Apr. 13, 2012); *see also Abrahams v. Hard Drive Prods., Inc.*, 2012 WL 1945493, at *4–5 (N.D. Cal. May 30, 2012) (assurances "couched in qualifying 'not now' and 'not likely' language" were insufficient). The passage of time does not help Mementum either. A rights holder cannot claim the controversy has gone stale while its demands stand unretracted and its refusal to covenant persists. *See Delphix Corp. v. Embarcadero Techs., Inc.*, 2016 WL 4474631, at *4–5 (N.D. Cal. Aug. 25, 2016) (rejecting as "unavailing" the argument that it was "far too late" to claim apprehension, given continued demands and an ignored covenant request), *aff'd in relevant part*, 749 F. App'x 502 (9th Cir. 2018).

Nor does the absence of U.S. copyright registrations defeat jurisdiction (Opp. at 6, 16). Registration is a precondition to an infringement lawsuit only for "United States work[s]," 17 U.S.C. § 411(a), and Mementum insists the Characters are foreign works protected under "French and international law," FAC ¶ 19—so on its own account it needs no registration to sue. In any event, section 411(a) is a claim-processing rule, not a limit on this Court's jurisdiction over Plaintiffs' declaratory-judgment action. *See Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157, 166 (2010).

Mitchell
Silberberg &
Knupp LLP

21749624.3

16

**REPLY ISO PLAINTIFFS AND COUNTER-DEFENDANTS' MOTION TO MODIFY THE SCHEDULE AND FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT**

From its very first cease-and-desist letter to its recent insistence that it maintains the right to sue Plaintiffs for their ongoing use of the Characters, Mementum has created and maintained this controversy at every turn. Its tactical decision to covenant away *part* of its copyright claims so it could focus on litigating its trademark infringement claim does not make the balance of the parties' copyright dispute disappear. The proposed amendment is not futile.

### 3.    *Mementum Has Not Shown Undue Delay.*

Mementum has not and cannot show that Plaintiffs unduly delayed seeking leave to amend. To the contrary, "undue delay cannot exist where discovery has not ended." *Dauth v. Convenience Retailers, LLC*, 2013 WL 12440997, at *3 (N.D. Cal. July 31, 2013) (collecting cases). The cases Mementum cites are not to the contrary: each found undue delay at a far later stage. *See* Opp. at 18–19 (citing *Acri v. Int'l Ass'n of Machinists*, 781 F.2d 1393, 1395, 1398 (9th Cir. 1986) (case pending for years, with summary judgment argued); *First Intercontinental Bank v. AEHCC LLC*, 2012 WL 12973655, at *2 (C.D. Cal. Nov. 27, 2012) (discovery closed); *Experexchange, Inc. v. Doculex, Inc.*, 2009 WL 3837275, at *30 (N.D. Cal. Nov. 16, 2009) (discovery closed, "on the eve of trial"); *Schwerdt v. Int'l Fid. Ins. Co.*, 28 F. App'x 715, 719–20 (9th Cir. 2002) (summary judgment already entered for the defendant)).

Mementum's delay argument hinges on whether Plaintiffs knew the relevant facts when they filed suit. Opp. at 19. Plaintiffs do not dispute that they did know, from the cease-and-desist letter and ensuing negotiations, that the parties' controversy reached beyond use of the Characters in the Game. But that knowledge is not dispositive. *See Khanna v. Walia*, 2025 WL 2521734, at *4 (N.D. Cal. Sept. 2, 2025) (no "undue delay" where the movants "knew the basis of [the new] claims as early as 2021"); *Greenley v. Avis Budget Grp., Inc.*, 2019 WL 4416129 (S.D. Cal. Sept. 16, 2019) (same, where the facts were "indisputably available at the time the original complaint was filed"). Plaintiffs reasonably understood the broad "use" language of their Complaint to already reach their uses of the Characters both in and outside the Game. Only when Mementum took the position that its narrow Covenant *mooted* that Complaint did Plaintiffs seek leave to amend, to make the scope of the controversy explicit. And Mementum's delay argument fails

Mitchell
Silberberg &
Knupp LLP

21749624.3

17

**REPLY ISO PLAINTIFFS AND COUNTER-DEFENDANTS' MOTION TO MODIFY THE SCHEDULE AND FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT**

entirely as to the twenty-two additional Characters (FAC ¶ 18), because Mementum concedes it first asserted rights in them after this lawsuit was filed. Opp. at 19, n.3.

