UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPYDER GAMES LLC, et al. | Case No.  5:25-cv-10248-NW (SVK) |
| Plaintiffs and Counter-Defendants, | |
| v. | **ORDER ON DISCOVERY SUBMISSION RE CONTROLLING LAW FOR DISCOVERY** |
| MEMENTUM LAB SAS. | Re:  Dkt. No. 35 |
| Defendant and Counterclaimant. | |

Pending before the Court is the Parties' Joint Discovery Dispute Statement, filed July 1, 2026.  Dkt. 35 ("Joint Statement").  In the Joint Statement, Plaintiff and Counter-Defendant Spyder Games LLC ("Spyder") seeks an order compelling Defendant and Counterclaimant Mementum Lab SAS ("Mementum") to respond to requests for admission and requests for production that seek information Mementum claims it cannot produce under French law.  *Id.* at 11. Mementum, in turn, requests a protective order requiring that Spyder's discovery requests proceed through the procedures set forth in the Hague Convention on the Taking of Evidence in Civil or Commercial Matters, Aug. 8, 1972, 23 U.S.T. 2555, 847 U.N.T.S. 231 (the "Hague Convention").

This matter came on for hearing on July 28, 2026.  During the course of oral argument, the Court granted Mementum's request to file a Request for Judicial Notice, (Dkt. 47 ("RJN")), pertaining to the Declaration of Noëlle Lenoir, (Dkt. 47-1 ("Lenoir Declaration")), a member of the Paris Bar whose practice is, *inter alia*, "focused on compliance, data protection and business secrecy law."  Lenoir Decl. at 4.[1]  Spyder stated on the record that it would not object to the RJN.[2]

---

[1] Citations to the Lenoir Declaration and its exhibits are to their internal page numbers;  other citations herein are to ECF-generated page numbers.

[2] Courts may take judicial notice of matters of public record, including of filings [CONTINUED]

United States District Court
Northern District of California

Having considered the Parties' arguments, submissions, the relevant law and the record in this action, the Court **DENIES** Mementum's request for a protective order and **ORDERS** Mementum to respond to Spyder's discovery requests pursuant to the Federal Rules of Civil Procedure.

## I.    BACKGROUND

Spyder, a United States-based company, owns and operates *Steal a Brainrot*, a video game featuring AI-generated characters known as "brainrots." Dkt. 21 at 2. Mementum, a French company, contends that it owns intellectual property rights in the brainrots and, on November 26, 2025, Spyder filed this action seeking declaratory relief regarding Mementum's purported copyrights in the brainrots. *Id.* On April 24, 2026, Mementum filed counterclaims asserting, *inter alia*, trademark infringement and unfair competition under the Lanham Act.

On April 29, 2026, Spyder served Requests for Production ("RFPs"), Interrogatories and Requests for Admission ("RFAs") on Mementum. *Id.* at 5. On May 4, 2026, Mementum served its own RFPs, Interrogatories and RFAs pursuant to the Federal Rules of Civil Procedure (the "Federal Rules"). *Id.* Mementum did not initially object to discovery under the Federal Rules. *See id.*

Mementum now contends, however, that responding to Spyder's discovery requests would require it to violate French law, specifically Article 1 *bis* of Law No. 68-678 of Jul7 26, 1968, commonly known as the "French Blocking Statute" ("FBS"), which restricts certain disclosures for use in foreign judicial proceedings. Dkt. 35 at 3; *see also Salt River Project Agric. Improvement & Power Dist. v. Trench Fr. SAS*, 303 F. Supp. 3d 1004, 1008 (D. Ariz. 2018). Accordingly, Mementum requests a protective order requiring Spyder to pursue discovery through the Hague Convention, while Spyder seeks an order compelling Mementum to respond.

////

////

---

in other judicial proceedings, under Fed. R. Evid. 201(b)(2); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999, 1001 (9th Cir. 2018). The Court **GRANTS** the RJN and takes judicial notice of the 38-page declaration and Exhibits A-N attached thereto, all of which the Court has considered.

**II.    LEGAL STANDARD**

Obtaining discovery from foreign entities in United State federal courts may be governed by one of two sets of rules:  the Federal Rules of Civil Procedure or the Hague Convention.  The Hague Convention, however, provides only an optional mechanism for obtaining evidence abroad; it "[does] not deprive the District Court of the jurisdiction it otherwise possesse[s]" to compel foreign discovery under the Federal Rules.  *See Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct.*, 482 U.S. 522, 538-40 (1987).  Nor does the existence of a foreign blocking statute automatically "engraft a rule of first resort onto the Hague Convention." *Id.* at 544 n.29.  Indeed, the Supreme Court specifically recognized that American courts are "not required to adhere blindly" to statutes such as the FBS at issue here. *Id.*

Instead, courts in this Circuit determine whether principles of international comity warrant limiting discovery under the Federal Rules by balancing several factors, including:  (1) the importance of the investigation or litigation of the information requested;  (2) the degree of specificity of the request;  (3) whether the information originated in the United States;  (4) the availability of alternative means of securing the information;  (5) the extent to which noncompliance with the request would undermine important interests of the United States, or the extent to which compliance with the request would undermine important interests of the state where the information is located;  (6) the extent and the nature of the hardship that enforcement would impose upon the foreign national;  and (7) the extent to which enforcement can reasonably be expected to achieve compliance.  *See, e.g.*, *MGI Digit. Tech S.A. v. Duplo U.S.A.*, No. 22-cv-00979-DOC (KESx), 2023 WL 6814579, at *3 (C.D. Cal. Aug. 24, 2023) (citing *Richmark*, 929 F.2d at 1475).

////

////

////

////

////

////

United States District Court
Northern District of California

3

United States District Court
Northern District of California

## III. DISCUSSION

Mementum argues that the comity factors support a protective order requiring discovery to proceed under the Hague Convention. The Court is not persuaded. As discussed below, the relevant factors overall weigh in favor of compelling discovery under the Federal Rules.

### A. Importance of the Information

Where the outcome of litigation "does not stand or fall on the present discovery order, or where the evidence sought is cumulative of existing evidence," courts have generally been unwilling to override foreign statutes. *See Richmark*, 959 F.2d at 1475 (citation and internal quotation marks omitted). Where the evidence is directly relevant, however, this factor weighs in favor of compelling discovery. *Id.*

This intellectual property dispute centers on whether the AI-generated 'brainrot' characters are copyrightable, whether Mementum's licensing of the characters establishes trademark rights and whether any such rights have been infringed. Dkt. 35 at 9. Accordingly, Spyders' requests "fall into five topics: (1) creation process for the brainrots; (2) chain-of-title of Mementum's purported rights; (3) trademark-related evidence, (4) damages discovery; and (5) IP enforcement efforts." *Id.*

Mementum does not argue that the requested information is cumulative or irrelevant. *See id.* at 5-6. Nor could it plausibly do so. Given that Plaintiffs have yet to receive any discovery, these requests do not appear cumulative. *See Proofpoint, Inc. v. Vade Secure, Inc.*, No. 19-cv-04238-MMC (RMI), 2020 WL 504962, at *2 (N.D. Cal. Jan. 31, 2020). Nor would information regarding conception, product development, chain of title, licensing, or damages be irrelevant to a suit prosecuting intellectual property infringement. *See Coloplast A/S. v. Generic Med. Devices, Inc.*, No. 10-cv-00227-BHS, 2011 WL 6330064, at *3 (W.D. Wash. Dec. 19, 2011); *see also BrightEdge Techs., Inc. v. Searchmetrics, GmbH.*, No. 14-cv-01009-WHO (MEJ), 2014 WL 3965062, at *3 (N.D. Cal. Aug. 13, 2014). Accordingly, the first factor weighs in favor of compelling discovery under the Federal Rules.

////

////

4

### B.      Specificity of the Request

This factor evaluates how burdensome it will be to respond to the discovery request. *Richmark*, 959 F.2d at 1475.  "Generalized searches for information … are discouraged," whereas specific, limited requests weigh in favor of compelling discovery.  *See id.*  Mementum has not objected to the burdensome nature of the discovery requests, apart from the fact of their illegality. *See* Dkt. 35 at 5-6, Ex. 4.  Nor are the requests impermissibly broad;  Spyder does not ask for all documents that "may be relevant" to the dispute.  *See Salt River Project Agric. Improvement & Power Dist. v. Trench Fr. SAS*, 303 F. Supp. 3d 1004, 1008 (D. Ariz. 2018).  Rather, Spyder targets "particular categories" of information that pertain to the analysis of the parties' copyright and trademark claims.  *See Connex R.R. LLC v. AXA Corp. Sols. Assurance*, No. 16-cv-02368-ODW (RAOx), 2017 WL 3433542, at *13 (C.D. Cal. Feb. 22, 2017);  *see also BrightEdge*, 2014 WL 3965062, at *3.  Accordingly, this factor weighs in favor of compelling discovery under the Federal Rules.

### C.      Location of the Information

The fact that the information to be disclosed and the persons who will produce the information are located in the foreign country weighs against disclosure under the Federal Rules. *Richmark*, 959 F.2d at 1475.  Mementum represents that documents pertaining to its operations, personnel and financial records are located in France.  Dkt. 35 at 5.  It further states that information concerning its licensing counterparties is located in Indonesia and Brazil.  *Id.* at 5, 9. Because the requested discovery is located primarily outside the United States, this factor favors use of the Hague Convention.

### D.      Availability of Alternative Means of Securing the Information

"If the information sought can easily be obtained elsewhere, there is little or no reason to require a party to violate foreign law."  *Richmark*, 959 F.2d at 1475.  This Circuit requires that the alternative means be "substantially equivalent" to the requested discovery.  *Id.*

Mementum argues that the Hague Convention provides such an alternative.  Dkt. 35 at 5. Courts in this District, however, have rejected that contention.  *E.g.*, *WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, No. 19-cv-07123-PJH, 2023 WL 7726411, at *5 (N.D. Cal. Nov. 15, 2023) ("[T]he

United States District Court
Northern District of California

5

cumbersome nature of The Hague Convention's process renders it something less than a true alternative means of seeking discovery"); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2014 WL 5462496, at *6 (N.D. Cal. Oct. 23, 2014) ("France is particularly slow to execute Hague Convention requests, and when they are executed, often the results are unsatisfactory"). Because Mementum identifies no other equivalent means by which Spyder may obtain the requested information, this factor weighs in favor of compelling discovery under the Federal Rules.

### E. Balance of National Interests

This is the most important factor. *Richmark*, 959 F.2d at 1476. It asks the Court to assess the respective interests of the United States and France in requiring or prohibiting disclosure and to determine whether disclosure would implicate substantive policies or interests in either nation. *Id.* To be sure, the United States' interest in "vindicating the rights of American plaintiffs" is not so strong that it compels disclosure in every case. *Richmark*, 959 F.2d at 1477. Likewise, France's interest in protecting its nationals from "intrusive discovery requests" is not dispositive. *See MGI*, 2023 WL 6814579, at *5. If foreign blocking statutes were given controlling weight in every case, foreign litigants could effectively avoid the broader discovery obligations imposed on domestic litigants in United States courts, creating an imbalance between parties. *See id.*

Against this backdrop, Mementum argues that France's interest in applying the Hague Convention outweighs the United States' interest in applying its own discovery laws. Dkt. 35 at 5 (citing *Kashef v. BNP Paribas S.A.*, No. 16-cv-3228-AKH (JW), 2022 WL 1617489, at *3-4 (S.D.N.Y. May 23, 2022)); *see also* Lenoir Decl. at 11-13. In *Kashef*, however, the court explained that the United States' interest was "limited by whether the … information [was] actually material to Plaintiffs' efforts to pursue their remedy, and whether that information [could] be obtained through alternative means." 2022 WL 1617489, at *4 (cleaned up). Those mitigating factors do not apply here—the information requested is relevant to Spyder's intellectual property claims and not obtainable through substantially equivalent means. *See, supra*, § II.A, D. The Court's evaluation of the Lenoir Declaration does not alter its analysis of this, or any other, *Richmark* factor under the facts of the case at hand.

United States District Court
Northern District of California

Indeed, Courts considering similar discovery disputes involving requests for French corporate documents and communications have concluded that the United States' interest in adjudicating claims before its courts outweighs France's interest in restricting disclosure. *See, e.g., In re Flint Water Cases*, No. 16-cv-10444-JEL, 2024 WL 2139318, at *12 (E.D. Mich. May 13, 2024); *Proofpoint, Inc. v. Vade Secure, Inc.*, No. 19-cv-04238-MMC-RMI, 2020 WL 1911195, at *5 (N.D. Cal. Apr. 20, 2020). Accordingly, this factor weighs in favor of compelling disclosure under the Federal Rules.

### F.    Extent of Hardship on the Foreign National

"The effect that a discovery order is likely to have on the foreign company is another factor to be considered." *Richmark*, 959 F.2d at 1477. The Supreme Court has recognized that the risk of criminal prosecution is a "weighty excuse" for noncompliance with discovery obligations under the Federal Rules. *Societe Internationale our Participations Industrielles Et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 211 (1958). In some cases, courts have found that this risk constitutes a hardship weighing in favor of using the Hague Convention. *See, e.g., Kashef*, 2022 WL 1617489, at *4 ("while … prosecutions [of the FBS] have been all-but-nonexistent, the laws still exist and Defendants and the producing entities could expose themselves to potential liability, however slight"); *see also Salt River*, 303 F. Supp. 3d at (D. Ariz. 2018) (FBS may not pose a "realistic risk of prosecution" but it "at least creates a possibility of criminal prosecution").

Other courts, however, have declined to find that the mere possibility of prosecution constitutes cognizable hardship under this factor. In *In re Cathode*, the court found that the FBS "was never expected or intended to be enforced against French subjects but was intended rather to provide them with tactical weapons and bargaining chips in foreign courts." 2014 WL 5462496, at *6 (citation omitted). The court therefore held that the "specter of potential criminal prosecution," alone was insufficient to push this factor towards using the Hague Convention. *Id.* at *7; *see also ProofPoint*, 2020 WL 1911195, at *5.

Mementum argues that complying with Spyder's discovery requests would subject Mementum to criminal prosecution under the FBS. Specifically, Mementum relies on a June 5, 2026 advisory opinion from the French *Service de l'Information Stratégique et de la Sécurié*

7

*Économiques* ("SISSE"), which concluded that the subject matter of Spyder's requests falls within the scope of the FBS. ("June 5 Opinion") Dkt. 35 at 3, 225-230. Mementum also contends that the FBS landscape has changed following a 2022 amendment, which was intended to "put teeth" in the statute and "strengthen its protections in response to foreign courts ordering such discovery." Dkt. 35 at 3-4.

The post-2022 cases cited by Mementum do not support its position. *See* Dkt. 35 at 4. In *In re Flint Water*, the Michigan court did not directly address hardship but stated that "[it was] not persuaded that [the FBS] is likely to be enforced against [the defendant], nor does any threat of enforcement outweigh the importance of the factors the [c]ourt has considered in the comity analysis." 2024 WL 2139318, at *13. Likewise, in *MGI*, the court explained that the FBS remains "rarely enforced and thus, alone, does not justify resorting to the Hague Convention." 2023 WL 6814579, at *5. Similarly, in a recent decision addressing the effect of the 2022 amendment, a New York State appellate court explained that "France has historically had little interest in the enforcement of its blocking statute, and … the 2022 supplemental decree and executive order do not prove otherwise." *EPAC Techs. LTD v. Interforum S.A.*, 245 A. D. 3d 554, 556 (2026).[3]

Accordingly, while the Court recognizes that Mementum faces at least a theoretical risk of criminal prosecution in complying with Spyder's requests, the June 5 Opinion does not, on its own, create a cognizable hardship. Moreover, Mementum's own conduct in this litigation is particularly striking and undermines any claimed hardship: Mementum has asserted counterclaims in this action and has served discovery disputes pursuant to the Federal Rules in furtherance of those counterclaims, while simultaneously invoking the FBS to avoid responding to Spyder's discovery requests. *See, supra* § I. Mementum cannot use the FBS as a shield while wielding the sword of the Federal Rules. Accordingly, this factor weighs in favor of compelling discovery under the Federal Rules.

---

[3] Nor does the Lenoir Declaration, signed in April 2022, support the position that the FBS is now more frequently enforced. Although the Declaration provides an exhaustive overview of the FBS and its potential penalties, it identifies no instance in which a French party has been criminally prosecuted for responding to civil discovery in the United States. *See* Lenoir Decl. at 26-31.

United States District Court
Northern District of California

### G.      Likelihood of Compliance

"If a discovery order is likely to be unenforceable, and therefore to have no practical effect, that factor counsels against requiring compliance with the order." *Rickmark*, 959 F.2d at 1478. Where the entity resisting discovery is a party to the action, a court order likely will be enforceable.  *Connex*, 2017 WL 3433542, at *18 (citing *Aerospatiale*, 482 U.S. at 539-40, 544). In contrast, where a party has failed to appear, default judgment has been entered and the party has disregarded prior sanctions, further discovery orders are unlikely to have any practical effect. *See Richmark*, 959 F.2d 1471, 1478.

Mementum is a party to this action and has availed itself of this Court by asserting counterclaims against Spyder. *See, supra*, § I.  In connection with those claims, Mementum has served its own discovery requests pursuant to the Federal Rules and necessarily expects the responding parties to comply with their discovery obligations.  Dkt. 35 at 7.  Mementum therefore cannot reasonably contend that an order requiring it to respond to discovery would be ineffective. Indeed, Mementum does not contend that it would refuse to comply with an order compelling discovery;  rather, it states only that it will unequivocally comply with Hague procedures. *Id.* at 5. Because Mementum identifies no reason to believe it would refuse to comply with an order compelling discovery, this factor weighs in favor of compelling discovery under the Federal Rules.[4]

## IV.    CONCLUSION

In sum, only one factor—location of the evidence—weighs in favor of proceeding under the Hague Convention whereas the other six weigh in favor of compelling discovery under the Federal Rules.  Accordingly, Mementum's request for a Protective Order is **DENIED**.  The Federal Rules of Civil Procedure govern discovery in this action.  Mementum is **ORDERED** to

---

[4] Mementum's arguments go to other factors, not to likelihood of compliance.  Whether the Hague Convention provides an alternative mechanism for obtaining discovery, for example, concerns the availability of alternative means.  *See, supra* § II.D;  *Connex*, 2017 WL 3433542, at *18. Similarly, whether compliance with a discovery order would "put [Mementum] in an impossible position" because of the potential for FBS penalties, (Dkt. 35 at 5), concerns the potential hardship associated with disclosure, rather than whether Mementum would disregard a discovery order. *See, supra* § II.E.

United States District Court
Northern District of California

respond to Spyder's discovery requests consistent with its obligations under the Federal Rules.

**SO ORDERED.**

Dated: July 29, 2026

SUSAN VAN KEULEN
United States Magistrate Judge

United States District Court
Northern District of California