AARON J. MOSS (190625)
aaron.moss@msk.com
JOSHUA M. GELLER (295412)
josh.geller@msk.com
ARIANA T. ADDO-YOBO (363119)
ata@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Plaintiffs and Counter-Defendants
SPYDER GAMES LLC and
SPEEDY SIMULATOR GAMING, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SPYDER GAMES LLC, a Louisiana limited liability company; and SPEEDY SIMULATOR GAMING, LLC, a Wyoming limited liability company, <br><br> Plaintiffs and Counter-Defendants, <br><br> v. <br><br> MEMENTUM LAB, a French company, <br><br> Defendant and Counterclaimant. | CASE NO. 5:25-CV-10248-NW <br><br> **PLAINTIFFS' FIRST AMENDED COMPLAINT** <br><br> Hon. Noël Wise <br><br> Complaint Filed: November 26, 2025 |

CASE NO. 5:25-CV-10248-NW

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

**INTRODUCTION**

1. Plaintiffs Spyder Games LLC and Speedy Simulator Gaming, LLC (collectively, "Plaintiffs") own and operate *Steal a Brainrot* (the "Game"), one of the most popular video games in the history of the Roblox platform. Since its release in May 2025, the Game has become a cultural and commercial phenomenon, amassing billions of player visits and setting the record for the highest concurrent player count on Roblox. Plaintiffs hold a registered copyright in the Game, which is populated by "brainrots"—characters Plaintiffs created based on the surreal, absurdist AI-generated memes that have become a fixture of Gen Alpha internet culture.

2. Defendant Mementum Lab SAS ("Mementum"), a French company that bills itself as "The (Brainrot) Memes Agency," claims to own those cultural memes. It asserts intellectual property rights in thirty-nine of the brainrots in the Game (collectively, the "Disputed Brainrots," as further defined below), and claims rights in more than half of the entire "brainrot universe." Mementum has built a licensing and enforcement operation based on its asserted intellectual property rights, sending cease-and-desist demands, pursuing platform takedowns, and entering into retroactive license agreements that are designed to lend its asserted rights the appearance of legitimacy. It has also registered, or sought to register, trademarks in certain of the brainrots, including the popular character Tung Tung Sahur.

3. In fact, Mementum's claimed rights do not exist. Under established law, copyright protection requires human authorship, and AI-generated material does not qualify. *See Thaler v. Perlmutter*, 130 F.4th 1039, 1044 (D.C. Cir. 2025). Mementum knows this. It served Plaintiffs with cease-and-desist demands and threatened to enforce its asserted copyrights by submitting a takedown of the Game, but it has never sued Plaintiffs for copyright infringement or otherwise defended the validity of its purported copyrights on the merits. Instead, Mementum has asserted trademark counterclaims only, and presented Plaintiffs with a Covenant Not to Sue (the "Covenant") promising not to pursue United States copyright claims against Plaintiffs for using a subset of the Disputed Brainrots in the Game. But Mementum retained every other copyright claim it had asserted, and maintains that it remains free to enforce those claims against Plaintiffs.

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

4.      The Covenant is deliberately narrow. By its terms, it releases only claims "under the copyright law of the United States," only with respect to seventeen of the thirty-nine Disputed Brainrots (collectively, the "Covered Brainrots," as further defined below), and only with respect to Plaintiffs' use "in the Game as identified in the Complaint" (*i.e.*, the Roblox version of *Steal a Brainrot*). It releases nothing at all as to the twenty-two other Disputed Brainrots (collectively, the "Additional Brainrots," as further defined below) in which Mementum claims intellectual property rights, including Plaintiffs' use of the Additional Brainrots in the Game itself. And it does not release Plaintiffs' use of any of the Disputed Brainrots in the *Steal a Brainrot*-branded merchandise Plaintiffs sell through national retailers, the *Steal a Brainrot* motion picture Plaintiffs are developing, or any other game, product, or medium. Nor does it affect Mementum's right to pursue takedowns across the e-commerce and social media channels its own demand letter named. When Plaintiffs identified their uses outside the Game, Mementum declined to broaden the Covenant to match them.

5.      The Covenant also leaves Mementum's trademark claims entirely intact, and those claims fare no better. Mementum has asserted counterclaims in this action alleging that it owns trademark rights in the name and image of Tung Tung Sahur (the "Tung Tung Sahur Marks," as further defined below)—one of the seventeen Covered Brainrots—and that Plaintiffs' use of the Tung Tung Sahur Marks infringes those rights. But Tung Tung Sahur is a viral meme character that circulated freely for months before Mementum or anyone else attempted to commercialize it. The Tung Tung Sahur Marks do not identify the source of anyone's goods or services, and Mementum forfeited any rights it might have acquired by licensing the character without controlling the manner in which its licensees used it.

6.      By this First Amended Complaint, Plaintiffs seek declarations on the rights and claims Mementum has asserted and deliberately left unresolved: that Mementum holds no valid, enforceable copyright in the Disputed Brainrots under United States law, and that Plaintiffs' use of the Disputed Brainrots—both in the Game and beyond it—does not infringe; that Mementum holds no valid, enforceable trademark rights in the name or image of Tung Tung Sahur under United States law, and that Plaintiffs' use of that name and image does not infringe; and that

Mitchell
Silberberg &
Knupp LLP

3                    CASE NO. 5:25-CV-10248-NW

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

Plaintiffs' use of the Disputed Brainrots does not constitute trademark infringement or unfair competition under the common law of California.

## THE PARTIES

7.      Plaintiff Spyder Games LLC is a limited liability company organized under the laws of the State of Louisiana.

8.      Plaintiff Speedy Simulator Gaming, LLC is a limited liability company organized under the laws of the State of Wyoming.

9.      Defendant and Counterclaimant Mementum Lab SAS is a *société par actions simplifiée* organized under the laws of France, with its registered office at 60 Rue François Ier, 75008 Paris, France, and registered with the Paris Trade and Companies Register under number 988 240 214 R.C.S.

## JURISDICTION AND VENUE

10.      This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Copyright Act and the Lanham Act, and under 28 U.S.C. § 1338(a), which vests federal courts with original and exclusive jurisdiction over claims arising under copyright and trademark law. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' claims concerning Mementum's asserted rights under California common law. Declaratory relief is authorized under 28 U.S.C. §§ 2201-2202.

11.      This Court has personal jurisdiction over Mementum. Mementum has appeared in this action and has asserted its own affirmative Counterclaims against Plaintiffs, thereby consenting to and invoking this Court's jurisdiction. Personal jurisdiction is independently proper under Federal Rule of Civil Procedure 4(k)(2): Mementum is not subject to the general personal jurisdiction of the courts of any single State, Plaintiffs' claims arise under the laws of the United States, and Mementum purposefully directed its conduct toward the United States as a whole— including by asserting rights against Plaintiffs, demanding payment, and pursuing takedowns aimed at removing Plaintiffs' United States-based products from distribution.

12.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this District, including Plaintiffs'

Mitchell
Silberberg &
Knupp LLP

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

exploitation of the Game and the harm threatened by Mementum's assertion of rights and takedown campaigns. Venue is also proper under § 1391(c)(3) because Mementum is not a resident of the United States and may be sued in any judicial district.

## FACTUAL ALLEGATIONS

**The Brainrot Phenomenon and *Steal a Brainrot*.**

13.     In early 2025, a genre of absurdist, surreal internet meme characters known as "brainrots" became a worldwide cultural phenomenon, embraced by tens of millions of users across social media and content-sharing platforms. The characters emerged from a broad online community of content creators using AI image-generation tools.

14.     *Steal a Brainrot* debuted on Roblox in May 2025 and quickly became one of the most successful games in the platform's history, attracting billions of visits and holding the record for the highest concurrent player count on Roblox. The Game is designed as a treasure hunt: during gameplay, the brainrots proceed in a slow, continuous line along a red carpet that runs through the center of the arena.  Players capture brainrots and transport them to their respective bases (small holding areas located at the arena's perimeter), to earn virtual currency.  Each brainrot has a distinct value determined by its rarity, and players may steal brainrots from other players' bases. The virtual currency accumulated through gameplay can be used to enhance a player's base or to unlock special abilities, such as more effective capturing or improved defenses against theft.  The screenshot depicts the arena, showing the red carpet with marching brainrots emerging from a doorway and surrounded by player bases:

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /



15.     Plaintiffs hold a United States copyright registration for the Game, U.S. Copyright Reg. No. PA0002544969.

16.     The brainrots as they appear in the Game were created by Plaintiffs, drawing on the AI-generated meme figures that inspired them. On information and belief, those underlying meme figures were generated using artificial intelligence tools without the human authorship the Copyright Act requires for protection.

17.     Courts and the Copyright Office have consistently held that purely AI-generated material is not protectable, because the Copyright Act requires that a work be authored by a human being. *See Thaler*, 130 F.4th at 1044 ("the Copyright Act requires all work to be authored in the first instance by a human being"); *see also* U.S. Copyright Office, *Compendium of U.S. Copyright Office Practices* § 306 (3d ed. 2021) (requiring human authorship). The Copyright Office has explained that when "an AI technology receives solely a prompt from a human and produces complex written, visual, or musical works in response," the "traditional elements of authorship" are executed by the technology rather than the human user, and the resulting material "is not protected by copyright." *Copyright Registration Guidance: Works Containing Material Generated by Artificial Intelligence*, 88 Fed. Reg. 16190, 16192 (Mar. 16, 2023).

Mitchell Silberberg & Knupp LLP

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

**Mementum's Campaign to Control the Brainrot Characters**

18.    Mementum describes itself as "The (Brainrot) Memes Agency" and claims to own or control the intellectual-property rights in dozens of brainrot characters—by its own account, more than 50% of the "brainrot universe." Mementum's claimed rights rest on agreements with individual creators, including the TikTok creator "Noxa" (associated with the character "Tung Tung Sahur") and the creator "Breno" (associated with additional characters). The image below compares the character Tung Tung Sahur as it appears in Plaintiffs' Game (left) with the AI-generated original on which it is based (right).

| The Game | The AI Brainrot |
|---|---|



19.    Among the brainrots that Mementum claims to own or control are the seventeen brainrots identified, with corresponding images, in **Exhibit 1**. These are the seventeen brainrots that Mementum asserted rights in for purposes of the Covenant described below and identified in

Mitchell
Silberberg &
Knupp LLP

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

Attachment A thereto.  These seventeen brainrots are referred to herein as the "Covered Brainrots."

20.    In its First Amended Counterclaims, Mementum asserted rights in still more brainrots. Mementum alleged that it "recently became the exclusive worldwide licensee and representative" of two additional creators, "Alexey Pigeon" and "Choppow," and that Plaintiffs "have used [those creators'] characters in the Game without their permission." First Amended Countercl. (ECF No. 25) ¶ 5 n.1. Mementum identified and asserted rights in twenty-two additional brainrots: Cappuccino Assassino, Avocadini Guffo, Perochello Lemonchello, Mangolini Parrocini, Penguino Cocosino, Bananita Dolphinita, Burbaloni Loliloli, Chimpanzini Bananini, Blueberrinni Octopusini, Quivioli Ameleonni, Strawberrelli Flamingelli, Cocosini Mama, Ganganzelli Trulala, Zibra Zubra Zibralini, Orangutini Ananassini, Rhino Toasterino, Cocofanto Elefanto, Tukanno Bananno, Tigroligre Frutonni, Spaghetti Tualetti, Graipuss Medussi, and Tim Cheese (collectively, the "Additional Brainrots"). The seventeen brainrots identified in both Exhibit 1 hereto and Attachment A to the Covenant (*i.e.*, the "Covered Brainrots"), together with the twenty-two additional brainrots Mementum identified in its First Amended Counterclaims (*i.e.*, the "Additional Brainrots"), are referred to collectively as the "Disputed Brainrots."

21.    Mementum claims to own "intellectual property" rights in the Disputed Brainrots, including both copyright and trademark rights. On September 3, 2025, Mementum's counsel served Plaintiffs with a formal cease-and-desist demand asserting that Mementum is "the exclusive rights holder of the intellectual property associated with the character Tung Tung Sahur." The demand asserted copyright, trademark, and unfair competition rights under both French and international law, threatened "all civil and criminal remedies" and "[j]udicial actions in France, the EU, and abroad."

22.    Mementum has sought to protect its claimed trademark rights in the Disputed Brainrots through registration. Most pertinent here, Mementum owns a trademark registration in France (Registration No. FR5157809) and an international registration with the World Intellectual Property Organization (Registration No. 1913096) for a composite mark consisting of the words "TUNG TUNG" and "SAHUR," together with a stylized drawing of the Disputed Brainrot Tung

Tung Sahur (the "Tung Tung Sahur Marks"). *See* First Amended Countercl. (ECF No. 25) ¶¶ 9, 27. Mementum also is actively seeking to register one of the Tung Tung Sahur Marks in the United States. Specifically, Mementum has designated the United States for an extension of protection of its international registration under the Madrid Protocol—resulting in United States Application Serial No. 79448114, which remains pending before the United States Patent and Trademark Office.

23.    Mementum's assertion of rights has never been confined to the Game. In its September 3, 2025 demand, Mementum described the uses of the characters documented in the Game as merely a "non-exhaustive list" of Plaintiffs' unauthorized uses. It identified Mementum's "priority sectors" for licensing and enforcement as "video games, toys/merchandising, cultural/food collaborations, and publishing/audiovisual production." Among the remedies Mementum reserved was "seizure of infringing goods"—a remedy directed at physical goods rather than a video game played on the Roblox platform.

24.    Mementum has built an enforcement operation around its claimed rights. In its September 3, 2025 demand, Mementum described an "Enforcement Strategy" comprised of "systematic takedown procedures" to be "implemented under the DMCA [*i.e.*, the Digital Millennium Copyright Act]" and "other applicable notice-and-takedown regimes," along with "continuous monitoring of e-commerce marketplaces" and other channels. Mementum identified e-commerce marketplaces, including Amazon and Shopee, as channels it would police, and named "toys/merchandising" among the "priority sectors" for its enforcement. Because the DMCA is a United States statute that reaches only rights arising under United States copyright law, Mementum's threatened DMCA takedowns necessarily assert copyrights that purportedly are enforceable in the United States.

25.    Despite Mementum's assertion of rights and enforcement efforts, Mementum holds no valid, enforceable United States copyright in any of the Disputed Brainrots, and no valid, enforceable United States trademark rights in the Tung Tung Sahur Marks or any of the other Disputed Brainrots. The Disputed Brainrots are AI-generated and, on information and belief, were produced using artificial intelligence tools without the human authorship the Copyright Act

Mitchell
Silberberg &
Knupp LLP

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

requires. And the Tung Tung Sahur Marks do not identify the source of any goods or services. By Mementum's own account, the Disputed Brainrot Tung Tung Sahur became famous as a freely circulating internet meme before Mementum or anyone else attempted to commercialize it. And to the extent Mementum ever acquired trademark rights in the Tung Tung Sahur Marks, it forfeited them by purporting to license those rights, retroactively, without controlling the quality of its licensees' use. The same is true for all of the other Disputed Brainrots that Mementum has asserted and/or may assert trademark rights in.

**The Parties' Negotiations and Mementum's Refusal to Release Rights Beyond the Game.**

26.     Between September and November 2025, the parties engaged in negotiations for a business solution that would resolve the legal claims asserted by Mementum. Throughout those negotiations, Plaintiffs made clear that they use and intended to use the characters Mementum claims to own outside the Game, including in derivative works, in versions of the Game on other platforms, and in merchandise and related products.

27.     Mementum refused to recognize the legitimacy of these uses beyond the Game. It took the position in writing that it had agreed only to "regularize" past use of its materials "within the scope of the Game 'Steal a Brainrot,'" "not to issue a blanket waiver or release of all potential claims," and that Plaintiffs could use the characters "solely within the scope of the agreed Game project, without any broader exploitation rights." Mementum raised the prospect of "potential legal action against [Plaintiffs'] partners"—third parties Plaintiffs had licensed to exploit the *Steal a Brainrot* property, which includes the characters Mementum claims to own. Mementum made it clear that it regarded Plaintiffs' non-Game uses as unauthorized.

28.     Mementum also made clear that litigation was the alternative to an agreement. In a telephone call between the parties' principals during the same period, Mementum conveyed that if the parties did not reach an agreement, Plaintiffs would face legal action, and that Plaintiffs—as a high-profile studio—were the kind of target Mementum wished to make an example of to establish its claimed rights publicly.

29.     Consistent with its "Enforcement Strategy," when the parties' negotiations broke down, Mementum took action to enforce its asserted trademark rights against the Game.

Mitchell
Silberberg &
Knupp LLP

10                     CASE NO. 5:25-CV-10248-NW

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

Specifically, in April 2026, Mementum submitted a takedown request to Roblox, a U.S.-based gaming platform, under Article 16 of the European Union's Digital Services Act, asserting that Plaintiffs' use of the name and image of the Disputed Brainrot Tung Tung Sahur infringed Mementum's trademark in the character. Plaintiffs were forced to remove Tung Tung Sahur from the Game in response.

**Plaintiffs' Use of the Brainrots Beyond the Roblox Game.**

30.    Plaintiffs' use of the Disputed Brainrots is not limited to the Roblox version of *Steal a Brainrot*. Plaintiffs have published licensed versions of *Steal a Brainrot* on other platforms, including the Epic Games platform, and have entered into additional publishing agreements for further platform releases.

31.    Plaintiffs also operate a licensed-merchandise program under the *Steal a Brainrot* brand, selling physical products depicting the Disputed Brainrots through major retailers, including Amazon, Target, Walmart, and Hot Topic. Those products include *Steal a Brainrot*-branded collectible minifigures, graphic t-shirts, and sticker sets.



32.    Nor is Plaintiffs' use limited to the Covered Brainrots.  Like the Game, Plaintiffs' products depict both Covered Brainrots as well as Additional Brainrots. The collectible minifigures include the Covered Brainrot "La Vacca Saturno Saturnita," in which Mementum claims to have acquired rights from its purported creator and assignor "Breno." First Amended Countercl. (ECF No. 25) ¶ 5. The licensed sticker set depicts numerous Disputed Brainrots, including six Covered Brainrots (namely, Tung Tung Sahur, Brr Brr Patapim, Boneca Ambalabu,

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

Il Cacto Hipopotamo, Frigo Camelo, and Cavallo Virtuoso) and two Additional Brainrots (namely, Cappuccino Assassino and Chimpanzini Bananini).






Mitchell Silberberg & Knupp LLP

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

Chimpanzini Bananini, one of the Additional Brainrots, also appears on the t-shirt sold at Target.



33.    Plaintiffs have taken concrete steps toward additional licensed product lines depicting Disputed Brainrots—including apparel, accessories, stationery, and trading cards—entering into binding merchandising license agreements and approving product designs, artwork, packaging, and prototypes with their licensees. None of these uses—those already on the market or those in development—is a use of the brainrots "in the Game as identified in the Complaint." Mementum's own cease-and-desist demand identified "toys/merchandising" as a "priority sector," promised "[c]ontinuous monitoring of e-commerce marketplaces," and named Amazon among the marketplaces it would police through systematic DMCA takedowns—which is one of the platforms on which Plaintiffs sell their merchandise depicting Disputed Brainrots.

34.    Plaintiffs' exploitation of the Disputed Brainrots further extends to motion picture and other audiovisual adaptations. Plaintiffs have entered into a development arrangement for a feature film based on the Game and its characters, including Disputed Brainrots, which was publicly announced in January 2026, and they anticipate further agreements for the development, production, and distribution of one or more motion pictures and other audiovisual works derived from the Game and its characters. These exploitations, like Plaintiffs' merchandise, fall outside the

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

Mitchell
Silberberg &
Knupp LLP

scope of the Covenant and are squarely within the controversy between the parties concerning Plaintiffs' right to use the Disputed Brainrots free of Mementum's asserted copyright and trademark claims.

<strong>This Action and Mementum's Counterclaims</strong>

35.    On November 26, 2025, Plaintiffs filed this action seeking a declaration, under United States copyright law, that Mementum holds no valid copyright in the brainrots and that Plaintiffs do not infringe.

36.    On April 24, 2026, Mementum answered and asserted Counterclaims for trademark infringement and unfair competition under the Lanham Act and California common law.

37.    On June 5, 2026, Mementum filed its First Amended Counterclaims, which similarly asserts Counterclaims for trademark infringement and unfair competition under the Lanham Act and California common law. In its First Amended Counterclaims, Mementum alleges that it owns "a valid, protectible trademark in Tung Tung Sahur, including in the character's name and image," and that Plaintiffs "have used and continue to use" the character's name and image "without [Mementum's] permission in connection with the Game in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the character." First Amended Countercl. (ECF No. 25) ¶¶ 25, 27, 29.

38.    Mementum's Counterclaims are confined neither to the Tung Tung Sahur Marks nor to Plaintiffs' use of its purported trademarks in the Game. In its First Amended Counterclaims, Mementum alleges that Plaintiffs have used "many characters confusingly similar to and/or derivative of Tung Tung Sahur" in the Game, identifying Te Te Te Sahur, Ti Ti Ti Sahur, Ta Ta Ta Sahur, Job Job Job Sahur, Los Tungtungtungcitos, La Sahur Combinasion, and the Los Bros. First Amended Countercl. (ECF No. 25) ¶ 7. Moreover, Mementum seeks an injunction barring Plaintiffs from using the Tung Tung Sahur Marks "or any confusingly similar variations thereof on or in connection with any products, goods or services, or the advertising of any products, goods or services." *Id.* ¶¶ 32, 40. And Mementum's prayer seeks disgorgement of all profits Plaintiffs obtained "through their unauthorized use of [Mementum's] brainrot characters, including without

Mitchell
Silberberg &
Knupp LLP

<strong>PLAINTIFFS' FIRST AMENDED COMPLAINT</strong>

limitation Tung Tung Sahur," without limitation as to any product, platform, or medium. *Id.*, Prayer ¶ 8.

39.     Mementum's common law unfair competition claims are broader still. Mementum alleges that Plaintiffs used in the Game "at least 16 other brainrot characters that Noxa and Breno created without obtaining their consent"—a group that, together with Tung Tung Sahur, corresponds to the seventeen Covered Brainrots—and that the creators Mementum represents through Alexey Pigeon and Choppow "have created many characters that Plaintiffs have used in the Game without their permission," which corresponds to the twenty-two Additional Brainrots. Mementum incorporates those allegations into its common law count, which alleges not only that Plaintiffs infringed Mementum's "common law rights in the trademarks at issue" but also that Plaintiffs "otherwise competed unfairly" with Mementum, an allegation Mementum limits to no particular character. Mementum's prayer confirms the breadth of the claim: it asks the Court to order "disgorgement of all profits and benefits unjustly obtained by Plaintiffs through their unauthorized use of Defendant's brainrot characters, including *without limitation* Tung Tung Sahur." First Amended Countercl. (ECF No. 25), Prayer ¶ 8 (emphasis added).

### Mementum's Covenant Not to Sue.

40.     On or about May 21, 2026, Mementum delivered to Plaintiffs an executed Covenant Not to Sue. By its terms, the Covenant releases only claims "under the copyright law of the United States" arising from Plaintiffs' "past, current, or substantially similar future use" of the seventeen brainrots identified in Attachment A to the Covenant, which are the same seventeen brainrots identified in Exhibit 1 hereto (*i.e.*, the "Covered Brainrots"), and only copyright claims arising from use of those Covered Brainrots "in the Game as identified in the Complaint." The Covenant does not release any of Mementum's trademark claims relating to the Tung Tung Sahur Marks or any of the other Disputed Brainrots.

41.     The Covenant does not cover all of the Disputed Brainrots, and as to those it does cover, it does not reach all of Plaintiffs' uses. It releases nothing at all as to the twenty-two Additional Brainrots—not Plaintiffs' use of such Additional Brainrots in merchandise, not their use in any other product or medium, and not their use in the Game. And as to the Covered

Mitchell
Silberberg &
Knupp LLP

15                                      CASE NO. 5:25-CV-10248-NW
### PLAINTIFFS' FIRST AMENDED COMPLAINT

Brainrots, the Covenant releases only uses in the Game; it does not release Plaintiffs' use of those Covered Brainrots in merchandise, in motion pictures, or in any other product, platform, or medium.

42.    Plaintiffs promptly sought to clarify the Covenant's scope. On May 27, 2026, Plaintiffs' counsel wrote to Mementum's counsel, noting that the Covenant was ambiguous as to whether it released only Plaintiffs' use of the brainrots within the Game. On May 28, 2026, Mementum's counsel responded that the Covenant is limited to the seventeen brainrots identified in Attachment A (*i.e.*, the Covered Brainrots) and to "future or modified versions of the Game."

43.    On May 30, 2026, Plaintiffs' counsel wrote again, explaining that the Covenant does not cover the full scope of Plaintiffs' current and imminently planned uses of the brainrots, including their use in merchandise. Mementum did not broaden the Covenant, and refused to stipulate to an amendment of the Complaint making the scope of Plaintiffs' uses explicit. The reason Mementum gave was that it was "not aware of any uses of these characters by Plaintiffs outside of the Game"—notwithstanding that Mementum's own November 2025 term sheet had proposed licensing terms for Plaintiffs' exploitation of those same brainrots in merchandise and in audiovisual works.

44.    Mementum has never given Plaintiffs any assurance, binding or otherwise, that it will not assert United States copyright claims against Plaintiffs' use of the Covered Brainrots outside the Game, or against Plaintiffs' use of the Additional Brainrots in any medium. Likewise, Mementum has never provided any assurance that it will not assert United States trademark or common unfair competition claims against Plaintiffs' use of the Tung Tung Sahur Marks or of any other Disputed Brainrots. To the contrary, Mementum has taken the position in this litigation that it "holds intellectual property rights in these characters (including trademarks and copyrights) and has preserved its ability to enforce such rights other than as prescribed in the Covenant." Mementum's Motion to Dismiss (ECF No. 27) at 16.

45.    The Covenant therefore does not eliminate the controversy between the parties. Mementum continues to assert that it owns or controls United States copyrights in the Disputed Brainrots, trademark rights in the Tung Tung Sahur Marks, as well as broad common law rights. It

Mitchell
Silberberg &
Knupp LLP

16                                    CASE NO. 5:25-CV-10248-NW
**PLAINTIFFS' FIRST AMENDED COMPLAINT**

has released, at most, copyright claims arising from Plaintiffs' use of the Covered Brainrots in the Game. But Plaintiffs also use the Additional Brainrots, and their use of the Disputed Brainrots extends well beyond the Game—to merchandise sold today through national retailers, to additional product lines under binding license agreements, and to a feature motion picture in development. These are uses that Mementum specifically refused to authorize during negotiations and that its cease-and-desist demand identified as falling within its "priority sectors." A concrete and ongoing controversy over those uses exists under United States copyright and trademark law.

## FIRST CLAIM FOR RELIEF

### (Declaratory Relief—United States Copyright Law)

46.     Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as though fully set forth herein.

47.     An actual, present, and justiciable controversy exists between Plaintiffs and Mementum within the meaning of 28 U.S.C. § 2201 concerning the Disputed Brainrots. Mementum has asserted that it owns or controls copyrights in the Disputed Brainrots, has accused Plaintiffs of infringing those purported copyrights—including by alleging in its First Amended Counterclaims that Plaintiffs have used the Additional Brainrots in the Game without permission—has demanded that Plaintiffs cease their use and pay monetary damages, and has threatened systematic DMCA takedowns reaching Plaintiffs' merchandise. Mementum has further threatened legal action against Plaintiffs, whom it identified as the kind of target Mementum wished to make an example of to establish its claimed rights publicly.

48.     Mementum's Covenant does not moot this controversy. By its terms, the Covenant releases only United States copyright claims arising from use of the Covered Brainrots "in the Game as identified in the Complaint"—the Roblox version of *Steal a Brainrot.* It releases no claim at all as to the Additional Brainrots. And it does not release United States copyright claims arising from Plaintiffs' use of the Covered Brainrots outside the Game—including the merchandise Plaintiffs sell and the other products and activities in which Plaintiffs are engaged. Mementum specifically refused to authorize these uses during negotiations and identified them as

Mitchell
Silberberg &
Knupp LLP

17                          CASE NO. 5:25-CV-10248-NW

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

falling within its claimed "priority sectors" for intellectual property enforcement actions. A definite and concrete controversy over those unreleased uses therefore remains.

49.    Mementum's adverse claims of copyright ownership, its refusal to release Plaintiffs' uses of the Covered Brainrots outside the Game, its refusal to release Plaintiffs' use of the Additional Brainrots in any medium, and its retained ability to enforce its claimed rights all impair Plaintiffs' continued and planned exploitation of the Disputed Brainrots. Plaintiffs presently sell licensed merchandise depicting the Disputed Brainrots through national retailers; they have entered into binding merchandising license agreements for additional product lines depicting the Disputed Brainrots, and are reviewing and approving designs, artwork, branding elements, packaging, samples, and prototypes with their licensees; they have published licensed versions of the Game on platforms other than Roblox; and they are developing a feature motion picture based on the Game and its characters. So long as Mementum's asserted copyright ownership remains unresolved, each of these activities exposes Plaintiffs to a continuing threat of litigation and takedown demands by Mementum.

50.    Plaintiffs contend, and Mementum denies, that Mementum holds no valid, enforceable copyright in the Disputed Brainrots—including because the Disputed Brainrots were generated by artificial intelligence tools without sufficient human authorship and do not qualify for protection under the Copyright Act—and that Plaintiffs' use of the Disputed Brainrots does not infringe any copyright of Mementum.

51.    Plaintiffs are entitled to and seek a declaration, pursuant to 28 U.S.C. § 2201, that:

a.    the Disputed Brainrots are not subject to copyright protection under the law of the United States because they were generated by artificial intelligence tools and lack the human authorship the Copyright Act requires, and/or otherwise fail to meet the threshold for copyright protection;

b.    Mementum does not own or control any valid or enforceable United States copyright in the Disputed Brainrots;

c.    Plaintiffs' use of the Disputed Brainrots, whether in the Game or in any other product, platform, or medium in which Plaintiffs use them, does not infringe any copyright

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

of Mementum under the law of the United States; and

d.    Mementum is not entitled to damages, injunctive relief, or any other remedy arising from Plaintiffs' use of the Disputed Brainrots.

## SECOND CLAIM FOR RELIEF

### (Declaratory Relief—United States Trademark and Common Law Unfair Competition)

52.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as though fully set forth herein.

53.    An actual, present, and justiciable controversy exists between Plaintiffs and Mementum within the meaning of 28 U.S.C. § 2201 concerning the Tung Tung Sahur Marks. Mementum has asserted Counterclaims in this action alleging that it owns valid, protectable trademark rights in those marks and that Plaintiffs' use of them is likely to cause consumer confusion. It seeks damages, treble damages, disgorgement of profits, attorneys' fees, and a permanent injunction barring Plaintiffs' use of the Tung Tung Sahur Marks and any confusingly similar variations on any goods or services. It has enforced its asserted trademark rights to obtain the removal of the character from the Game. It is prosecuting an application to register the same marks in the United States. And it has expressly preserved its ability to enforce those asserted rights notwithstanding the Covenant. Mementum's common law unfair competition claim, moreover, reaches Plaintiffs' use of all of the Disputed Brainrots, and Mementum's prayer seeks disgorgement of Plaintiffs' profits from that use without limitation as to character, product, or medium.

54.    Mementum's assertion of trademark rights impairs Plaintiffs' present and planned use of the Tung Tung Sahur Marks. Plaintiffs presently sell licensed merchandise depicting Tung Tung Sahur through national and specialty retailers. Plaintiffs also continue to use in the Game each of the characters Mementum contends are "confusingly similar to and/or derivative of" Tung Tung Sahur—Te Te Te Sahur, Ti Ti Ti Sahur, Ta Ta Ta Sahur, Job Job Job Sahur, Los Tungtungtungcitos, La Sahur Combinasion, and the Los Bros—each of which remains in the Game today. Plaintiffs used Tung Tung Sahur itself in the Game from May 2025 until Mementum's April 2026 takedown request caused its removal, and Plaintiffs intend to restore the

Mitchell Silberberg & Knupp LLP

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

character to the Game. Mementum's Counterclaims seek damages, treble damages, and disgorgement of profits for Plaintiffs' past use, as well as an injunction barring future use. So long as Mementum's asserted trademark rights remain unresolved, Plaintiffs' continued sale of *Steal a Brainrot* merchandise depicting Tung Tung Sahur and their continued use of the accused variants in the Game expose them to a continuing threat of litigation and takedown demands, and Plaintiffs cannot restore Tung Tung Sahur to the Game without incurring that same exposure.

55.    Plaintiffs contend, and Mementum denies, that the Tung Tung Sahur Marks do not function to identify the source of any goods or services and are not valid, protectable trademarks under the law of the United States; that Mementum owns no valid or enforceable United States trademark rights in those marks, including because any such rights were forfeited through uncontrolled licensing; and that Plaintiffs' use of those marks does not infringe any trademark right of Mementum. Plaintiffs further contend, and Mementum denies, that Plaintiffs' use of the Disputed Brainrots does not constitute trademark infringement or unfair competition under the common law of the State of California and does not unjustly enrich Plaintiffs at Mementum's expense.

56.    Plaintiffs are entitled to and seek a declaration, pursuant to 28 U.S.C. § 2201, that:

a.    the Tung Tung Sahur Marks do not function to identify the source of any goods or services and are not valid, protectable trademarks under the law of the United States;

b.    Mementum does not own or control any valid or enforceable trademark right in the Tung Tung Sahur Marks under the law of the United States, including because any such right was forfeited by Mementum's uncontrolled licensing of the character;

c.    Plaintiffs' use of the Tung Tung Sahur Marks, whether in the Game, in merchandise, or in any other product, platform, or medium in which Plaintiffs use them, does not infringe any trademark right of Mementum under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Sections 44(h) and (i) of the Lanham Act, 15 U.S.C. § 1126(h) and (i), or the common law of California;

d.    Mementum is not entitled to damages, disgorgement of profits, injunctive relief, attorneys' fees, or any other remedy arising from Plaintiffs' use of the Tung Tung Sahur

Mitchell
Silberberg &
Knupp LLP

20                    CASE NO. 5:25-CV-10248-NW
**PLAINTIFFS' FIRST AMENDED COMPLAINT**

Marks; and

e.      Plaintiffs' use of the Disputed Brainrots, whether in the Game, in merchandise, or in any other product, platform or medium in which Plaintiffs use them, does not constitute trademark infringement or unfair competition under the common law of the State of California, and Mementum is not entitled to disgorgement, restitution, or any other remedy on account of that use.

57.      As alleged in the First Amended Counterclaims, Mementum's First Counterclaim for trademark infringement under the Lanham Act (15 U.S.C. § 1125(a)) is limited to the Tung Tung Sahur Marks. Plaintiffs have therefore limited their request for declaratory relief to these claimed rights accordingly. Insofar as Mementum asserts trademark rights in or claims trademark infringement of other Disputed Brainrots in its anticipated Second Amended Counterclaims or any future pleadings, Plaintiffs allege that an actual, present, and justiciable controversy exists concerning those other purported trademarks.  Any such assertion of trademark rights by Mementum impairs Plaintiffs' present and planned use of the Disputed Brainrots, which—like the Tung Tung Sahur Marks—do not function to identify the source of any goods or services and are not valid, protectable trademarks under the law of the United States. Accordingly, to the extent Mementum asserts trademark rights in or claims trademark infringement with respect to any Disputed Brainrots other than the Tung Tung Sahur Marks, Plaintiffs are entitled to and seek the declarations set forth in Paragraph 56(a)-(d) above with respect to those other Disputed Brainrots.

**JURY DEMAND**

58.      Plaintiffs request a jury trial on all issues triable to a jury in this matter.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs respectfully request that this Court enter judgment in their favor and against Mementum as follows:

1.      For a declaration that: (a) the Disputed Brainrots are not subject to copyright protection under the law of the United States because they were generated by artificial intelligence tools and lack the human authorship the Copyright Act requires, and/or otherwise fail to meet the threshold for copyright protection; (b) Mementum does not own or control any valid or

Mitchell
Silberberg &
Knupp LLP

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

enforceable copyright, under the law of the United States, in the Disputed Brainrots; (c) Plaintiffs' use of the Disputed Brainrots, whether in the Game or in any other product, platform, or medium in which Plaintiffs use them, does not infringe any copyright of Mementum under the law of the United States; and (d) Mementum is not entitled to damages, injunctive relief, or any other remedy arising from Plaintiffs' use of the Disputed Brainrots.

2.     For a declaration that: (a) the Tung Tung Sahur Marks do not function to identify the source of any goods or services and are not valid, protectable trademarks under the law of the United States; (b) Mementum does not own or control any valid or enforceable trademark right in the Tung Tung Sahur Marks under the law of the United States; (c) Plaintiffs' use of the Tung Tung Sahur Marks, whether in the Game, in merchandise, or in any other product, platform, or medium in which Plaintiffs use them, does not infringe any trademark right of Mementum under the law of the United States; (d) Mementum is not entitled to damages, disgorgement of profits, injunctive relief, attorneys' fees, or any other remedy arising from Plaintiffs' use of the Tung Tung Sahur Marks; and (e) Plaintiffs' use of the Disputed Brainrots, whether in the Game, in merchandise, or in any other product, platform or medium in which Plaintiffs use them, does not constitute trademark infringement or unfair competition under the common law of the State of California, and that Mementum is not entitled to disgorgement, restitution, or any other remedy on account of that use.

3.     Plaintiffs' attorneys' fees and costs as permitted by law.

4.     Any further relief in law or equity that Plaintiffs are entitled to or which the Court deems appropriate.

DATED: JULY 30, 2026                    MITCHELL SILBERBERG & KNUPP LLP

By: _____
Aaron J. Moss
Joshua M. Geller
Ariana T. Addo-Yobo
Attorneys for Plaintiffs and Counter-Defendants
SPYDER GAMES LLC and
SPEEDY SIMULATOR GAMING, LLC

Mitchell
Silberberg &
Knupp LLP

**PLAINTIFFS' FIRST AMENDED COMPLAINT**