AARON J. MOSS (190625)
aaron.moss@msk.com
JOSHUA M. GELLER (295412)
josh.geller@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, California 90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

MARISSA B. LEWIS (*Pro Hac Vice*)
mbl@msk.com
HARRISON A. NEWMAN (*Pro Hac Vice*)
han@msk.com
MITCHELL SILBERBERG & KNUPP LLP
437 Madison Ave., 25th Floor
New York, New York 10022-7001
Telephone: (212) 509-3900
Facsimile: (212) 509-7239

Attorneys for Plaintiffs
SPYDER GAMES LLC and
SPEEDY SIMULATOR GAMING, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

SPYDER GAMES LLC, a Louisiana limited liability company; and SPEEDY SIMULATOR GAMING, LLC, a Wyoming limited liability company,

Plaintiffs and Counter-Defendants,

v.

MEMENTUM LAB, a French company,

Defendant and Counterclaimant.

CASE NO. 5:25-CV-10248-NW

**PLAINTIFFS AND COUNTER-DEFENDANTS' OPPOSITION TO MEMENTUM'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Hon. Noël Wise

Date: December 9, 2026
Time: 9:00 a.m.
Courtroom: 3

# TABLE OF CONTENTS

Page


TABLE OF AUTHORITIES .......... 4

MEMORANDUM OF POINTS AND AUTHORITIES .......... 8

I. INTRODUCTION .......... 8

II. RELEVANT FACTUAL BACKGROUND .......... 9

A. Plaintiffs Release the Game Depicting Mementum's Brainrots. .......... 9

B. Plaintiffs Use the Disputed Brainrots Beyond the Game. .......... 9

C. Mementum Demands that Plaintiffs Cease Their Use of the Brainrots. .......... 10

D. Mementum Acknowledges Plaintiffs' Non-Game Use During Negotiations. .......... 11

E. Plaintiffs Commence This Action for Broad Declaratory Relief. .......... 11

F. Mementum Continues to Enforce Against Plaintiffs' Use of the Characters. .......... 12

G. Mementum Enters Into a Narrow Covenant Not to Sue. .......... 13

H. The Court Grants Leave to Amend and Terminates the Parties' Motions. .......... 14

I. Plaintiffs File Their First Amended Complaint. .......... 14

III. ARGUMENT .......... 16

A. An Actual Controversy Exists Over Plaintiffs' Copyright Declaratory Relief Claim. .......... 16

1. Mementum Has Not and Cannot Meet Its "Formidable" Burden to Show the Covenant Mooted the Controversy Alleged in the First Amended Complaint. .......... 16

2. Mementum's Course of Conduct Establishes an Actual Controversy. .......... 20

a. Mementum's Cease and Desist Letter. .......... 21

b. Mementum's Statements in Pre-Suit Negotiations. .......... 22

c. Mementum's Counterclaims and the Additional Brainrots. .......... 25

d. Mementum's Refusal to Broaden the Scope of the Covenant. .......... 26

3. Mementum's Remaining Arguments Do Not Defeat Jurisdiction. .......... 27

# TABLE OF CONTENTS

**Page**

B. THE COURT SHOULD NOT STRIKE OR DISMISS PLAINTIFFS' TRADEMARK DECLARATORY RELIEF CLAIM. ........ 28

1. Plaintiffs' Trademark Claim Is Within the Scope of the Court's Order. .. 28

2. Plaintiffs' Trademark Declaratory Relief Claim Is Not a "Mirror Image" of Mementum's Trademark Counterclaim. ........ 29

3. Plaintiffs' Trademark Claim as to All Other Disputed Brainrots is Proper. ........ 31

IV. CONCLUSION ........ 32

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abrahams v. Hard Drive Prods., Inc.*,
No. C-12-01006 JCS, 2012 WL 1945493 (N.D. Cal. May 30, 2012) .......... 26

*ActiveVideo Networks, Inc. v. Trans Video Elecs., Ltd.*,
975 F. Supp. 2d 1083 (N.D. Cal. 2013) .......... 22

*Aetna Life Ins. Co. v. Haworth*,
300 U.S. 227 (1937) .......... 27

*Already, LLC v. Nike, Inc.*,
568 U.S. 85 (2013) .......... *passim*

*ArcelorMittal v. AK Steel Corp.*,
856 F.3d 1365 (Fed. Cir. 2017) .......... 17

*Barnes & Noble, Inc. v. LSI Corp.*,
823 F. Supp. 2d 980 (N.D. Cal. 2011) .......... 24

*Beyond Blond Prods., LLC v. Heldman*,
No. CV205581DSFGJSX, 2021 WL 9315215 (C.D. Cal. Sept. 16, 2021) .......... 25, 27

*BuzzBallz, LLC v. MPL Brands NV, Inc.*,
No. 24-CV-04004-EKL, 2025 WL 2052301 (N.D. Cal. July 22, 2025) .......... 19

*Castaline v. Aaron Mueller Arts*,
No. C 09-02543 CRB, 2010 WL 583944 (N.D. Cal. Feb. 16, 2010) .......... 30

*ChromaDex, Inc. v. Elysium Health, Inc.*,
No. SACV1602277CJCDFMX, 2017 WL 7080237 (C.D. Cal. Nov. 28, 2017) .......... 18, 20

*Copasetic Clothing Ltd. v. Roots Canada Corp.*,
No. 17-CV-02300-GPC-KSC, 2018 WL 4051693 (S.D. Cal. Aug. 24, 2018) .......... 24

*Corsair Gaming, Inc. v. Choice Elecs. Inc.*,
No. 5:25-CV-00045-BLF, 2025 WL 2822691 (N.D. Cal. Oct. 3, 2025) .......... 29, 31

*Crossbow Tech., Inc. v. YH Tech.*,
531 F. Supp. 2d 1117 (N.D. Cal. 2007) .......... 17

*Davis v. Hollywood & Ivar, LLC*,
No. 221CV01235VAPJPRX, 2021 WL 4816822 (C.D. Cal. July 30, 2021) .......... 32

*Delphix Corp. v. Embarcadero Techs., Inc.*,
No. 16-CV-00606-BLF, 2016 WL 4474631 (N.D. Cal. Aug. 25, 2016) .......... 23

**TABLE OF AUTHORITIES**

**Page(s)**

*Diamonds.net LLC v. Idex Online, Ltd.*,
590 F. Supp. 2d 593 (S.D.N.Y. 2008) .......... 18

*EMC Corp. v. Norand Corp.*,
89 F.3d 807 (Fed. Cir. 1996) .......... 24

*Expensify, Inc. v. White*,
No. 19-CV-01892-PJH, 2019 WL 5295064 (N.D. Cal. Oct. 18, 2019) .......... 19

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000) .......... 17

*Housing is a Human Right Orange Cnty. v. Cnty. of Orange*,
No. SACV19388PAJDEX, 2019 WL 8012374 (C.D. Cal. Oct. 28, 2019) .......... 28

*Humu, Inc. v. Hulu, LLC*,
No. 19-CV-00327-HSG, 2019 WL 3220271 (N.D. Cal. July 17, 2019) .......... 17, 19, 20

*Impax Labs., Inc. v. Medicis Pharm. Corp.*,
No. C-08-0253 MMC, 2008 WL 1767044 (N.D. Cal. Apr. 16, 2008) .......... 24

*Intel Corp. v. Tela Innovations, Inc.*,
No. 3:18-CV-02848-WHO, 2019 WL 2476620 (N.D. Cal. June 13, 2019) .......... 31

*Intellisoft, Ltd. v. Acer Am. Corp.*,
No. 17-CV-06272-PJH, 2018 WL 2412179 (N.D. Cal. May 29, 2018) .......... 17, 18, 20

*Keezio Grp., LLC v. Summer Infant (USA), Inc.*,
No. CV 22-3429 DSF (GJSX), 2022 WL 23049192 (C.D. Cal. Oct. 11, 2022) .......... 22

*Kindred Studio Illustration & Design, LLC v. Elec. Commc'n Tech., LLC*,
No. CV 18-7661-GW(GJSx), 2018 WL 6985317 (C.D. Cal. Dec. 3, 2018) .......... 19

*Kustom Signals, Inc. v. Applied Concepts, Inc.*,
No. 96-2274-JWL, 1996 WL 568817 (D. Kan. Sept. 16, 1996) .......... 24

*Lauren Moshi, LLC v. Fuentes*,
No. CV 18-6725-DMG, 2019 WL 8690213 (C.D. Cal. June 25, 2019) .......... 19

*Lavco Sols., Inc. v. Biztracker Sys. of St. John, LLC*,
No. 220CV03286VAPPLAX, 2020 WL 11648276 (C.D. Cal. Nov. 4, 2020) .......... 29, 30

*Leadsinger, Inc. v. BMG Music Publ'g*,
512 F.3d 522 (9th Cir. 2008) .......... 29

**TABLE OF AUTHORITIES**

**Page(s)**

*Malibu Media, LLC v. Doe*,
No. C 15-04441 WHA, 2016 WL 3383758 (N.D. Cal. June 20, 2016) ..... 30

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007) ..... 17, 20, 21, 23

*Melo v. Frida Kahlo Corp.*,
No. 19-CV-05449-CRB, 2020 WL 13891187 (N.D. Cal. Oct. 16, 2020) ..... 22

*Meta Platforms, Inc. v. Bright Data Ltd.*,
No. 23-CV-00077, 2024 WL 251406 (N.D. Cal. Jan. 23, 2024) ..... 18

*Nike, Inc. v. Already, LLC*
663 F.3d 89 (2d Cir. 2011), *aff'd*, 568 U.S. 85 (2013) ..... 18

*Openwave Messaging, Inc. v. Open-Xchange, Inc.*,
No. 16-CV-00253-WHO, 2016 WL 6393503 (N.D. Cal. Oct. 28, 2016) ..... 30

*Prasco, LLC v. Medicis Pharm. Corp.*,
537 F.3d 1329 (Fed. Cir. 2008) ..... 27

*Proofpoint, Inc. v. InNova Pat. Licensing, LLC*,
No. 5:11-CV-02288-LHK, 2011 WL 4915847 (N.D. Cal. Oct. 17, 2011) ..... 24

*Reed Elsevier, Inc. v. Muchnick*,
559 U.S. 154 (2010) ..... 28

*Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*,
556 F.3d 1294 (Fed. Cir. 2009) ..... 20

*Rhoades v. Avon Prods., Inc.*,
504 F.3d 1151 (9th Cir. 2007) ..... 16, 21, 22

*Samsung Elecs. Corp. v. Oura Health Oy*,
No. 24-CV-03245-AMO, 2025 WL 929410 (N.D. Cal. Mar. 27, 2025) ..... 24

*San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*,
65 F.4th 1012 (9th Cir. 2023) ..... 21, 24, 26

*Splunk Inc. v. Deutsche Telekom AG*,
No. 3:20-CV-04377-JD, 2021 WL 3140832 (N.D. Cal. July 26, 2021) ..... 25, 26

*Stickrath v. Globalstar, Inc.*,
No. C07-1941 THE, 2008 WL 2050990 (N.D. Cal. May 13, 2008) ..... 29, 30

# TABLE OF AUTHORITIES

**Page(s)**

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) .......... 27

*Velvet Underground v. Andy Warhol Found. for the Visual Arts, Inc.*,
890 F. Supp. 2d 398 (S.D.N.Y. 2012) .......... 18, 19, 27, 28

*Wong v. Hard Drive Prods., Inc.*,
No. 12-CV-469-YGR, 2012 WL 1252710 (N.D. Cal. Apr. 13, 2012) .......... 26

## RULES & STATUTES

17 U.S.C. § 411(a) .......... 28

Fed. R. Civ. P. 12(b)(1) .......... 9

Fed. R. Civ. P. 12(b)(6) .......... 12

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs and Counter-Defendants Spyder Games LLC and Speedy Simulator Gaming, LLC (together, "Plaintiffs") are not asking this Court for "sweeping advisory opinions" regarding "hypothetical" copyright disputes. They seek declarations that fall squarely within the scope of the dispute that Defendant and Counterclaimant Mementum Lab SAS ("Mementum") itself created over its purported rights in certain "brainrot" characters and Plaintiffs' right to use them. Mementum's Covenant Not to Sue resolved one part of that dispute. It left untouched Plaintiffs' use outside the *Steal a Brainrot* game, including in merchandise and audiovisual works, and their use of the twenty-two additional brainrots identified in Mementum's Counterclaims—aspects of the parties' existing dispute that the First Amended Complaint now expressly identifies.

Mementum's latest Motion to Dismiss (Dkt. No. 54) ("Motion" or "Mot.") largely sidesteps how the Covenant's narrow terms leave those uses untouched. It invokes the Covenant Not to Sue as though it eliminated the entire copyright controversy, even though Mementum refused Plaintiffs' request to broaden it to cover the full scope of their current and imminently planned uses. Moreover, Mementum's cease-and-desist letter, positions during pre-suit negotiations, and Counterclaims all reflect an ongoing dispute over those broader uses. Mementum addresses each of these in isolation, but the governing "totality of the circumstances" inquiry confirms that the controversy remains live.

Mementum's challenge to Plaintiffs' trademark declaratory judgment claim fares no better. The claim was properly added and serves a useful purpose despite Mementum's overlapping Counterclaims. A declaration of invalidity would permit Plaintiffs to continue developing their products free from Mementum's asserted trademark rights, while the non-infringement claim ensures that Plaintiffs can obtain a resolution even if Mementum dismisses its own claims—particularly important given Mementum's attempt to eliminate Plaintiffs' copyright claim through its post-suit Covenant Not to Sue. Mementum's Motion should be denied in its entirety.

## II. RELEVANT FACTUAL BACKGROUND[1]

### A. Plaintiffs Release the Game Depicting Mementum's Brainrots.

On or around May 16, 2025, Plaintiffs released a video game titled *Steal a Brainrot* (the "Game") on the Roblox platform. *See* First Amended Complaint (Dkt. No. 50) (cited herein as "FAC") ¶ 6. Plaintiffs have published licensed versions of the Game on other platforms, including the Epic Games platform, and Plaintiffs have entered into additional publishing agreements for further platform releases. *Id.* ¶ 30.

The Game depicts numerous viral "brainrot" characters, including a brainrot character known as "Tung Tung Sahur" and dozens of other brainrot characters that Mementum has recognized have "become part of the fabric of online culture" (Dkt. No. 27 at 7:8-9) but which it claims to own or control. *See* FAC ¶¶ 18-20. Among the brainrots that Mementum claims to own or control are the seventeen brainrots identified in Exhibit 1 to Plaintiffs' First Amended Complaint (Dkt. No. 50-1) (the "Covered Brainrots"),[2] and the twenty-two additional brainrots identified in Mementum's Counterclaims (Dkt. No. 51 ("SACC") ¶ 5, n.1) (the "Additional Brainrots"), which are collectively referred to herein as the "Disputed Brainrots."

### B. Plaintiffs Use the Disputed Brainrots Beyond the Game.

Plaintiffs' current use of the Disputed Brainrots goes beyond the Game. *See* FAC ¶¶ 30-34; Dkt. No. 33-3 ¶¶ 4-7. Plaintiffs operate a licensed-merchandise program under the *Steal a Brainrot* brand, selling physical products (*e.g.*, collectible minifigures, graphic t-shirts, and sticker sets) depicting the Disputed Brainrots through major retailers. *See* FAC ¶¶ 31-32; Dkt. No. 33-3 ¶¶ 4-6. Like the Game, Plaintiffs' products depict Disputed Brainrots that Mementum has expressly claimed to own in this action, including both Covered Brainrots and Additional Brainrots. *See* FAC ¶ 32; Dkt. No. 33-3 ¶ 7.

---

[1] The parties agree that Mementum's "factual attack on jurisdiction under Rule 12(b)(1) … permits this Court to consider extrinsic evidence." Mot. at 9, n.1. Accordingly, the facts set forth herein are not limited to the allegations in Plaintiffs' First Amended Complaint.

[2] As discussed further below, Attachment A to Mementum's "Covenant Not to Sue" identifies the same seventeen brainrots (*i.e.*, the Covered Brainrots). *See* Dkt. No. 28-1 at pp. 23-39.

Plaintiffs have taken concrete steps toward additional licensed product lines depicting Disputed Brainrots—including apparel, accessories, stationery, and trading cards—entering into binding merchandising license agreements and approving product designs, artwork, packaging, and prototypes with their licensees. *See* FAC ¶ 33; Dkt. No. 33-3 ¶ 8. Plaintiffs also have entered into a development arrangement for a feature film based on the Game and its characters, including Disputed Brainrots, which was publicly announced in January 2026, and they anticipate further agreements for the development, production, and distribution of one or more motion pictures and other audiovisual works derived from the Game and its characters. FAC ¶ 34; Dkt. No. 33-3 ¶ 9.

**C. <u>Mementum Demands that Plaintiffs Cease Their Use of the Brainrots.</u>**

On September 3, 2025, Mementum sent Plaintiffs a cease-and-desist letter asserting "intellectual property rights" in the character Tung Tung Sahur. *See* FAC ¶ 21; Dkt. No. 54-1. The letter stated that Mementum is "the exclusive rights holder … of the intellectual property associated with the character Tung Tung Sahur," including in the character's "voice" and "all associated graphic and narrative elements," and attached what is described as a "non-exhaustive list of [Plaintiffs'] unauthorized uses." *Id.* at p. 3.[3] The letter asserted that Tung Tung Sahur is subject to "copyright, trademark, and unfair competition protections," and threatened to enforce its rights against Plaintiffs' "unauthorized exploitation" by, among other things, pursuing "all civil and criminal remedies," initiating "judicial actions," and submitting takedown notices pursuant to the Digital Millennium Copyright Act ("DMCA"). *Id.* at pp. 3, 5. Beyond the Game, the cease-and-desist letter threatened to seize "infringing goods" (*id.* at p. 3) and to continuously monitor "*e-commerce* marketplaces and NFT platforms" for "unauthorized exploitations" such as "*toys*" (*id.* at pp. 5, 8). The demand letter identified Mementum's "[p]riority sectors" for licensing and enforcement as "video games, toys/merchandising, cultural/food collaborations, and publishing/audiovisual production." *Id.* at p. 5.

[3] For ease of reference, citations to exhibits previously filed on the docket use page numbers assigned by the Court's CM/ECF system, rather than any page numbers appearing on the underlying documents. In addition, all emphases in quotations throughout this brief have been added.

**D. Mementum Acknowledges Plaintiffs' Non-Game Use During Negotiations.**

Between September and November 2025, the parties engaged in negotiations for a business solution that would resolve the legal claims asserted by Mementum and define Plaintiffs' right to use the Disputed Brainrots. *See* FAC ¶ 26. Throughout those negotiations, Plaintiffs made clear that they use and intended to use the Disputed Brainrots outside the Game, including in derivative works, in versions of the Game on other platforms, and in merchandise and related products. *Id.* Plaintiffs' initial proposal to Mementum in October 2025 sought the right to use, display, and distribute the Disputed Brainrots within the Game, in derivative games, and in related products. *Id.*

Mementum made it clear that it regarded Plaintiffs' use outside the Game as unauthorized. It took the position in writing that it had agreed only to "regularize" past use of its materials "within the scope of the Game '*Steal a Brainrot*,'" "not to issue a blanket waiver or release of all potential claims," and that Plaintiffs could use the characters "solely within the scope of the agreed Game project, without any broader exploitation rights." *Id.* ¶ 27. During these negotiations, Mementum raised the prospect of "potential legal action against [Plaintiffs'] partners"—third parties that Plaintiffs had licensed to use the *Steal a Brainrot* property, which includes the Disputed Brainrots. *Id.* In a telephone call between the parties' principals during the same period, Mementum conveyed that if the parties did not reach an agreement, Plaintiffs would face legal action, and that Plaintiffs—as a high-profile studio—were the kind of target Mementum wished to make an example of to establish its claimed rights publicly. *Id.* ¶ 28.

**E. Plaintiffs Commence This Action for Broad Declaratory Relief.**

On November 26, 2025, Plaintiffs commenced this action against Mementum for declaratory relief. *See* Dkt. No. 1 ("Complaint" or "Compl."). Specifically, in their initial Complaint, Plaintiffs sought a judicial declaration under United States copyright law that: (a) "[t]he brainrots at issue are not subject to copyright protection;" (b) "[Mementum] does not own any valid or enforceable copyright rights in the brainrots;" (c) "[Plaintiffs'] use, reproduction, distribution, display, or inclusion of the brainrots does not infringe any copyright rights of [Mementum];" and (d) "[Mementum] is not entitled to damages, injunctive relief, or any other remedy arising from [Plaintiffs'] use of the brainrots." *Id.* ¶ 28. The Complaint sought a declaration as to Plaintiffs'

"use" of the brainrots in unqualified terms, not limited to any particular game, product, or platform. *Id.* ¶ 28(c) (seeking a declaration that "Plaintiffs' use, reproduction, distribution, display or inclusion of the brainrots … does not infringe any copyright rights of defendant."); *see also id.* ¶ 24.

**F. <u>Mementum Continues to Enforce Against Plaintiffs' Use of the Characters.</u>**

Consistent with the "Enforcement Strategy" described in its cease-and-desist letter (FAC ¶ 23; Dkt. No. 54-1 at p. 5), when the parties reached an impasse, Mementum took action against Plaintiffs to enforce its asserted trademark rights in the Game. *See* FAC ¶ 29. In April 2026, Mementum submitted a takedown request to Roblox, a United States-based gaming platform, under Article 16 of the European Union's Digital Services Act, asserting that Plaintiffs' use of the name and image of Tung Tung Sahur (the "Tung Tung Sahur Marks") infringed Mementum's trademark rights. *Id.* ¶ 29. Plaintiffs were forced to remove Tung Tung Sahur from the Game in response. *Id.*

On April 24, 2026, Mementum filed an Answer and Counterclaims (Dkt. No. 18), which it has amended twice (Dkt. Nos. 25, 51) in response to Plaintiffs' Motions to Dismiss (Dkt. Nos. 22, 32).[4] In each iteration of its pleadings, Mementum asserted Counterclaims for trademark infringement and unfair competition, but not for copyright infringement. Specifically, in the Second Amended Counterclaims, Mementum asserts: (1) "Trademark Infringement Under the Lanham Act - 15 U.S.C. § 1125(a)" (SACC ¶¶ 27-35); (2) "Unfair Competition Under the Lanham Act - 15 U.S.C. § 1126(h) and (i)" (SACC ¶¶ 36-43); and (3) "Common Law Unfair Competition" (SACC ¶¶ 44-47).

Mementum's Counterclaims arise from the same core facts as Plaintiffs' declaratory relief claims—namely, Plaintiffs' use of the Disputed Brainrots. *See, e.g.*, *id.* ¶ 1 (alleging "Plaintiffs used the 'brainrot' characters … without [the creators' consent], violating these creators' intellectual property rights and artistic vision"); *id.*, Prayer for Relief ¶ 7 (requesting that "the Court determine that Plaintiffs were unjustly enriched at [Mementum's] expense through their unauthorized use of [Mementum's] brainrot characters"); *id.*, Prayer for Relief ¶ 8 (seeking a "disgorgement of all profits and benefits unjustly obtained by Plaintiffs through their unauthorized use of [Mementum's]

[4] Plaintiffs have filed a Motion to Dismiss Mementum's Second Amended Counterclaims pursuant to Fed. R. Civ. P. 12(b)(6). That Motion is pending. *See* Dkt. No. 53.

brainrot characters"). Mementum not only asserts Counterclaims relating to the Covered Brainrots, but also claims rights in the Additional Brainrots. *Id.* ¶ 5, n.1.

### G. <u>Mementum Enters Into a Narrow Covenant Not to Sue.</u>

On May 21, 2026, Mementum delivered to Plaintiffs a "Covenant Not to Sue" (the "Covenant"). *See* FAC ¶ 40; Dkt. No. 28-1 at pp. 19-21. By its terms, the Covenant releases only ***copyright*** claims arising from Plaintiffs' use of the ***seventeen*** "***brainrot characters identified in Attachment A*** to [the] Covenant … ***in the Game as identified in the Complaint***." *Id.* at pp. 20-21. Specifically, Mementum agreed not to sue Plaintiffs "for infringement of any statutory or common law copyright in the ***[seventeen] brainrot characters identified in Attachment A*** to this Covenant (the 'Characters')[5] under the copyright law of the United States, regardless of whether said Claim for copyright infringement accrues before, on, or after the Effective Date and regardless of whether said Claim arises from the [Plaintiffs'] or any other Covered Party's past, current, or substantially similar future use of the Characters ***in the Game as identified in the Complaint***." *Id.* Accordingly, by its terms, the Covenant releases nothing at all with respect to Plaintiffs' use of the Additional Brainrots. *See id.*; FAC ¶ 41. And as to the Covered Brainrots, the Covenant is limited to copyright claims and in-Game use; it does not release trademark claims nor any claims arising from uses outside the Game, such as in Plaintiffs' merchandise and anticipated film. *See* Dkt. No. 28-1 at pp. 20-21; FAC ¶ 41. Mementum has confirmed that the Covenant is limited to the seventeen brainrots identified in Attachment A (*i.e.*, the Covered Brainrots) and to "future or modified versions of the Game." *Id.* ¶ 42; Dkt. No. 28-3.

Plaintiffs have advised Mementum that the Covenant does not cover the full scope of Plaintiffs' current and imminently planned uses of the brainrots, including their use in merchandise. *See* FAC ¶ 43; Dkt. No. 28-4. However, Mementum has declined to broaden the Covenant. *See* FAC ¶ 43; Dkt. No. 33-1 ¶ 6. To date, Mementum has never given Plaintiffs any assurance, binding or otherwise, that it will not assert United States copyright claims against Plaintiffs' use of the

---

[5] The term "Characters" (as used in the Covenant) has the same meaning as "Covered Brainrots" (as used herein)—specifically, it refers to the seventeen brainrots identified in Attachment A to the Covenant (Dkt. No. 28-1), and does not include the Additional Brainrots identified in the Counterclaims (SACC ¶ 5, n.1).

Additional Brainrots,[6] or against Plaintiffs' use of the Covered Brainrots outside the Game. *See* FAC ¶ 44. Likewise, Mementum has never provided any assurance that it will not assert United States trademark or common law unfair competition claims against Plaintiffs' use of the Tung Tung Sahur Marks or of any other Disputed Brainrots. *Id.*

**H. <u>The Court Grants Leave to Amend and Terminates the Parties' Motions.</u>**

On June 10, 2026, Mementum filed a Motion to Dismiss Plaintiffs' original Complaint for lack of subject matter jurisdiction on the ground that its Covenant mooted the parties' dispute. *See* Dkt. No. 27. Plaintiffs opposed Mementum's Motion to Dismiss, maintaining that the Complaint alleged a broad scope of use, and thus the Covenant—which is limited to Plaintiffs' use of the Covered Brainrots in the Game—left substantial aspects of the parties' dispute unresolved. *See* Dkt. No. 33. However, to resolve any potential ambiguity, Plaintiffs simultaneously filed a Motion for Leave to File a First Amended Complaint to make explicit that Plaintiffs' use includes both the Additional Brainrots and use outside the Game. *See* Dkt. No. 34. Plaintiffs submitted a proposed First Amended Complaint together with its Motion for Leave. *See* Dkt. No. 34-2.

On July 21, 2026, after reviewing the parties' Motions to Dismiss (Dkt. Nos. 27, 32) and Plaintiffs' Motion for Leave (Dkt. No. 34), the Court "grant[ed] each party leave to file one round of amended pleadings," expressly providing that "Plaintiffs may file a first amended complaint and [Mementum] may file amended counterclaims accordingly." Dkt. No. 42.[7] Pursuant to the Court's Order, on July 28, 2026, the parties filed a stipulation (Dkt. No. 48) addressing, among other things, "the timing and briefing schedule for filing their anticipated amended pleadings and responsive briefs," and thus the parties' then-pending Motions were "terminate[d] as moot." Dkt. No. 42.

**I. <u>Plaintiffs File Their First Amended Complaint.</u>**

On July 30, 2026, Plaintiffs filed their First Amended Complaint. *See* Dkt. No. 50. The First Amended Complaint asserts two claims for declaratory relief:

---

[6] Mementum alleges for the first time in its Second Amended Counterclaims that it "does not ***intend***, … to assert [] claims" relating to the Additional Brainrots, yet it continues to assert that "Plaintiffs have used [the Additional Brainrots] in the Game without their permission." SACC ¶ 5, n.1.

[7] Mementum did not file a motion for leave to amend. Its request to amend was limited to a one-sentence argument in its Opposition to Plaintiffs' Motion to Dismiss. *See* Dkt. No. 37 at 31.

***First***, consistent with the relief sought in their Motion for Leave, Plaintiffs seek declaratory relief under United States copyright law regarding Mementum's asserted rights in the "Disputed Brainrots" (FAC ¶ 51(a)-(b)), which is defined to include both the Covered Brainrots and the Additional Brainrots (*id.* ¶¶ 2, 19-20), and "Plaintiffs' use of the Disputed Brainrots, whether in the Game or in any other product, platform, or medium in which Plaintiffs use them" (*id.* ¶ 51(c)-(d); *see also id.* ¶¶ 30-34 (specifically alleging use of the Disputed Brainrots outside the Game)). Anticipating that Mementum would file another Motion to Dismiss, Plaintiffs also bolstered the allegations regarding Mementum's conduct establishing an actual controversy. *See, e.g.*, *id.* ¶¶ 26-29 (allegations regarding the parties' negotiations); *id.* ¶¶ 35-39 (allegations regarding Mementum's First Amended Counterclaims); *see also id.* ¶¶ 40-45 (allegations regarding the Covenant).

***Second***, Plaintiffs seek declaratory relief under United States trademark and unfair competition law regarding Mementum's Tung Tung Sahur Marks. *See* FAC ¶¶ 52-57. Specifically, Plaintiffs seek a judicial declaration that: (a) "the Tung Tung Sahur Marks … are ***not valid***, protectable trademarks;" (b) "Mementum does not own or control any valid or enforceable trademark right in the Tung Tung Sahur Marks;" (c) "Plaintiffs' use of the Tung Tung Sahur Marks, whether in the Game, in merchandise, or in any other product, platform, or medium in which Plaintiffs use them, ***does not infringe*** any trademark right of Mementum under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Sections 44(h) and (i) of the Lanham Act, 15 U.S.C. § 1126(h) and (i), or the common law of California;" and (d) "Mementum is not entitled to damages, disgorgement of profits, injunctive relief, attorneys' fees, or any other remedy arising from Plaintiffs' use of the Tung Tung Sahur Marks." *Id.* ¶ 56(a)-(d). Plaintiffs also sought a declaration of non-infringement as to the other Disputed Brainrots in which Mementum asserts trademark rights or claims infringement. *See* FAC ¶ 57.

On August 19, 2026, Mementum filed a Motion to Dismiss the First Amended Complaint (Dkt. No. 54) (cited herein as "Mot."), challenging the Court's subject matter jurisdiction over Plaintiffs' copyright declaratory relief claim and seeking to strike or dismiss Plaintiffs' trademark declaratory relief claim on several grounds, including, primarily, that they "mirror" Mementum's Counterclaims. None of these arguments has merit, and Mementum's Motion should be denied.

## III. ARGUMENT

### A. An Actual Controversy Exists Over Plaintiffs' Copyright Declaratory Relief Claim.

"When presented with a claim for a declaratory judgment," the court must "ensure the presence of an actual case or controversy" within the meaning of Article III of the Constitution. *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007) (citation omitted). An actual "case" or "controversy" exists, and the court has subject matter jurisdiction, when "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citation and internal quotation marks omitted).

There is no dispute that an actual controversy existed over Plaintiffs' use of the Covered Brainrots in the Game on the Roblox platform and that the Covenant mooted that narrow controversy. However, the controversy alleged in the First Amended Complaint is broader: it explicitly covers Plaintiffs' non-Game uses and their use of the Additional Brainrots. As discussed below, Mementum cannot meet its "formidable burden" to establish that the Covenant moots that broader controversy. By its terms, the Covenant applies solely to Plaintiffs' in-Game use of the Covered Brainrots. Moreover, the totality of the circumstances—from Mementum's cease-and-desist letter and pre-suit threats through its Counterclaims and refusal to broaden the Covenant—confirms an ongoing dispute between the parties over the uses the Covenant leaves untouched. Mementum's Motion to Dismiss Plaintiffs' copyright declaratory relief claim thus should be denied.

#### 1. Mementum Has Not and Cannot Meet Its "Formidable" Burden to Show the Covenant Mooted the Controversy Alleged in the First Amended Complaint.

Mementum argues that its Covenant extinguished the controversy as to Plaintiffs' copyright declaratory relief claim. *See* Mot. at 15-16. Because Mementum has "invoked [a] covenant not to sue to show the case is moot, [***Mementum has***] ***the burden*** to establish that proposition," and that burden is "formidable." *Already*, 568 U.S. at 102 (Kennedy, J., concurring) (citation omitted);

*accord id.* at 91 ("a defendant claiming that its voluntary compliance moots a case bears the ***formidable burden*** of showing that it is ***absolutely clear*** the allegedly wrongful behavior could not reasonably be expected to recur") (internal quotation marks and citation omitted); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (the "'***heavy burden*** of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness") (citation omitted); *ArcelorMittal v. AK Steel Corp.*, 856 F.3d 1365, 1370 (Fed. Cir. 2017) (party invoking a covenant not to sue "bears the formidable burden of showing … that the covenant enforceably extinguished any real controversy between the parties related to the infringement of the [] patent [at issue]" and therefore the party "could not reasonably be expected to resume its enforcement efforts against the covenanted, accused infringer") (citations and internal quotation marks omitted).

Mementum has not and cannot meet its burden to show that the Covenant moots the copyright claim alleged in Plaintiffs' First Amended Complaint. Mementum's mootness argument largely reprises the one it directed at the original Complaint, without addressing how the Covenant's narrow terms leave Plaintiffs' newly alleged non-Game and Additional Brainrot uses untouched. That the Covenant moots the in-Game controversy is not disputed. But whatever ambiguity once existed as to the scope of Plaintiffs' claim, none remains: the First Amended Complaint explicitly alleges that Plaintiffs use the Covered Brainrots outside the Game and use the Additional Brainrots both in and outside the Game (FAC ¶¶ 30-34)—conduct that the Covenant plainly does not cover.

That distinction is dispositive. "Whether a covenant not to sue will divest the trial court of jurisdiction ***depends on what is covered by the covenant***." *Intellisoft, Ltd. v. Acer Am. Corp.*, No. 17-CV-06272-PJH, 2018 WL 2412179, at *5 (N.D. Cal. May 29, 2018) (citations omitted). A covenant that "is exhaustive of all potentially infringing products that [the covenanting party] may sue for" may moot a case. *Crossbow Tech., Inc. v. YH Tech.*, 531 F. Supp. 2d 1117, 1122 (N.D. Cal. 2007). However, a covenant that carves out part of the parties' dispute and leaves open the possibility of future litigation does not. *See, e.g.*, *Humu, Inc. v. Hulu, LLC*, No. 19-CV-00327-HSG, 2019 WL 3220271, at *2 (N.D. Cal. July 17, 2019) (declining to dismiss declaratory judgment claim where it was not "absolutely clear" that the covenant eliminated all potential infringement disputes

concerning plaintiff's "actual and imminently planned uses"). In determining whether a covenant moots a case, courts consider "the totality of the circumstances," including "(1) the language of the covenant, (2) whether the covenant covers future, as well as past, activity and products, and (3) evidence of intention or lack of intention, on the part of the party asserting jurisdiction, to engage in new activity or to develop new potentially infringing products that arguably are not covered by the covenant." *ChromaDex, Inc. v. Elysium Health, Inc.*, No. SACV1602277CJCDFMX, 2017 WL 7080237, at *3 (C.D. Cal. Nov. 28, 2017) (quoting *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 96 (2d Cir. 2011), *aff'd*, 568 U.S. 85 (2013)).

Each of these considerations confirms that a live controversy remains here. As discussed above, the language of the Covenant is narrow. *See* Dkt. No. 28-1 at pp. 19-21. Mementum drafted the Covenant precisely; it releases claims "under the copyright law of the United States" only; the "[seventeen] brainrot characters identified in Attachment A" only; and use "in the Game as identified in the Complaint" only. *Id.* at pp. 20-21.[8] What the Covenant is written to exclude, it leaves alive. *See Intellisoft*, 2018 WL 2412179, at *6 (covenant "designed to moot" one claim did not extinguish the entire dispute). Thus, the Covenant does not foreclose Mementum from asserting copyright claims based on Plaintiffs' use of the Additional Brainrots or their non-Game use of the Covered Brainrots, including in merchandise, motion pictures, and other products that are either ongoing or concretely planned. *See* FAC ¶¶ 30-34; *see also, e.g.*, *Diamonds.net LLC v. Idex Online, Ltd.*, 590 F. Supp. 2d 593, 600 (S.D.N.Y. 2008) (declining to dismiss declaratory judgment claim notwithstanding a covenant not to sue, where plaintiff had "already taken meaningful preparatory steps toward an infringing activity by planning to make a new product that may later be said to infringe").

Mementum argues that its Covenant is materially indistinguishable from the covenants that mooted the disputes in *Already* and *Velvet Underground*. It is not. Although Mementum's Covenant may repeat certain language from those covenants, the resemblance is only superficial.

[8] Any ambiguities in the Covenant must be construed against Mementum. *See Meta Platforms, Inc. v. Bright Data Ltd.*, No. 23-CV-00077, 2024 WL 251406, at *11 (N.D. Cal. Jan. 23, 2024) ("courts resolve ambiguities in contract language against the drafter") (citations omitted).

The covenants in *Already*, *Velvet Underground*, and the other cases cited in Mementum's Motion extinguished the parties' ***entire dispute*** and covered, at a minimum, ***all of the plaintiffs' current or previous uses***. *See* Mot. at 16-17 (citing *Already*, 568 U.S. at 93-94 (covenant covered "any of [plaintiff's] current and/or previous [ ] designs" and "any colorable imitations," such that "it [was] hard to imagine a scenario that would potentially infringe [defendant's mark] and yet not fall under the [c]ovenant"); *Velvet Underground v. Andy Warhol Found. for the Visual Arts, Inc.*, 890 F. Supp. 2d 398, 404-05 (S.D.N.Y. 2012) (covenant covered "any claim(s)" "relating to [defendant's] copyrights in the Banana Design," thereby "eliminat[ing] the prospect that the [defendant] will assert any copyright it may have against [plaintiff] or its licensees"); *BuzzBallz, LLC v. MPL Brands NV, Inc.*, No. 24-CV-04004-EKL, 2025 WL 2052301, at *3 (N.D. Cal. July 22, 2025) (covenant was "remarkably broad" and covered "any" of plaintiff's "'past, present, or future products'—not just products that are similar to the ones [plaintiff] currently sells"); *Expensify, Inc. v. White*, No. 19-CV-01892-PJH, 2019 WL 5295064, at *5 (N.D. Cal. Oct. 18, 2019) (covenant covered plaintiff's "past, present, or future websites and mobile applications"); *Lauren Moshi, LLC v. Fuentes*, No. CV 18-6725-DMG, 2019 WL 8690213, at *3 (C.D. Cal. June 25, 2019) (covenant "covered more than [plaintiff's] 'current or previous designs'"); *Kindred Studio Illustration & Design, LLC v. Elec. Commc'n Tech., LLC*, No. CV 18-7661-GW(GJSx), 2018 WL 6985317, at *5 (C.D. Cal. Dec. 3, 2018) (covenant used "broad, unequivocal, and absolutely clear language" and covered "any claims … relating in any way to any claims of patent infringement of [the identified] patents")).

By contrast, Mementum's Covenant covers only Plaintiffs' in-Game use of the Covered Brainrots and leaves the remainder of the parties' dispute intact. *See Humu*, 2019 WL 3220271, at *2 (rejecting defendant's contention that "its proffered covenant 'mirror[ed] the covenant that the Supreme Court held mooted the [*Already*] case,'" because the "covenant contain[ed] a critical proviso" limiting the covenant to "Humu Services marketed directly to the Humu Customers"). Mementum itself has acknowledged that it "preserved the ability to enforce" its "intellectual property rights in [the Disputed Brainrots] (including trademarks and copyrights)" "other than as prescribed in the Covenant." Dkt. No. 27 at p. 16. Mementum cites no precedent holding that a covenant that leaves room for future litigation can moot a case.

Because the Covenant does not make "absolutely clear" that it "eliminate[s] all potential infringement disputes related to [Plaintiffs'] actual and imminently planned uses of the [Disputed Brainrots]," Mementum cannot meet its burden to show mootness and its Motion should be denied. *See, e.g.*, *Humu*, 2019 WL 3220271, at *2 (declining to dismiss declaratory judgment claim notwithstanding a covenant not to sue, where the covenant did "not encompass all of [plaintiff's] existing or imminently planned activities" and did "not cover general marketing activities, in which [plaintiff] has engaged and intends to continue to engage"); *Intellisoft*, 2018 WL 2412179, at *5 (same, where "the covenants [did] not contain any exceptions or caveats, but … [were] too narrow to extinguish any current or future case or controversy between the parties, and divest the court of subject matter jurisdiction") (cleaned up); *ChromaDex*, 2017 WL 7080237, at *3 (same, where "[t]he totality of [the] circumstances, including the narrow language of [the] covenant, indicate[d] that an actual controversy between the parties remain[ed]"); *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1296 (Fed. Cir. 2009) (same, where the covenant did not "protect [plaintiff] from suit should [plaintiff] embark on future marketing of its [current] products").

The narrow scope of the Covenant is, by itself, sufficient to defeat Mementum's mootness argument: because the Covenant leaves Plaintiffs' non-Game and Additional-Brainrot uses wholly unaddressed, it cannot make "absolutely clear" that no controversy remains. The totality of Mementum's conduct, addressed below, independently confirms that a live controversy exists.

2. <u>Mementum's Course of Conduct Establishes an Actual Controversy.</u>

Unable to meet its burden with regard to the Covenant, Mementum argues that no actual controversy ever existed as to Plaintiffs' non-Game use of the Covered Brainrots nor as to the Additional Brainrots. *See* Mot. at 17-23. In doing so, Mementum examines each of its own acts in isolation, asking whether any one of them, standing alone, is sufficient to create an actual controversy. *See id.* That is improper. The relevant question is "whether the facts alleged, ***under all the circumstances***, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127. This inquiry runs from Plaintiffs' vantage point. It is "oriented to the reasonable perceptions of the plaintiff," and what the plaintiff reasonably

apprehends will subject it to liability, not necessarily an imminent lawsuit. *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1027 (9th Cir. 2023); *accord Rhoades*, 504 F.3d at 1157. No explicit threat of a lawsuit is required. A rights holder can create a controversy merely by pressing positions and demands that compel the plaintiff to "chill" conduct it is entitled to pursue. *San Diego Cnty.*, 65 F.4th at 1024. Examined collectively, as *MedImmune* requires, Mementum's course of conduct establishes a controversy that is both real and immediate.

a. <u>Mementum's Cease and Desist Letter.</u>

Mementum initiated this controversy with its September 3, 2025 cease-and-desist letter. FAC ¶ 21; Dkt. No. 54-1. In that letter, Mementum threatened to pursue "all civil and criminal remedies" to enforce its claimed "copyright, trademark, and unfair competition" rights in Tung Tung Sahur against Plaintiffs' "unauthorized uses." FAC ¶ 21; Dkt. No. 54-1 at p. 3; *see also* Dkt. No. 18 (cited herein as "Answer") ¶ 20 (admitting Mementum "sent a cease-and-desist letter to Plaintiffs" and "claimed Plaintiffs' use of Tung Tung Sahur in the Game violated its intellectual property rights"); Compl. ¶ 24 (alleging Mementum "asserted that it owns copyrights in certain 'brainrots' appearing in the Game," "claimed that [P]laintiffs' use of those brainrots infringes its purported copyrights," and "demanded that [P]laintiffs cease use of the brainrots and pay monetary damages"); Answer ¶ 24 (admitting same). Contrary to Mementum's assertion, the letter did ***not*** merely assert rights "under ***European law*** based solely on Plaintiffs' use of Tung Tung Sahur ***in the Game***." Mot. at 15. On its face, it asserted rights under "French ***and international law***"; described Plaintiffs' documented in-Game use as only a "non-exhaustive" list of their "unauthorized uses"; named "***toys/merchandising***" and "***publishing/audiovisual production***" as priority enforcement sectors; and threatened "seizure of infringing ***goods***," a remedy directed at physical merchandise, not a digital game. Dkt. No. 54-1 at pp. 3, 5.

The cease-and-desist letter also announced an "Enforcement Strategy" of "[s]ystematic takedown procedures" under the "DMCA," a United States statute, on platforms including "Amazon" (*id.* at p. 8) where Plaintiffs' licensed merchandise is sold (FAC ¶ 31). *See also* Mot. at 15 (admitting its cease-and-desist letter "included two references to the DMCA"). Mementum's contention that this "enforcement strategy" targeted only "third-party infringers" (*id.*) is not the only

reasonable reading of the letter and in any event, Mementum's subsequent takedown request directed at Plaintiffs' own Game confirms its willingness to act on that strategy against Plaintiffs. *See* FAC ¶ 29. Read in context, the letter communicated Mementum's readiness to enforce its asserted rights against Plaintiffs' non-Game uses. *See, e.g.*, *ActiveVideo Networks, Inc. v. Trans Video Elecs., Ltd.*, 975 F. Supp. 2d 1083, 1091 (N.D. Cal. 2013) (demand letter that "effectively charged [plaintiff] with infringement" and stated plaintiff's "products require a license" "is enough to give rise to a case or controversy, particularly where a specific infringing product is identified"); *Melo v. Frida Kahlo Corp.*, No. 19-CV-05449-CRB, 2020 WL 13891187, at *2 (N.D. Cal. Oct. 16, 2020) (controversy existed where, absent a covenant, nothing prevented the rights holder "from returning to issuing takedowns for the same art or for other artwork"); *Keezio Grp., LLC v. Summer Infant (USA), Inc.*, No. CV 22-3429 DSF (GJSX), 2022 WL 23049192, at *7 (C.D. Cal. Oct. 11, 2022) (a single Amazon takedown, plus a refusal to retract it, sustained jurisdiction).

b. Mementum's Statements in Pre-Suit Negotiations.

The controversy continued through the parties' pre-suit negotiations. *See* FAC ¶¶ 26-29; Dkt. No. 33-3 ¶¶ 11-12; Dkt. No. 54-2. As discussed above, Mementum refused to "issue a blanket waiver or release [] all potential claims" and insisted that, even if the parties reached an agreement, Plaintiffs could use the brainrots "solely within the scope of the agreed Game project, without any broader exploitation rights." FAC ¶ 27. Mementum warned of "potential legal action against [Plaintiffs'] partners"—the third parties Plaintiffs had licensed to use the *Steal a Brainrot* property. Dkt. No. 54-2 at p. 3. And on a telephone call between the parties' principals, Mementum conveyed that Plaintiffs would face legal action if the parties didn't reach an agreement, and that Plaintiffs, as a high-profile studio, were the kind of target Mementum wished to make an example of to establish its claimed rights publicly. *See* FAC ¶ 28. Mementum also advised Plaintiffs that it had "consulted with [its] US intellectual property colleagues, who confirm[ed its] interpretation of the applicable law." Dkt. No. 54-2 at p. 3. Tellingly, Mementum never disputes that this call occurred or that this is what was conveyed. *See* Mot. at 20. Made against the backdrop of Mementum's cease-and-desist letter, these statements were reasonably understood as conveying that Mementum was prepared to

pursue claims against Plaintiffs for any "broader exploitation" beyond the Game. *See Rhoades*, 504 F.3d at 1161 (settlement discussions admissible as evidence of substantial controversy).

Mementum's efforts to explain away these facts fail. It argues Plaintiffs' reliance on the parties' pre-suit negotiations is "contrived" because the original Complaint did not detail them. Mot. at 18. But Plaintiffs had no reason to plead those negotiations until Mementum issued its narrow Covenant and claimed it mooted the controversy; the added allegations confirm that Mementum regarded Plaintiffs' non-Game use as unauthorized. *See* FAC ¶¶ 26-29. Plaintiffs do not contend that the telephone call, or any single act, independently confers jurisdiction. It is one circumstance among many, and so situated, it is neither "an eleventh-hour, unparticularized allegation" nor a "generalized statement." Mot. at 20. It was made directly to Plaintiffs, during negotiations over Mementum's asserted intellectual property rights, and identified Plaintiffs by name as the target Mementum intended to make a public example of. FAC ¶ 28.

The "passage of time" argument fares no better. Mot. at 18. Mementum contends it has taken no "single affirmative act since the parties' [pre-suit] negotiations" supporting a justiciable controversy. *Id.* Not so. Since then, Mementum has directed a takedown request at Plaintiffs' Game on Roblox, a United States platform (FAC ¶ 29), alleged in its Counterclaims that Plaintiffs used twenty-two Additional Brainrots "without permission" (SACC ¶ 5, n.1), refused Plaintiffs' request to broaden the Covenant (FAC ¶ 43; Dkt. No. 33-1 ¶ 6), and acknowledged that it "preserved the ability to enforce" its intellectual property rights outside the Covenant (Dkt. No. 27 at p. 16). That Mementum "has not asserted any affirmative copyright claims" in its Counterclaims (Mot. at 19) is beside the point; declaratory relief does not require Plaintiffs to await an actual suit. The question is whether, "under all the circumstances," the parties have adverse legal interests of sufficient immediacy and reality—and they do. *MedImmune*, 549 U.S. at 127. A rights holder cannot claim a controversy has gone stale while its demands remain unretracted and its refusal to covenant persists. *See Delphix Corp. v. Embarcadero Techs., Inc.*, No. 16-CV-00606-BLF, 2016 WL 4474631, at **4-5 (N.D. Cal. Aug. 25, 2016) (rejecting as "unavailing" argument that it was "far too late" to claim apprehension, given continued demands and ignored covenant request), *aff'd in relevant part*, 749 F. App'x 502 (9th Cir. 2018).

Nor can Mementum recast its warning about Plaintiffs' partners as a benign request to "clarify" an issue and avoid "potential" legal action. Mot. at 19-20. Under the reasonable-perception standard, it is ***Plaintiffs'*** interpretation of that warning that governs, not Mementum's after-the-fact gloss. *See San Diego Cnty.*, 65 F.4th at 1027; *Copasetic Clothing Ltd. v. Roots Canada Corp.*, No. 17-CV-02300-GPC-KSC, 2018 WL 4051693, at **5-6 (S.D. Cal. Aug. 24, 2018) (the inquiry is "not so much concerned with [defendant's] characterization of what it intended … as … with the reasonable perception by [plaintiff]"). That Mementum raised the prospect of suing Plaintiffs' partners at all confirms it understood non-Game use to be a live subject of the parties' dispute—one the Covenant never resolved.

Finally, Mementum suggests that statements made in the context of negotiations are, "by their nature," insufficient to support an actual controversy. Mot. at 19-20. But there is no such categorical rule. Mementum's own authorities confirm that negotiations support an actual controversy when accompanied by threats of legal action, as they were here. *See, e.g.*, *id.* at 19-20 (citing *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 812 (Fed. Cir. 1996) (finding actual controversy where negotiations occurred in the context of "explicit references to the prospect of initiating legal action" and distinguishing negotiations "unaccompanied by threats of legal action"); *Kustom Signals, Inc. v. Applied Concepts, Inc.*, No. 96-2274-JWL, 1996 WL 568817, at *5 (D. Kan. Sept. 16, 1996) (no controversy where "all that [was] present [was] negotiation unaccompanied by threats of legal action"); *Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 985 (N.D. Cal. 2011) (denying motion to dismiss for lack of jurisdiction)). Its remaining authorities are likewise inapposite because, unlike the statements made directly to Plaintiffs here, they involved generalized statements aimed at no one in particular. *See, e.g.*, Mot. at 17-18 (citing *Samsung Elecs. Corp. v. Oura Health Oy*, No. 24-CV-03245-AMO, 2025 WL 929410, at **3-5 (N.D. Cal. Mar. 27, 2025) (statements not "directed specifically at" the plaintiff); *Proofpoint, Inc. v. InNova Pat. Licensing, LLC*, No. 5:11-CV-02288-LHK, 2011 WL 4915847, at *3 (N.D. Cal. Oct. 17, 2011) (no pre-suit contact at all); *Impax Labs., Inc. v. Medicis Pharm. Corp.*, No. C-08-0253 MMC, 2008 WL 1767044, at *3 (N.D. Cal. Apr. 16, 2008) ("public statements regarding enforcement")).

c. Mementum's Counterclaims and the Additional Brainrots.

Mementum expanded the controversy further even after Plaintiffs filed suit. In each iteration of its Counterclaims, Mementum alleges that it "recently became the exclusive worldwide licensee and representative" of two additional creators, that those creators "created" twenty-two Additional Brainrots, and that Plaintiffs "have used" those brainrots "without permission." SACC ¶ 5, n.1; *see also id.*, Prayer for Relief ¶ 8 (seeking relief for Plaintiffs' "unauthorized use of [Mementum's] brainrot characters, including ***without limitation*** Tung Tung Sahur"). Mementum dismisses this as a mere "reservation of rights." Mot. at 17. But an accusation of unauthorized use, made in a litigation pleading, is evidence of a live controversy even if not asserted as a standalone cause of action. *See Beyond Blond Prods., LLC v. Heldman*, No. CV205581DSFGJSX, 2021 WL 9315215, at *5 (C.D. Cal. Sept. 16, 2021) (relying on defendants' statement "in their own filings" that they had "substantial evidence that plaintiff has directly copied multiple copyrighted works").

Mementum's reliance on *Splunk Inc. v. Deutsche Telekom AG*, No. 3:20-CV-04377-JD, 2021 WL 3140832 (N.D. Cal. July 26, 2021), is misplaced. *See* Mot. at 21-22. There, the parties' dispute was "purely European": the cease-and-desist letter and existing lawsuit concerned "conduct in the EU only" under "EU and German law," and the rights holder had made no "threats, implicit or otherwise," directed at the United States. *Splunk*, 2021 WL 3140832, at **1-3. The circumstances here are the opposite. Mementum directed its cease-and-desist letter to United States-based Plaintiffs and invoked the DMCA, a United States statute (FAC ¶¶ 21, 24; Dkt. No. 54-1); directed a takedown request at Plaintiffs' Game on United States-based Roblox (FAC ¶ 29); delivered, through United States counsel, a Covenant expressly addressing claims "under the copyright law of the United States" while preserving others (Dkt. No. 28-1 at pp. 2, 20); and appeared in this United States court to assert Counterclaims against Plaintiffs under United States law arising from the same dispute. *See* FAC ¶ 40. *Splunk*'s dispositive fact, the "absence of hostile gestures in the United States," is completely absent here. *Splunk*, 2021 WL 3140832, at *1.

Nor does Mementum eliminate the controversy by adding to its latest Counterclaims that it "does not intend, and has never intended, to assert" claims concerning the Additional Brainrots. SACC ¶ 5 n.1. That statement stops short of an unequivocal, binding commitment not to assert such

claims in the future. Unlike the representation the *Splunk* defendant's counsel made directly to the court and on which the court relied, *see Splunk*, 2021 WL 3140832, at *2, Mementum's footnote is a bare litigation statement that binds it to nothing. And that Mementum's "deadline to [assert those claims] in this lawsuit has passed" (Mot. at 22) says nothing about whether it remains free to assert them in another action. "Even where a party has stated that it has no plans to sue for infringement, if its course of conduct demonstrates a preparedness and willingness to enforce its rights otherwise, a case or controversy exists." *Wong v. Hard Drive Prods., Inc.*, No. 12-CV-469-YGR, 2012 WL 1252710, at *3 (N.D. Cal. Apr. 13, 2012); *see also Abrahams v. Hard Drive Prods., Inc.*, No. C-12-01006 JCS, 2012 WL 1945493, at *4–5 (N.D. Cal. May 30, 2012) (assurances "couched in qualifying 'not now' and 'not likely' language" insufficient).

d. Mementum's Refusal to Broaden the Scope of the Covenant.

Mementum's refusal to broaden the Covenant is the final proof positive of an ongoing, unresolved dispute. *See* FAC ¶¶ 40-45; Dkt. No. 33-1 ¶ 6. In its Motion, Mementum focuses on Plaintiffs' purported "overreaching ask[]" regarding "rights in France" (Mot. at 20), while passing over Plaintiffs' actual request—that Mementum confirm the Covenant covers Plaintiffs' use of the brainrots "in any product, platform, medium, or context—including … in other games or applications, in merchandise, and in marketing and promotional materials—and not solely their use within the current Game." Dkt. No. 28-2 at pp. 2-3; FAC ¶¶ 42-43. Mementum declined to broaden the Covenant to reach those uses. *Id.* ¶ 43. Its assertion that it was "not 'aware of any uses of these characters by Plaintiffs outside of the Game.'" (Mot. at 11) is difficult to square with its own cease-and-desist letter, which named "toys/merchandising" as an enforcement priority and promised "[c]ontinuous monitoring of e-commerce marketplaces" (FAC ¶ 33; Dkt. No. 54-1 at pp. 5, 8), particularly given that Plaintiffs' licensed merchandise depicting the Disputed Brainrots was already being sold through major national retailers. *See* FAC ¶ 31; Dkt. No. 33-3 ¶¶ 4, 6.

The Ninth Circuit has sustained declaratory jurisdiction on materially similar facts, where the rights holder effectively charged the plaintiff with infringement, "fail[ed] to provide a binding promise that it would not sue for infringement," and "affirmatively refused [a] stipulation" of non-infringement. *San Diego Cnty.*, 65 F.4th at 1030. As explained in *Beyond Blond*, a refusal to

covenant "demonstrates there is still a controversy between the parties, as there should be no reason [a party] would not sign a covenant not to sue if they in fact have no intention of suing." *Beyond Blond*, 2021 WL 9315215, at *5. Even Mementum's own sole authority recognizes that the "failure to sign a covenant not to sue is one circumstance to consider in evaluating the totality of the circumstances." *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1335-41 (Fed. Cir. 2008). *Prasco* found that factor insufficient there only because the record showed a "complete lack of evidence of a defined, preexisting dispute between the parties" (*id.*)—the opposite of the record here.

3. <u>Mementum's Remaining Arguments Do Not Defeat Jurisdiction.</u>

Mementum makes myriad additional arguments, none of which defeats the existence of an actual controversy over Plaintiffs' copyright declaratory relief claim.

***First***, Mementum characterizes Plaintiffs' allegations concerning their non-Game uses as a "red herring," arguing that Mementum has not "taken a single affirmative act to assert or raise the prospect of asserting a copyright infringement claim" as to those uses. Mot. at 23. That ignores Mementum's own conduct, including the takedowns it threatened against e-commerce platforms where Plaintiffs' merchandise is sold, and its refusal to broaden the Covenant to cover Plaintiffs' non-Game uses. *See, e.g.*, FAC ¶¶ 24, 43. Mementum's own authorities confirm these circumstances present a concrete controversy, not a "hypothetical" one. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014) ("credible threat of enforcement" shown by history of past enforcement and no disavowal of future enforcement); *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-42 (1937) (dispute "definite and concrete, not hypothetical or abstract" where, before suit, "the parties had taken adverse positions with respect to their existing obligations").

***Second***, Plaintiffs do not rest jurisdiction on "economic harm." *Cf.* Mot. at 24. Rather, they seek a declaration resolving the parties' adverse legal interests—Mementum's asserted copyright rights in the Disputed Brainrots and Plaintiffs' right to use them. Any economic harm is a consequence of that legal dispute, not the jurisdictional basis for it. *Already* and *Velvet Underground* are distinguishable on precisely this ground. In each, a broad covenant had extinguished the underlying legal claim, leaving only economic concerns untethered to any live

cause of action. *See Already*, 568 U.S. at 93-94, 98; *Velvet Underground*, 890 F. Supp. 2d at 405-06. Here, by contrast, the Covenant left Mementum's potential copyright claims against Plaintiffs' non-Game and Additional Brainrot uses fully intact.

***Finally***, Mementum's observation that it "hasn't applied to register any U.S. copyrights in its characters" (Mot. at 1) is irrelevant. Registration is a precondition to an infringement lawsuit only for a "United States work," 17 U.S.C. § 411(a), and Mementum insists the Disputed Brainrots are foreign works protected under "French and international law." SACC ¶ 10. Regardless, Section 411(a)'s registration requirement is a claim-processing rule, not a jurisdictional limitation. *See Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157, 166 (2010). Mementum's lack of U.S. copyright registrations therefore neither eliminates the parties' controversy nor deprives this Court of jurisdiction.

**B. <u>THE COURT SHOULD NOT STRIKE OR DISMISS PLAINTIFFS' TRADEMARK DECLARATORY RELIEF CLAIM.</u>**

Mementum offers two grounds for dismissing Plaintiffs' trademark declaratory relief claim, but neither has merit. The claim falls within the Court's unrestricted grant of leave to amend, and serves useful purposes independent of Mementum's Counterclaims—preserving Plaintiffs' ability to obtain a resolution even if Mementum abandons those Counterclaims, as it has already tried to do on the copyright side through its Covenant. There is no basis to strike or dismiss the claim.

1. <u>Plaintiffs' Trademark Claim Is Within the Scope of the Court's Order.</u>

Mementum's argument that Plaintiffs' amendments exceeded the scope of the Court's Order is unavailing. *See* Dkt. No. 42. The Court broadly "grant[ed] each party leave to file one round of amended pleadings." *Id.* Nothing in the Order restricted either party to amendments previously proposed—nor could it have, as Mementum had not proposed any specific amendments when the Court granted leave. *See* Dkt. No. 37 at 31 (opposing motion to dismiss and alternatively seeking "leave to amend so Mementum can address any deficiencies"). Mementum's sole authority is distinguishable on this basis. *See* Mot. at 25 (citing *Housing is a Human Right Orange Cnty. v. Cnty. of Orange*, No. SACV19388PAJDEX, 2019 WL 8012374, at *6 (C.D. Cal. Oct. 28, 2019)

(court's order expressly prohibited the amended complaint from including "any new or different defendants, claims, causes of action, or legal theories other than those specifically authorized")).

Mementum's "bait and switch" accusation also rings hollow. Mot. at 25. It first argues Plaintiffs' trademark claim is "entirely new," but then argues it "mirrors" Mementum's own Counterclaims. *Id.* Both cannot be true. Regardless, Plaintiffs' trademark claim falls squarely within the Court's unrestricted grant of leave to "file a first amended complaint." Dkt. No. 42.

2. Plaintiffs' Trademark Declaratory Relief Claim Is Not a "Mirror Image" of Mementum's Trademark Counterclaim.

Mementum argues that Plaintiffs' trademark claim—which seeks declarations regarding both trademark invalidity (FAC ¶ 56(a)-(b)) and non-infringement (*id.* ¶ 56(c)-(d))—is "subject to dismissal" because it is the "mirror image" of Mementum's Counterclaims. *See* Mot. at 25-27. But the mere overlap between the parties' claims does not warrant dismissal.

"The decision whether to dismiss a counterclaim for declaratory judgment is a matter committed to the Court's discretion." *Corsair Gaming, Inc. v. Choice Elecs. Inc.*, No. 5:25-CV-00045-BLF, 2025 WL 2822691, at *2 (N.D. Cal. Oct. 3, 2025) (citing *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 533 (9th Cir. 2008)). In determining whether dismissal is appropriate, courts "focus on whether the [declaratory judgment claim] serve[s] any useful purpose," and "should dismiss or strike a redundant claim only when 'it is clear that there is a complete identity of factual and legal issues.'" *Stickrath v. Globalstar, Inc.*, No. C07-1941 TEH, 2008 WL 2050990, at *3 (N.D. Cal. May 13, 2008). "[C]ourts have consistently observed that declaratory judgment is often particularly appropriate in intellectual property cases, where 'mere dismissal of [an affirmative claim] does not always adjudicate every aspect of the controversy or give the [declaratory claimant] all the relief to which [it] may be entitled.'" *Corsair*, 2025 WL 2822691, at *2 (citation omitted).

Plaintiffs' trademark invalidity claim should not be dismissed. *See* FAC ¶ 56(a)-(b). As Mementum's own authorities recognize, "'courts should decline to dismiss [] claims that seek a declaration that the … trademark is invalid,' because the issue of non-infringement is distinct from the issue of invalidity and a case and controversy over … trademark validity continues even after the issue of infringement is resolved." *Lavco Sols., Inc. v. Biztracker Sys. of St. John, LLC*, No.

220CV03286VAPPLAX, 2020 WL 11648276, at *3 (C.D. Cal. Nov. 4, 2020) (citations omitted); *see also Castaline v. Aaron Mueller Arts*, No. C 09-02543 CRB, 2010 WL 583944, at *2 (N.D. Cal. Feb. 16, 2010) ("In the … trademark realm, courts have found that counterclaims alleging … trademark invalidity should not be dismissed as redundant"). Plaintiffs plan to continue using Tung Tung Sahur for similar products in the future. *See* FAC ¶ 38; Dkt. No. 33-3 ¶¶ 7-9. Because of the "risk of similar [infringement] charges" as to those products, Plaintiffs have "something to gain" from a declaration that the Tung Tung Sahur Marks are invalid. *See Lavco*, 2020 WL 11648276, at *3 ("A company once charged with infringement must remain concerned about the risk of similar charges if it develops and markets similar products in the future. Because of that risk, a defendant in a patent or trademark case does have something to gain from a counterclaim declaration of invalidity.") (citation omitted); *Stickrath*, 2008 WL 2050990, at *4 ("a defendant in a patent [or trademark] case has 'something to gain from a counterclaim declaration of invalidity'—it can go on to develop its products without fear of infringing the invalid patent [or trademark]") (citation omitted).

Likewise, Plaintiffs' trademark non-infringement claim serves a useful purpose. Courts have recognized that such claims "ensure[] that the [claimant] is protected against the possibility" that the trademark owner "will dismiss the suit or that the infringement action will not resolve all of the issues between the parties." *Corsair*, 2025 WL 2822691, at **2-3 (citation omitted). That concern is particularly salient here, given Mementum already has attempted to eliminate Plaintiffs' claims through the Covenant. Moreover, Plaintiffs' trademark claim preserves their ability to seek attorneys' fees—another "useful function … counseling against dismissal." *Corsair*, 2025 WL 2822691, at *3 (citing *Malibu Media, LLC v. Doe*, No. C 15-04441 WHA, 2016 WL 3383758, at *2 (N.D. Cal. June 20, 2016) (declining to dismiss declaratory judgment claim of non-infringement due to the availability of attorneys' fees, even though, unlike here, the claim otherwise was "duplicative" of the claimant's "denial of liability")). And Mementum has "not identified any prejudice [it] would suffer if the [trademark claim] is not dismissed." *Corsair*, 2025 WL 2822691, at *3 (citing *Openwave Messaging, Inc. v. Open-Xchange, Inc.*, No. 16-CV-00253-WHO, 2016 WL 6393503, at *11 (N.D. Cal. Oct. 28, 2016) (declining to dismiss declaratory judgment claim of non-

infringement because the movant had "not identified any prejudice," even though, unlike here, it was "unclear" whether the claim "serve[d] any useful purpose")); *Intel Corp. v. Tela Innovations, Inc.*, No. 3:18-CV-02848-WHO, 2019 WL 2476620, at *8 (N.D. Cal. June 13, 2019) (same, where it was "not clear" that the non-infringement counterclaims were "entirely duplicative and because [the movant did] not assert any prejudice that it would face if these counterclaims proceed[ed]"). Accordingly, there is no basis to strike or dismiss any portion of Plaintiffs' trademark declaratory relief claim.

3. Plaintiffs' Trademark Claim as to All Other Disputed Brainrots is Proper.

Finally, Mementum complains that Plaintiffs "concocted" "a live declaratory relief claim" by seeking a declaration of non-infringement as to any of the "other Disputed Brainrots" in which Mementum asserts trademark rights or claims trademark infringement. Mot. at 27 (quoting FAC ¶ 57). But that allegation responds to ***Mementum's*** own broad demand for relief. In its own Second Amended Counterclaims, Mementum seeks: "disgorgement of all profits and benefits unjustly obtained by Plaintiffs through their unauthorized use of Defendant's brainrot characters, including ***without limitation*** Tung Tung Sahur." SACC, Prayer for Relief ¶ 8. Although Mementum's pleaded causes of action center on Tung Tung Sahur, its prayer seeks to disgorge Plaintiffs' profits from Plaintiffs for the exploitation of all of Mementum's claimed brainrot characters. Plaintiffs' non-infringement claim as to those characters follows directly from that demand.

Mementum contends that Plaintiffs' prior motions to dismiss (Dkt. Nos. 22, 32) took the position that its Counterclaims "exclusively concerned" Tung Tung Sahur. Mot. at 28. They did not. Those motions attacked the sufficiency of the trademark and unfair competition causes of action Mementum pleaded—causes of action directed at the Tung Tung Sahur Marks. Arguing that Mementum's pleaded claims are deficient as to Tung Tung Sahur is not a concession that Mementum asserts no trademark rights in any other character. To the contrary, in the same brief Mementum cites, Plaintiffs argued that Mementum had "preserved the ability to enforce" its "intellectual property rights ... (including trademarks and copyrights)" as to uses beyond the Covenant. Dkt. No. 33 at p. 15. And Mementum's prayer for relief confirms the point.

That Mementum now represents that "the only trademarks at issue in Mementum's counterclaims are the ones it is claiming in Tung Tung Sahur" (Mot. at 28), is precisely why Plaintiffs' declaratory relief claim is necessary and proper. Having sought sweeping relief across dozens of characters, Mementum cannot recharacterize its Counterclaims as concerning Tung Tung Sahur alone in order to defeat Plaintiffs' corresponding claim. In these circumstances, "it is very difficult to determine whether the declaratory-judgment counterclaim really is redundant … prior to trial" and "any doubt about whether the challenged material is redundant … should be resolved in favor of the non-moving party." *Davis v. Hollywood & Ivar, LLC*, No. 221CV01235VAPJPRX, 2021 WL 4816822, at *3 (C.D. Cal. July 30, 2021) (quoting Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1406 (3d ed. 2020)). And for the reasons stated above, *see supra* § III.B.2, any overlap between Plaintiffs' claim and Mementum's demand does not warrant dismissal. Mementum should not be permitted to press sweeping allegations of wrongdoing under copyright and trademark law, in the United States and abroad, across its demand letters and pleadings, and then retreat from whichever theory Plaintiffs move to resolve. Plaintiffs' First Amended Complaint brings the parties' real and definite dispute over the Disputed Brainrots into focus, and Mementum should not be permitted to narrow it artificially at this stage.

## IV. CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court deny Mementum's Motion to Dismiss the First Amended Complaint.

DATED: SEPTEMBER 2, 2026

MITCHELL SILBERBERG & KNUPP LLP

By: [signature]

Aaron J. Moss
Joshua M. Geller
Marissa B. Lewis
Harrison A. Newman
Attorneys for Plaintiffs
SPYDER GAMES LLC and
SPEEDY SIMULATOR GAMING, LLC