GREGG A. MARTIN (SBN 135685)
GMartin@ggfirm.com
STEVEN A. STEIN (SBN 287401)
SStein@ggfirm.com
ANDREW P. LUX (SBN 345915)
ALux@ggfirm.com
GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067
Telephone: 310-553-3610
Facsimile: 310-553-0687

Attorneys for Defendant and Counterclaimant MEMENTUM LAB SAS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

SPYDER GAMES LLC, a Louisiana limited liability company; and SPEEDY SIMULATOR GAMING, LLC, a Wyoming limited liability company,

Plaintiffs and Counter-Defendants,

v.

MEMENTUM LAB SAS, a French company,

Defendant and Counterclaimant.

Case No. 5:25-cv-10248-NW

**DEFENDANT AND COUNTERCLAIMANT MEMENTUM LAB SAS' REPLY ISO MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Hon. Noël Wise

Date: December 9, 2026
Time: 9:00 a.m.
Dept: 3

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

## TABLE OF CONTENTS


Page

I. INTRODUCTION .......... 5

II. LEGAL ARGUMENT .......... 6

A. The Court Should Dismiss Plaintiffs' Copyright Declaratory Relief Claim .......... 6

1. Plaintiffs Have the Burden Analysis Backward—They Have the Burden of Showing that a Substantial Copyright Controversy Exists .......... 6

2. Plaintiffs Haven't Come Close to Showing that a Substantial Copyright Controversy Exists as to Any of the 39 Characters .......... 7

a. The Letter Only Concerned Tung Tung Sahur's Use in the Game .......... 8

b. The Licensing Negotiations Don't Evidence a Live Controversy .......... 10

c. The Passage of Time Supports that There Isn't a Live Controversy .......... 11

d. The Footnote Doesn't Evidence a Live Controversy, and the Analogous *Splunk* Case Strongly Supports Mementum's Position .......... 12

e. Mementum Not Broadening its Covenant to Encompass Uses Not in Controversy Doesn't Create a Controversy as to Those Uses .......... 14

B. The Court Should Strike or Dismiss Plaintiffs' New Claim .......... 16

1. There Isn't an Actual Controversy Concerning the Marks in Any Character Other than Tung Tung Sahur .......... 16

2. Mementum's Mirror Image Tung Tung Sahur Counterclaim Should Be Stricken or Dismissed .......... 17

C. If the Court Finds that An Actual Controversy Exists, it Should Still Exercise its Discretion to Decline to Exercise Subject Matter Jurisdiction .......... 19

III. CONCLUSION .......... 19


GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Abrahams v. Hard Drive Prods., Inc.*,
2012 WL 1945493 (N.D. Cal. May 30, 2012) .... 14

*ActiveVideo Networks, Inc. v. Trans Video Elecs., Ltd.*,
975 F. Supp. 2d 1083 (N.D. Cal. 2013) .... 9

*Already, LLC v. Nike, Inc.*,
568 U.S. 85 (2013) .... 6

*Beyond Blond Prods., LLC v. Heldman*,
2021 WL 9315215 (C.D. Cal. Sept. 16, 2021) .... 12, 15

*Chafin v. Chafin*,
568 U.S. 165 (2013) .... 12

*Corsair Gaming, Inc. v. Choice Elecs. Inc.*,
2025 WL 2822691 (N.D. Cal. Oct. 3, 2025) .... 17

*Davis v. Hollywood & Ivar, LLC*,
2021 WL 4816822 (C.D. Cal. July 30, 2021) .... 16

*Dig. Envoy, Inc. v. Google, Inc.*,
2006 WL 824412 (N.D. Cal. Mar. 28, 2006) .... 18

*EMC Corp. v. Norand Corp.*,
89 F.3d 807 (Fed. Cir. 1996) .... 10

*Fresenius USA, Inc. v. Transonic Sys., Inc.*,
207 F. Supp. 2d 1009 (N.D. Cal. 2001) .... 19

*Impax Lab'ys, Inc. v. Medicis Pharm. Corp.*,
2008 WL 1767044 (N.D. Cal. Apr. 16, 2008) .... 9, 11

*Keezio Grp., LLC v. Summer Infant (USA), Inc.*,
2022 WL 23049192 (C.D. Cal. Oct. 11, 2022) .... 10

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) .... 6

*Kustom Signals, Inc. v. Applied Concepts, Inc.*,
1996 WL 568817 (D. Kan. Sept. 16, 1996) .... 11

*Lavco Sols., Inc. v. Biztracker Sys. of St. John, LLC*,
2020 WL 11648276 (C.D. Cal. Nov. 4, 2020) .... 17, 18

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007) .... 6, 7, 8, 9

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Melo v. Frida Kahlo Corp.*,
2020 WL 13891187 (N.D. Cal. Oct. 16, 2020) ........ 10

*MGA Entm't, Inc. v. Louis Vuitton Malletier, S.A.*,
2019 WL 2109643 (C.D. Cal. May 14, 2019) ........ 7

*Prasco, LLC v. Medicis Pharm. Corp.*,
537 F.3d 1329 (Fed. Cir. 2008) ........ 8, 14

*Proofpoint, Inc. v. InNova Pat. Licensing, LLC*,
2011 WL 4915847 (N.D. Cal. Oct. 17, 2011) ........ 11

*Samsung Elecs. Corp. v. Oura Health Oy*,
2025 WL 929410 (N.D. Cal. Mar. 27, 2025) ........ 9, 11

*San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*,
65 F.4th 1012 (9th Cir. 2023) ........ *passim*

*Splunk Inc. v. Deutsche Telekom AG*,
2021 WL 3140832 (N.D. Cal. July 26, 2021) ........ 8, 12, 13, 14

*Stickrath v. Globalstar, Inc.*,
2008 WL 2050990 (N.D. Cal. May 13, 2008) ........ 17

*Wong v. Hard Drive Prods., Inc.*,
2012 WL 1252710 (N.D. Cal. Apr. 13, 2012) ........ 14

**FEDERAL STATUTES**

15 U.S.C. § 1117 ........ 18

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12 ........ 19

Fed. R. Civ. P. 41 ........ 17, 18

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

## I. INTRODUCTION

Plaintiffs' opposition confirms that there's no real dispute for this Court to resolve.

Plaintiffs have taken every opportunity this litigation has afforded them to expand the controversy they're asking this Court to decide but haven't come close to showing that Mementum has engaged in affirmative acts creating a substantial controversy sufficiently real and immediate to warrant the sweeping relief they seek—for the Court to determine that Mementum doesn't have copyrights or trademarks in the names and images of 39 characters. The only acts they identify outside this case are a pre-lawsuit cease-and-desist letter and pre-lawsuit negotiations that they misconstrue—neither of which prompted Plaintiffs to seek such expansive relief when they filed suit—and a post-lawsuit EU takedown request that doesn't support, but instead undercuts, the claimed existence of a U.S. controversy. The only acts they identify within this case are a footnote reserving rights in 22 characters and Mementum not broadening a covenant that mooted the controversy Plaintiffs alleged when they filed suit, that went far beyond any conceivable controversy that existed, and that needn't be enlarged to cover controversies that don't exist. And then there are the acts that Mementum hasn't taken—it hasn't sent a second cease-and-desist letter; sent any demand letters to any of Plaintiffs' partners; asserted any legal claims against Plaintiffs in this action other than its trademark and unfair competition claims concerning Tung Tung Sahur; asserted any legal claims against Plaintiffs outside of this action; or asserted any legal claims against any of Plaintiffs' partners. Considering these circumstances, it's not a close call—Plaintiffs' claims do not present any actual controversy for this Court to resolve.

To the extent Plaintiffs' trademark claim presents a controversy at all, it's duplicative of Mementum's trademark counterclaims and should be independently dismissed for that reason. And even if Plaintiffs have been able to contrive some controversy, courts are reluctant to exercise jurisdiction over a dispute like this one, where Mementum tried to resolve the issues it raised in its letter before Plaintiffs filed suit and Plaintiffs are seeking sprawling relief.

It's been a year since Mementum sent its cease-and-desist letter, the lines in this dispute have been drawn, and they don't include the far-reaching relief Plaintiffs are requesting. The Court should grant this motion and dismiss Plaintiffs' claims.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

## II. LEGAL ARGUMENT

### A. The Court Should Dismiss Plaintiffs' Copyright Declaratory Relief Claim

#### 1. Plaintiffs Have the Burden Analysis Backward—They Have the Burden of Showing that a Substantial Copyright Controversy Exists

Plaintiffs argue that while Mementum's covenant mooted the actual copyright controversy they first alleged concerning their use of 17 characters in the Game, Mementum hasn't shown that the covenant moots the broader controversy they are now alleging concerning all IP rights in all uses of 39 characters. ECF No. 58, 16:13-22. Plaintiffs have the burden analysis backward.

The burden of establishing an Article III case-or-controversy rests upon the party asserting jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). To assess whether this burden has been met, courts look at "all the circumstances" to assess whether there's a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotation marks omitted). Under this test, "a plaintiff has standing to seek declaratory relief of non-infringement if he demonstrates a real and reasonable apprehension that he will be subject to liability if he continues with his course of conduct." *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1023 (9th Cir. 2023) (internal quotation marks omitted). If the party asserting jurisdiction makes this showing, and the party facing this claim has entered a covenant purporting to moot jurisdiction, the burden shifts, and the covenanting party has the burden to show that it could not reasonably be expected to resume its enforcement efforts. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 92 (2013).

Applied to this claim, if Plaintiffs have not shown that an actual copyright controversy exists as to each of the 39 characters it is trying to put at issue, the Court's jurisdiction analysis ends there—Mementum doesn't bear the burden of showing that its covenant extinguished the claimed controversy.[1] As set forth below, Plaintiffs have not met this burden.

---

[1] For this reason, Plaintiffs' argument that Mementum has not shown that its covenant moots the currently alleged controversy is irrelevant. ECF No. 58, 16:13-20:18. As Plaintiffs acknowledge, Mementum's covenant mooted the only actual controversy that Plaintiffs had alleged when it was entered. ECF No. 58, 16:13-15. Mementum didn't have a crystal ball when it issued its covenant,

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

### 2. Plaintiffs Haven't Come Close to Showing that a Substantial Copyright Controversy Exists as to Any of the 39 Characters

While Plaintiffs purport to apply *MedImmune*, they are guilty of what they accuse Mementum of doing (ECF No. 58, 20:20-24)—of examining acts and statements in isolation. Plaintiffs try to contrive a controversy based on out-of-context phrases lifted from a cease-and-desist letter sent a year ago and pre-lawsuit licensing negotiations. Looking at "all the circumstances"—as Mementum did in its motion (ECF No. 54, 24:20-24)—Plaintiffs have not come close to establishing the existence of a "substantial controversy" of "sufficient immediacy and reality" to warrant the issuance of a declaratory judgment as to any of the 39 characters.

Mementum sent Plaintiffs a September 2025 cease-and-desist letter that concerned a single character (Tung Tung Sahur) and identified a single category of unauthorized use of that character (in the Game). ECF No. 54-1. In the year since, Mementum has had three chances in this case to assert copyright claims, has not done so—it only has asserted trademark and unfair competition claims against Plaintiffs concerning Tung Tung Sahur—and cannot do so without obtaining leave. Zooming out of this case, Mementum hasn't otherwise engaged in any acts over the past year that could conceivably put these rights at issue—for example, it hasn't sent a second demand letter to Plaintiffs or asserted any claims against Plaintiffs in any other proceedings. Since filing suit, Plaintiffs have expanded their claimed use of Mementum's characters in the United States—in January 2026, a film development deal was announced for the Game (ECF No. 33-3, ¶ 9); in around May 2026, Plaintiffs started selling merchandise and other products depicting some of Mementum's characters (*id.*, ¶¶ 5-7; ECF No. 50, ¶¶ 31-32; ECF No. 54, 14:6-8)—and yet Mementum hasn't taken adverse action in response. The only action Mementum has taken—sending an April 2026 takedown request to Roblox in Europe under EU law after Plaintiffs filed suit and added Tung Tung Sahur back to the Game (ECF No. 29-2)—supports the *non*existence of a *U.S.* controversy. *See MGA Entm't, Inc. v. Louis Vuitton Malletier, S.A.*, 2019 WL 2109643, at *4 (C.D. Cal. May 14, 2019) ("a claim pending elsewhere of violation of foreign

---

didn't know Plaintiffs would dramatically expand their copyright declaratory relief claim, and has never contended its covenant moots the expanded actual controversy that Plaintiffs allege, but rather that, as set forth below, no such controversy exists.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

intellectual property rights" doesn't support "the finding of an actual controversy between the same parties related to U.S. intellectual property rights") (collecting cases).

Unable to satisfy the *MedImmune* standard, Plaintiffs attempt to rewrite it. They argue that the "inquiry runs from Plaintiffs' vantage point"—that if Plaintiffs believe there's a controversy, there must be one. As the *Citizens Equity* case they rely on recognizes, that's not the standard—the inquiry is "oriented to the **reasonable** perceptions of the plaintiff (65 F.4th at 1022 (emphasis added)) and a court must also consider the "acts of the defendant" to determine if the threat perceived by the plaintiff was real and reasonable (*Splunk Inc. v. Deutsche Telekom AG*, 2021 WL 3140832, at *3 (N.D. Cal. July 26, 2021) (quoting *Chesebrough-Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 396 (9th Cir. 1982)); *see Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1335-41 (Fed. Cir. 2008) (a controversy cannot rest on "a purely subjective or speculative fear of future harm"). The *Citizens Equity* court refused to credit plaintiff's reading of a single ambiguous word in defendant's TTAB petition, holding that, given the full context, a "reasonable person in [plaintiff's] position would have known that an infringement suit was unlikely," and requiring objective, corroborating evidence (deposition testimony confirming an intent to enforce) before finding a live controversy. 65 F.4th at 1022-24. Plaintiffs offer no comparable evidence.

Even if the inquiry ran "from Plaintiffs' vantage point," it would lead to the same result—dismissal of this claim. The best reflection of Plaintiffs' vantage point when they filed suit is their original complaint. That complaint—filed by the same attorney who responded to the cease-and-desist letter and led Plaintiffs' ensuing licensing negotiations with Mementum—alleged expressly and repeatedly that the only controversy for this Court to resolve concerned the use of Tung Tung Sahur and 16 other characters "in the Game." ECF No. 1, ¶¶ 1, 20, 22, 24. If Plaintiffs believed the letter and negotiations created a broader controversy, they would've alleged this.

Even zooming in on Mementum's specific acts, as set forth below, none support that a controversy exists.

a. <u>The Letter Only Concerned Tung Tung Sahur's Use in the Game</u>

Plaintiffs haven't shown that the September 2025 letter supports the existence of a copyright controversy concerning any characters other than Tung Tung Sahur or the use of Tung

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

Tung Sahur outside the Game. Plaintiffs try to isolate and contort generic phrases in the letter's appendix but do not and cannot dispute that the letter only asserted rights in Tung Tung Sahur and only identified a single category of unauthorized use of this character—in the Game. Plaintiffs didn't use Tung Tung Sahur outside the Game until they started selling a sticker set depicting the character eight months later. ECF Nos. 33-3, ¶ 7; 50, ¶¶ 31-32; 54, 14:6-8. The letter didn't make any demands about this or any other then-nonexistent uses of Tung Tung Sahur outside the Game.

Plaintiffs argue that the letter nonetheless created a substantial controversy concerning all possible uses of Tung Tung Sahur outside the Game because Mementum wrote it was providing a "non-exhaustive" list of unauthorized uses of the character and attached an appendix referencing Mementum's general licensing policy and enforcement strategy in connection with merchandise, toys and goods. But this generic and boilerplate language, untethered to any specific product, cannot supply the real and reasonable apprehension of sufficient immediacy and reality necessary to support a declaratory relief claim. *Citizens Equity*, 65 F.4th at 1023; *MedImmune*, 549 U.S. at 127. The appendix's reference to a general enforcement strategy, including as to infringing goods, doesn't change this—the appendix isn't a demand directed at any specific merchandise, and Mementum has never sent any third party any notice concerning Plaintiffs' merchandise. Courts have found that much stronger statements about enforcing IP rights not tied to a specific product don't create a justiciable controversy. *See Samsung Elecs. Corp. v. Oura Health Oy*, 2025 WL 929410, at *3 (N.D. Cal. Mar. 27, 2025) (public statements that defendant would "closely monitor" plaintiff's product development for "any potential" violations, and "will take action to defend" its IP not sufficient to create actual controversy); *Impax Lab'ys, Inc. v. Medicis Pharm. Corp.*, 2008 WL 1767044, at *1-4 (N.D. Cal. Apr. 16, 2008) (same as to statements that defendant would be "very vigorous" in enforcing its IP, had hired law firms that were "vicious" in doing so, wanted to "send a very strong message," and intended to enforce with "ultimate vigor").

The cases on which Plaintiffs rely to argue otherwise support Mementum's position—each involved a threat to sue for infringement tied to an already existing product or work. *See ActiveVideo Networks, Inc. v. Trans Video Elecs., Ltd.*, 975 F. Supp. 2d 1083, 1091 (N.D. Cal. 2013) ("there was an effective charge of infringement by [defendant] with respect to [plaintiff's]

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

products"); *Melo v. Frida Kahlo Corp.*, 2020 WL 13891187, at *2 (N.D. Cal. Oct. 16, 2020) (takedown notices concerning art sold on online marketplace); *Keezio Grp., LLC v. Summer Infant (USA), Inc.*, 2022 WL 23049192, at *1-2, *7 (C.D. Cal. Oct. 11, 2022) (complaint to Amazon concerning allegedly infringing advertising for product). Plaintiffs don't identify, and Mementum isn't aware of, any court finding an actual controversy absent an explicit threat to sue.

Even if this language could support an actual controversy as to hypothetical products, Plaintiffs have been selling the sticker set depicting Tung Tung Sahur for months, Mementum did not assert a copyright claim concerning this use when it filed its operative counterclaims, and Plaintiffs do not contend that Mementum has taken action adverse to this use, underscoring that Plaintiffs could not have a reasonable apprehension about being sued in the U.S. for this use.

b. <u>The Licensing Negotiations Don't Evidence a Live Controversy</u>

Plaintiffs' attempt to use a cherry-picked statement from the parties' licensing negotiations—"Your message suggests that licenses may have been granted to third parties including Brainrot characters. This point needs to be clarified, at least to avoid potential legal action against your partners." (ECF No. 54-2, p. 3)—to argue that Mementum threatened legal action (ECF No. 58, 22:13-23:12) fails for many reasons. First, the statement isn't actionable—it's not an "explicit reference[] to the prospect of initiating legal action" (*EMC Corp. v. Norand Corp.*, 89 F.3d 807, 812 (Fed. Cir. 1996)), but a request for clarification in response to Plaintiffs suggesting that they had licensed versions of the Game on non-Roblox platforms. Second, the phrase "potential legal action" refers to unidentified partners, not Plaintiffs. A stray reference to a hypothetical dispute involving third parties cannot supply *Plaintiffs* with the real and reasonable apprehension of sufficient immediacy and reality necessary to support declaratory relief. <u>Third</u>, the statement must be considered in context. It was made in an amicable email emphasizing "constructive cooperation" between the parties sent in the middle of extensive licensing discussions and wasn't noteworthy enough for Plaintiffs to even address—the parties continued their discussions. ECF Nos. 54-1, 54-2. <u>Fourth</u>, Plaintiffs filed suit when these negotiations stalled yet didn't include a single word about them or the statement in their complaint. ECF No. 1. If Plaintiffs believed this statement was a legal threat, they would've alleged this. <u>Fifth</u>, even if

the statement supported the existence of a controversy when it was made, it doesn't now—Mementum hasn't taken legal action against Plaintiffs' partners in the intervening 10 months.

Plaintiffs mischaracterize Mementum's argument as invoking a "categorical rule" that negotiation statements can never support a controversy. ECF No. 58, 24:10-27. Mementum's point was narrower (ECF No. 54, 19:6-21) and remains correct: negotiations unaccompanied by threats of legal action, like the negotiations here, don't create a controversy. *Kustom Signals, Inc. v. Applied Concepts, Inc.*, 1996 WL 568817, at *5 (D. Kan. Sept. 16, 1996). Nor does it matter that Mementum's statement about third parties was addressed to Plaintiffs rather than to the public generally. The cases Plaintiffs rely on to argue otherwise (*Samsung*, 2025 WL 929410, at *3; *Proofpoint, Inc. v. InNova Pat. Licensing, LLC*, 2011 WL 4915847, at *3 (N.D. Cal. Oct. 17, 2011); *Impax*, 2008 WL 1767044, at *1-4) don't hold that *any* statement addressed to a plaintiff automatically creates a controversy regardless of content, but that the statement must reflect a real threat of legal action. A statement directed at Plaintiffs that contains no actual threat fails for the same reason such a statement to the public would fail—because of the absence of an actual threat.

Plaintiffs' new allegation that there was a pre-lawsuit call at an unspecified time involving unspecified individuals in which Mementum conveyed it would take unspecified legal action against Plaintiffs concerning unspecified uses if the parties didn't reach an agreement (ECF No. 58, 22:20-25) fails for similar reasons—the alleged statement isn't specific enough to be actionable and Plaintiffs didn't include any allegations about this purported call in their complaint or proposed FAC. Plaintiffs' excuse as to why they waited to plead this—that they "had no reason" to do so until Mementum issued its covenant—makes no sense and ignores that Plaintiffs didn't actually include any allegations about this call in the proposed FAC that they asked the Court for leave to file *after* Mementum issued its covenant. ECF No. 34-3.

These claimed pre-lawsuit statements weren't significant enough for Plaintiffs to allege until after Mementum issued its covenant (or in the case of the call, in their post-covenant proposed FAC), and aren't significant enough to support the existence of a live controversy.

c. <u>The Passage of Time Supports that There Isn't a Live Controversy</u>

Plaintiffs try to minimize the passage of time as a circumstance to consider (ECF No. 58,

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

23:13-28), but it's core to declaratory relief—a plaintiff must show the existence of a live controversy at every stage of litigation. *Chafin v. Chafin*, 568 U.S. 165, 172 (2013); *see Splunk*, 2021 WL 3140832, at *2 (keeping motion to dismiss under submission to see "if developments affecting the question of jurisdiction might take place," and dismissing the complaint when none did). Plaintiffs struggle to identify affirmative acts that Mementum has undertaken since the parties' licensing negotiations that warrant declaratory judgment. The only act outside this case they identify is the EU takedown request that actually undermines the existence of a live U.S. controversy (*supra* § II.A.2), as does the fact that Mementum has never sent a DMCA request and covenanted away its right to do so as to the 17 characters. The other "acts" are within this case—Mementum's footnote stating that it reserves rights in the 22 additional characters Plaintiffs used without consent and doesn't intend to sue Plaintiffs for these uses; Mementum similarly stating it preserved rights not included within its covenant; and Mementum not expanding its covenant to encompass rights not in dispute—and don't evidence a live controversy. *Infra* § II.A.2.d.-e.

d. The Footnote Doesn't Evidence a Live Controversy, and the Analogous *Splunk* Case Strongly Supports Mementum's Position

Plaintiffs argue that the footnote reserving rights in the 22 characters is evidence of a live controversy because it noted that Plaintiffs used these characters without authorization. ECF No. 58, 25:8-12. But observing that a use lacks authorization is different than asserting or threatening to assert a copyright infringement claim based on these uses—the type of conduct that would be evidence of a live controversy. By contrast, in the *Beyond Blond Prods., LLC v. Heldman* case on which Plaintiffs rely, the defendants sent a DMCA takedown notice identifying a specific registration number, demanded written confirmation that the plaintiff would cease use of the copyrighted design, swore under oath that they had "concluded in good faith that [plaintiff] had infringed [their] copyrighted works," and stated that they did not intend to assert an infringement claim as to some, but not all, of the content at issue. 2021 WL 9315215, at *1-2, *5 (C.D. Cal. Sept. 16, 2021). Mementum's footnote does none of this. Unlike the *Beyond Blond* defendant, Mementum hasn't sent a DMCA takedown request as to these characters, asserted or threatened to assert any copyright infringement claims relating to them, sworn under oath that Plaintiffs

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

infringed any copyrights in these characters, or provided an incomplete disclaimer.

Plaintiffs' attempt to distinguish *Splunk* (ECF No. 58, 25:13-25) fails. The *Splunk* court held that reservation of rights language like that in the footnote isn't evidence of a controversy because "to reserve a right is to refrain from exercising it." 2021 WL 3140832, at *3. Mementum relied on *Splunk* for that holding (ECF No. 54, 21:11-22:20), and Plaintiffs don't dispute that *Splunk* stands for this proposition, which effectively forecloses their argument that the footnote evidences a live controversy as to the 22 characters.

*Splunk* strongly supports Mementum's position. Even though the *Splunk* defendant overtly invoked U.S. law in the body of its letter—whereas Mementum's letter invoked French law and only referenced the DMCA in an appendix setting forth general policies—the court found that the crux of the letter asserted rights under European law. 2021 WL 3140832, at *1-2. The *Splunk* court found that the defendant's filing of a trademark action against the plaintiff in Germany—a step beyond Mementum sending an EU takedown request to Roblox—didn't support the existence of a controversy because trademark has a separate legal existence in each country, and plaintiff hadn't shown that what happened in Germany wouldn't stay in Germany. *Id.* at *3. And the *Splunk* court found that defendant's trademark enforcement practices didn't result in U.S. litigation (the same is true as to any copyright enforcement practices by Mementum) and credited defendant's representation that it didn't plan to pursue a U.S. trademark action against plaintiff (Mementum similarly has stated it doesn't intend to pursue claims as to the 22 characters). *Id.*

As in *Splunk*, the crux of Mementum's limited acts outside this case (the letter and takedown request) concerned European law, Plaintiffs haven't shown that Mementum will carry these acts over to the U.S., and Mementum has represented that it won't. Plaintiffs argue that this dispute is different because Mementum filed a U.S. counterclaim, but the fact that Mementum has asserted the same claim concerning Tung Tung Sahur in three iterations of its pleading reinforces it's not seeking to expand this controversy beyond that. Plaintiffs also argue that Mementum having U.S. counsel—after being sued in the U.S.—deliver a covenant distinguishes this dispute, but the fact that Mementum issued a covenant at all reinforces it's not looking for a broader U.S. fight. Nor does it matter that the covenant references U.S. copyright law—Plaintiffs sued under

U.S. copyright law and the covenant moots the claim they pled. Plaintiffs' attempt to differentiate *Splunk* spotlights the case's similarities, buttressing that the circumstances here are a "country mile" from the circumstances "typically deemed sufficient" to support jurisdiction. *Id.*, at *2.

Plaintiffs argue that even though Mementum hasn't asserted claims in this case relating to these characters and stated that it doesn't intend to do so, Mementum still could do so in a separate action, and its course of conduct supports that it might. ECF No. 58, 25:26-26:10. This series of "what if's" is the type of hypothetical controversy courts shouldn't reach to resolve, and the cases Plaintiffs rely on make clear that Mementum's limited conduct doesn't compare to the type of conduct needed to support an actual controversy. In *Wong v. Hard Drive Prods., Inc.*, the defendant's claim that it wasn't targeting the plaintiff was contradicted by its simultaneous conduct—suing Doe defendants over the same video, threatening to name the plaintiff, demanding settlement, then filing a nearly identical action naming the plaintiff's IP address and demanding settlement again without ever withdrawing its vicarious-liability theory. 2012 WL 1252710, at *4 (N.D. Cal. Apr. 13, 2012). *Abrahams v. Hard Drive Prods., Inc.* involved the same defendant and similar conduct directed toward a different plaintiff. 2012 WL 1945493, at *4-5 (N.D. Cal. May 30, 2012). Mementum's statement that it doesn't intend to pursue claims relating to these characters isn't undercut by any comparable course of conduct.

e. <u>Mementum Not Broadening its Covenant to Encompass Uses Not in Controversy Doesn't Create a Controversy as to Those Uses</u>

Plaintiffs' attempt to fault Mementum for not broadening its covenant to include all copyright uses of each of the 39 characters (ECF No. 58, 26:11-27:8)—and presumably now all trademark uses based on the new claim that Plaintiffs are asserting (*infra* § II.B.)—is another attempt to invert who bears the burden of establishing jurisdiction. Mementum declining to forfeit rights that aren't in controversy doesn't create a controversy over those rights. What acts did Mementum take to put the non-Game uses of the 17 characters or all uses of the 22 characters at issue? Plaintiffs haven't made that predicate showing—there's "a complete lack of evidence of a defined, preexisting dispute between the parties" as to these uses. *Prasco*, 537 F.3d at 1339-41.

Plaintiffs' reliance on *Citizens Equity* is again misplaced—in that case, defendant's refusal



GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

to stipulate to non-infringement came after the court had already found a live controversy based on specific, sworn deposition testimony that infringement was imminent, and that refusal mattered only because defendant had to show that its covenant mooted a controversy already established through independent, specific evidence. 65 F.4th at 1023-24, 1027. The facts in *Beyond Blond* were similar. 2021 WL 9315215, at *5. Unlike those cases, Plaintiffs have not established an existing controversy as to these uses, and unlike the *Citizens Equity* defendant, Mementum is not contending its covenant covers those uses—it's contending that its covenant doesn't need to cover those uses because they're not in dispute. Mementum has no obligation to forfeit rights to mollify Plaintiffs' purported subjective apprehension about hypothetical disputes.

Plaintiffs are taking a give-a-mouse-a-cookie position as to the scope of the covenant. They first alleged that the copyright controversy included the use of 17 characters in the Game. ECF No. 1, ¶¶ 1, 20, 22, 24. After Mementum issued a covenant mooting this controversy (ECF No. 34-5), Plaintiffs asserted that the controversy included *any* use of the 17 characters (and the same rights in France). ECF No. 34-7. Plaintiffs then sought leave to allege a copyright controversy as to all uses of the 39 characters. ECF No. 34. And then, when the Court granted leave without expressly ordering Plaintiffs to file their proposed FAC, they filed a new FAC that expanded the controversy to include all copyright *and trademark* rights relating to any uses of the 39 characters. ECF No. 54-4. Mementum didn't engage in any acts that warranted Plaintiffs ballooning the alleged actual controversy, and Mementum declining to broaden its covenant to encompass an invented, ever-shifting controversy doesn't support that controversy's existence.

Plaintiffs' position penalizes conduct courts should encourage. Mementum entered the covenant covering Plaintiffs' in-Game use of the 17 characters to narrow this litigation and avoid the expense of fighting Plaintiffs' complaint (ECF No. 34-5, Recital J), not because any controversy existed as to those uses. Plaintiffs shouldn't be able to turn that voluntary narrowing into a weapon to argue that Mementum's refusal to expand that covenant is itself proof that a controversy exists. A rights holder that voluntarily moots part of a case should not, by that act, expose itself to an argument that any refusal to broaden that covenant to additional uses not in controversy manufactures the very controversy the covenant was designed to avoid litigating. To

hold otherwise would discourage the kind of covenant Mementum gave and encourage litigation.

**B. The Court Should Strike or Dismiss Plaintiffs' New Claim**

**1. There Isn't an Actual Controversy Concerning the Marks in Any Character Other than Tung Tung Sahur**

Plaintiffs' defense of their new claim—asking this Court to declare Mementum has no trademarks in the names and images of 39 characters—rests on a single boilerplate phrase in Mementum's prayer seeking disgorgement of profits from the "unauthorized use of Defendant's brainrot characters, including without limitation Tung Tung Sahur." ECF No. 58, 31:9-12.

That phrase cannot support the real and reasonable apprehension of liability standard. A prayer for relief isn't a cause of action—it cannot expand the scope of a claim beyond what the claim's substantive allegations support, and Mementum's claims are pled as to Tung Tung Sahur specifically. This exact phrase appeared in Mementum's original Counterclaims and its First Amended Counterclaims, both filed before Plaintiffs sought leave to file their proposed FAC. ECF No. 18, Prayer for Relief ¶ 8; ECF No. 25, Prayer for Relief ¶ 8. Yet Plaintiffs never once treated that language as putting these rights at issue—not in their meet and confer over the covenant's scope (ECF No. 34-7), their proposed FAC (ECF No. 34-3), or the motions to dismiss they filed (ECF Nos. 22, 32, 53). But for the Court granting leave to amend without expressly ordering Plaintiffs to file their proposed FAC (ECF No. 42),[2] Plaintiffs wouldn't have been able to rewrite their FAC to put these rights at issue. Plaintiffs fail to explain why boilerplate language they treated as immaterial through rounds of pleading and briefing creates a live controversy now. Plaintiffs' reliance on *Davis v. Hollywood & Ivar, LLC*, 2021 WL 4816822, at *3 (C.D. Cal. July 30, 2021), is misplaced because *Davis* addressed the discretionary question of whether a counterclaim should be dismissed as redundant of claims properly before the court—a question presupposing jurisdiction exists. It says nothing about the threshold, mandatory issue—whether

[2] The Court's order states that it was granting leave after having "reviewed the parties' pending motions" (ECF No. 42), which indicates that the Court was granting Plaintiffs the leave they were requesting—to file their proposed FAC—not the unfettered ability to allege whatever they wanted. If so, this is another reason why the Court shouldn't permit Plaintiffs to completely alter the scope of this case and pursue trademark claims in the names and images of 39 characters.



GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

Plaintiffs have carried their burden of showing that an actual controversy exists in the first place.

Considering the totality of the circumstances, and not the single phrase Plaintiffs isolate, Plaintiffs cannot show a real and reasonable apprehension of being sued for these claims.

**2. Mementum's Mirror Image Tung Tung Sahur Counterclaim Should Be Stricken or Dismissed**

Plaintiffs don't identify any space between Mementum's counterclaims asking the Court to determine it has valid marks in Tung Tung Sahur's name and image that Plaintiffs infringed and Plaintiffs' declaratory relief claim asking the Court to declare that these marks aren't valid and that Plaintiffs didn't infringe them. *Compare* ECF No. 51, ¶¶ 28-32 *with* ECF No. 50, ¶ 56(a)-(d). The Court's inquiry can stop there—that these claims present a "complete identity of factual and legal issues" (*Stickrath v. Globalstar, Inc.*, 2008 WL 2050990, at *5 (N.D. Cal. May 13, 2008)) demonstrates that Plaintiffs' claim is "nonsensical," "superfluous," serves no useful purpose, and should be stricken. 5 Patry on Copyright § 17:49 (collecting cases); *see Lavco Sols., Inc. v. Biztracker Sys. of St. John, LLC*, 2020 WL 11648276, at *3 (C.D. Cal. Nov. 4, 2020).

Plaintiffs' prior inaction (*supra* § II.B.1) strongly supports this conclusion as well—Plaintiffs never treated this claim as live through many rounds of pleading and briefing and should not be permitted to pursue now what they didn't think was worth raising then.

Plaintiffs' non-infringement claims (ECF No. 50, ¶ 56(c)-(d)) are indistinguishable from the counterclaim dismissed in *Lavco*, where the court found the mirror-image non-infringement claim "serve[d] no useful purpose" because the defendant "add[ed] no issues . . . that will not be resolved by or survive Plaintiff's claim for trademark infringement." 2020 WL 11648276, at *3. Plaintiffs' reliance on *Corsair Gaming, Inc. v. Choice Elecs. Inc.*, 2025 WL 2822691 (N.D. Cal. Oct. 3, 2025), doesn't change this outcome as that court's rationale—a non-infringement claim protects a party against the possibility that the trademark holder will dismiss the suit before all issues are resolved (*id.* at *2)—rests on a risk Rule 41 forecloses. Once a counterclaim has been pleaded, "the action may be dismissed over . . . objection only if the counterclaim can remain pending for independent adjudication" (Fed. R. Civ. P. 41(a)(2)), and Rule 41(c) extends this protection to a dismissal of any counterclaim itself. Mementum's trademark counterclaims cannot

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

vanish, leaving Plaintiffs' exposure unresolved, without the safeguards Rule 41 already provides. Nor does the availability of attorneys' fees justify preserving a redundant claim—15 U.S.C. § 1117(a) makes fees available to any prevailing party in an exceptional case, including a defendant who successfully defeats a trademark infringement claim outright.

Plaintiffs' invalidity claims (ECF No. 50, ¶ 56(a)-(b)) fare no better. As Plaintiffs recognize, Mementum's counterclaims concerning the Tung Tung Sahur marks aren't "confined" to "Plaintiffs' use of its purported trademarks in the Game" (ECF No. 50, ¶ 38)—Mementum alleges that it has valid marks based in part on its licensing of the marks for video games and other uses, including "toys in arcade games, books and e-books, and consumer products" (ECF No. 51, ¶¶ 16, 28), and its infringement claims encompass such uses (*id.*, ¶¶ 27, 35). As Plaintiffs' own allegations reflect (ECF No. 50, ¶ 38), Mementum's claims will resolve any question as to whether Plaintiffs' continued use of these marks on similar products is infringing. If Plaintiffs' other uses fall outside what Mementum's claims already reach, Plaintiffs cannot invoke *Lavco* and *Stickrath's* "something to gain" rationale to save their claim based on hypothetical uses of these marks. That rationale is borrowed from the patent context and applies where a defendant faces an identified, ongoing risk from continued product development—the concern that "changes will convert that which previously did not infringe into something that does." *Dig. Envoy, Inc. v. Google, Inc.*, 2006 WL 824412, at *2-3 (N.D. Cal. Mar. 28, 2006). It doesn't extend to every declaratory plaintiff who happens to have some existing use a rights holder hasn't challenged. Without an identified threat tied to a specific evolving or expanding use, there's no live issue for an invalidity declaration to address, only speculation. That isn't the real and reasonable apprehension Article III requires. Plaintiffs' invalidity claim adds nothing beyond what Mementum's claims will resolve or what the absence of any actual, identified threat forecloses.

Plaintiffs' declaratory claim regarding the remaining characters fails either way. If, as Plaintiffs contend, Mementum's counterclaims reach those characters, Plaintiffs' corresponding claim is itself a mirror image of that counterclaim under the same standard set forth above and should be dismissed on that basis. If, as Mementum submits, no such controversy exists as to those characters, dismissal follows for the reasons stated above. Plaintiffs can't have it both ways.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

**C. If the Court Finds that An Actual Controversy Exists, it Should Still Exercise its Discretion to Decline to Exercise Subject Matter Jurisdiction**

"Even if there is an actual controversy, the district court is not required to exercise declaratory judgment jurisdiction, but has discretion to decline that jurisdiction." *Fresenius USA, Inc. v. Transonic Sys., Inc.*, 207 F. Supp. 2d 1009, 1012 (N.D. Cal. 2001) (determining that no actual controversy existed, but that if it did, the court would decline jurisdiction).

Courts are reluctant to exercise jurisdiction where, as here, the declaratory relief defendant tried to resolve the dispute directly before the declaratory relief plaintiff raced to file suit. Similar to the *Fresenius* defendant's letter (*id.*, at 1011), Mementum's meet-and-confer letter sought to "amicably" resolve the issues it was raising, with Mementum's lawyer writing that he "trust[s] we will be able to address this matter in a professional and constructive manner, in the spirit of our confraternal duties" and "commercial good faith." ECF No. 54-1. That cordial tone continued in the parties' licensing negotiations—in the email containing the purported threat, Mementum's lawyer concluded: "I sincerely hope that our differing legal readings will not stand in the way of a constructive cooperation between our clients." ECF No. 54-2, p. 3. Exercising jurisdiction under these circumstances "would create a strong disincentive" for rightsholders like Mementum "to communicate with potential infringers before filing suit, for fear of being sued first and thus forced to litigate in the defendant's forum of choice." *Fresenius*, 207 F. Supp. 2d at 1012.

Judicial economy counsels the same result. Plaintiffs don't ask this Court to resolve a discrete dispute—they ask this Court to issue wide-ranging opinions concerning copyrights and trademarks in 39 characters, requiring the parties to litigate and the Court to decide complex factual and legal issues surrounding the creation and use of each character's name and image. The Court should decline Plaintiffs' overreaching request to engage in this massive undertaking.

## III. CONCLUSION

Mementum requests that the Court grant its motion, dismiss Plaintiffs' First Cause of Action for lack of subject matter jurisdiction under Rule 12(b)(1), and strike and/or dismiss Plaintiffs' Second Cause of Action as procedurally improper and/or duplicative of Mementum's counterclaims under Rule 12(f), and/or for lack of subject matter jurisdiction under Rule 12(b)(1).

DATED: September 9, 2026

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP

By: ______________________
STEVEN A. STEIN (SBN 287401)
Attorneys for Defendant and Counterclaimant Mementum Lab SAS

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067