AARON J. MOSS (190625)
aaron.moss@msk.com
JOSHUA M. GELLER (295412)
josh.geller@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

MARISSA B. LEWIS (*Pro Hac Vice*)
mbl@msk.com
HARRISON A. NEWMAN (*Pro Hac Vice*)
han@msk.com
MITCHELL SILBERBERG & KNUPP LLP
437 Madison Ave., 25th Floor
New York, New York 10022-7001
Telephone: (212) 509-3900
Facsimile: (212) 509-7239

Attorneys for Plaintiffs
SPYDER GAMES LLC and
SPEEDY SIMULATOR GAMING, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

SPYDER GAMES LLC, a Louisiana limited liability company; and SPEEDY SIMULATOR GAMING, LLC, a Wyoming limited liability company,

Plaintiffs and Counter-Defendants,

v.

MEMENTUM LAB, a French company,

Defendant and Counterclaimant.

CASE NO. 5:25-CV-10248-NW

**PLAINTIFFS AND COUNTER-DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS MEMENTUM LAB'S SECOND AMENDED COUNTERCLAIM PURSUANT TO FRCP 12(B)(6)**

Hon. Noël Wise

Date: December 9, 2026
Time: 9:00 a.m.
Courtroom: 3

## TABLE OF CONTENTS


Page

I. INTRODUCTION ........ 6

II. MEMENTUM HAS NOT PLAUSIBLY ALLEGED THAT TUNG TUNG SAHUR FUNCTIONS AS A TRADEMARK. ........ 6

A. Fictional Characters *Can* Be Trademarks, But Tung Tung Sahur Is Not One. ........ 6

B. Mementum's Conclusory Allegations of Source Identification Do Not Suffice. ........ 7

III. MEMENTUM'S NAKED LICENSING OF TUNG TUNG SAHUR DEFEATS ITS COUNTERCLAIM. ........ 9

IV. MEMENTUM CANNOT OVERCOME *DASTAR* ........ 12

V. MEMENTUM CANNOT PLAUSIBLY ALLEGE LIKELIHOOD OF CONFUSION. ........ 15

VI. MEMENTUM CANNOT PLEAD PRIORITY OF USE. ........ 17

VII. CONCLUSION ........ 20

# TABLE OF AUTHORITIES

**Page**

## CASES

*AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979) ........ 15, 17

*Antidote Int'l Films, Inc. v. Bloomsbury Publ'g, PLC*, 467 F. Supp. 2d 394 (S.D.N.Y. 2006) ........ 13

*Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc.*, 289 F.3d 589 (9th Cir. 2002) ........ 10, 11

*Bastiat USA, Inc. v. Shein Distrib. Corp.*, 2026 WL 1146737 (C.D. Cal. Apr. 28, 2026) ........ 12

*Bobbleheads.com, LLC v. Wright Bros., Inc.*, 259 F. Supp. 3d 1087 (S.D. Cal. 2017) ........ 14

*Brantley v. Epic Games, Inc.*, 463 F. Supp. 3d 616 (D. Md. 2020) ........ 13

*Brown v. It's Ent., Inc.*, 34 F. Supp. 2d 854 (E.D.N.Y. 1999) ........ 6, 9

*Capcom Co. v. MKR Grp., Inc.*, 2008 WL 4661479 (N.D. Cal. Oct. 20, 2008) ........ 14

*Comedy III Prods., Inc. v. New Line Cinema*, 200 F.3d 593 (9th Cir. 2000) ........ 15

*Conan Props., Inc. v. Conans Pizza, Inc.*, 752 F.2d 145 (5th Cir. 1985) ........ 6

*Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962 (N.D. Cal. 2013) ........ 14

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) ........ 12, 13, 14, 15, 20

*DC Comics v. Towle*, 989 F. Supp. 2d 948 (C.D. Cal. 2013) ........ 6

*Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*, 448 F.3d 1118 (9th Cir. 2006) ........ 10, 11

*Electro Source, LLC v. Brandess-Kalt-Aetna Grp., Inc.*, 458 F.3d 931 (9th Cir. 2006) ........ 20

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Fleischmann Distilling Corp. v. Maier Brewing Co.*,
314 F.2d 149 (9th Cir. 1963) ........ 8

*FreecycleSunnyvale v. Freecycle Network*,
626 F.3d 509 (9th Cir. 2010) ........ 10

*Halo Mgmt., LLC v. Interland, Inc.*,
2004 WL 1781013 (N.D. Cal. Aug. 10, 2004) ........ 11

*Hana Fin., Inc. v. Hana Bank*,
574 U.S. 418 (2015) ........ 18

*Hana Fin., Inc. v. Hana Bank*,
735 F.3d 1158 (9th Cir. 2013) ........ 20

*In re GO & Assocs., LLC*,
90 F.4th 1354 (Fed. Cir. 2024) ........ 7

*In re Stallard*
2023 WL 5607600 (TTAB Aug. 28, 2023) ........ 9

*Jack Daniel's Props., Inc. v. VIP Prods. LLC*,
599 U.S. 140 (2023) ........ 7

*King v. Perry*,
2024 WL 7009936 (C.D. Cal. June 24, 2024 ........ 12

*Lagree Fitness, Inc. v. Studio Physique, LLC*,
2026 WL 1113766 (C.D. Cal. Apr. 24, 2026) ........ 11

*Lehrman v. Lovo, Inc.*,
790 F. Supp. 3d 348 (S.D.N.Y. 2025) ........ 13

*Lions Gate Ent. Inc. v. TD Ameritrade Servs. Co.*,
170 F. Supp. 3d 1249 (C.D. Cal. 2016) ........ 12

*McKenzie v. Artists Rights Soc'y, Inc.*,
757 F. Supp. 3d 427 (S.D.N.Y. 2024) ........ 13

*Motul S.A. v. USA Wholesale Lubricant, Inc.*,
686 F. Supp. 3d 900 (N.D. Cal. 2023) ........ 17

*Murray v. Cable Nat. Broad. Co.*,
86 F.3d 858 (9th Cir. 1996) ........ 15

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*P & P Imports LLC v. Johnson Enters., LLC*,
46 F.4th 953 (9th Cir. 2022) ........ 8

*Pellegrino v. Epic Games, Inc.*,
451 F. Supp. 3d 373 (E.D. Pa. 2020) ........ 13

*Rogozinski v. Reddit, Inc.*,
2025 WL 1650019 (9th Cir. June 11, 2025) ........ 19

*Sengoku Works Ltd. v. RMC Int'l, Ltd.*,
96 F.3d 1217 (9th Cir.), *as modified*, 97 F.3d 1460 (9th Cir. 1996) ........ 18

*Slep-Tone Entertainment Corp. v. Wired for Sound Karaoke & DJ Services, LLC*,
845 F.3d 1246 (9th Cir. 2017) ........ 12, 15

*Soo Park v. Thompson*,
851 F.3d 910 (9th Cir. 2017) ........ 17

*Sybersound Recs., Inc. v. UAV Corp.*,
517 F.3d 1137 (9th Cir. 2008) ........ 15

*THOIP v. Walt Disney Co.*,
736 F. Supp. 2d 689 (S.D.N.Y. 2010) ........ 9

*To-Ricos, Ltd. v. Productos Avícolas del Sur, Inc.*,
118 F.4th 1 (1st Cir. 2024) ........ 19

*Toho Co. v. William Morrow & Co.*,
33 F. Supp. 2d 1206 (C.D. Cal. 1998) ........ 6, 8, 9

*Vericool World, LLC v. Igloo Prods. Corp.*,
175 F.4th 1045 (9th Cir. 2026) ........ 15

*Warner Bros. Ent., Inc. v. X One X Prods.*,
840 F.3d 971 (8th Cir. 2016) ........ 14

**STATUTES**

15 U.S.C.
§ 1055 ........ 10, 19
§ 1127 ........ 10

# I. INTRODUCTION

This motion is not about whether characters can *ever* serve as trademarks—they can. Rather, it is about whether *this* character, a viral meme circulated by millions of people around the world before Mementum attempted to commercialize it, can plausibly function as a trademark in the minds of consumers, and whether Plaintiffs' depiction of the character in their own video game infringes Mementum's purported rights. Plaintiffs brought their motion to dismiss Mementum's Second Amended Counterclaim (the "Counterclaim" or "SACC") because Mementum's allegations, now in their third iteration, still fail to state claims for trademark infringement.

Mementum's repeated refrain in its Opposition that trademark disputes are factually intensive does not immunize the Counterclaim from dismissal where its own allegations defeat it as a matter of law. Because Mementum cannot overcome the legal defects identified in the Motion to Dismiss, Plaintiffs respectfully request that the Counterclaim be dismissed with prejudice.

# II. MEMENTUM HAS NOT PLAUSIBLY ALLEGED THAT TUNG TUNG SAHUR FUNCTIONS AS A TRADEMARK.

## A. Fictional Characters *Can* Be Trademarks, But Tung Tung Sahur Is Not One.

In response to Plaintiffs' argument that Tung Tung Sahur is not a valid trademark, Mementum chiefly attacks a strawman—arguing that characters can serve as trademarks, which Plaintiffs do not dispute. The question is whether this character has been commercially exploited in a manner sufficient to create such rights. In each authority Mementum cites, the character's owner had placed the character on goods, as a brand, under its own control, before the accused use—and each owner held a federal registration, so each court began from a presumption of validity that no defendant contested. *Toho Co. v. William Morrow & Co.*, 33 F. Supp. 2d 1206, 1209 (C.D. Cal. 1998) (Godzilla "continuously" merchandised across "toys, clothing, books, games, records, posters"); *Brown v. It's Ent., Inc.*, 34 F. Supp. 2d 854, 856–57 (E.D.N.Y. 1999) (Arthur on clothing, bags, and sixty books, with owners withholding costume licenses to control public presentation); *Conan Props., Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 147–48 (5th Cir. 1985) (Conan licensed "in various commercial and entertainment works" under a registered mark since 1976); *DC Comics v. Towle*, 989 F. Supp. 2d 948, 956 (C.D. Cal. 2013) (registered

BATMAN and BATMOBILE marks). Mementum holds no U.S. registration and receives no such presumption. Dkt. No. 53, at 16 n.2. Nor does the SACC allege any goods sold under Tung Tung Sahur as a brand or any consistent, owner-controlled presentation of the character to consumers. It alleges merely that Tung Tung Sahur appears within video games as a character players encounter, and that Mementum licenses the character "for use in video games." SACC ¶¶ 16(a)–(f), 31. Such allegations describe a character used as expressive content, not a designation identifying the source of anyone's goods.

**B. <u>Mementum's Conclusory Allegations of Source Identification Do Not Suffice.</u>**

Mementum offers three theories for how Tung Tung Sahur is a source identifier. First, it says the purported mark identifies Mementum, because Mementum has licensed the character to others. Dkt. No. 59, at 14:24–27. Second, it says the character identifies a single anonymous "commercial gatekeeper" who authorizes the character's use, even if consumers cannot name it. *Id.* at 14:28–16:16. Third, it says Tung Tung Sahur is inherently distinctive and identifies itself. *Id.* at 16:17–17:12. Each theory fails for the same reason: the SACC pleads no fact from which the Court could infer that *consumers* perceive Tung Tung Sahur's name or image as identifying any source of goods or services, named or anonymous.

A trademark "tells the public who is responsible for a product." *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 146 (2023). Whether a designation does that turns on how the designation is "used in the marketplace" and "perceived by consumers." *In re GO & Assocs., LLC*, 90 F.4th 1354, 1356 (Fed. Cir. 2024); Dkt. No. 59, at 14:14–16.

Mementum's first theory rests on paragraph 17 of the SACC, which asserts that Mementum's "consistent, expansive and active commercial licensing history" and its "quality control over these licensed uses" make the character's name and image "source identifiers." Dkt. No. 59, at 14:24–27; SACC ¶ 17. Not only is that a bare legal conclusion, but it is a statement about the licensor's own conduct, not the consumer perception required to create trademark rights. Paragraphs 16, 19, and 31 of the SACC describe license negotiations, compensation, and approval rights—Mementum's side of its own contracts. A consumer playing *Fortnite* perceives none of that.

Mementum's second theory involves the anonymous-source rule: even if consumers cannot connect Mementum to Tung Tung Sahur, the character still identifies a single, commercial gatekeeper as its source. Dkt. No. 59, at 14:28–15:17. But that rule holds only that consumers need not know the producer's corporate identity, so long as they perceive the mark as pointing to a single producer of the goods that bear it. In each case Mementum cites, the designation was used as a mark on goods, and the only thing unknown was the company's name. *P & P Imports LLC v. Johnson Enters., LLC*, 46 F.4th 953, 961 (9th Cir. 2022); *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 155–56 (9th Cir. 1963). The anonymous-source rule cannot make a trademark out of something that is not source identifying in the first place.

None of the alleged public-facing uses of Tung Tung Sahur show a connection to a common source. Each exploitation by a separate licensee renders the character in the style of its own game: a realistic wooden figure in a prison-escape game, a blocky Roblox model, a costume worn by *Pudgy Party*'s penguins, a *Fortnite* skin, and a cartoon boxer. SACC ¶¶ 16(b)–(f). By contrast, in the merchandising cases Mementum invokes, a single owner's character reached consumers in a uniform form under that owner's control. *See, e.g.*, *Toho*, 33 F. Supp. 2d at 1209 (accused book copied "the distinctive lettering style used by Toho and its licensees in their merchandising activities"). The SACC pleads the opposite.

Indeed, Mementum notes that one of the licensed games specifically refers to itself as an "Official Noxa-Approved Tung Tung Tung Sahur game!" SACC ¶ 16(b) & p. 9. It pleads no comparable statement for any other licensed use. A consumer who saw "Official Noxa-Approved" on one game listing, and then encountered the same character in *Plants Vs Brainrots*, *Pudgy Party*, *Fortnite*, or *Brainrot Fight* without such a statement, would have no reason to believe those appearances were approved by anyone. If anything, the *absence* of the statement would suggest that they were not.

The pleaded chronology confirms the point. Tung Tung Sahur went viral as freely circulating content after Noxa's February 28, 2025 video and, by March 2025, was "a famous, iconic character, including in the United States," achieving "a level of consumer recognition that most characters do not achieve with years of sustained marketing"—all before any sustained

commercial exploitation. SACC ¶ 4. Apart from a one-day hackathon (*id.* ¶ 16(a)), the first "authorized" exploitation pleaded is a bare consent Noxa gave on May 5, 2025 for a single mobile game. *Id.* ¶ 16(b). Plaintiffs released their Game, with its depiction of Tung Tung Sahur, on May 16, 2025. *Id.* ¶ 6. The SACC alleges no further licensed use by Mementum until October 2025; *Fortnite* followed in 2026. *Id.* ¶¶ 16(c)–(f).

Mementum answers that the Batmobile, James Bond, and Mickey Mouse were also famous before any court recognized them as marks. Dkt. No. 59, at 17:24–27. But each was created and exploited from the outset by a single owner, in that owner's own works and licensed merchandise. Tung Tung Sahur's sequence, as pleaded, was the reverse—viral fame first, scattered licensing after—and nothing suggests consumers would associate a widely shared meme with a single commercial source after the fact.

Mementum's third theory—that Tung Tung Sahur can be a source identifier for itself—is not supported by any authority. Mementum previously grounded it in *Toho* and *In re Stallard,* 2023 WL 5607600 (Aug. 28, 2023) (Dkt. No. 37, at 17:13–19), but abandoned those citations after Plaintiffs showed the cases said no such thing (Dkt. No. 39, at 11:16–26). It now cites *Brown*, 34 F. Supp. 2d at 858, and *THOIP v. Walt Disney Co.*, 736 F. Supp. 2d 689 (S.D.N.Y. 2010) for the proposition that a character's name or design can be inherently distinctive. But that is a non sequitur: distinctiveness goes to the strength of a mark, not whether something is a mark at all. In *THOIP*, the mark was not a character alone, it was the words "'MR.' or 'LITTLE MISS' with a character trait in bold, block lettering, . . . plus a . . . character"), and it identified not itself but a "series of children's books" that had "been marketed and packaged together." 736 F. Supp. 2d at 707. And *Brown* never addressed source identification at all; it recognized only that the plaintiff held a "federal trademark registration" in Arthur. 34 F. Supp. 2d at 856.

## III. <u>MEMENTUM'S NAKED LICENSING OF TUNG TUNG SAHUR DEFEATS ITS COUNTERCLAIM.</u>

Mementum does not allege that it has ever itself sold a good or service under "Tung Tung Sahur" in the United States. Its claim to a U.S. trademark rests on the uses of its licensees, which Mementum may rely on only if it controlled "the nature and quality of the goods or services" sold

under the mark. 15 U.S.C. §§ 1055, 1127; SACC ¶ 31; *Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc.*, 289 F.3d 589, 595–96 (9th Cir. 2002). But one of the very first licenses that Mementum pleads, for the game *Plants Vs Brainrots*, is facially a "naked," uncontrolled license. Even one naked license forfeits trademark rights. The licensor in *Barcamerica* forfeited its mark through one license to one licensee, 289 F.3d at 596–98, and the licensor in *FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509 (9th Cir. 2010), forfeited its marks through its dealings with a single member group, *id.* at 513, 519, because naked licensing "constitutes abandonment of any rights to the trademark by the licensor." *Barcamerica*, 289 F.3d at 598. The "stringent" standard of proof that Mementum invokes, Dkt. No. 59, at 19:17–19, does not change the analysis. Mementum had to plead a controlled license; the one it pleaded, read together with its own allegations, is naked. Mementum recites the Ninth Circuit's three-part test to identify a naked license but then fails to apply it properly. Dkt. No. 59, at 18:23–27. The test asks (i) whether the license gave the licensor an express contractual right to inspect and supervise the licensee, (ii) whether the licensor exercised actual control, and (iii) whether the licensor reasonably relied on the licensee to maintain quality through a close working relationship. *FreecycleSunnyvale*, 626 F.3d at 512, 515–19. Mementum has not alleged facts that would satisfy any of the three.

The *Plants Vs Brainrots* license is, on its face, a settlement agreement. It states that it is a "Settlement for Prior and Future Use," provides for a "lump sum" payment of €25,000 "[a]s a full and final settlement for any and all prior and future use," and confirms that the licensee's use is "on a royalty-free basis." Madsen Decl. Ex. A, Dkt. No. 53-2, § 3.1. It reserves Mementum no right to inspect the game, approve anything in it, or hold it to any standard of quality; the only termination right is for a material breach left uncured for thirty days. *Id.* § 5.

To address the license's lack of contractual inspection and supervision rights, Mementum points to § 2.1. Dkt. No. 59, at 20:12–14. But Section 2.1 does not restrict the licensee's depiction of Tung Tung Sahur; it affords the licensee the freedom to "edit/modify the Character" as needed to fit it into the licensee's own game "in a manner stylistically consistent with the Game." Ex. A § 2.1. A license under which the licensee's own product sets the standard is not a controlled one. *See Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1131–32 (9th Cir. 2006)

(no quality control where agreement did not make the marks "reflect[ ] the goodwill and quality standards" of the licensor "as opposed to" licensee and "provided no recourse" to licensor if quality deteriorated). Mementum also points to § 4.2, under which the licensee must not "distort or misrepresent the Character," and argues that the clause's moral-rights label does not matter. Dkt. No. 59, at 20:25–21:7. Even treating that obligation as one Mementum could enforce, a licensee's promise of that kind is not quality control. *See Halo Mgmt., LLC v. Interland, Inc.*, 2004 WL 1781013, at *4 (N.D. Cal. Aug. 10, 2004) (license naked "[b]y its own terms" despite licensee's obligation to use "reasonable commercial efforts to maintain the positive business value" of the mark, which placed no "distinct or cognizable restriction on the quality of goods"); *Lagree Fitness, Inc. v. Studio Physique, LLC*, 2026 WL 1113766, at *4 (C.D. Cal. Apr. 24, 2026) (license requiring licensee to uphold licensor's "good name" "provides no standard with which to measure performance").

The absence of royalties also signals that the agreement is not a trademark license. *See Bazaar Del Mundo*, 448 F.3d at 1130. Mementum answers that *Bazaar Del Mundo* found that the agreement there was not a trademark license at all. Dkt. No. 59, at 20:20–25. That is the point. Nothing about the *Plants Vs Brainrots* agreement is a controlled trademark license, and if it is a trademark license at all, it is a naked one.

Mementum next argues that the Court must nevertheless consider whether Mementum exercised quality control in practice. Dkt. No. 59, at 20:2–9. But the SACC pleads no such control. As to the *Plants Vs Brainrots* license, it alleges only that Mementum "monitored the use of the character." SACC ¶ 16(c). Mementum's more general assertion that Noxa and Mementum "review, revise, and approve" the character's depiction "across every licensed medium" (SACC ¶ 19) cannot save the claim, because the one license actually before the Court reserves Mementum no such right. Regardless, even occasional review and inspection is insufficient as a matter of law. *E.g.*, *Barcamerica*, 289 F.3d at 596–97 (finding a naked license where the licensor's "sole evidence of any such control" was its principal's "own apparently random tastings and his reliance on Renaissance's reputation"); *see also Lagree*, 2026 WL 1113766, at *5 ("merely identifying multiple random inspections over a multi-year period is insufficient to suggest actual control").

As to the third factor, the SACC alleges no relationship between Mementum and the licensee that would let Mementum rely on the licensee's own efforts; the license itself records that the licensee was using the character before Mementum dealt with it at all. Having had three opportunities to plead a controlled license, Mementum has not pleaded a single fact showing a contractual right to inspect and supervise or actual control in practice.

## IV. MEMENTUM CANNOT OVERCOME *DASTAR*.

Mementum misconstrues *Dastar* as a narrow decision that reaches only claims labeled "false designation of origin," not the "traditional trademark infringement claim" Mementum says it pleads. Dkt. No. 59, at 23:3–24 (discussing *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003)). The Ninth Circuit has never confined *Dastar* that way. In *Slep-Tone Entertainment Corp. v. Wired for Sound Karaoke & DJ Services, LLC*, 845 F.3d 1246 (9th Cir. 2017), the court applied *Dastar* to affirm the Rule 12(b)(6) dismissal of trademark infringement and unfair competition claims brought under both sections 32 and 43(a) of the Lanham Act. It explained that "[w]hether we call the violation infringement, unfair competition or false designation of origin, the test is identical," and that *Dastar*, although it construed § 43(a), applies equally to claims of "ordinary trademark infringement." *Id.* at 1248–49. District courts in this circuit apply *Dastar* to trademark and unfair competition claims at the pleading stage. *See, e.g.*, *Lions Gate Ent. Inc. v. TD Ameritrade Servs. Co.*, 170 F. Supp. 3d 1249, 1266–68 (C.D. Cal. 2016); *Bastiat USA, Inc. v. Shein Distrib. Corp.*, 2026 WL 1146737, at *3–4 (C.D. Cal. Apr. 28, 2026); *King v. Perry*, 2024 WL 7009936, at *6 (C.D. Cal. June 24, 2024), *aff'd*, 2026 WL 734783 (9th Cir. Mar. 16, 2026).[1]

In an attempt to get around *Dastar*, the SACC now alleges that consumers were confused about whether "the Game itself" was sponsored by, affiliated with, or approved by Noxa or Mementum. SACC ¶ 32. But recharacterizing the confusion as one about "sponsorship" or

---

[1] Mementum similarly attacks a strawman by mischaracterizing Plaintiffs' argument as one of preemption. Plaintiffs do not contend that the Copyright Act preempts the Lanham Act. *Dastar* construes the Lanham Act's own terms, and the question it asks is whether the alleged confusion concerns the good sold in the marketplace or the creative content inside it. *Dastar*, 539 U.S. at 31–32, 37.

"endorsement" does not take it outside *Dastar*. A claim that a defendant falsely represented an "affiliation" with the author of a creative work is barred for the same reason a false authorship claim is: "the holding of *Dastar* would be meaningless if a false authorship claim could be recast in this manner." *Antidote Int'l Films, Inc. v. Bloomsbury Publ'g, PLC*, 467 F. Supp. 2d 394, 399 (S.D.N.Y. 2006). *Dastar* reaches claims "for false representation of 'affiliation' between the author and a distributor of communicative products," including those pursued through "a false assertion of license." *McKenzie v. Artists Rights Soc'y, Inc.*, 757 F. Supp. 3d 427, 436 (S.D.N.Y. 2024) (dismissing with prejudice a § 43(a)(1)(A) claim based on a false claim of authority to license an image). So in *Lehrman v. Lovo, Inc.*, 790 F. Supp. 3d 348 (S.D.N.Y. 2025), the court dismissed claims that AI-generated copies of the plaintiffs' voices confused consumers about affiliation and licensing, refusing to let the plaintiffs "circumvent the strictures of *Dastar* by 'shoehorning a claim into section 43(a)(1)(B) rather than 43(a)(1)(A),'" and holding that "misrepresentations about licensing are not actionable under the Lanham Act." *Id.* at 371–72, 373 n.15 (citing *Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008)).

Courts applying *Dastar* to video games have reached the same result on claims framed as endorsement. *Brantley v. Epic Games, Inc.*, 463 F. Supp. 3d 616 (D. Md. 2020); *Pellegrino v. Epic Games, Inc.*, 451 F. Supp. 3d 373 (E.D. Pa. 2020). Mementum attempts to distinguish those cases as not involving claims about sponsorship or affiliation. Dkt. No. 59, at 26:3–9. But that is wrong. In *Brantley*, the plaintiffs alleged that Epic's use of their dance in *Fortnite* created "the false impression that Plaintiffs endorsed Fortnite." 463 F. Supp. 3d at 630. The court dismissed that claim with prejudice, because a false endorsement claim built on the copied content "would lead to the type of conflict between the Lanham Act and the copyright law that the Supreme Court sought to avoid in *Dastar*." *Id.* at 631. *Pellegrino* dismissed the false designation claim but allowed a false endorsement claim to proceed only because Epic had used the performer's own likeness. 451 F. Supp. 3d at 385–86 & n.5 (declining to apply *Dastar* "to a false endorsement claim based on the misappropriation of a plaintiff's likeness"). Here, there was no misappropriation of the author's (i.e., Noxa's) name and likeness. Only the character Tung Tung Sahur appears in the Game.

Mementum's Opposition next argues that, under Plaintiffs' logic, "every sponsorship-

confusion claim involving a licensed character would collapse into content-origin confusion," because the character's presence "is always what triggers the alleged confusion in the first place." Dkt. No. 59, at 23:28–24:2. That is not Plaintiffs' argument. Sponsorship and endorsement confusion remain actionable after *Dastar*, but such claims require some misrepresentation *beyond* mere unlicensed use of content. Every case Mementum cites involved such a misrepresentation. *See Bobbleheads.com, LLC v. Wright Bros., Inc.*, 259 F. Supp. 3d 1087, 1098 (S.D. Cal. 2017) (ads stating that "Defendants' bobbleheads were 'The official bobble head doll of the 2016 Donald Trump Presidential campaign'"); *Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962, 979–80 (N.D. Cal. 2013) (use of the "craigslist" mark to pass off defendant's product as endorsed by Craigslist was actionable, while "presenting Craigslist's content as [defendant's] own" would not be); *Capcom Co. v. MKR Grp., Inc.*, 2008 WL 4661479, at *12–14 (N.D. Cal. Oct. 20, 2008) (the author's name, a similar title, and similar packaging pleaded as "source identifying elements," but still dismissing trademark claim with prejudice); *Warner Bros. Ent., Inc. v. X One X Prods.*, 840 F.3d 971, 980 (8th Cir. 2016) (character images on consumer products, used "to associate the products with Warner's films, not to copy the film itself").

The SACC alleges no act implying false endorsement or sponsorship beyond the character's mere existence in the Game. Mementum's Opposition includes a footnote about a social media post "announcing the character's 'return' to the Game" and describing it as as having "affirmatively signaled to consumers that Mementum had consented to the renewed use." Dkt. No. 59, at 24 n.3; SACC ¶ 32(c). Per the SACC, the post in question was a GIF of four figures resembling Tung Tung Sahur carrying a coffin, with the words "Back from the dead Saturday Nov 29 at 3 PM EST." SACC ¶ 13. The post does not name Mementum or Noxa. It says nothing about consent, permission, or a license. And it went up the day *after* Plaintiffs filed this action against Mementum, to an audience that, the SACC alleges, had just seen coverage of "a rights dispute between Mementum and Plaintiffs." *Id.* ¶¶ 12–13, 32(c). A post by one party to a publicized dispute, announcing what its own game will contain, is not a representation that the other party has consented. In each of the cases on which Mementum relies, the statement that took the claim outside *Dastar* invoked the plaintiff or its mark. This one invokes neither.

Mementum's remaining attempts to distinguish controlling Ninth Circuit law all fail. As to *Comedy III*, Mementum says its claim is "different" because it has "valid marks"—but the plaintiff asserted it had valid marks in that case too, and the Ninth Circuit held there were none precisely *because* what it claimed was the subject of copyright rather than a designation of source. *Comedy III Prods., Inc. v. New Line Cinema*, 200 F.3d 593, 596 (9th Cir. 2000). As to *Slep-Tone*, Mementum claims as a distinguishing feature that here, "Plaintiffs prominently features the Marks in their Game and used them in commerce—something users of the Game witnessed." But that was true in *Slep-Tone* too; it made no difference. 845 F.3d at 1249 (applying *Dastar* even though "the media-shifted files display Plaintiff's trademarks and trade dress when performed"). As to *Sybersound* and *Vericool*, Mementum says both arose under § 43(a)(1)(B), the false-advertising provision, which it has not invoked. Dkt. No. 59, at 25:19–28. But *Dastar* itself construed § 43(a)(1)(A), the false-designation provision Mementum *does* invoke. 539 U.S. at 31–32. *Sybersound* and *Vericool* simply extended *Dastar*'s rule to § 43(a)(1)(B), holding that it applies to both subsections. *Vericool World, LLC v. Igloo Prods. Corp.*, 175 F.4th 1045, 1054 (9th Cir. 2026). Mementum cannot escape *Dastar* by pointing to the provision it sued under, because that is the provision *Dastar* decided.

## V. MEMENTUM CANNOT PLAUSIBLY ALLEGE LIKELIHOOD OF CONFUSION.

The SACC also fails for the independent reason that Mementum has not plausibly alleged that Plaintiffs' depiction of Tung Tung Sahur is likely to cause consumer confusion. Mementum devotes much of this section to an argument Plaintiffs never made. Plaintiffs do not ask the Court to weigh the *Sleekcraft* factors or resolve any factual dispute. The motion asks whether the confusion the SACC pleads is of a kind the Lanham Act makes actionable, and whether, setting aside its legal conclusions, the remaining allegations make confusion plausible. Both questions are properly resolved under Rule 12(b)(6). *Murray v. Cable Nat. Broad. Co.*, 86 F.3d 858, 861 (9th Cir. 1996) (affirming dismissal based on "no likelihood of consumer confusion as a matter of law").

First, the confusion the SACC pleads is about authorization or permission and is not actionable under *Dastar*. *See supra*, Part IV. Second, the factor-by-factor analysis Mementum

presents does not expand the bare-bones factual allegations, because each factor cites back to the same two contentions: Tung Tung Sahur is well known, and Tung Tung Sahur appears in video games. No pleaded fact alleges that consumers would be confused by seeing a well-known character appear in different video games.

The SACC's own timeline forecloses any inference of confusion. It alleges that confusion was likely based on the use of Tung Tung Sahur in the Game dating back to May 16, 2025. SACC ¶¶ 6, 32. The mechanism it supplies is that consumers knew Tung Tung Sahur from "many popular games that many consumers of the Game also likely play, including *Plants Vs Brainrots*, *Pudgy Party* and *Fortnite*," and assumed that, "as with those games," the character's use in the Game was authorized. *Id.* ¶ 32(a). But none of those licensed uses existed until months *after* the Game began depicting Tung Tung Sahur. *Plants Vs Brainrots* was licensed on October 11, 2025; *Pudgy Party* on December 8, 2025; *Fortnite* on January 14, 2026, with skins launching on April 4, 2026. *Id.* ¶¶ 16(c)–(e). The experience Paragraph 32 describes was impossible for anyone playing the Game in 2025, because the licensed games from which consumers supposedly drew their assumption of authorization did not yet exist. The same defect infects Mementum's assertion that consumers purchasing Tung Tung Sahur in the Game thought it was "similar to the skins in Fortnite"—merchandise that launched eleven months later. *Id.* ¶ 32(a). Mementum's Opposition does not address this contradictory timeline. The SACC itself tries to sidestep the issue by claiming that consumer confusion was "particularly acute" after Plaintiffs reintroduced Tung Tung Sahur on January 13, 2026. SACC ¶ 34. Even that allegation outruns the pleading: the Epic license is dated January 14, 2026, the day after the reintroduction, and the *Fortnite* skins did not launch until April 4, 2026. *Id.* ¶ 16(e).

Even if the Court were to proceed factor-by-factor, Mementum has not alleged sufficient facts. On similarity of the marks, Mementum says Plaintiffs "concede that they have used the Marks in the Game." Dkt. No. 59, at 27:18. Not so. Plaintiffs dispute that the particular depiction of Tung Tung Sahur in the Game is the same as, or similar to, the stylized drawing Mementum registered, and the SACC, which reproduces both, pleads no comparison between them. SACC ¶¶ 7, 9. On intent, Mementum's Opposition cites no allegation in the SACC at all. Dkt. No. 59, at

27:22–23. The conduct to which it alludes is that Plaintiffs removed Tung Tung Sahur from the Game after a cease-and-desist letter, sued for a declaration of their rights, and reintroduced the character when the parties could not resolve their dispute. The intent *Sleekcraft* asks about is an intent to deceive the public about source. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 354 (9th Cir. 1979). What Mementum alleges has nothing to do with that, and Mementum cites no authority connecting the two.

As to actual confusion, all that Mementum pleads is Paragraph 32's allegation, on information and belief, that "a substantial number of consumers who encountered the name and image of Tung Tung Sahur in the Game believed that Plaintiffs' use . . . was authorized, sponsored or licensed by Noxa and/or Defendant." SACC ¶ 32(b). That is a conclusion about the mental states of unnamed consumers with no factual underpinning. Mementum blames this allegation's lack of substance on its own lack of access to information. Dkt. No. 59, at 28:2–7. But that excuse applies when "facts are peculiarly within the possession and control of the defendant." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017). Here, it is implausible to suggest that consumer sentiments—most likely to be expressed in public fora and social media posts—would be inaccessible to Mementum, particularly given the sheer volume of online engagement that the Brainrots engender. SACC ¶ 29(b) (describing the original Tung Tung Sahur video as having over 134 million views). This is the identical fact pattern addressed in *Motul S.A. v. USA Wholesale Lubricant, Inc.*, 686 F. Supp. 3d 900 (N.D. Cal. 2023), where a formulaic recitation of confusion doomed a trademark infringement claim at the pleading stage even where the marks were "identical in sight, sound, and meaning." *Id.* at 914–15.

The other item Mementum offers as supposed evidence of actual confusion is Plaintiffs' post announcing the character's return to the Game. Dkt. No. 59, at 27:27–28:2; SACC ¶ 32(c). That allegation describes something Plaintiffs did. It says nothing about what any consumer believed, and the post as the SACC describes it does not mention Mementum. SACC ¶ 13.

## VI. <u>MEMENTUM CANNOT PLEAD PRIORITY OF USE.</u>

Even if Tung Tung Sahur could function as a trademark, the SACC would fail independently for lack of priority. Only two alleged uses predate May 16, 2025, the date Plaintiffs

released the Game. SACC ¶¶ 6, 16(a)–(b). Neither was Mementum's own use; rather, both were games that *other* developers built and released. To own a mark, "the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir.), *as modified*, 97 F.3d 1460 (9th Cir. 1996).[2]

The first such use was the April 22, 2025 "hackathon," a one-day contest in which developers built games featuring Tung Tung Sahur and released them "with Noxa's consent," drawing approximately 26 submissions and $2,000 in cash prizes. SACC ¶ 16(a). On its face, that is not a use of Tung Tung Sahur in commerce; it is an invitation to others to use Tung Tung Sahur for the chance at a modest cash prize. Nor does the SACC allege that the contest, its entrants, or any player was in the United States. *See* Dkt. No. 53, at 29:28–30:5. Mementum's prior opposition filled that gap by asserting, without citation to the pleading, that the platform "operates globally, including in the United States." Dkt. No. 37, at 29:6–7. Its current opposition drops the assertion and instead calls U.S. reach one of the "factual disputes the Court cannot resolve at this stage." Dkt. No. 59, at 30:28–31:1. But a factual dispute requires a pleaded fact, and the paragraph Mementum cites for the proposition that the hackathon "was publicly available and involved commercial exploitation" (*id.* at 31:1–3) says neither. SACC ¶ 16(a). If Mementum could truthfully allege such U.S. reach, it has now had three opportunities to do so.

The second is the *Tung Tung Sahur* mobile game, but the SACC's own chronology forecloses this temporal hook. An unaffiliated video game developer made the game and, on May 4, 2025, "asked for Noxa's consent to release" it. Noxa consented the next day, and the game was released "on or around that date." SACC ¶ 16(b). Mementum's own involvement came later: it "subsequently" sent the developer an authorizing letter, and Mementum and the developer then entered a license "retroactive to May 1, 2025." *Id.* (Mementum's opposition says that Mementum "authorized this use on May 5, 2025," but the pleading says Noxa did. *Compare* Dkt. No. 59, at

---

[2] Mementum says that issues of priority "typically require 'a highly fact-sensitive inquiry' reserved for the jury." Dkt. No. 59, at 30:3–5 (quoting *Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418, 421 (2015)). *Hana Financial* held that whether two marks may be tacked is a question for the jury when a case is tried to one. 574 U.S. at 423. It did not address whether a pleading adequately alleges a prior use by the claimant, which is the question here.

31:6 *with* SACC ¶ 16(b).) The pleaded facts reflect an independent developer's game, released on the developer's own decision, with the creator's permission. Nowhere in that chain does the use become Mementum's for purposes of establishing trademark priority.

The SACC adds that "Noxa and Defendant reviewed and approved the character's visual depiction, name, and manner of use." *Id.* Taken as true, that sentence describes the approval given to a game the developer had already built, and it pleads no license. The related-company doctrine on which the SACC relies (¶ 31) attributes a licensee's first use to the licensor only where that use "is controlled by" the licensor "with respect to the nature and quality of the goods or services." 15 U.S.C. § 1055; *To-Ricos, Ltd. v. Productos Avícolas del Sur, Inc.*, 118 F.4th 1, 19 n.29 (1st Cir. 2024) ("[N]aked licensing agreements cannot confer priority rights to the licensor."); *see supra* Part III. The only license the SACC pleads came later and reached back to May 1, 2025, and a retroactive license that blesses an earlier use is not the same as control over that use when it occurred.

The Ninth Circuit applied the same rule in *Rogozinski v. Reddit, Inc.*, 2025 WL 1650019, at *1 (9th Cir. June 11, 2025), where the plaintiff had played "a prominent role" in the online community that used the purported trademark, but Reddit "created and provided the services" on which the trademark appeared. Mementum distinguishes dismissal in that case as one that "turned on the absence of any licensing relationship, not on a rule that a rightsholder's controlled licensees can never establish priority." Dkt. No. 59, at 32:16–17. But that distinction requires a controlled licensee, and the SACC pleads none before May 16, 2025.

Mementum also argues that Plaintiffs cannot show continuous use because they temporarily removed the character from the Game after Mementum's cease-and-desist letter, and that its own use during that interregnum lets it seize priority. Dkt. No. 59, at 31:27–32:12. That argument is misdirected. Plaintiffs assert no trademark rights in Tung Tung Sahur and need none to prevail on this motion. Priority is an element of Mementum's claims, measured against the date the allegedly infringing use began—May 16, 2025. SACC ¶ 6. The continuity cases Mementum cites all concern a party attempting to establish its own trademark rights, and none holds that interruptions in an accused party's use can supply the priority a claimant's case is missing.

Even on its own terms, the theory fails. The SACC alleges that Plaintiffs "discontinued their use of this character for many months" following Mementum's cease-and-desist letter, and again "since at least May 1, 2026," after Mementum sent a takedown notice to Roblox. SACC ¶ 15; *see id.* ¶¶ 11, 13, 16(g). Trademark rights are forfeited by nonuse only upon "discontinuance of trademark use" coupled with "intent not to resume such use." *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1167–68 (9th Cir. 2013). Good-faith pauses for "legitimate business reasons"—including pauses pending the resolution of right disputes—forfeit nothing. *Electro Source, LLC v. Brandess-Kalt-Aetna Grp., Inc.*, 458 F.3d 931, 938–39 (9th Cir. 2006). The interruptions here were of Mementum's own making, and it would be a perverse result if temporary compliance with a cease-and-desist letter effectuated a forfeiture of any defense based on lack of priority.

## VII. CONCLUSION

Mementum has had three opportunities to plead a valid trademark claim. It has again failed to do so. No additional pleading can convert a viral meme into a source identifier, cure its naked licensing, overcome the *Dastar* bar, or manufacture priority the alleged chronology forecloses. Further amendment would be futile. Plaintiffs respectfully request that the Court dismiss Mementum's Counterclaim with prejudice.

DATED: SEPTEMBER 9, 2026

MITCHELL SILBERBERG & KNUPP LLP

By: [signature]

Aaron J. Moss
Joshua M. Geller
Marissa B. Lewis (*Pro Hac Vice*)
Harrison A. Newman (*Pro Hac Vice*)
Attorneys for Plaintiffs
SPYDER GAMES LLC and
SPEEDY SIMULATOR GAMING, LLC