AARON J. MOSS (190625)
aaron.moss@msk.com
JOSHUA M. GELLER (295412)
josh.geller@msk.com
HANNAH G. SHEPHERD (347611)
hannah.shepherd@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Plaintiffs and Counter-Defendants
SPYDER GAMES LLC and SPEEDY
SIMULATOR GAMING, LLC

GREGG A. MARTIN (SBN 135685)
GMartin@ggfirm.com
STEVEN A. STEIN (SBN 287401)
SStein@ggfirm.com
ANDREW P. LUX (SBN 345915)
ALux@ggfirm.com
GREENBERG GLUSKER FIELDS CLAMAN &
MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067
Telephone: 310-553-3610
Facsimile: 310-553-0687

Attorneys for Defendant and Counterclaimant
MEMENTUM LAB SAS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SPYDER GAMES LLC, a Louisiana limited liability company; and SPEEDY SIMULATOR GAMING, LLC, a Wyoming limited liability company,<br><br>Plaintiffs and Counter-Defendants,<br><br>v.<br><br>MEMENTUM LAB SAS, a French company,<br><br>Defendant and Counterclaimant. | Case No. 5:25-cv-10248-NW<br><br>**JOINT STATEMENT RE: DISCOVERY DISPUTE**<br><br>Hon. Susan van Keulen<br>Courtroom: 6 |

## JOINT STATEMENT RE: DISCOVERY DISPUTE

Fact discovery closes April 16, 2027, and trial is set for November 29, 2027. Dkt. No. 52. The issues are (1) whether Mementum has "control," within the meaning of Rule 34, over documents held by the four foreign-based non-party individuals who licensed the characters assertedly at issue in this case to Mementum, "Noxa," "Breno," "Alexey Pigeon," and "@Galabool_68" (together, the "Licensors"), and (2) whether Mementum must make the Licensors available for deposition. Plaintiffs' proposed compromise is that Mementum will make a written demand on each Licensor in the form and manner identified in the Proposed Order; will file a declaration describing its demands and each Licensor's response by November 12, 2026; will produce each Licensor's documents by December 14, 2026; and will make each Licensor available for remote deposition at a mutually agreed time no later than February 26, 2027. If a Licensor's documents are not produced in full, or the Licensor does not sit for deposition, by those dates, Mementum may not offer that Licensor's testimony, declarations, or any documents obtained from that Licensor, on summary judgment or at trial. Mementum's proposed compromise is that: Mementum will continue to follow up with the creators on its request that they provide documents, produce any responsive documents they provide, and if Mementum relies on materials that a creator provides that aren't timely produced, Plaintiffs can seek their exclusion; if Mementum intends to rely on sworn statements or testimony from a creator, it will request that the creator agree to be deposed by Plaintiffs on the same subject matter, and if the creator doesn't agree to do so, Plaintiffs can seek the exclusion of such statements or testimony; and Mementum will reasonably cooperate with Plaintiffs' efforts to seek discovery as to the creators through international discovery mechanisms.

## I. PLAINTIFFS' POSITION

### A. The Licensors' Evidence Go to the Core of Both Sides' Claims.

Mementum, a French company that calls itself "effectively a talent agency" for those who make brainrot characters, claims "exclusive worldwide rights" to the Licensors' characters. Dkt. No. 51 ¶ 9. It started this dispute with a September 3, 2025 cease-and-desist letter demanding that Plaintiffs remove the character Tung Tung Sahur from *Steal a Brainrot*, Plaintiffs' video game on

the Roblox platform, *Id.* ¶ 10. It then told Plaintiffs it held rights in more characters, which Plaintiffs would have to stop using or license. *Id.* ¶¶ 10–11. Plaintiffs seek a declaration that the characters, generated by AI, lack human authorship and are not copyrightable, and that Plaintiffs do not infringe Mementum's purported rights. Dkt. No. 50 ¶¶ 3, 16–17, 25. Mementum counterclaims for trademark infringement and unfair competition. Dkt. No. 51 ¶¶ 27–47.

The Licensors' materials are relevant for two reasons. First, they show how the characters were made. Mementum admits that AI tools were used on all 39 characters but denies that any was made "solely" with AI (Am. Resp. to RFA Nos. 1–39), and its counterclaims describe Noxa's process, including how he "used editing software to make further changes." Dkt. No. 51 ¶¶ 2–3. The Licensors' prompts, AI outputs, drafts, and edits are the only evidence of what a human contributed. Second, they show what rights the Licensors gave Mementum, and when. Mementum's ability to enforce depends on those rights, and its trademark claims depend on its allegation that it and Noxa approved certain other licensees' uses.

Mementum has a contractual relationship with each of the Licensors. It holds an exclusive, multi-year license from each of them and is prosecuting rights in their characters in this case. It disclosed Noxa and Breno as its own witnesses on "the artistic and creative process underlying [the licensed] characters," reachable "through Defendant's representative and attorney," and listed documents on "the artistic and creative process of the relevant creators" among those it may use. Initial Disclosures ¶¶ 1(c), 1(d), 2(a). On September 18, Mementum's counsel confirmed that the disclosure "is accurate" and that his firm is Noxa and Breno's contact "because Mementum represents [them]." Yet Mementum objects that the Licensors' documents are "not in Defendant's possession, custody or control" and has produced none. On September 24, after the parties' first meet and confer, it "asked" the Licensors whether they would cooperate. None has agreed. On October 14, after the parties exchanged initial drafts of this Joint Statement, Mementum served supplemental disclosures that drop the statement that the Licensors are reachable through its counsel, but still describe Mementum as each Licensor's "exclusive worldwide representative" and name all four Licensors as witnesses Mementum "may use." Suppl. Disclosures ¶¶ 1(c)–(f), 1(o).

Plaintiffs ask the Court to decide now how the Licensors' evidence will be handled. Because Mementum has the legal right to obtain the Licensors' documents and testimony, it should be ordered to produce them. If Mementum cannot or will not obtain them, Mementum should not be permitted to use them. Otherwise, Mementum will be able to cherry-pick the evidence it wants to use. It can deny Plaintiffs the ability to take discovery from the Licensors by claiming lack of control, only to turn around and ask those same Licensors for whatever declarations and documents help Mementum. Mementum alone would choose which of the Licensors' evidence comes before the Court.

**B. <u>Mementum Has the Legal Right to Obtain Its Licensors' Evidence.</u>**

A party controls documents held by a non-party when it has "the legal right to obtain documents upon demand." *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999). The question is whether the non-party could refuse without breaching a contract. *Id.* at 1107–08. Mementum's agreements with each of the four Licensors (produced as MEMENTUM000770–855) are on a single form, and the provisions quoted below appear in all four.

Each Licensor's Exclusive Copyright License and Artist Representation Agreement (the "Agreement") gives Mementum the legal right to obtain their information and testimony. It authorizes Mementum to "take judicial or extra-judicial action to defend or enhance the Works (infringement, unfair competition, parasitism)," and provides that "[t]he Author shall cooperate (evidence, declarations, approvals)." Agreement, Art. 14.1; *see also id.* Art. 8(iii) (Licensor must "cooperate in good faith in promotion and enforcement"); Art. 14.3 (Mementum "controls litigation strategy"). This case is such an action: it arises from Mementum's September 3, 2025 cease-and-desist letter, and Mementum counterclaims for trademark infringement. Dkt. No. 51 ¶ 10; *id.* at 14–21. And the "Works" covered by the Agreement expressly include "generative AI prompts, outputs and hybrid assets" and "sketches, drafts, prototypes, [and] variations." Agreement, Art. 2. If a Licensor refuses to provide that evidence, he breaches the Agreement.

Courts have repeatedly held that a contractual duty to cooperate in litigation by furnishing evidence gives the party Rule 34 control. In *Intex Recreation Corp. v. Bestway USA, Inc.*, a foreign non-party's promise "to cooperate . . . in obtaining evidence" gave the plaintiff control

even after the non-party refused, because the plaintiff "has the legal ability to enforce compliance" and "cannot avoid its discovery obligations by denying, abandoning or refusing to enforce its contractual rights." 2024 WL 2103966, at *9 (C.D. Cal. Mar. 11, 2024); *accord Doe v. AT&T W. Disability Benefits Program*, 2012 WL 1669882, at *4 (N.D. Cal. May 14, 2012) (duty to assist counsel in litigation); *Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, 2010 WL 727220, at *1 (N.D. Cal. Mar. 1, 2010) (duty to "assist" in enforcing rights); *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 195 (S.D.N.Y. 2007); *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 929 (1st Cir. 1988). "Asking" the Licensors to cooperate is not enough; Mementum has a contractual right to demand this evidence, and must enforce that right. It cannot reserve for itself the evidence it wants from the Licensors while disclaiming it for the documents Plaintiffs have requested.

The same requirement reaches the Licensors' testimony. Because Article 14.1 requires each Licensor to provide "declarations," Mementum has the same contractual right to their sworn testimony as to their documents, and the Court should order Mementum to make each Licensor available for a remote deposition. *See Sali v. Corona Reg'l Med. Ctr.*, 884 F.3d 1218, 1223–25 (9th Cir. 2018) (court may order a party to produce a non-party witness for deposition under FRCP 37). The same clause that would give Mementum the ability to obtain a declaration from its Licensors for summary judgment gives it the ability to produce them for deposition now.

### C. <u>Mementum Should Not Be Allowed to Use the Evidence It Withholds.</u>

Mementum should not be able to frustrate Plaintiffs' attempts to obtain evidence from its Licensors and then use that same evidence itself when convenient. If Mementum does not produce a Licensor's documents, or make that Licensor available for deposition, it should be barred from offering that Licensor's testimony, declarations, or any documents obtained from that Licensor, on summary judgment or at trial. A party that disobeys a discovery order may be prohibited "from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A)(ii).

The same result should follow even if the Court concludes that Mementum cannot compel the Licensors' cooperation. Mementum listed Noxa and Breno as its own witnesses, and "[w]itnesses cannot be shielded from identification and deposition and later brought to trial, unless it is solely for purposes of impeachment." *Zeinali v. Raytheon Co.*, 2008 WL 4820993, at

*2 (S.D. Cal. Nov. 3, 2008) (precluding trial testimony of witnesses not made available for deposition), *rev'd on other grounds*, 636 F.3d 544 (9th Cir. 2011). The same rule applies to declarations. *See Great Socialist People's Libyan Arab Jamahiriya v. Miski*, 683 F. Supp. 2d 1, 13 (D.D.C. 2010) (where a non-party who had submitted an affidavit would not sit for deposition, "his representations cannot be relied upon . . . as evidence in support of their claims or to challenge the defendant's counterclaims").

Plaintiffs also have no other practical way to reach Noxa in particular, who lives in Indonesia. Indonesia is not a party to the Hague Evidence Convention and permits depositions only of "willing witnesses," and only "provided no compulsion is used." U.S. Dep't of State, *Indonesia Judicial Assistance Information* [link]. Plaintiffs have no ability to compel Noxa's participation, but Mementum lists him as a key witness that *they* may use. It would be fundamentally unfair to allow Mementum to keep Noxa and the other Licensors beyond Plaintiffs' reach during discovery only to turn around and offer their testimony in a summary judgment declaration or at trial, where Plaintiffs would have had no opportunity to test any of it.

## II. MEMENTUM'S POSITION

### A. Brief Summary of Background Relevant to this Dispute

Mementum is a French company that is the exclusive licensee and representative of certain creators of "brainrot" characters as to certain of their characters. Plaintiffs own a video game that has used many of these characters without permission. Mementum has moved to dismiss for lack of subject matter jurisdiction Plaintiffs' complaint seeking declaratory relief as to Mementum's copyrights and trademarks in 39 characters. Plaintiffs have moved to dismiss Mementum's Counterclaims asserting trademark claims solely concerning the character Tung Tung Sahur. The motions are set to be heard on December 9. The parties have engaged in written discovery—Mementum has made two productions containing material documents, including the documents referenced in Mementum's filings that Plaintiffs requested be prioritized; Plaintiffs have made one production of non-material documents, and haven't produced the documents that Mementum requested be prioritized (documents referenced in Plaintiffs' filings and discovery responses) even though Plaintiffs represented to Mementum they would do so by early this week.

The creators of the characters assertedly at issue aren't parties to this case and live abroad. Noxa (the creator of seven of these characters, including Tung Tung Sahur) is a teenager who lives in Indonesia. Breno (the creator of 10 of these characters) is a teenager who lives in Brazil. Hassan (the creator of a character Plaintiffs claim Mementum put at issue through a reservation-of-rights footnote) is a 19-year-old who lives in England. Alexey Pigeon (the creator of other characters referenced in the footnote) lives in Belarus.

The creators' contracts with Mementum state that: the parties are independent contractors; Mementum "has no authority to control working hours, creative obligations, methods, or performance conditions, and no disciplinary power over" the creators; the creators shall "provide files, visuals and materials required for exploitation" and "cooperate in good faith in promotion and enforcement"; Mementum may bring enforcement actions "in the Company's name or, where required by law, in the Author's name represented by the Company," and controls "litigation strategy, negotiations and settlements, acting in the Author's best interests"; and Mementum may "take judicial or extra-judicial action to defend or enhance the Works (infringement, unfair competition, parasitism), after informing the Author. The Author shall cooperate (evidence, declarations, approvals)." The contracts give the creators the right to obtain documents from Mementum, and some give them audit rights; none gives Mementum such rights. The contracts are "governed by French law" and "subject to the exclusive jurisdiction of the courts of Paris."

Late last month, after the parties met and conferred about this issue, Mementum emailed Noxa, Breno and Alexey Pigeon copies of Plaintiffs' document requests, writing: "Your agreement with Mementum states that you shall cooperate. Please let us know whether you would be willing to provide responsive documents and sit for a deposition in this lawsuit." Mementum also advised the creators of their right to consult with professionals, including legal counsel. Two creators (Breno and Alexey Pigeon) responded that they are reviewing Mementum's request and will circle back. Mementum also reached out via WhatsApp to Hassan, who has not responded.

**B. <u>Mementum Has No Obligation to Produce the Creators for Depositions</u>**

Mementum cannot compel the creators to be deposed. A party may be required by notice to produce for deposition only itself and its officers, directors, and managing agents. Fed. R. Civ.

P. 30(b)(1), 30(b)(6), 37(d)(1)(A)(i). The creators are none of these—they're independent contractors who exercise no authority on Mementum's behalf. The reference to "declarations" in the creators' contracts doesn't imply otherwise—a covenant to provide declarations isn't a duty to submit to adverse examination. Plaintiffs' proper recourse is to seek the creators' testimony through international discovery mechanisms. Plaintiffs' only case on this point, *Sali v. Corona Reg'l Med. Ctr.*, is inapplicable. *Sali* held that "a court can order a party to produce its nonparty expert witness at a deposition." 884 F.3d 1218, 1220 (9th Cir. 2018). There, plaintiffs submitted the expert's declarations, their counsel represented he would be available, and they made no effort to secure his attendance. *Id.* at 1220-21, 1225. The creators aren't Mementum's experts, and Mementum has neither submitted declarations from them nor represented they'd be available. Nor could Mementum make Noxa available—as Plaintiffs recognize, Indonesian law permits depositions for foreign actions only of willing witnesses and provides no means of compulsion.

### C. Mementum Does Not Have a Legal Right to Obtain the Creators' Documents on Demand

Under Rule 34(a)(1), a party may be required to produce documents within its possession, custody or control. "Control" is "the legal right to obtain documents upon demand." *In re Citric Acid Litig.*, 191 F.3d 1090, 1107-08 (9th Cir. 1999) (cleaned up). The Ninth Circuit has rejected a test based on a party's "practical ability" to obtain documents. *Id.* at 1107-08. The party seeking production bears the burden of proving control. *U.S. v. Int'l Union of Petroleum & Indus. Workers* ("*Int'l Union*"), 870 F.2d 1450, 1452 (9th Cir. 1989). Plaintiffs cannot meet this burden.

Plaintiffs argue that Mementum has control over the creators' records because the contracts permit Mementum to "take judicial or extra-judicial action to defend or enhance the Works" and provide that "[t]he Author shall cooperate (evidence, declarations, approvals)." But this covenant that the creators shall cooperate as to three items does not give Mementum the unfettered right to inspect, copy or otherwise obtain the creators' documents, and the reference to "evidence" doesn't obligate the creators to produce all documents responsive to an adversary's request. A license to IP isn't a right to possess the creators' files. The parties knew how to grant records access and did so only in the other direction, obligating Mementum upon a creator's

request to "provide copies of electronic exchanges serving as the basis for contractual approvals or commitments given by" the creator. Mementum has no "legal right to obtain documents upon demand," *Citric Acid*, 191 F.3d at 1107, and thus lacks control over the creators' documents under Rule 34. *See Int'l Union,* 870 F.2d at 1452-53 (international union lacked control over local unions' election records because they were separate entities and the governing contract granted inspection rights only over listed documents).

*Intex Recreation Corp. v. Bestway USA, Inc.*, on which Plaintiffs rely, is inapposite—it applied California law to a promise to cooperate "in every way possible in obtaining evidence," and that clause had no apparent temporal limitation. 2024 WL 2103966, at *7-8 (C.D. Cal. Mar. 11, 2024). The covenant here is narrower and governed by French law. Plaintiffs' other cases also involved broader rights. *See Doe v. AT&T W. Disability Benefits Program*, 2012 WL 1669882, at *3-4 (N.D. Cal. May 14, 2012) (contract provided audit and inspection rights over the administrator's records, and required the administrator to "provide a copy of the file" to defense counsel); *Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, 2010 WL 727220, at *1 (N.D. Cal. Mar. 1, 2010) (non-party inventor had assigned "the entire right, title and interest" in the invention, and the patent's seller had promised to "take such action" to enforce it).

Plaintiffs mischaracterize Mementum's initial disclosures and its counsel's September 18 email as admitting that Mementum controls the creators. The disclosures identified certain creators as individuals likely to have discoverable information and stated that they could be contacted through Mementum, via a Mementum interest holder who is also its French attorney, because Mementum is the creators' representative for the characters assertedly at issue. The email explained the contact was listed because Mementum represents the creators, disputed "that Mementum controls Noxa, Breno, or any of its other creators," stated "we do not represent Noxa or Breno individually," and confirmed that the disclosures' "statement that Mementum has documents relating to the creation and development of the characters at issue and the artistic and creative process of the relevant creators is accurate." That confirmation concerned documents in Mementum's possession, not documents held by the creators. Mementum has supplemented its disclosures to clarify that the creators aren't represented by Mementum's counsel (in France or

here) and has provided Plaintiffs with the creators' contact information.

That Plaintiffs need to pursue third-party discovery as to the creators is not prejudicial. Plaintiffs chose to sue in California federal court a French company that they knew represented foreign-based creators and had entered licenses with foreign companies. Many third parties with percipient knowledge—including, for example, a New Zealand-based third party who submitted a declaration supporting Plaintiffs' motion to dismiss Mementum's Counterclaim (ECF No. 39-2)—are based abroad, and it is inherent in a dispute like this that if the parties want to conduct discovery as to such parties, they will need to do so through international discovery mechanisms.

**D. Preclusion is Not an Appropriate Remedy**

Plaintiffs' request for a preclusive order barring Mementum from relying on the creators' documents, sworn statements, or testimony is premature. Preclusion is appropriate as a sanction where a party has failed to comply with a valid discovery order—not as a first-resort remedy. *See, e.g.,* Fed. R. Civ. P. 37(b)(2)(A) (permitting preclusion where a party "fails to obey an order to provide or permit discovery"); *Sali*, 884 F.3d at 1224 (a "party won't incur Rule 37 sanctions if, despite its efforts, a recalcitrant nonparty witness refuses to attend an ordered deposition," and it is "improper" to "exclude evidence if the failure to comply with a discovery order is due to circumstances beyond the disobedient party's control") (cleaned up). Any preclusion analysis also must account for the specific evidence Plaintiffs claim has been improperly withheld. Plaintiffs are effectively asking for an advisory ruling on evidence that may never be offered.

**E. Mementum's Proposed Compromise**

Mementum will continue to follow up with the creators,[1] keep Plaintiffs apprised and produce any responsive documents they provide. If Mementum intends to rely on a creator's sworn statements or testimony, Mementum will request that the creator be deposed by Plaintiffs on the same subject matter; if the creator declines to do so, Plaintiffs can seek to exclude the statements or testimony. If Mementum relies on materials from a creator that it didn't timely produce, Plaintiffs can seek to exclude them. Plaintiffs can seek discovery as to the creators

[1] Plaintiffs did not raise the issue of Mementum making a more formal demand until this joint statement. Mementum believes its request to the creators was appropriate but has no issue making a more formal demand if the Court deems this appropriate.

through international discovery mechanisms, and Mementum will reasonably cooperate.

DATED: October 16, 2026

MITCHELL SILBERBERG & KNUPP LLP

By: /s/ *Joshua M. Geller*
AARON J. MOSS (190625)
JOSHUA M. GELLER (295412)
Attorneys for Plaintiffs and Counter-Defendants SPYDER GAMES LLC and SPEEDY SIMULATOR GAMING, LLC

DATED: October 16, 2026

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP

By: /s/ *Steven A. Stein*
STEVEN A. STEIN (SBN 287401)
Attorneys for Defendant and Counterclaimant MEMENTUM LAB SAS

## ATTESTATION REGARDING SIGNATURES

Pursuant to Civil Local Rule 5-1(h)(3), I, Joshua M. Geller, attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

DATED: October 16, 2026

By: /s/ Joshua M. Geller
Joshua M. Geller