In any event, the delay Mementum alleges—that "Plaintiffs waited seven months," Opp. at 18—does not approach what this Circuit requires to deny leave. *See Howey*, 481 F.2d at 1190 (five-year delay insufficient to deny amendment); *Hurn v. Ret. Fund Tr. of the Plumbing, Heating, and Piping Indus. of S. Cal.*, 648 F.2d 1252, 1254–55 (9th Cir. 1981) (two-year delay not undue). And "delay alone no matter how lengthy is an insufficient ground for denial of leave to amend." *United States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981).

### 4. *Mementum Has Not Shown Bad Faith.*

Plaintiffs seek leave in good faith, to remove any potential ambiguity in the scope of their declaratory judgment claim and to ensure the remaining dispute is resolved on the merits. *See* Mot. at 14–15. Consistent with that purpose, Plaintiffs' proposed amendment adds no new cause of action or party, and simply adds details to clarify the scope of the dispute the parties have had from the outset and to add the twenty-two Characters Mementum first identified in its Counterclaims. *See, e.g.*, Compl. ¶¶ 24, 28(c). That is not bad faith. *See, e.g., Unisone Strategic IP, Inc. v. TraceLink, Inc.*, 2019 WL 4015837, at *2 (S.D. Cal. Aug. 26, 2019) (no bad faith where the plaintiff amended to "provide more detailed allegations of [the prior-alleged] infringement").

Mementum offers no evidence to the contrary. It alleges, without any support, that the amendment was made to force "a less-resourced adversary to incur more fees and potentially forfeit more rights." Opp. at 20. These speculative accusations do not support a finding of bad faith. *See Barrios v. City of Los Angeles*, 2025 WL 547127, at *2 (C.D. Cal. Jan. 7, 2025) (speculation that amending party did so for "tactical reasons, to make litigation more burdensome and to increase expense" deemed "conclusory allegations" insufficient to show bad faith). Mementum's accusation is also difficult to square with its own Covenant, which Mementum executed "to avoid the burden, expense and risk of litigating Plaintiffs' claim." Opp. at 21 (citing Covenant, Recital J). Having deployed the Covenant as a litigation tactic, Mementum cannot fairly cast Plaintiffs' response to it as bad faith.

**REPLY ISO PLAINTIFFS AND COUNTER-DEFENDANTS' MOTION TO MODIFY THE SCHEDULE AND FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT**

Mementum's authorities do not help it. Of the four cases Mementum cites, only one found bad faith on a motion for leave, and on facts far from these. Opp. at 19–20 (citing *Rosholm v. Byb Brands, Inc.*, 2016 WL 1445592, *6 (C.D. Cal. Feb. 22, 2016) ("[t]he record shows no evidence of bad faith"); *Greenley*, 2019 WL 4416129, at *2 (there is "no basis to conclude that a bad faith motive … underlie[s] [p]laintiff's request to amend"); *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006) (discussing "bad faith" in the context of a motion for discovery sanctions); *Trans Video Elecs., Ltd. v. Sony Elecs., Inc.*, 278 F.R.D. 505, 509–10 (N.D. Cal. 2011) ("bad faith" where amendment came "only after briefing was completed on the summary judgment motion and the hearing on the motion was a week and a half away," a "last-ditch attempt to avoid the case being dismissed in its entirety")). This case is the opposite: discovery is open, no dispositive motion has been briefed, and the amendment responds to Mementum's own Covenant. Because Mementum cannot show prejudice, delay, bad faith, or futility, the presumption in favor of amendment controls.

## III.    CONCLUSION

For the foregoing reasons and those set forth in Plaintiffs' Motion, Plaintiffs respectfully request that the Court grant them leave to file their First Amended Complaint.

DATED: JULY 15, 2026             MITCHELL SILBERBERG & KNUPP LLP

By: _____
Aaron J. Moss
Joshua M. Geller
Ariana T. Addo-Yobo
Attorneys for Plaintiffs
SPYDER GAMES LLC and
SPEEDY SIMULATOR GAMING, LLC

Mitchell
Silberberg &
Knupp LLP

21749624.3

19

**REPLY ISO PLAINTIFFS AND COUNTER-DEFENDANTS' MOTION TO MODIFY THE SCHEDULE AND FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT**